UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X   Case No. 08 cv 00453 (CM)

SCANTEK MEDICAL INC.,                :

              Plaintiff,      :   AFFIDAVIT OF ANGELA SABELLA

           vs.                   :

ANGELA CHEN SABELLA and ACCORDANT     :
HOLDINGS, LLC,                        :

           Defendants      :

------------------------------------ X

STATE OF NEW YORK    )
                ) ss.
COUNTY OF NEW YORK   )

     I, Angela Chen Sabella, being duly sworn, do depose and say, that:

     1.   I am a defendant in this action.

     2.   I am the sole member of defendant Accordant Holdings LLC, a Delaware limited liability company ("Accordant").

     3.   I submit this affirmation in support of my motion to dismiss all of plaintiff's claims in this action.

     4.   From April 2002 through May 2004, Accordant and I invested $825,000 in Scantek Medical, Inc. ("Scantek"), a public company. Scantek has sued me to void securities representing $300,000 of such investment.

     5.   In August 2002 Scantek delivered to me the following documents (attached hereto as Exhibit A) in connection with Scantek's offer to sell to me $250,000 of Scantek securities in a private placement:

1

> Subscription Agreement dated August 20, 2002
> Promissory note dated August 20, 2002
> Collateral Assignment of Patents
> UCC 1 Financing Statement
> Confessions of Judgment.

6.    In February and March 2003 Scantek delivered to Accordant the following documents (attached hereto as Exhibit B) in connection with Scantek's offer to sell Accordant $50,000 of Scantek securities in a private placement transaction:

> Subscription Agreement dated February 10, 2003
> Promissory Note dated February 10, 2003
> Escrow Agreement dated March 5, 2003

7.    All documents that I received were drafted by Scantek's counsel, Mintz & Fraade P.C. (the "Mintz Firm").

8.    The Mintz Firm represented me in connection with certain investments made by me on or about the time of my investments in Scantek.

9.    I was aware of the fact that Scantek was a public company and was required to file reports with the U.S. Securities Exchange Commission and audited financial statements. I relied on Scantek and the Mintz Firm to draft offering documents that were legal and binding on Scantek.

10.    Accordant and I did not retain separate counsel to review the documents in connection with the investments in Scantek.

2

11.  I relied on the Mintz Firm to disclose to me all facts relevant to my decision to investment in Scantek.  At no time from April 2002 through May 2004 did the Mintz Firm advise me of any possibility or risk that any investments in Scantek could violate any law.

12.  I am appalled that Scantek and the Mintz Firm are now alleging that I violated New York's criminal usury statutes by accepting their offer to purchase securities pursuant to a transaction structured and drafted solely by the Mintz Firm.

13.  Scantek and the Mintz Firm never disclosed to me their opinions that the securities offered to me by Scantek were usurious and that Scantek could void the securities.  They knew that I would never have accepted their offer if such opinion had been disclosed to me.

14.  Scantek and the Mintz Firm never disclosed to me that they were engaged in a scheme to issue securities that Scantek did not intend to honor.

_____
Angela Chen Sabella

Sworn to before me
this ‖ day of February, 2008

_____
Notary Public
KENNETH S. SUSSMANE
Notary Public, State of New York
No. 02SU6057419
Qualified in New York County
Commission Expires November 11, 20‖

3

**EXHIBIT A**

## SCANTEK MEDICAL, INC.

### SUBSCRIPTION AGREEMENT

### DATED AUGUST 20, 2002

Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927

Gentlemen:

### 1.    The "Securities"

I hereby agree to invest $150,000 in Scantek Medical, Inc, a corporation organized and existing under the laws of the State of Delaware (the "Company"), evidenced by a 10% promissory note in the principal amount of one hundred and fifty thousand ($150,000) dollars (the "Note"); and to purchase shares of Common Stock, par value $.001, (the "Shares") from the Company as set forth in Article "8" of this Subscription Agreement. The Note in the principal amount of two hundred and fifty three thousand, two hundred and five dollars and eighty cents which is annexed hereto as Exhibit "A" includes the Note which is the subject of this Subscription Agreement and the Convertible Promissory Note dated April 25, 2002 in the principal amount of $100,000 plus accrued interest of $3,205.80, which is hereby superseded by the attached Note. The Note and the Shares are hereinafter jointly referred to as the "Securities." I hereby agree to pay for the Securities subscribed for by me in the manner which is described in Article "2" of this Subscription Agreement (the "Subscription Agreement").

*V# 3250.80 /L -*

### 2.    Payment

I am herewith forwarding the aggregate amount of one hundred and fifty ($150,000) dollars by wire transfer to the account of "Mintz & Fraade, P.C."

### 3.    The Offering

I understand that this offering will terminate on, or prior to, August 22, 2002, subject to extension, in the sole and absolute discretion of the Company. This offering may be so extended without amending this Subscription Agreement and without notice to either the Investors who have submitted their subscription documents to the Company or to prospective Investors. The

1

Company reserves the right, in its sole and absolute discretion, (i) to withdraw the subject offering or (ii) to reject any subscription for Securities in whole or in part. In the event of a complete rejection, the Company will return to me all of my subscription documents and my subscription funds for the subscription, without interest thereon and without deduction of escrow costs. In the event of a partial rejection, the Company will return to me the appropriate portion of my subscription funds for the rejected portion of the subscription, without interest thereon and without deduction of escrow costs, and I will be obligated to promptly furnish the Company with such amended subscription documents as the Company may request, including, but not limited to, a new Subscription Agreement. If my subscription is accepted for a lesser number of Securities than requested by me, it will be within the sole and absolute discretion of the Company whether or not to allow me to withdraw my full subscription.

### 4.     Acceptance of Subscription

I understand that this Subscription Agreement is not binding upon the Company unless and until it is accepted by the Company. I also understand and agree that the acceptance of my subscription to purchase Securities by the Company shall not be deemed binding upon the Company until the funds paid by me herewith clear and are credited to the account of Mintz & Fraade, P.C. The Securities will be issued to me within thirty (30) days after acceptance.

### 5.     No Reliance

I acknowledge that I have received, read, understand, and am familiar with this Subscription Agreement.     I further acknowledge that no statements, representations or warranties, have been made or furnished to me, or to my advisors, by the Company, or by any person acting on behalf of the Company, with respect to the sale of the Securities, and/or the economic, tax, or any other aspects or consequences of this investment, and that I have not relied upon any information with respect to the offering, written or oral, other than the information contained in this Subscription Agreement. I further understand that any documents other than this Subscription Agreement, regardless of whether distributed prior to, simultaneously with, or subsequent to, the date of this Subscription Agreement should not be relied upon in determining whether to make an investment in the Securities and I expressly acknowledge, agree and affirm that I have not relied upon any such literature in making my determination to make an investment in the Securities.

### 6.     Representations and Warranties of the Investor

In order to induce the Company, Counsel and their respective agents, to accept my subscription, I further represent and warrant to the Company, Counsel, and their respective Affiliates, as follows:

2

(A)    If I have chosen to do so, I have been represented by such advisors as I have found necessary to consult concerning the purchase of the Securities, and such representation has included an examination of applicable documents and an analysis of all tax, financial, and securities law aspects thereof. I, my advisors, and such other persons with whom I have found it necessary or advisable to consult, have sufficient knowledge and experience in business and financial matters to evaluate the information set forth in this Subscription Agreement, and the risks of the investment, and to make an informed investment decision with respect thereto.

(B)    With respect to the tax aspects of my investment, I am relying solely upon the advice of my own personal tax advisors, and upon my own knowledge with respect thereto.

(C)    I have not relied, and will not rely upon, any information with respect to this offering other than the information contained herein and set forth in the Company's filings with the Securities and Exchange Commission.

(D)    I understand that this offering has not been, and it is not anticipated that the same will be, registered under the Securities Act of 1933, as amended (the "1933 Act"), or pursuant to the provisions of the securities or other laws of any other applicable jurisdictions. I am fully aware of the restrictions on sale, transferability and assignment of the Securities and that I must bear the economic risk of my investment herein for an indefinite period of time because the offering has not been registered under the 1933 Act and, therefore, the Securities cannot be offered or sold unless the offering is subsequently registered under the 1933 Act or an exemption from such registration is available to me.

(E)    My execution and delivery of this Subscription Agreement has been duly authorized by all necessary action. I do not presently have any plans to pledge, transfer or assign the Securities and any Shares issuable upon the conversion of the Note which I acquire pursuant to this offering. I am making the investment hereunder for my own account and not for the account of others and for investment purposes only and not with a view to or for the transfer, assignment, resale or distribution thereof, in whole or in part. I have no present plans to enter into any such contract, undertaking, agreement or arrangement.

(F)    I agree that, subject to any applicable state securities laws, I shall not cancel, terminate or revoke this Subscription Agreement, executed by me with respect to the purchase of the Securities, and that this Subscription Agreement shall survive my death or disability, except pursuant to the laws of any applicable jurisdiction.

(G)    Although one of my motivations for investing in the Company is to derive the economic benefits, I am aware that the purchase of the Securities is a speculative investment involving a high degree of risk and that there is no guarantee that I will realize any gain from my investment, realize any tax benefits therefrom and that I may lose all or a substantial part of my investment. I can afford the loss of my entire investment.

3

(H)   The address set forth below is my true and correct residence, and I have no present intention of becoming a resident of any other state or jurisdiction prior to my purchase of the Securities.

