UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                    Index No.: 08 CV 00453 (CM)

                    Plaintiff,

                                    **AFFIDAVIT**

      -against-

ANGELA CHEN SABELLA and
ACCORDANT HOLDINGS, LLC,

                    Defendants and
                    Third-Party Plaintiffs,

      -against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                    Third-Party Defendants.
------------------------------------------------------------------X
State of New York   )
                       ) ss.:
County of New York)

Edward C. Kramer, being duly sworn, deposes and says:

   1. I am a principal of the Law Offices of Edward C. Kramer, P.C., and I am of counsel to Third-Party Defendant Mintz & Fraade, P.C. ("M&F"). I am fully familiar with the facts stated in this affidavit and know the same to be true to my own knowledge. I am fully familiar with the pleadings and proceedings heretofore had herein and the matters hereinafter set forth.

   2. This affidavit is submitted in opposition to Defendants' Motion to Dismiss.

1

3. During the years 2002 and 2003, the Plaintiff and the Defendants engaged in a series of financing transactions, which are referenced in greater detail in the accompanying Affidavit of Alan P. Fraade. In brief however, the following transactions occurred:

   a. On April 25, 2002, Defendant Angela Chen Sabella ("Sabella") loaned to Plaintiff $100,000 to Plaintiff in exchange for a promissory note of equal amount, earning 10% interest per annum, together 300,000 shares of Plaintiff's common stock pursuant to a Subscription Agreement simultaneously executed.

   b. On August 20, 2002, Sabella loaned to Plaintiff $100,000 to Plaintiff in exchange for a promissory note of equal amount, earning 10% interest per annum (with a default interest rate of 24% per annum), together 2,000,000 shares of Plaintiff's common stock pursuant to a Subscription Agreement simultaneously executed.

   c. On February 10, 2003, Defendant Accordant Holdings, LLC ("Accordant"), a Delaware LLC in which Sabella is a member, loaned $50,000 to Plaintiff in exchange for a promissory note of equal amount, earning 1% interest per month (12% per annum), together 400,000 shares of Plaintiff's common stock pursuant to a Subscription Agreement simultaneously executed.

(collectively, the "Transactions").

4. In connection with each of these transactions, the Plaintiff alleges in the Complaint that the foregoing transactions are criminally usurious and in violation of N.Y. PENAL LAW § 190.40. In particular, the Plaintiff claims that, when the value of the shares of common stock issued in exchange for the loans is added to the interest directly payable pursuant to the promissory notes, the rate of effective interest exceeds the maximum amounts allowable pursuant to applicable law.

5. Prior to the foregoing transactions, Graphco Technologies, Inc. ("Graphco"), a company for which I served as an officer, director and general counsel, became involved

in a lawsuit with Sabella, with facts substantially similar to the instant litigation (the "Graphco Litigation"). Sabella had invested and loaned substantial sums to Graphco, which to my recollection was approximately three million dollars. As it relates directly to the instant matter, Sabella loaned money to Graphco, and as consideration for the loan, received warrants to purchase Graphco's common stock. When the value of the warrants was added to the interest charged Graphco pursuant to the promissory note which evidenced the loan from Sabella, the total interest exceeded the criminal usury rate of 25% per annum. This issue was part of the focus of litigation between Graphco and Defendant Sabella in which she sought, in pertinent part, to recover loans which Graphco had defaulted upon. I wish to note that I had no involvement in the negotiation, the drafting of documents, or the execution of the Graphco loans, which were wholly handled by the CFO of Graphco and a Pennsylvania law firm.

6. Defendant Sabella was on notice from her involvement in the Graphco Litigation that this structure for offering financing to companies, whereupon she would receive large amounts of securities as additional compensation for loans, was criminally usurious. On May 7, 2002, I submitted an affirmation in the Graphco Litigation, a copy of which I am annexing hereto as Exhibit "A", which specifically raised the issue of usury. In particular, I wrote that:

> "For example, there are triable issues with respect to the value of warrants, which represented a 'kicker' in the subject transaction, and extended the amount of interest of the transaction well beyond the 25% criminal usury standard, which applies equally to individuals and corporations. General Obligations Law Section 5-521(3). Violation of the criminal usury standard would negate the promissory note and any debt thereon.

7. Moreover, with respect to the Graphco Litigation, I had discussions with respect to the issue of usury with Mark Stepniewski, whom I am advised negotiated with Plaintiff on Defendants' behalf. In fact, I recall Stepniewski informing me that Sabella was "annoyed" with Graphco for raising the defense of usury.

8. Based upon my interactions with both Stepniewski and Sabella, Sabella is clearly extremely financially sophisticated. I have been advised by Stepniewski that Sabella is worth "several hundred million dollars", and at any time invests substantial sums in numerous projects. For example, Stepniewski advised me that, at or around the time of the Graphco investments, Sabella had invested many millions of dollars into a ski resort. More importantly, however, and as a result of her vast amounts of money, she has the ability to control the terms of any agreement, including the Transactions. I have personally witnessed her, in a telephone call, negotiate specific terms of a promissory note (unrelated to both Plaintiff and Graphco).