(I)   I understand the meaning and legal consequences of the foregoing representations and warranties, which are true and correct as of the date hereof and will be true and correct as of the date of my purchase of the Securities subscribed for herein. Each such representation and warranty shall survive such purchase.

(J)   I agree that it shall not be a defense to a suit for damages for any misrepresentation or breach of covenant or warranty of mine that the Company knew or had reason to know that any covenant, representation or warranty in this Subscription Agreement or furnished or to be furnished to the Company contained untrue statements. The foregoing shall survive any investigation by the Company.

(K).   No representation or warranty which I have made in this Subscription Agreement, or in a writing furnished or to be furnished pursuant to this Subscription Agreement, contains or shall contain any untrue statement of fact, or omits or shall omit to state any fact which is required to make the statements which are contained herein or therein, in light of the circumstances under which they were made, not misleading.

(L)   I am an "accredited investor" as that term is defined in Rule 501 of Regulation D, which was promulgated under the 1933 Act. Pursuant to Rule 501, an accredited investor includes (i) a natural person who (with spouse, if any) has a net worth which exceeds $1,000,000 at the time of the purchase; (ii) a natural person who has had an individual income in excess of $200,000 for the prior two years (or joint income with such spouse which exceeds $300,000 in each such year) and have a reasonable expectation of reaching the same income level (or joint income level) in the current year; (iii) an organization as described in section 501 (c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total assets in excess of $5,000,000; (iv) a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506 (b)(2)(ii); or (v) an entity in which all of the equity owners are accredited investors.

## 7.   Indemnification by the Investor

I hereby agree to indemnify and hold harmless the Company, Counsel, and persons affiliated with them, from any and all damages, losses, costs and expenses (including reasonable attorneys' fees) which they, or any of them, may incur by reason of my failure, or alleged failure, to fulfill any of the terms and conditions of this Subscription Agreement or by reason of my breach of any of my representations and warranties contained in this Subscription Agreement.

4



## 8.   Subscription for Shares

The Company shall issue to you such number of shares of Common Stock of the Company's Common Stock which will result in the ownership by you of six (6) percent of the issued and outstanding shares of Common Stock of the Company, therefore assuming a total of 40,000,000 shares of Common Stock the Company issued and outstanding, you will be issued 2,400,000 shares including the four hundred thousand (400,000) shares of Common Stock of the Company purchased by you pursuant to the Subscription Agreement dated April 24, 2002. The Company is contemplating a reverse merger and hereby agrees to take whatever measures are necessary to maintain your current percentage ownership in the Company in such event.

## 9.   Registration

(A)   The Company shall use its best efforts to cause the Shares issued hereunder and issued pursuant to the Subscription Agreement dated April 24, 2002 to be included in a Registration Statement. The Company shall use its best efforts to file said Registration Statement with the Securities and Exchange Commission within one hundred and twenty (120) days after the closing of this offering.

(B)   All expenses in connection with preparing and filing any registration statement under Article "9" hereof (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor; provided, however, that the Payee shall pay any and all underwriting commissions and expenses and the fees and expenses of any legal counsel selected by the Payee to represent them with respect to the sale of the Securities.

## 10.   General Provisions

(a).   Headings. The headings contained in this Subscription Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Subscription Agreement.

(b)   Enforceability. If any provision which is contained in this Subscription Agreement should, for any reason, be held to be invalid or unenforceable in any respect under the laws of any State of the United States, such invalidity or unenforceability shall not affect any other provision of this Subscription Agreement. Instead, this Subscription Agreement shall be construed as if such invalid or unenforceable provisions had not been contained herein.

(c)   Notices. Any notice or other communication required or permitted hereunder must be in writing and sent by either (i) registered or certified mail, postage prepaid, return receipt requested, (ii) overnight delivery with confirmation of delivery or (iii) facsimile

5



transmission with an original mailed by first class mail, postage prepaid, in each case addressed as follows:

| | |
|---|---|
| To the Company: | Scantek Medical, Inc.<br>4 B Wing Drive,<br>Cedar Knolls, NJ 07927<br>Attn.: Dr. Zsigmond L. Sagi<br>Facsimile No.: (973) 401-0459 |
| Copy to: | Mintz & Fraade, P.C.<br>488 Madison Avenue, Suite 1100<br>New York, New York 10022<br>Attn.: Frederick M. Mintz, Esq.<br>Facsimile No.:(212) 486-0701 |
| To the Investor: | Angela Chen Sabella<br>853 East Valley Boulevard, Suite 200<br>San Gabriel, CA 91776<br>Facsimile No.: (626) 280-2839 |
| Copy to: | Mark Step<br>P.O. Box 1056<br>FDR Station<br>New York, NY 10022<br>Facsimile No.: (203) 255-6234 |

or in each case to such other address and facsimile number as shall have last been furnished by like notice. If mailing by registered or certified mail is impossible due to an absence of postal service, and if the other methods of sending notice set forth in Paragraph "C" of this Article "10" of this Subscription Agreement are not otherwise available, notice shall be in writing and personally delivered to the aforesaid addresses. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be; provided, however, that any notice sent by facsimile shall be deemed to have been given as of the date sent by facsimile if a copy of such notice is also mailed by first class mail on the date sent by facsimile; if the date of mailing differs from the date of sending by facsimile, then the date of mailing by first class mail shall be deemed to be the date upon which notice given.

(d)     Governing Law; Disputes.     This Subscription Agreement shall in all respects be construed, governed, applied and enforced with the laws of the State of New York without giving effect to the principles of conflicts of laws and be deemed to be an agreement entered into in the State of New York and made pursuant to the laws of the State of New York. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and

6



personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "9" of this Subscription Agreement.

The parties agree, further, that the prevailing party in any action or proceeding as determined by the Tribunal making the final and non-appealable determination of the matter in dispute shall be entitled to reimbursement of all its reasonable fees, costs and expenses, including its attorneys fees, in connection with such matter.    In connection with the Tribunal's determination for the purpose of which party, if any, is the prevailing party, the Tribunal shall take into account all of the factors and circumstances including, without limitation, the relief sought, and by whom, and the relief, if any, awarded, and to whom.    In addition, and notwithstanding the foregoing sentence, a party shall not be deemed to be the prevailing party in a claim seeking monetary damages, unless the amount of the final determination exceeds the amount offered in a writing by the other party by fifteen percent (15%) or more.  For example, if the party initiating a claim ("A") seeks damages of $100,000 plus costs and expenses, the other party ("B") has offered A $50,000 prior to the commencement of the proceeding, and if the Tribunal awards any amount less than $57,500 to A, the Tribunal should determine that B has "prevailed".

(e)    Further Actions.        The parties agree to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Agreement and the intents and purposes hereof.

(f)    Binding Agreement.  This Subscription Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns

(g)    Waiver.        Except as otherwise expressly provided herein, no waiver of any covenant, condition, or provision of this Subscription Agreement shall be deemed to have been made unless expressly set forth in writing and signed by the party against whom such waiver is charged; and (i) the failure of any party to insist in any one or more cases upon the performance of any of the provisions, covenants, or conditions of this Subscription Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants, or conditions, (ii) the acceptance of performance of anything required by this Subscription Agreement to be performed with knowledge of the breach or failure of a covenant, condition, or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any party of one breach by another party shall be construed as a waiver with respect to any other or subsequent breach.

(h)    Counterparts. This Subscription Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7



(i)    Entire Agreement.    The parties have not made any representations, warranties, or covenants with respect to the subject matter hereof, orally or in writing, which are not set forth herein, and this Subscription Agreement, together with any instruments or other agreements executed simultaneously herewith, constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Subscription Agreement and any such instrument, which alone fully and completely expresses their agreement. This Subscription Agreement may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by all of the parties to this Subscription Agreement.

11.    Certification with respect to Federal Interest Payments; Backup Withholding in Lieu of Internal Revenue Service Form W-9 –

Under penalties of perjury I certify as follows:

The number(s) shown below as my (our) taxpayer identification number(s) (social security number or employer identification number) is my (our) correct taxpayer identification number; and I (we) am (are) not subject to backup withholding either because I (we) have not been notified by the Internal Revenue Service that I (we) am (are) subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me (us) that I (we) am (are) no longer subject to backup withholding.

[Signature page follows]

8



IN WITNESS WHEREOF, I have executed this Subscription Agreement this 19th day of August 2002.

**Individuals:**

**Entities:**

Angela Chen Sabella

Name (Please Print)

Signature

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

Social Security Number

Name of Entity (Please Print)

By:

Signature and Title

Name of Joint Tenant or
Tenant in-Common, if
applicable (Please Print)

Signature of Joint Tenant
or Tenant-in-Common, if
applicable.

Social Security Number

Employer Identification
Number

[Corporate Seal (if applicable)]

9

## **TO BE COMPLETED BY ALL SUBSCRIBERS**

Address to which information regarding
this subscription should be mailed:

853 East Valley Blvd., Suite 200
Street Address

San Gabriel, CA  91776
City and State                           Zip

( 626) 280-2825
Telephone Number

( 626) 280-2839
Facsimile Number

Accepted And Agreed To This ____ Day of _____ _____, 2002

Scantek Medical, Inc.