9. Notwithstanding my present relationship with Mintz & Fraade, P.C., nor my involvement with the Graphco Litigation in 2002, and particularly in view of the fact that my "of counsel" relationship with M&F did not commence until after the Transactions and the Graphco Litigation, M&F was not aware of the Graphco Litigation, nor that usury was an issue, until very recently when I told Third-Party Defendant Frederick M. Mintz, Esq., that the Transaction reminded me of what Sabella tried to do (and did) with Graphco. Although M&F did render legal services on behalf of Graphco, specifically with respect to a securities matter involving a potential reverse merger, these were at all

times unrelated to the Graphco Litigation. Accordingly, Sabella was on notice from her involvement in the Graphco Litigation that the loans to Plaintiff were potentially usurious, and pursued them. M&F certainly was not made known, nor could have been aware that such a defense was being raised by Graphco in a time period which was during the same time period as the Transactions.

**WHEREFORE**, it is respectfully submitted that the Court deny the Defendants' Motion to Dismiss this action, and that the Court grant such other and further relief as to it may seem just and proper.

> */s/ Edward C. Kramer*
> _____
> Edward C. Kramer

Sworn to before me this
28th day of March 2008

    */s/*
_____
Notary Public

# Exhibit "A"

Supreme Court of the State of New York
County of New York
-------------------------------------------------------------------x
ANGELA CHEN SABELLA,

               Plaintiff,

             -against-

GRAPHCO TECHNOLOGIES, INC.,

             Defendant.
-------------------------------------------------------------------x

Index No. 107532/02

Affirmation in Support of
Cross-Motion and in
Opposition to Motion

Edward C. Kramer, an attorney duly admitted to practice in the State of New York, hereby affirms the truth of the following under the penalties of perjury.

1. I am a principal of the firm of the Law Offices of Edward C. Kramer, P.C. and am fully familiar with the pleadings and proceedings heretofore had herein and the matters hereinafter set forth.

2. This affirmation is submitted in support of Defendant's cross-motion to dismiss the action on the grounds of lack of personal jurisdiction, because service of process was defective in that it failed to allow at least thirty days to respond to the summons with notice of motion for summary judgment in lieu of complaint, which was served upon the Defendant by other than personal service and was served outside the State of New York and that the notice was otherwise defective because it not permit sufficient time to answer as required by law. This affirmation is also submitted in opposition to Plaintiff's motion for summary judgment in lieu of complaint on the same procedural grounds.

3. Pursuant to CPLR Section 320 (a), if service is made other than by personal service within the State of New York (in this case pursuant to CPLR Section 313), the summons must provide for thirty days time, from when service is perfected, in which to respond. Plaintiff claims that, pursuant to a contractual provision, it served the Summons with Notice of Motion for Summary Judgment in Lieu of Complaint by certified mail, return receipt requested on the Defendant at its offices in Newtown, Pennsylvania. As stated in the accompanying Affidavit of Cristian Ivanescu, CEO of Defendant, sworn to on the 6th day of May 2002, the summons with notice and moving papers were received by certified mail on April 15, 2002, less than thirty days prior to the stated return date of May 8, 2002. In fact, based upon the post date on the envelope, April 11, 2002 (Exhibit 1), the mailing was made less than thirty days prior to the stated return date of May 8, 2002. In fact, the summons, as well as the notice of motion (Exhibit 2), are both dated April 12, 2002 (for an unknown reason they are dated after the post date on the envelope), less than thirty days prior to the stated return date of May 8, 2002. Furthermore, since Plaintiff has demanded and noticed that Defendant's answering papers be served ten days prior to the return date, i.e. April 28, 2002, Plaintiff failed to allow Defendant even twenty days to answer the summons and notice of motion. In fact, it only permitted fourteen days instead of the required thirty days. Therefore, even if twenty days notice were sufficient, Plaintiff's service would still fail. Accordingly, it is respectfully submitted that both service is defective and the motion is defective. See, Crossland Savings, FSB v. Pilevsky, 197 A.D.2d 661, 604 N.Y.S.2d 784 (2nd Dep't 1993); Huang v. Revilla, 170 Misc.2d 617, 620, 651 N.Y.S.2d 286, 288 (Sup. Ct. Queens Co. 1996).

4. In addition, there exists a technical defect to Plaintiff's summons. Contrary to CPLR Section 305, the summons fails to bear the date of filing with the clerk of the court. Accordingly, it appears that Plaintiff has made little, if any effort, to comply with the CPLR, making dismissal of the action all the more appropriate a remedy.

5. Not only is there insufficient time in which to address the motion on a substantive basis, but based on certain case law, addressing the motion on the merits may be deemed to waive jurisdictional defenses, which is not the intent of Defendant. Surfice it to say, Defendant, in good faith believes that it has a defense on the merits, as well as counterclaims related to the transaction at issue. For one example, there are triable issues with respect to the value of warrants, which represented a "kicker" in the subject transaction, and extends the amount of interest of the transaction well beyond the 25% criminal usury standard, which applies equally to individuals and corporations. General Obligations Law Section 5-521(3). Violation of the criminal usury standard would negate the promissory note and any debt thereon. General Obligations Law Section 5-521(1) and (3). Therefore, should the instant cross-motion be denied, Defendant would request an opportunity to address Plaintiff's motion on its merits.

6. Accordingly, it is respectfully submitted that the action and the motion for summary judgment in lieu of complaint should be dismissed and that the motion for summary judgment in lieu of complaint should be denied.

WHEREFORE, it is respectfully requested that Defendant's cross-motion to dismiss the action and the motion for summary judgment in lieu of complaint should be granted, that

3

Plaintiff's motion for summary judgment in lieu of complaint should be denied and that the Court grant Defendant such other and further relief as to it may seem just and proper.

Dated: New York

May 7, 2002

_____<br>Edward C. Kramer