By:

Name: _____

Title: _____



## PROMISSORY NOTE

$253,250.80

August 20, 2002

FOR VALUE RECEIVED, Scantek Medical, Inc., a Delaware corporation with an address at 4 B Wing Drive, Cedar Knolls, NJ 07929 (the "Payor"), agrees to pay to the order of Angela Chen Sabella, with an address at 853 East Valley Boulevard, Suite 200, San Gabriel, CA 91776 (the "Payee"), on the Maturity Date set forth in Paragraph "(A)" of Article "2" of this Promissory Note (the "Note"), unless earlier prepaid in accordance with the terms of this Note, the principal sum of two hundred and fifty three thousand, two hundred and fifty dollars and eighty cents ($253,250.80) Dollars, with interest on the aforesaid amount as calculated in Article "1" below.

1.    Interest

(A)    Interest on the unpaid principal balance shall be calculated from the date of this Note to and including the date of repayment at an interest rate equal to ten (10%) percent per annum and shall be payable monthly.

(B)    Any principal and interest and other amounts, payable pursuant to this Note which is not paid when due shall thereafter bear interest from and including the date due to, but excluding the date paid in full, at the lesser of twenty four (24%) percent or the highest permissible rate then allowable under the laws of the State of New York ("Default Interest"). Default Interest shall be payable ON DEMAND together with any payment of principal or interest due pursuant to this Note.

2.    Method of Payment

(A)    Any payments due pursuant to this Note by the Payor shall be made by check drawn to the Payee at the Payee's address which is set forth above or at such other place as may be designated pursuant to Paragraph "(C)" of Article "14" of this Note.

(B)    Interest on the unpaid principal shall be due and payable on the twentieth day of each month.

(C)    The Payee shall receive the greater of (i)$ .475 for each unit of Payor's medical devices sold by it in Brazil for which the Payor receives payment, until the principal balance of this Note, together with any unpaid and accrued interest thereon is paid in full; or (ii) interest due pursuant to Paragraph "B" of this Article "2" of this Note; payments of the following: fifty thousand

1

($50,000) dollars on November 20, 2002, fifty thousand ($50,000) dollars on December 20, 2002, seventy five thousand ($75,000) dollars on January 20, 2003, and the balance of this Note together will all accrued and unpaid interest on February 20, 2003 ("Maturity Date"). For example, if payment of $101,382.04 is made to the Payee on November 20, 2002 from the proceeds of the sale of the Payor's medical devices in Brazil, said payment shall be lieu of payment of the $50,000 and interest of $6,382.04 which are due on November 20, 2002. If the Payee makes an additional payment of $158,639.20 from the proceeds of the sale of the Payor's medical devices in Brazil on November 30, 2002, which payment represents the balance of the Note plus accrued interest of $433.40, then the Payee shall not be obligated to make additional payments, including interest, and this Note shall be paid in full.

(D)     Payments pursuant to subparagraph (i) of Paragraph "C" of this Article "2" shall be made to the Payee within 10 days after the end of the month in which the Payor receives payment for each unit of its device sold

3.     Events of Default

The term "Event of Default" as used herein shall mean the occurrence of any one or more of these following events:

> (A)     The failure of the Payor to pay when due any payment due hereunder and such failure continues for five (5) business days after Payee notifies Payor thereof in writing, pursuant to Paragraph "(C)" of Article "14" of this Note;
>
> (B)     The default in the performance of any material covenant on the part of the Payor to be performed pursuant to the terms hereof and, except for a default pursuant to Article "A" of this Article "3" of this Note, for which no notice or cure period shall be applicable, such failure continues for ten (10) days after Payee notifies Payor thereof in writing, pursuant to Paragraph "(C)" of Article "14" of this Note;
>
> (C)     The admission in writing by the Payor of its inability to pay its debts as they mature;
>
> (D)     The filing by the Payor of a petition in bankruptcy;
>
> (E)     The making of an assignment by the Payor for the benefit of its creditors;
>
> (F)     Consent by the Payor to the appointment of, or possession by, a custodian for itself or for all or substantially all of its property;

2

(G)    The filing of a petition in bankruptcy against the Payor with the consent of the Payor;

(H)    The filing of a petition in bankruptcy against the Payor without the consent of the Payor, and the failure to have such petition dismissed within sixty (60) days from the date upon which such petition is filed;

(I)    Notwithstanding the sixty (60) day provision in Paragraph "(H)" of this Article "3"of this Note, on a petition in bankruptcy filed against Payor, Payor is adjudicated;

(J)    The entry by a court of competent jurisdiction of a final non-appealable order, judgment or decree appointing, without the consent of the Payor, of a receiver, trustee or custodian for the Payor or of all or substantially all of the respective property or assets of Payor;

(K)    The commencement of a proceeding to foreclose the security interest in, or lien on, any property or assets to satisfy the security interest or lien therein of any creditor of the Payor;

(L)    The entry of a final judgment for the payment of money by a court of competent jurisdiction against the Payor, which judgment the Payor shall not discharge (or provide for such discharge) in accordance with its terms within ninety (90) days of the date of entry thereof, or procure a stay of execution thereof within ninety (90) days from the date of entry thereof and, within such ninety (90) day period, or such longer period during which execution of such judgment shall have been stayed, appeal therefrom and cause the execution thereof to be stayed during such appeal; and

(M)    The imposition of any attachment or levy, or the issuance of any note of eviction against the assets or properties of the Payor.

## 4.    Replacement Note

This Note replaces and supercedes the Convertible Promissory Note dated April 25, 2002 in the principal amount of $100,000, plus accrued interest of $3,250.80, executed by Scantek Medical Inc. as the Borrower and Angella Sabella Chen as the Lender.

3

5.    Remedies Upon Default

Upon the occurrence of an Event of Default (as defined in Article "3" of this Note), and any time thereafter while such Event of Default is continuing, the entire unpaid principal balance which is due pursuant to this Note shall, at the Payee's option, be accelerated and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Payor.

6.    Non-Exclusive Remedy

Any remedy that is set forth in this Note is not exclusive of any remedies that are provided by law.

7.    Liability Upon Default

The liability of the Payor upon default shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Payee including, but not limited to, any extension of time, renewal, waiver or other modification.

8.    Exercise of Remedy Upon Default

No failure on the part of the Payee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

9.    Validity of Provisions

Any provision of this Note that may prove to be unenforceable under any law shall not affect the validity of any other provision of this Note.

10.    Collection Costs

Payor agrees to pay all reasonable costs of collection, including attorney's fees and costs, which may be paid or incurred by Payee in connection with Payee's exercise of its rights or remedies under this Note.

11.    Security

This Promissory Note shall be secured by a security interest in certain Patents held by the

4

Payor. The Payor shall execute an Assignment of Patent in favor of the Payee, in the form of which is attached hereto as Exhibit "B."

12.    Confession of Judgment

Dr. Zsigmond L. Sagi, President of the Payor, agrees to execute a Confession of Judgment in favor of the Payee, which is annexed hereto and made a part hereof, as Exhibit "C."

13.    Full Recourse

Anything in this Note to the contrary notwithstanding, the Payor hereunder shall be liable on this Note for the full amount of the principal and interest due pursuant to this Note.

14.    Miscellaneous

(A)    Modification   This Note may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by the Payor and the Payee of this Note.

(B)    Further Actions   The Payor agrees to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Note and the intents and purposes hereof.

(C)    Notices   All notices or other communications required or permitted hereunder shall be in writing and shall be mailed by First Class, Registered or Certified Mail (Return Receipt Requested), postage prepaid, as follows:

| | |
|---|---|
| To the Payor: | Scantek Medical, Inc.<br>4 B Wing Drive,<br>Cedar Knolls, NJ 07927<br>Attn.: Dr. Zsigmond L. Sagi |
| Copy to: | Mintz & Fraade, P.C.<br>488 Madison Avenue<br>New York, New York 10022<br>Attn.: Frederick M. Mintz, Esq. |
| To the Payee: | Angela Chen Sabella<br>853 East Valley Boulevard, Suite 200<br>San Gabriel, CA 91776 |

5

Copy to:        Mark Step
                P.O. Box 1056
                FDR Station
                New York, NY 10022

or in each case to such other address as shall have last been furnished by like notice. If mailing by Registered or Certified Mail is impossible due to an absence or delay in the postal service, notice shall be in writing and personally delivered to the appropriate address set forth above. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be.

(D)    Governing Law    This Note shall in all respects be construed, governed, applied and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed therein, without giving effect to the principles of conflicts of law. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "14" of this Note.

(E)    Assignment    This Note may be assigned or transferred by the Payee without the prior written consent of the Payor.

(F)    Successors and Assigns    This Note shall be binding upon the Payor and its successors and assigns.

(G)    Binding Agreement    This Note shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

[Signature page follows]

6

N:\Clients\Scantek Medical Inc\Bridge Financing\Sabella\$150,000 Loan\note.Sabella.2nd.Final.b.doc

IN WITNESS WHEREOF. the Payor has executed this Note as of the 20th day of August

2002.

Scantek Medical, Inc., Inc.

By: _____

Zsigmond L. Sagi, President & CEO

In order to induce the Payee to enter into the foregoing Note, the payment and performance of the obligations of the Payor are hereby personally guaranteed by Zsigmond L. Sagi and Zsigmond L. Sagi, as guarantor thereof, hereby consents that any provisions of this Note, may be waived, modified or extended without affecting the liability of Zsigmond L. Sagi, as guarantor of the Payor.

_____

Zsigmond L. Sagi

3/20/2002  13:43      0                                                          PAGE   89

20-Aug-2802  12:43pm    From-                                    +                    T-449   P 002    F-311

## COLLATERAL ASSIGNMENT

KNOW ALL MEN BY THESE PRESENTS, that Scantek Medical, Inc., a Delaware corporation with an address at 8 Ridgedale Avenue, Cedar Knowles, NJ 07929, as security for repayment of a loan evidenced by a Promissory Note dated August 20, 2002 (the "Note") hereby collaterally assigns to Angela Chan Sabella, an individual with an address at 853 East Valley Boulevard Suite 200, San Gabriel, CA 91776, any and all Patents now or hereinafter owned by Scantek Medical Inc., including, but not limited to, the Patents listed on Exhibit "A" which is annexed hereto and made a part hereof, subject to any prior liens granted by Scantek Medical, Inc., which assignment shall take place upon the occurrence of an Event of Default pursuant to the Note and the failure to cure such Event of Default within the applicable time to cure.

This Collateral Assignment replaces and supercedes the Collateral Assignment dated April 25, 2002 executed by Scantek Medical Inc.

IN WITNESS WHEREOF, the undersigned has caused this Assignment to be executed as of the _____ day of August, 2002.

Scantek Medical, Inc.

By: _____
    Zsigmond L. Sagi, President & CEO

Acknowledged and Agreed:

_____
Angela Chen Sabella

## UCC FINANCING STATEMENT
FOLLOW INSTRUCTIONS (front and back) CAREFULLY

**A. NAME & PHONE OF CONTACT AT FILER** (optional)

**B. SEND ACKNOWLEDGMENT TO:** (Name and Address)

Return to:
C T Corporation System
UCC Division
111 Eighth Avenue -- 13ᵗʰ Fl.
New York, NY 10011

5580969-01M

DELAWARE DEPARTMENT OF STATE
U.C.C. FILING SECTION
FILED 12:45 PM 09/10/2002
INITIAL FILING NUM: 2227598 4
AMENDMENT NUMBER: 0000000
SRV: 020564376

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

**1. DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (1a or 1b) - do not abbreviate or combine names

| 1a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|
| Scantek Medical, Inc. | | | | |

| 1b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 1c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 4 B wing Drive | Cedar Knolls | NJ | 07927 | USA |

| 1d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 1e. TYPE OF ORGANIZATION | 1f. JURISDICTION OF ORGANIZATION | 1g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| 84 1090126 | | Corporation | Delaware | 2163442 | ☐ NONE |

**2. ADDITIONAL DEBTOR'S EXACT FULL LEGAL NAME** - Insert only one debtor name (2a or 2b) - do not abbreviate or combine names

| 2a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 2b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|

| 2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

| 2d. TAX ID # SSN OR EIN | ADD'L INFO RE ORGANIZATION DEBTOR | 2e. TYPE OF ORGANIZATION | 2f. JURISDICTION OF ORGANIZATION | 2g. ORGANIZATIONAL ID #, if any | |
|---|---|---|---|---|---|
| | | | | | ☐ NONE |

**3. SECURED PARTY'S NAME** (or NAME of TOTAL ASSIGNEE of ASSIGNOR S/P) - insert only one secured party name (3a or 3b)

| 3a. ORGANIZATION'S NAME | | | | |
|---|---|---|---|---|

| 3b. INDIVIDUAL'S LAST NAME | FIRST NAME | MIDDLE NAME | SUFFIX |
|---|---|---|---|
| Chen Sabella | Angela | | |

| 3c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|
| 853 East Valley Boulevard, Suite 200 | San Gabriel | CA | 91776 | USA |

**4. This FINANCING STATEMENT covers the following collateral:**

This Financing Statement is with respect to a Collateral Assignment dated August 20, 2002 which amends and supplements the Collateral Assignment dated April 25, 2002, pursuant to which the Debtor collaterally assigned to the Secured Party any and all Patents now or hereinafter owned by the Debtor, including, but not limited to, the Patents listed on Exhibit "A" which is annexed hereto.

**5. ALTERNATIVE DESIGNATION** (if applicable): LESSEE/LESSOR ☐  CONSIGNEE/CONSIGNOR ☐  BAILEE/BAILOR ☐  SELLER/BUYER ☐  AG. LIEN ☐  NON-UCC FILING ☐

FILING OFFICE COPY — NATIONAL UCC FINANCING STATEMENT (FORM UCC1) (REV. 07/29/98)

Exhibit "A" to UCC Financing Statement
in favor of Angela Chen Sabella

Debtor hereby grants to Secured Party a security interest in the following:

• Patent No. RE 32,000, granted and issued on October 8, 1985; this patent is a reissue of Patent No. 4, 190,058 for a "Device For Use in Early Detection of Breast Cancer", which was granted and issued on February 26, 1980 and has since expired.

• Patent No. 4,651,749, granted on March 24, 1987, entitled "Cancer Detection Patch for Early Detection of Breast Cancer; Temperature, Indicators, Flexibility, Thermoconductivity, Webs"; this patent is a partial continuation of Patent No. 4,190,058 above.

• Patent No. RE 4,624,264 granted November 24, 1986; this patent has been reinstated and expires November 25, 2003.

• Patent No. 6,086,247 granted on July 11, 2000, for Differential Temperature Sensor Device for Use in the Detection of Breast Cancer and Breast Disease; this patent expires February 5, 2018.

• Patent No. 6,135,968 granted on   October 24, 2000, for Differential Temperature Measuring Device and Method for prostate examination; this patent expires September 10, 2017.

• File No. 08/854,144, filed May 14, 1997, entitled "Breast and Axilla Cancer Screening Device and Method", which was assigned to us by HumanScan, Inc. pursuant to a settlement agreement.

   **Secured Party acknowledges that the security interest hereby granted by the Debtor is subject to prior interests granted by the Debtor in the foregoing collateral.**

x Case 1:08-cv-00453-GMS-HBP  Blank Court  Document 10-2    Filed 02/12/2008    Page 22 of 23

COURT

COUNTY OF _____

*Index No.*

Angela Chen Sabella

                                        Plaintiff(s)          **AFFIDAVIT OF**
                    against                                   **CONFESSION OF**
                                                             **JUDGMENT**

Scantek Medical, Inc.

                                        Defendant(s)

## STATE OF NEW YORK, COUNTY OF _____          *ss.:*

Zsgmond L. Sagi                          *being duly sworn, deposes and says; that deponent is*

† *(the* President                       *of* Scantek Medical, Inc.
a                                        *corporation and is duly authorized to make this affidavit on behalf of the corporate)*
*defendant herein.*

   *The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the*
*sum of $* 253,205.80
   *Defendant resides at* 8 Ridgedale      Avenue, Cedar Knowles, NJ 07029
*in the County of* Morris                *State of* New Jersey               *. Defendant authorizes entry*
*of judgment in*
                    New York             *County, New York, if said residence address is not in New York State.*

   *This confession of judgment is for a debt justly* *            *due to the plaintiff arising from*
*the following facts:*

   The defendant has guaranteed the payment to Plaintiff of the principal amount of up to
$253,205.80 pursuant to a Promissory Note dated August 20, 2002 issued by Scantek
Medical, Inc. in favor of Plaintiff if Scantek Medical, Inc. defaults in the payment
of such Promissory Note and such default is not cured in the applicable time to cure
or otherwise satisfied by Scantek Medical, Inc.
   This Affidavit of Confession of Judgment replaces and supercedes the Affidavit of
Confession of Judgment dated April 25, 2002 executed by Zsigmond L. Sagi as President
of Scantek Medical, Inc.

*This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any com-*
*modities for any use other than a commercial or business use upon any plan of deferred payments whereby the*
*price or cost is payable in two or more installments, was executed subsequent to the time a default occurred in*
*the payment of an installment thereunder.*

*Sworn to before me this*
   *day of* August          19          By: _____
                                              Scantek Medical, Inc.
                                              The name signed must be printed beneath
                                        Zsigmond L. Sagi

† Strike out matter in parenthesis if defendant is individual.
                                                        Notary Public
                                                      State of New Jersey
                                                      ADAM D. FROMME
                                              My Commission Expires July 10, 2003

**COURT**

COUNTY OF _____                                    *Index No.*

Angela Chen Sabella

                                                    *Plaintiff(s)*        **AFFIDAVIT OF**
                        against                                           **CONFESSION OF**
                                                                          **JUDGMENT**

Zsigmond L. Sagi

                                                    *Defendant(s)*

**STATE OF NEW YORK, COUNTY OF**                                    *ss.:*

                                    *being duly sworn, deposes and says; that deponent is*

† ~~the~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx**of**xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx
a   xxxxxxxxxxxxxxxxxxxxxx~~corporation and is duly authorized to make this affidavit on behalf of the corporate~~xx
defendant herein.

   *The defendant hereby confesses judgment herein and authorizes entry thereof against defendant in the*
sum of $ 253,205.80
   *Defendant resides at* 8 Ridgedale Ave, Cedar Knowles, NJ 07929
*in the County of*  Morris           *State of* New Jersey           *. Defendant authorizes entry*
*of judgment in*

                    New York        *County, New York, if said residence address is not in New York State.*

   *This confession of judgment is for a debt justly* *            *due to the plaintiff arising from*

the following facts:  The defendant has guaranteed the payment ; to Plaintiff of the principal
amount of up to $253,205.80 pursuant to a Promissory Note dated August 20, 2002
issued by Scantek Medical, Inc.in favor of Plaintif. if Scantek Medical, Inc. defaults
in payment of such Promissory Note and such default is not cured in the applicable
time to cure or otherwise satisfied by Scantek Medical, Inc.
This Affidavit of Confession of Judgment replaces and supercedes the Afidavit of Confession
of Judgment dated April 25, 2002 executed by Zsigmond L. Sagi.

*This affidavit, if made in connection with an agreement for the purchase for $1,500.00 or less of any com-*
*modities for any use other than a commercial or business use upon any plan of deferred payments whereby the*
*price or cost is payable in two or more installments, was executed subsequent to the time a default occurred in*
*the payment of an installment thereunder.*

*Sworn to before me this*
         *day of* August          *19*

†  Strike out matter in parenthesis if defendant is individual.
*  Insert words "to become" if debt is not yet due.

_____
The name signed must be printed beneath
Zsigmond L. Sagi

Notary Public
State of New Jersey
ADAM D. FROMME
My Commission Expires July 10, 2003

EXHIBIT B

# SCANTEK MEDICAL, INC.

## SUBSCRIPTION AGREEMENT

## DATED FEBRUARY 10, 2003

Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927
Attn: Dr. Zsigmond L. Sagi, President

Gentlemen:

1.      The "Securities"

The undersigned hereby agree to invest an aggregate of fifty thousand ($50,000) dollars in Scantek Medical, Inc, a corporation organized and existing under the laws of the State of Delaware (the "Company"), evidenced by a promissory note in the principal amount of fifty thousand ($50,000) dollars bearing interest at the rate of one (1%) percent per month (the "Note"); and to the purchase of shares of Common Stock, par value $.001, (the "Shares") from the Company as set forth in Article "9" of this Subscription Agreement which shall be registered pursuant to Article "9" of this Subscription Agreement. The Note in the principal amount of fifty thousand ($50,000) dollars, is annexed hereto as Exhibit "A". The Note and the Shares are hereinafter jointly referred to as the "Securities." The undersigned hereby agree to pay for the Securities subscribed for by the undersigned in the manner which is described in Article "2" of this Subscription Agreement (the "Subscription Agreement").

2.      Payment

We are herewith agreeing to forward the amount of fifty thousand ($50,000) dollars upon execution hereto to the account of "Mintz & Fraade, P.C."

3.      The Offering

The undersigned understands the following:

(A)      This offering will terminate on, or prior to, February 17, 2003, subject to extension, in the sole and absolute discretion of the Company;

1

(B)    This offering may be so extended without amending this Subscription Agreement and without notice to either the Investors who have submitted their subscription documents to the Company or to prospective Investors; and

(C)    The Company reserves the right, in its sole and absolute discretion, (i) to withdraw the subject offering or (ii) to reject any subscription for Securities in whole or in part. In the event of a complete rejection, the Company will return to me all of my subscription documents and my subscription funds for the subscription, without interest thereon and without deduction of escrow costs.  In the event of a partial rejection, the Company will return to me the appropriate portion of my subscription funds for the rejected portion of the subscription, without interest thereon and without deduction of escrow costs, and I will be obligated to promptly furnish the Company with such amended subscription documents as the Company may request, including, but not limited to, a new Subscription Agreement.  If my subscription is accepted for a lesser number of Securities than requested by me, it will be within the sole and absolute discretion of the Company whether or not to allow me to withdraw my full subscription.

4.    Acceptance of Subscription

The undersigned understands the following:

(A)    That this Subscription Agreement is not binding upon the Company unless and until it is accepted by the Company; and

(B)    That the acceptance of my subscription to purchase Securities by  the Company shall not be deemed binding upon the Company until the funds paid by me herewith clear and are credited to the account of Mintz & Fraade, P.C.

5.    No Reliance

The undersigned acknowledges the following:

(A)    That I have received, read, understand, and am familiar with this Subscription Agreement;

(B)    That no statements, representations or warranties, have been made or furnished to me, or to my advisors, by the Company, or by any person acting on behalf of the Company, with respect to the sale of the Securities, and/or the economic, tax, or any other aspects or consequences of this investment, and that I have not relied upon any information with respect to the offering, written or oral, other than the information contained in this Subscription Agreement; and

(C)     I further understand that any documents other than this Subscription Agreement, regardless of whether distributed prior to, simultaneously with, or subsequent to, the date of this Subscription Agreement should not be relied upon in determining whether to make an investment in the Securities and I expressly acknowledge, agree and affirm that I have not relied upon any such literature in making my determination to make an investment in the Securities.

6.     Representations and Warranties of the Investor

In order to induce the Company, Counsel and their respective agents, to accept our subscription, each of the undersigned further represent and warrant to the Company, Counsel, and their respective Affiliates, as follows:

(A)     If I have chosen to do so, I have been represented by such advisors as I have found necessary to consult concerning the purchase of the Securities, and such representation has included an examination of applicable documents and an analysis of all tax, financial, and securities law aspects thereof. I, my advisors, and such other persons with whom I have found it necessary or advisable to consult, have sufficient knowledge and experience in business and financial matters to evaluate the information set forth in this Subscription Agreement, and the risks of the investment, and to make an informed investment decision with respect thereto;

(B)     With respect to the tax aspects of my investment, I am relying solely upon the advice of my own personal tax advisors, and upon my own knowledge with respect thereto;

(C)     I have not relied, and will not rely upon, any information with respect to this offering other than the information contained herein and set forth in the Company's filings with the Securities and Exchange Commission;

(D)     I understand that this offering has not been, and it is not anticipated that the same will be, registered under the Securities Act of 1933, as amended (the "1933 Act"), or pursuant to the provisions of the securities or other laws of any other applicable jurisdictions. I am fully aware of the restrictions on sale, transferability and assignment of the Securities and that I must bear the economic risk of my investment herein for an indefinite period of time because the offering has not been registered under the 1933 Act and, therefore, the Securities cannot be offered or sold unless the offering is subsequently registered under the 1933 Act or an exemption from such registration is available to me;

(E)     My execution and delivery of this Subscription Agreement has been duly authorized by all necessary action. I do not presently have any plans to pledge, transfer or assign the Securities and any Shares issuable upon the conversion of the Note which we acquire pursuant to this offering. I am making the investment hereunder for my own account and not for the account of others and for investment purposes only and not with a view to or for the transfer,

assignment, resale or distribution thereof, in whole or in part. I have no present plans to enter into any such contract, undertaking, agreement or arrangement;

(F)    I agree that, subject to any applicable state securities laws, I shall not cancel, terminate or revoke this Subscription Agreement, executed by me with respect to the purchase of the Securities, and that this Subscription Agreement shall survive my death or disability, except pursuant to the laws of any applicable jurisdiction;

(G)    Although one of my motivations for investing in the Company is to derive the economic benefits, I am aware that the purchase of the Securities is a speculative investment involving a high degree of risk and that there is no guarantee that I will realize any gain from my investment, realize any tax benefits therefrom and that I may lose all or a substantial part of my investment. I can afford the loss of my entire investment;

(H)    The address set forth below is my true and correct residence, and I have no present intention of becoming a resident of any other state or jurisdiction prior to our purchase of the Securities;

(I)    I understand the meaning and legal consequences of the foregoing representations and warranties, which are true and correct as of the date hereof and will be true and correct as of the date of my purchase of the Securities subscribed for herein. Each such representation and warranty shall survive such purchase;

(J)    I agree that it shall not be a defense to a suit for damages for any misrepresentation or breach of covenant or warranty of mine that the Company knew or had reason to know that any covenant, representation or warranty in this Subscription Agreement or furnished or to be furnished to the Company contained untrue statements. The foregoing shall survive any investigation by the Company;

(K).    No representation or warranty which I have made in this Subscription Agreement, or in a writing furnished or to be furnished pursuant to this Subscription Agreement, contains or shall contain any untrue statement of fact, or omits or shall omit to state any fact which is required to make the statements which are contained herein or therein, in light of the circumstances under which they were made, not misleading; and

(L)    I am an "accredited investor" as that term is defined in Rule 501 of Regulation D, which was promulgated under the 1933 Act. Pursuant to Rule 501, an accredited investor includes (i) a natural person who (with spouse, if any) has a net worth which exceeds $1,000,000 at the time of the purchase; (ii) a natural person who has had an individual income in excess of $200,000 for the prior two years (or joint income with such spouse which exceeds $300,000 in each such year) and have a reasonable expectation of reaching the same income level (or joint income level) in the current year; (iii) an organization as described in section 501 (c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total

4

assets in excess of $5,000,000; (iv) a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506 (b)(2)(ii); or (v) an entity in which all of the equity owners are accredited investors.

7.    Indemnification by the Investor

Each of the undersigned hereby agree to indemnify and hold harmless the Company, Counsel, and persons affiliated with them, from any and all damages, losses, costs and expenses (including reasonable attorneys' fees) which they, or any of them, may incur by reason of any of the undersigned failure, or alleged failure, to fulfill any of the terms and conditions of this Subscription Agreement or by reason of any of the undersigned breach of any of the undersigned representations and warranties contained in this Subscription Agreement.

8.    Subscription for Shares

The Company shall issue to the undersigned such number of Shares which will result in the ownership by the undersigned as follows:

(A) For every $1 loaned to the Company, six (6) Shares;

(B) If the Note is not paid in full on or prior to the Maturity Date (as defined in the Promissory Note) for each of the first five (5) business days after the Maturity Date that the Note remains unpaid, two hundred (200) Shares for every $1000 loaned to the Company by the Investor; and

(C) After the five (5) business day period set forth in Paragraph "(B)" of this Article "8", for each day that the Note remains unpaid, five hundred (500) Shares for every $1000 loaned to the Company by the Investor.

9.    Registration

(A)    Upon the occurrence of an Event of Default (as defined in the Promissory Note), the Company shall in the Company's sole and absolute discretion either (i) deliver freely tradeable Shares to the Payee or (ii) file a Registration Statement with the Securities and Exchange Commission which shall include the Shares issued hereunder within sixty (60) days after the date of such Event of Default. If no Event of Default occurs, the Company shall file a Registration Statement with the Securities and Exchange Commission which shall include the Shares issued hereunder within one hundred twenty (120) days after closing of this offering.

(B)    All expenses in connection with preparing and filing any registration statement under Article "4" hereof (and any registration or qualification under the securities or "Blue Sky"

laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor; provided, however, that the Payee shall pay any and all underwriting commissions and expenses and the fees and expenses of any legal counsel selected by the Payee to represent them with respect to the sale of the Securities.

10.    Changes in Common Stock

If there are any changes in the Company's common stock on or after to February 10, 2003, by way of stock split, stock dividend, reverse split, combination or reclassification, or through merger, consolidation, reorganization or recapitalization, or by any other means, appropriate adjustment shall be made in the provisions hereof, as may be required, so that any such adjustment shall result in the aggregate amount of shares issued to the undersigned pursuant to this Subscription Agreement shall equal not less than one hundred fifty thousand (150,000) shares of the Company's common stock effective immediately after the effective date of such action.

11.    General Provisions

(A)    Headings.  The headings contained in this Subscription Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Subscription Agreement.

(B)    Enforceability.  If any provision which is contained in this Subscription Agreement should, for any reason, be held to be invalid or unenforceable in any respect under the laws of any State of the United States, such invalidity or unenforceability shall not affect any other provision of this Subscription Agreement.  Instead, this Subscription Agreement shall be construed as if such invalid or unenforceable provisions had not been contained herein.

(C)    Notices.  Any notice or other communication required or permitted hereunder must be in writing and sent by either (i) registered or certified mail, postage prepaid, return receipt requested, (ii) overnight delivery with confirmation of delivery or (iii) facsimile transmission with an original mailed by first class mail, postage prepaid, in each case addressed as follows:

To the Company:    Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927
Attn.: Dr. Zsigmond L. Sagi, President
Facsimile No.: (973) 401-0459

Copy to:    Mintz & Fraade, P.C.
488 Madison Avenue, Suite 1100

6

New York, New York 10022
Attn.: Frederick M. Mintz, Esq.
Facsimile No.:(212) 486-0701

To the Investor:                Accordant Holdings, LLC
                                853 East Valley Boulevard, Suite 200
                                San Gabriel, CA, 91776
                                Attn.: Angela C. Sabella

Copy to:                        _____
                                _____
                                _____

or in each case to such other address and facsimile number as shall have last been furnished by
like notice. If mailing by registered or certified mail is impossible due to an absence of postal
service, and if the other methods of sending notice set forth in Paragraph "C" of this Article "11"
of this Subscription Agreement are not otherwise available, notice shall be in writing and
personally delivered to the aforesaid addresses. Each notice or communication shall be deemed
to have been given as of the date so mailed or delivered, as the case may be; provided, however,
that any notice sent by facsimile shall be deemed to have been given as of the date sent by
facsimile if a copy of such notice is also mailed by first class mail on the date sent by facsimile;
if the date of mailing differs from the date of sending by facsimile, then the date of mailing by
first class mail shall be deemed to be the date upon which notice given.

    (D)    Governing Law; Disputes.    This Subscription Agreement shall in all respects be
construed, governed, applied and enforced with the laws of the State of New York without
giving effect to the principles of conflicts of laws and be deemed to be an agreement entered into
in the State of New York and made pursuant to the laws of the State of New York. The parties
hereby consent to and irrevocably submit to personal jurisdiction over each of them by the
Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and
personal service of any and all process and specifically consent that in any such action or
proceeding, any service of process may be effectuated upon any of them by certified mail, return
receipt requested, in accordance with Paragraph "C" of this Article "11" of this Subscription
Agreement.

    The parties agree, further, that the prevailing party in any action or proceeding as
determined by the Tribunal making the final and non-appealable determination of the matter in
dispute shall be entitled to reimbursement of all its reasonable fees, costs and expenses, including
its attorneys fees, in connection with such matter. In connection with the Tribunal's

7

determination for the purpose of which party, if any, is the prevailing party, the Tribunal shall take into account all of the factors and circumstances including, without limitation, the relief sought, and by whom, and the relief, if any, awarded, and to whom. In addition, and notwithstanding the foregoing sentence, a party shall not be deemed to be the prevailing party in a claim seeking monetary damages, unless the amount of the final determination exceeds the amount offered in a writing by the other party by fifteen percent (15%) or more. For example, if the party initiating a claim ("A") seeks damages of $100,000 plus costs and expenses, the other party ("B") has offered A $50,000 prior to the commencement of the proceeding, and if the Tribunal awards any amount less than $57,500 to A, the Tribunal should determine that B has "prevailed".

(E)    Further Actions.    The parties agree to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Agreement and the intents and purposes hereof.

(F)    Binding Agreement.    This Subscription Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns

(G)    Waiver.    Except as otherwise expressly provided herein, no waiver of any covenant, condition, or provision of this Subscription Agreement shall be deemed to have been made unless expressly set forth in writing and signed by the party against whom such waiver is charged; and (i) the failure of any party to insist in any one or more cases upon the performance of any of the provisions, covenants, or conditions of this Subscription Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants, or conditions, (ii) the acceptance of performance of anything required by this Subscription Agreement to be performed with knowledge of the breach or failure of a covenant, condition, or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any party of one breach by another party shall be construed as a waiver with respect to any other or subsequent breach.

(H)    Counterparts.    This Subscription Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(I)    Entire Agreement.    The parties have not made any representations, warranties, or covenants with respect to the subject matter hereof, orally or in writing, which are not set forth herein, and this Subscription Agreement, together with any instruments or other agreements executed simultaneously herewith, constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Subscription Agreement and any such instrument, which alone fully and completely expresses their agreement. This Subscription Agreement may not be changed, modified, extended, terminated

8

or discharged orally, but only by an agreement in writing, which is signed by all of the parties to this Subscription Agreement.

      12.    Certification with respect to Federal Interest Payments; Backup Withholding in Lieu of Internal Revenue Service Form W-9 --

      Under penalties of perjury each of the undersigned certify as follows:

      The number(s) shown below as my (our) taxpayer identification number(s) (social security number or employer identification number) is my (our) correct taxpayer identification number; and I (we) am (are) not subject to backup withholding either because I (we) have not been notified by the Internal Revenue Service that I (we) am (are) subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me (us) that I (we) am (are) no longer subject to backup withholding.

[Signature page follows]

9

IN WITNESS WHEREOF, I have executed this Subscription Agreement this 10th day of February 2003.

**Individuals:**                                **Entities:**

_____          _____
Name (Please Print)                    Name of Entity (Please Print)


_____          By:_____
Signature                                        Signature and Title


_____
Social Security Number


_____          _____
Name of Joint Tenant or              Employer Identification
Tenant in-Common, if                   Number
applicable (Please Print)
                                                      [Corporate Seal (if applicable)]


_____
Signature of Joint Tenant
or Tenant-in-Common, if
applicable.


_____
Social Security Number

10

## TO BE COMPLETED BY ALL SUBSCRIBERS

Address to which information regarding
this subscription should be mailed:

_____

Street Address

_____

City and State                          Zip

( )_____

Telephone Number

( )_____

Facsimile Number

Accepted And Agreed To This _____ Day of _____ _____, 2003

Scantek Medical, Inc.

By:

Name: _____

Title: _____ PRESIDENT. _____

## PROMISSORY NOTE

$50,000

February 10, 2003

FOR VALUE RECEIVED, Scantek Medical, Inc., a Delaware corporation with an address at 4B Wing Drive, Cedar Knolls, NJ 07927 (hereinafter referred to as the "Payor"), agrees to pay to the order of Accordant Holdings, LLC with an address at 853 East Valley Boulevard, Suite 200, San Gabriel, CA, 91776 (the "Payee"), on the Maturity Date set forth in Paragraph "(A)" of Article "2" of this Promissory Note (the "Note"), unless earlier redeemed in accordance with the terms of this Note, the principal sum of Fifty Thousand ($50,000) Dollars, with interest on the aforesaid amount as calculated in Article "1" below.

1.    Interest

(A)    Interest on the unpaid principal balance shall be calculated from the date of each advance received by the Payor pursuant to this Note to and including the date of repayment at an interest rate equal to one (1%) percent per month.

(B)    Payment of the accrued and unpaid interest shall be due and payable upon payment of the principal balance of this Note pursuant to Paragraph "(A)" of Article "2" of this Note.

2.    Method of Payment

(A)    Payment of the principal balance of this Note, together with any unpaid and accrued interest thereon, shall be due and payable in full on or prior to June 6, 2003 (the "Maturity Date").

(B)    Repayment of this Note by the Payor shall be made by certified or bank check drawn to the Payee and delivered to Mintz & Fraade, P.C. on or prior to the Maturity Date at the address set forth in Paragraph "C" of Article "12" of this Note .

3.    Events of Default

The term "Event of Default" as used herein shall mean the occurrence of any one or more of these following events:

(A)    The failure of the Payor to pay when due any payment due hereunder.

(B)    The default in the performance of any material covenant on the part of the Payor to be performed pursuant to the terms hereof and, except for a default pursuant to Article "A" of this Article "3" of this Note, for which no notice or cure period shall be applicable, such failure continues for ten (10) days after Payee notifies Payor thereof in writing, pursuant to Paragraph "(C)" of Article "12" of this Note;

(C)    The admission in writing by the Payor of its inability to pay its debts as they mature;

(D)    The filing by the Payor of a petition in bankruptcy;

(E)    The making of an assignment by the Payor for the benefit of its creditors;

(F)    Consent by the Payor to the appointment of, or possession by, a custodian for itself or for all or substantially all of its property;

(G)    The filing of a petition in bankruptcy against the Payor with the consent of the Payor;

(H)    The filing of a petition in bankruptcy against the Payor without the consent of the Payor, and the failure to have such petition dismissed within sixty (60) days from the date upon which such petition is filed;

(I)    Notwithstanding the sixty (60) day provision in Paragraph "(H)" of this Article "3"of this Note, on a petition in bankruptcy filed against Payor, Payor is adjudicated;

(J)    The entry by a court of competent jurisdiction of a final non-appealable order, judgment or decree appointing, without the consent of the Payor, of a receiver, trustee or custodian for the Payor or of all or substantially all of the respective property or assets of Payor;

(K)    The commencement of a proceeding to foreclose the security interest in, or lien on, any property or assets to satisfy the security interest or lien therein of any creditor of the Payor;

(L)    The entry of a final judgment for the payment of money by a court of competent jurisdiction against the Payor, which judgment the Payor shall not discharge (or provide for such discharge) in accordance with its terms within ninety (90) days of the date of entry thereof, or procure a stay of execution thereof within ninety (90) days from the date of entry thereof and, within such ninety (90) day period, or such longer period during which execution of such judgment shall have been stayed, appeal therefrom and cause the execution thereof to be stayed during such appeal; and

(M)    The imposition of any attachment or levy, or the issuance of any note of eviction against the assets or properties of the Payor.

4.    Remedies Upon Default

Upon the occurrence of an Event of Default (as defined in Article "3" of this Note), and any time thereafter while such Event of Default is continuing, the entire unpaid principal balance which is due pursuant to this Note shall, at the Payee's option, be accelerated and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Payor.

5.    Non-Exclusive Remedy

Any remedy that is set forth in this Note is not exclusive of any remedies that are provided by law.

6.    Liability Upon Default

The liability of the Payor upon default shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Payee including, but not limited to, any extension of time, renewal, waiver or other modification.

7.    Exercise of Remedy Upon Default

No failure on the part of the Payee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

8.    Security.

A.    This Promissory Note shall be secured by three million (3,000,000) shares of Common Stock of the Payor (the "Security Shares"), which are to be held in escrow pursuant to that certain Escrow Agreement by and between Dr. Zsigmond L. Sagi, the Payee, the Payor and Mintz & Fraade, P.C., to be executed simultaneously with this Promissory Note (the "Escrow Agreement").

B.    Upon default by the Payor, the Payor shall cause the Security Shares to be included in a Registration Statement and to file said Registration Statement with the Securities and Exchange Commission within sixty (60) days after the date of default and use its best efforts to cause such Registration Statement to be declared effective; provided, however, that such Registration Statement shall not be required if in the opinion of the Payor's counsel, the Security Shares will be freely tradable if the Payee receives the Security Shares pursuant to Subparagraph "B" of Paragraph "2" of the Escrow Agreement upon default by the Payor.

C.    All expenses in connection with preparing and filing any registration statement pursuant to this Article "8" hereof (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor.

9.      Validity of Provisions

        Any provision of this Note that may prove to be unenforceable under any law shall not affect the validity of any other provision of this Note.

10.     Collection Costs

        Payor agrees to pay all reasonable costs of collection, including attorney's fees and costs, which may be paid or incurred by Payee in connection with Payee's exercise of its rights or remedies under this Note.

11.     Full Recourse

        Anything in this Note to the contrary notwithstanding, the Payor hereunder shall be liable on this Note for the full amount of the principal and interest due pursuant to this Note.

12.     Miscellaneous

        (A)     Modification   This Note may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by the Payor and the Payee of this Note.

        (B)     Further Actions   The Payor agrees to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Note and the intents and purposes hereof.

        (C)     Notices   All notices or other communications required or permitted hereunder shall be in writing and shall be mailed by First Class, Registered or Certified Mail (Return Receipt Requested), postage prepaid, as follows:

                        To the Payor:        Scantek Medical, Inc.
                                             4 B Wing Drive,
                                             Cedar Knolls, NJ 07927
                                             Attention:  Dr. Zsigmond Sagi, President


                        Copy to:             Mintz & Fraade, P.C.
                                             488 Madison Avenue
                                             New York, New York 10022
                                             Attn.: Frederick M. Mintz, Esq.

To the Payee:        Accordant Holdings, LLC
853 East Valley Boulevard, Suite 200
San Gabriel, CA, 91776
Attn.: Angela C. Sabella

Copy to:           _____

                   _____

                   _____

or in each case to such other address as shall have last been furnished by like notice.  If mailing by Registered or Certified Mail is impossible due to an absence or delay in the postal service, notice shall be in writing and personally delivered to the appropriate address set forth above.  Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be.

(D)    <u>Governing Law</u>     This Note shall in all respects be construed, governed, applied and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed therein, without giving effect to the principles of conflicts of law.  The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "12" of this Note.

(E)    <u>Assignment</u>  This Note may be assigned or transferred by the Payee without the prior written consent of the Payor.

(F)    <u>Successors and Assigns</u>  This Note shall be binding upon the Payor and its successors and assigns.

(G)    <u>Binding Agreement</u>  This Note shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

[Signature page follows]

IN WITNESS WHEREOF, the Payor has executed this Note as of the 10th day of February 2003.

Scantek Medical, Inc.

By: _____
Zsigmond L. Sagi, President & CEO

In order to induce the Payor to enter into the foregoing Note, the payment and performance of the obligations of the Payor are hereby personally guaranteed by Zsigmond L. Sagi and Zsigmond L. Sagi, as guarantor hereof, hereby consents that any provisions of this Note, may be waived, modified or extended without affecting the liability of Zsigmond L. Sagi, as guarantor of the Payor.

_____
Zsigmond L. Sagi

# MINTZ & FRAADE, P.C.

COUNSELORS AT LAW
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

———

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER, JR
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

SENIOR COUNSEL
FRANK J. GLINSKY

March 5, 2003

Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927
Attention:  Dr. Zsigmond Sagi, President

Accordant Holdings, LLC
853 East Valley Boulevard, Suite 200
San Gabriel, CA 91776
Attn: Angela C. Sabella

Re:     Escrow Agreement

Gentlemen:

Mintz & Fraade, P.C. (hereinafter referred to as the "Escrow Agent") agrees to act as escrow agent pursuant to the terms of this Escrow Agreement and receive three million (3,000,000) shares of common stock of Scantek Medical, Inc. ("Scantek").

1.     A.     The Escrow Agent hereby acknowledges receipt of the following (the "Escrow Items"): (i) stock powers executed in blank by the recordholder of the Shares (the "Stock Powers"), a copy of which is annexed hereto as Exhibit "A," and (iii) a Promissory Note dated as of the 10th day of February, 2003 (the "Scantek Note"), with Accordant Holdings, LLC as the payee (the "Payee"), a copy of which is annexed hereto as Exhibit "B," evidencing  indebtedness to the Payee in the sum of Fifty Thousand ($50,000) dollars.

B.     A stock certificate evidencing an aggregate of Three Million (3,000,000) shares (the "Shares") of common stock of Scantek, registered in the name of Dr. Zsigmond L. Sagi ("Dr. Sagi") shall be delivered to the Escrow Agent on or prior to May 15, 2003.

C.    The Escrow Agent shall have no obligation to take any action with respect to collecting the payments pursuant to the Scantek Note.

2.    The Escrow Agent agrees to hold the Escrow Items, in escrow, in accordance with the following terms and conditions:

A.    The Escrow Agent shall deliver to Dr. Sagi the Shares, the Stock Powers and the Scantek Note ten (10) days after the Escrow Agent receives written notice (the "Release Notice") pursuant to Article "15" of this Escrow Agreement from any party stating that the Note has been satisfied; provided, however, that the Escrow Agent shall not release the Escrow Items if the Escrow Agent receives written notice from any other party within ten (10) days after receipt of the Release Notice objecting to such release being made.

B.    If the Escrow Agent does not receive a bank or certified check as set forth in Paragraph "B" of Article "2" of the Scantek Note, the Escrow Agent shall deliver the Shares, the Stock Powers and the Scantek Note to the Payee as instructed by the Payee.

C.    The Escrow Agent shall deliver the Escrow Items to the party or parties specified in a written notice received from all Parties instructing the Escrow Agent to deliver the Escrow Items to a specified party or parties. Said written notice must be in form and substance satisfactory to the Escrow Agent in the Escrow Agent's sole and absolute discretion.

3.    The Escrow Agent is hereby released and exculpated from all liability, costs, and expenses whatsoever which arise out of or in connection with the Escrow Agent's activities as escrow agent hereunder. The Escrow Agent shall be liable only to the extent of any loss or damage which is caused by its willful misconduct.

4.    The Escrow Agent may act or refrain from acting with respect to any matter which is referred to herein in reliance upon either: (A) the advice of any counsel who may be selected by the Escrow Agent from time to time, including, but not limited to, the Escrow Agent if it is acting as its own counsel; or (B) a good faith determination by the Escrow Agent. The Escrow Agent is hereby released and exculpated from all liability whatsoever which arises out of or in connection with so acting or in so refraining from acting upon either: (A) the advice of any counsel, including, but not limited to, the Escrow Agent if it is acting as its own counsel; or (B) a good faith determination by the Escrow Agent.

5.    The Escrow Agent may rely and is hereby released and exculpated from all liability, including, but not limited to losses, costs, and expenses whatsoever which arises out of or in connection with its actions based upon any paper or other document which may be submitted to the Escrow Agent in connection with its duties hereunder which is believed by the Escrow Agent to be genuine and to have been signed by the proper party or parties and the Escrow Agent shall have no liability or responsibility with respect to the form, execution or validity thereof.

6.     The Escrow Agent may institute or defend any action or legal process which involves any matter which is referred to herein which in any manner affects the Escrow Agent or its duties or liabilities hereunder, but the Escrow Agent shall not be required to institute or defend such action or process unless or until requested to do so, and then only upon receiving full indemnity, against any and all claims, liabilities, judgments, reasonable attorneys' fees including the fair value for legal fees rendered by it if the Escrow Agent acts as its own counsel and other expenses of every kind in relation thereto such indemnification shall be in form and amount satisfactory to the Escrow Agent in its sole and absolute discretion and from such parties determined by the Escrow Agent in its sole and absolute discretion.

7.     The Payee, Dr. Sagi and Scantek agree to and shall jointly and severally indemnify and save the Escrow Agent harmless from and against any losses, claims, liabilities, judgments, reasonable attorneys' fees and other expenses of every kind and nature which may be suffered, sustained or incurred by the Escrow Agent by reason of its acceptance of, and its performance under, this Escrow Agreement except for the Escrow Agent's willful misconduct. In addition, the Escrow Agent shall be entitled to the fair value of the legal services incurred to outside counsel, or all legal fees and expenses incurred by it if it determines, in its sole and absolute discretion, to act as its own counsel, with respect to the Escrow Agent's acceptance of, and its performance pursuant to this Escrow Agreement.

8.     The Escrow Agent may at any time, in its sole and absolute discretion, deposit the Escrow Items with a court of competent jurisdiction in New York County, New York State pursuant to an action of interpleader, and upon such deposit the Escrow Agent shall be released from any further liability or obligation as the Escrow Agent.

9.     In the event of any dispute which is referred to herein, the Escrow Agent shall be entitled to consult with counsel, including itself, and commence or defend any legal proceeding if the Escrow Agent, in its good faith determination, determines to do so, and shall be reimbursed by the Parties for all legal fees and expenses in connection with such consultation and legal proceeding and shall be further entitled to the fair value of the legal fees incurred by it if the Escrow Agent decides to act as its own counsel, and expenses in connection with such consultation and legal proceeding and shall be further entitled to receive from the Parties all reasonable expenses which are incurred by the Escrow Agent in connection with its acting as the Escrow Agent.

10.     The Escrow Agent shall only be required to notify the parties to this Escrow Agreement of every written notice which it receives hereunder if either it decides to do so or if such written notice requests that it notify the other parties to this Escrow Agreement of its receipt thereof.

11.     Nothing which is contained herein or in any instruments executed simultaneously herewith, shall prevent the Escrow Agent from representing as counsel anyone including, but not limited to, Scantek, Dr. Sagi, or the Payee in any matter

whatsoever, including but not limited to any action or proceeding which relates to this Escrow Agreement, or any instruments which are executed simultaneously herewith.

12. Except as otherwise specifically provided for hereunder, no party to this Escrow Agreement shall be deemed to have waived any of his, her or its rights hereunder or under any other agreement, instrument or paper signed by any of them with respect to the subject matter hereof, unless such waiver is in writing and signed by the party waiving said right. Except as otherwise specifically provided for hereunder, no delay or omission by any party to this Escrow Agreement in exercising any right with respect to the subject matter hereof shall operate as a waiver of such right or of any such other right. A waiver on any one occasion with respect to the subject matter hereof shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

13. The parties to this Escrow Agreement have not made any representations, warranties, or covenants which are not set forth herein with respect to the subject matter hereof, and this Escrow Agreement constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Escrow Agreement.

14. This Escrow Agreement shall not be changed, modified, extended, terminated, or discharged orally, but only by an agreement, in writing, signed by all of the parties to this Escrow Agreement.

15. All notices or other communications which are required or permitted hereunder shall be delivered to all parties hereto and shall be in writing and shall be mailed by First Class, Registered or Certified Mail, Return Receipt Requested, postage prepaid, or by a nationally known overnight delivery service with an acknowledgment of receipt as follows:

| | |
|---|---|
| If to Scantek: | Scantek Medical, Inc.<br>4 B Wing Drive,<br>Cedar Knolls, NJ 07927<br>Attn: Dr. Zsigmond L. Sagi, President<br>Facsimile No.: (973) 401-0459 |
| with a copy to: | Mintz & Fraade, P.C.<br>488 Madison Avenue<br>New York, New York 10022<br>Attention: Frederick M. Mintz, Esq.<br>Facsimile No.: (212) 486-0701 |
| If to Dr. Sagi: | Dr. Zsigmond Sagi, President<br>Scantek Medical, Inc.<br>4 B Wing Drive<br>Cedar Knolls, NJ 07927 |

Facsimile No.: (973) 401-0459

with a copy to:                     Mintz & Fraade, P.C.
                                    488 Madison Avenue
                                    New York, New York 10022
                                    Attention:  Frederick M. Mintz, Esq.
                                    Facsimile No.: (212) 486-0701

To the Payee:                       Accordant Holdings, LLC
                                    853 East Valley Boulevard, Suite 200
                                    San Gabriel, CA 91776
                                    Attn: Angela C. Sabella

Copy to:                            _____
                                    _____


If to the Escrow Agent:             Mintz & Fraade, P.C.
                                    488 Madison Avenue
                                    New York, New York 10022
                                    Attention:  Frederick M. Mintz, Esq.
                                    Facsimile No.: (212) 486-0701

with a copy to:                     Alan P. Fraade, Esq.
                                    18 Nob Court
                                    New Rochelle, New York 10804
                                    Facsimile No. (914) 636-3391


or in each case to such other address as shall have last been furnished by like notice.  If mailing by Registered or Certified Mail is impossible due to an absence of postal service, notice shall be in writing and personally delivered to the appropriate address set forth above.  Each notice or communication shall be deemed to have been given as of the date received by the addressee.

16.    This Escrow Agreement shall in all respects be construed governed, applied and enforced in accordance with the internal laws of the State of New York, without giving effect to conflicts of law.

17.    This Agreement shall be deemed to be an agreement entered into in the State of New York and made pursuant to the laws of the State of New York.  Except as otherwise provided in Article "8" of this Escrow Agreement, the parties agree that they shall be deemed to have agreed to binding arbitration in New York, New York with respect to the entire subject matter of any and all disputes relating to or arising under this Agreement including, but not limited to, the specific matters or disputes as to which

arbitration has been expressly provided for by other provisions of this Agreement. Any such arbitration shall be by and pursuant to the rules then obtaining of the American Arbitration Association in New York, New York. In all arbitrations, judgment upon the arbitration award may be entered in any court having jurisdiction. The parties specifically designate the Courts in the City, County and State of New York as properly having venue for any proceeding to confirm and enter judgment upon any such arbitration award. The parties hereby consent to and submit to personal jurisdiction over each of them by Courts of the State of New York in any action or proceeding to enforce the arbitration award, waive personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested in accordance with Article "15" of this Agreement. The parties agree, further, that the prevailing party in any such arbitration as determined by the arbitrators shall be entitled to such costs and attorney's fees, if any, in connection with such arbitration as may be awarded by the arbitrators; provided, however, that if a proceeding is commenced to confirm and enter a judgment thereon by the Courts of the State of New York and such application is denied, no such costs or attorney's fees shall be paid. In connection with the arbitrators' determination for the purpose of which party, if any, is the prevailing party, they shall take into account all of the factors and circumstances including, without limitation, the relief sought, and by whom, and the relief, if any, awarded, and to whom.

18.     The parties to this Escrow Agreement agree to execute any and all such other and further instruments and documents, and to take any and all such further actions reasonably required to effectuate this Escrow Agreement and the intents and purposes hereof.

19.     This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

20.     This Escrow Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

21.     The persons executing this Escrow Agreement hereby represent that each is duly authorized to enter into this Escrow Agreement in the capacity specified, and upon request, will provide documentation to the Escrow Agent and the other party which supports his or her authority to enter into this Escrow Agreement.

[Signature Page Follows]

Please sign the attached counterpart of this Escrow Agreement where indicated below to acknowledge your agreement with the foregoing.

Very truly yours,

Mintz & Fraade, P.C.

By: _____

Alan P. Fraade

Scantek Medical, Inc.

By: _____

Dr. Zsigmond Sagi, President

Accordant Holdings, LLC

By: _____

Please sign the attached counterpart of this Escrow Agreement where indicated below to acknowledge your agreement with the foregoing.

Very truly yours,

Mintz & Fraade, P.C.

By: _____
Alan P. Fraade

Scantek Medical, Inc.

By: _____
Dr. Zsigmond Sagi, President

Accordant Holdings, LLC

By: _____