UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                   Plaintiff,

-against-

                                                   Index No.: 08 CV 00453 (CM)

ANGELA CHEN SABELLA and
ACCORDANT HOLDINGS, LLC,

                                   Defendants and
                                   Third-Party Plaintiffs,

-against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                                  Third-Party Defendants.
-------------------------------------------------------------------X

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**PRELIMINARY STATEMENT**

       Scantek Medical, Inc. (the "Plaintiff") and Angela Sabella and Accordant (jointly the "Defendants") entered into a series of transactions. The terms of these transactions were negotiated and demanded by the Defendants through a third party. The Plaintiff was in need of funding and agreed to the terms and structure of the transactions dictated by the Defendants through the third party. The Plaintiff's counsel drafted the documents

1

to be used in the transaction. It was later discovered that the terms of the transactions demanded by the Defendants violated the usury laws of New York State.

Contrary to Defendants' assertion, Plaintiff at no time "offered" securities to Defendants, as that term is defined in the Federal securities laws.

Plaintiff has never in the past relied upon usury laws to assert that any transaction it has entered into was void or voidable.

The Plaintiff and the Plaintiff's counsel, Mintz & Fraade, P.C. ("M&F"), are two separate and distinct entities. The fact that M&F owns shares of the Plaintiff's common stock is irrelevant. M&F owns a minority interest in Plaintiff, and does not have any control over Plaintiff's activities.

The Defendants at no time relied upon the Plaintiff or the Plaintiff's counsel with respect to the Defendants' decision to invest in the Plaintiff. The Defendants are sophisticated and wealthy investors, and demanded and received the structure and the terms of the transaction which they desired.

Plaintiff respectfully refers this Court to the Affidavit of Alan P. Fraade dated March 28, 2008 in support of Plaintiffs opposition to Defendants' Motion to Dismiss (the "Fraade Affidavit") for a full statement of the facts of this matter.

### I. A DECLARATORY JUDGMENT MAY BE SOUGHT BY A CORPORATION ON THE BASIS OF CRIMINAL USURY

It must first be noted that the issue set forth in this point has been rendered moot by the Defendants interposing counterclaims against the Plaintiff. Even if Defendants were to succeed in having the Complaint dismissed on the theory that usury can only be utilized as an affirmative defense, Plaintiffs would simply then allege usury as an

2

affirmative defense to the Counterclaims. It is therefore unclear what Defendants seek to gain with this motion, and Plaintiff believes that Defendants are engaging in unnecessary motion practice.

There is no statutory barrier to a party bringing a declaratory judgment to have a loan declared void for the reason of criminal usury. Further, usury may serve as the basis of a declaratory judgment. In Durst v. Abrash, 22 A.D.2d 39, 40, 253 N.Y.S.2d 351 (1st Dep't 1964), the plaintiff was loaned $30,000 by the defendant, in return for which the plaintiff transferred to the defendant 10,000 shares of stock in a close corporation. The Plaintiff alleged that the transaction was a "loan disguised in the form of a sale", and that the transaction was usurious because the value of the stock and the dividends received by the defendant should be considered interest on the loan. The court turned to the primary issue before it, which was whether the defendant could compel arbitration of the dispute. At no point does the court decide that the plaintiff's complaint was improper for seeking a declaratory judgment that the transaction at issue was usurious.

Additionally, while corporations cannot benefit from the protections offered borrowers by civil usury laws, they can benefit from the protections of criminal usury. See N.Y. GEN. OBL. LAW § 5-521(3). No statutory barrier exists preventing corporations from bringing an action seeking a declaratory judgment to have a transaction declared null and void based upon criminal usury. Although two isolated instances exist where courts have stated that a corporation cannot assert criminal usury in an affirmative manner, these cases are not binding because (i) the language regarding usury is dicta and (ii) the decisions ignore a change in New York's usury law which allows corporations to utilize prohibitions against criminal usury, and do not drawn a distinction between the use

of civil usury by a corporation and criminal usury. These two cases are Intima-Eighteen v. A.H. Shreiber Co., Inc., 172 A.D.2d 456, 457-58 (1st Dep't 1991), and Zoo Holdings, LLC v. Clinton, 11 Misc.3d 1051, 814 N.Y.S.2d 893 (Sup. Ct. N.Y. Cty. 2006). Defendants' counsel confuses civil usury with criminal usury, as the courts in Intima-Eighteen and Zoo Holdings have done, as will be shown below.

As a preliminary matter, it must first be noted that an action seeking a declaratory judgment may be maintained on the basis that a loan is allegedly usurious. See Durst, 22 A.D.2d at 40.

Until 1965, corporations were prohibited from asserting the defense of usury. Additionally, courts reasoned that if corporations could not raise usury as a defense, neither could they affirmatively bring an action in usury. Rosa v. Butterfield, 33 N.Y. 665, 668 (1865) (stating that "usury would only cease to be a shield, to become the more obnoxious as a sword").

However in 1965, the usury statute was amended to its current form. See N.Y. GEN. OBL. LAW § 5-521. Such statute still prohibits corporations from asserting the defense of civil usury, but the statute created an exception to the general prohibition against corporations being able to utilize usury laws to their advantage, and allows corporations to benefit from prohibitions against criminal usury if the interest rate is above 25% percent per annum. Said statute states:

> The [prohibition against corporations voiding usurious transactions] shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.

See N.Y. GEN. OBL. LAW § 5-521(3).

N.Y. PENAL LAW § 190.40 provides:

> A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

N.Y. GEN. OBL. LAW § 5-521(3) does not prohibit a corporation from using criminal usury as the basis for a complaint seeking a declaratory judgment. Indeed, we see in Durst, 22 A.D.2d at 40, that just such a use is permitted.

The conclusions with respect to the application of usury laws by the Intima-Eighteen and Zoo Holdings courts are not binding with respect to this lawsuit for two reasons. First, in each case, the court decides that the transactions at issue are not actually "loans", and that usury law is not applicable. The discussion of usury in Intima-Eighteen and Zoo Holdings is entirely dicta. See Intima-Eighteen, 172 A.D.2d at 457 ("we do not view this transaction as a 'loan' in which the usury laws are implicated"); Zoo Holdings, 11 Misc.3d 1051(A), ***5 (holding that the transactions at issue were not loans, and thus "[W]here there is no loan, there can be no usury"). Although Defendants rely upon these cases in their Memorandum of Law, they intentionally fail to point out that that the statements they are relying upon are dicta.

Second, aside from the usury analysis in the cases being dicta, the courts rely entirely upon decisions regarding civil usury law to reach their conclusions with respect to usury. The Intima-Eighteen and Zoo Holdings courts have reached their respective conclusions about criminal usury by relying entirely upon civil usury case law which predates the enactment of N.Y. GEN. OBL. LAW § 5-521(3). Thus, these cases fail to adequately respond to the change in the law which allowed corporations to utilize usury laws to their benefit.

The first case which mistakenly stated that corporations cannot bring a cause of action in criminal usury was Intima-Eighteen, 172 A.D.2d at 457-58. The court in Intima-Eighteen concludes that: "the statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a loan." Id. at 457 (citing Hammelburger v. Foursome Inn Corp., 54 N.Y.2d 580, 589, 431 N.E.2d 278 (1981); Schneider v. Phelps, 41 N.Y.2d 238, 359 N.E.2d 1361 (1977)). However, neither Hammelburger nor Schneider stand for the proposition that criminal usury may only be used as a defense. Hammelburger simply holds that valid estoppel certificate can preclude the assertion of criminal usury. With respect to usury, Schneider simply holds that the defendant in that case should be viewed as an individual for the purposes pf litigation rather than a corporation, and so the defense of usury could be maintained. Neither case stands for the proposition which the Intima-Eighteen court cites them. In neither case was a corporation bringing an action based upon a claim of usury.

As its basis for coming to the conclusion that corporations are barred from bringing actions based on criminal usury, the court in Intima-Eighteen states that:

> while the statute expressly prohibits only the interposition of usury as a "defense", this court has employed the principle that a party may not accomplish by indirection what is directly forbidden to it and has accorded the rule a broader scope. Thus, it is well established that the statute generally proscribes a corporation from using the usury laws either as a defense to payment of an obligation or, affirmatively, to set aside an agreement and recover the usurious premium.

Intima-Eighteen, 172 A.D.2d at 457 (citing Rosa v. Butterfield, 33 N.Y. 665; Macquoid v. Queens Estates, 143 App.Div. 134, 136, 127 N.Y.S. 867 (1911)). The case law that the Intima-Eighteen court relies upon are cases that pre-date the criminal usury statute by at least fifty years. The Intima-Eighteen court has no basis for its statement nor conclusion.

The cases cited are clearly based upon civil usury law, and draw no distinction between the use of civil usury and criminal usury, and therefore they cannot possibly have any bearing upon whether criminal usury can be asserted in a cause of action. The <u>Intima-Eighteen</u> court blurs the line between the use of criminal and civil usury by making no distinction between the two.

In <u>Zoo Holdings</u>, the plaintiff tried to nullify its board of directors' approval of recapitalization, alleging that the recapitalization was actually a usurious loan from investors. After holding that the transactions at issue were not loans and that usury laws do not apply, the court relies upon <u>Hammelburger</u> and <u>Intima-Eighteen</u> for the proposition that "insofar as the complaint seeks affirmative monetary relief, plaintiff improperly attempts to use a shield created by the Legislature as a sword". 11 Misc.3d 1051(A), ***5.

In any event, Defendants, by interposing counterclaims, have opened the door to Plaintiff's claim of usury as an affirmative defense. Whether the Court allows the Plaintiff to seek a declaratory judgment based upon criminal usury or the Plaintiff raises the affirmative defense of usury to the Defendants' Counterclaims makes no difference. Accordingly, it is respectfully submitted that Point I of this Memorandum of Law and Point II of the Defendants' Motion to Dismiss has been rendered moot by the Defendants interposing of counterclaims. Moreover, in view of the purpose of the criminal usury statute, it would be inconsistent to interpret the statute as prohibiting the use of criminal usury as the basis for a cause of action.

II. **THE PLAINTIFF HAD NO SPECIAL RELATIONSHIP WITH THE DEFENDANTS AND DID NOT INTENTIONALLY INDUCE RELIANCE OF DEFENDANTS AND THEREFORE CANNOT BE ESTOPPED FROM ASSERTING USURY**

Defendants contend that Plaintiff should be estopped from asserting that the Transactions are void for being usurious because (i) M&F had an attorney-client relationship with Defendants, (ii) M&F and Plaintiff were aware that the Transactions were usurious, (iii) M&F did not inform Defendants that the Transactions were usurious and (iv) M&F induced a "reliance on the legality" of the Transactions because of the "special relationship" between M&F and Defendants. All of these contentions are factually false.

Plaintiff and M&F vehemently deny each of the factually allegations asserted by Defendants to support their theory of estoppel. (See Fraade Affidavit.) The Fraade Affidavit explains in detail that (i) M&F did not have any attorney-client relationship with Defendant Sabella with respect to the Transactions, (ii) neither Plaintiff nor M&F were aware that the Transactions were usurious, because although M&F drafted the Documents, M&F merely implemented the terms agreed upon by Plaintiff and Defendant, at Defendants' insistence and (iii) Defendants did not rely upon M&F for any assurances or representations with respect to the Transactions, including a "reliance on the legality" of the Transactions.

Because Plaintiff and M&F contest these factual issues, estoppel is an inappropriate remedy in the absence of a trial, or at least a hearing on the issues in dispute with respect to whether estoppel can be utilized by Defendants.

The Defendants' counsel also discusses alleged instances in the past in which Plaintiff may have entered into other transactions in which it received loans in exchange

for stock. However, this discussion misses the point because an estoppel in pais will not be imposed based upon a borrower's course of conduct, or past dealings with other parties not a party to the subject transaction. Only the actions of the borrower toward the lender in the one instance at hand have been considered. The cases which Defendants' counsel cite confirm the fact that an estoppel in pais has only been imposed in narrow situations based upon the borrower's relationship to the lender, and the borrower's actions in inducing the lender to enter into a usurious agreement. Defendants' discussion of Plaintiffs transactions with third-parties is irrelevant to the issue of estoppel in this lawsuit. In Abramovitz v. Kew Realty Equities, 180 A.D.2d 568, 580 N.Y.S.2d 269 (1st Dep't 1992), borrowers were estopped from interposing usury because the borrowers had a long standing friendship with the inexperienced lender, and borrowers drafted usurious documents and induced the lender to enter into the transaction. Similarly, in Schaaf v. Borsher, 82 A.D.2d 880, 440 N.Y.S.2d 312 (2d Dep't 1981), a sophisticated borrower was estopped from asserting usury as a defense because borrower had a close personal relationship with the inexperienced lender. In both of these cases, the thrust was that estoppel was only utilized when the borrower took advantage of a long-standing relationship with the lender; the borrower's transactions with third parties is not relevant.

In the Motion to Dismiss the Defendants claim that the Plaintiff's counsel structured numerous private placements to Defendants and other parties from the period between 1999 and 2003. The transactions to which Defendants refer were not "private placements" as such term is commonly understood. Most of these transactions involved issuing stock for the payment of the Plaintiff's debts or in lieu of salary due to the Plaintiff's officers and directors and were not loan transactions. The Defendants' counsel

also incorrectly states that these issuances to the officers and directors of the Plaintiff were "blessed" by the auditors, when in fact the auditors did not evaluate the legality of the issuances.

The Defendants' counsel falsely attempts to portray the fact that the Defendants were allegedly owed a fiduciary duty by the Plaintiff's counsel because the Plaintiff's counsel performed legal services for the Defendants in the past. The Plaintiff's counsel only represented the Defendants in one isolated transaction, and assisted the Defendants at the request of the Plaintiffs in filing ministerial paperwork with the SEC. The fees in connection with the filing totaled $1,500, and the fees with respect to the aborted loan transaction were $2,500, which are minor fees representing M&F's limited services for Defendant Sabella. However, the initial representation of the Defendants by the Plaintiff's counsel occurred after the initial transaction between the Plaintiff and the Defendants. The Defendants were aware of the fact that the Plaintiff's counsel represented only the Plaintiff in the negotiations and transactions between the Plaintiff and the Defendants.

Defendants' counsel makes false claims that the Plaintiff's counsel was involved in a "scheme." Defendants' counsel falsely states that the Plaintiff's counsel structured the transactions. While it is true that Plaintiff's counsel did draft the Documents, this was only after lengthy negotiations in which the Defendants demanded the terms and structure of the transaction. The Plaintiff requested that its counsel draft the documents based upon the demands of the Defendants and Mark Stepniewski.

The Defendants' counsel also claims that Plaintiff's counsel structured numerous similar transactions in the past for the Plaintiff. Even if these prior transactions, which

10

were different in spite of the Defendants' counsel's attempts to show otherwise, this would not be considered in deciding whether to impose an estoppel in pais. The theory of estoppel in pais is not concerned with the borrower's course of conduct with third parties, but rather only with the single instance of the borrower's relationship with the lender and the borrower's action. See, e.g., Abramovitz, 180 A.D.2d 568; Schaaf, 82 A.D.2d 880.

Defendants' counsel falsely states that Plaintiff and Plaintiff's counsel "induced the reliance by Defendants on the legality of the transaction." (Defendants' Memorandum of Law at 14.) Defendants are extremely wealthy, sophisticated investors and it was their greed which caused them to enter into a criminally usurious transaction.

Additionally the claims that Defendants' counsel makes with respect to the relationship between the Defendants and the Plaintiff's counsel are false. Plaintiff's counsel M&F only represented the Defendants in one isolated transaction, for which M&F charged $2,500, and assisted the Defendants in filing paperwork with the SEC, for which M&F charged $1,500. However the first transaction occurred after the initial transaction between the Plaintiff and the Defendants had been completed. As described more fully in the Fraade Affidavit, when the Plaintiff and the Defendants entered into their first agreement, the Note dated April 25, 2002, the Plaintiff's counsel had no prior attorney client relationship with the Defendants. The Plaintiff's counsel did not represent the Defendants until on or around August 20, 2002, many months after the initial agreement between the Plaintiff and the Defendants. (See Fraade Affidavit.)

For estoppel to apply, it is also necessary that the borrower *intentionally* induced the lender to enter into the transaction. In the instant case, Plaintiff promised Defendants

11

no such thing. Defendants, being sophisticated and extremely wealthy investors, desired to enter into the Transaction on their own accord in hopes of gaining a sizable return. The Transaction was not a scheme.

Because of these numerous factual disputes, dismissal of the Complaint because of an estoppel theory would not be appropriate in the absence of a hearing.

### III. THE USURIOUS INTENT OF THE DEFENDANTS IS EVIDENCED BY THE FACT THAT THE DOCUMENTS ARE USURIOUS ON THEIR FACE

The Defendants entered into the transaction with the Plaintiff for the purpose of obtaining an excessive profit on their investment. The language of the Documents is clear as to what each party to the transaction would receive. The Defendants, through Mr. Stepniewski, negotiated with the Plaintiff and demanded that certain terms of the transaction be contained in the Documents and were fully aware of the benefit they stood to gain by completing the transaction with the Plaintiff. The Defendants "knowingly" entered into the Transaction with the hope of profit. The documents, on their face, show that the terms of the transaction violate the criminal usury laws of New York State. Because of the foregoing, usurious intent of the Defendants is proved. See Hammond, 88 A.D.2d at 759 ("A loan is usurious if the lender intends to take and receive a rate of interest in excess of that allowed by law even though the lender has no specific intent to violate the usury laws") (citing Matter of Dane, 55 A.D.2d 224 (3d Dep't 1976); Reschke v. Eadi, 84 A.D.2d 904 (4th Dep't 1981)).

The Defendants' counsel cites the case of Transmedia Restaurant Co., Inc., v. 33 E. 61st Street Rest. Comp., 184 Misc.2d 706, 710 N.Y.S.2d 756 (Sup. Ct. N.Y. County 2000) for the proposition that it must appear that the real purpose of the transaction was,

on the one side, to lend money at usurious interest reserved in some form by the contract and, on the other side, to borrow upon the usurious terms dictated by the lender. (Defendants' Memorandum of Law at 16.) The situation contemplated in the Transmedia case is exactly the situation at hand. Defendants, seeking a good investment, lent money at a usurious rate set forth in the Documents, and the Plaintiff, needing money, borrowed upon the usurious terms of the Documents which were negotiated and demanded by the Defendants.

In Transmedia, usury was asserted as a defense. However, it was not clear from the documents evidencing the transaction at issue that the transaction was usurious. The Transmedia case states that "[t]he law is well settled that the parties' intention should be determined from the language employed within the four corners of the agreement, and that where the language is clear and unequivocal, interpretation is a matter of law to be determined by the court." 184 Misc.2d at 711. The case further states that "[c]ircumstances extrinsic to the agreement will not be considered when the intention of the parties can be gathered from the instrument itself." Id. Thus, the only reason the court in Transmedia looked to the intent of the parties as represented by their actions is because the documents were ambiguous as to whether usury was intended. Conversely, in the present case, it is clear from the language contained "within the four corners" of the Documents that the Defendants intended to, and knowingly did, lend money to the Plaintiff at a usurious rate. The Documents in this case are usurious on their face.

The court in In re McCorhill Publishing, Inc., 86 B.R. 783 (S.D.N.Y. 1988), when holding that a loan was criminally usurious, stated that: "With regard to usurious intent, nothing more is needed than an intent to take and receive a rate of interest in excess of

that allowed by law." Id. at 794 (citing In re Rosner, 48 B.R. 538 (E.D.N.Y. 1985); Hammond v. Marrano, 88 A.D.2d 758, 451 N.Y.S.2d 484 (1983); N.Y. Penal Law § 190.40).

Because the Defendants knowingly negotiated and demanded the structure and the terms of the Documents, and took a criminally usurious rate of interest, the criminally usurious intent on the part of the Defendants is proven.

### IV. CRIMINAL USURY MAY APPLY TO A DEFAULTED OBLIGATION WHICH WAS USURIOUS BEFORE DEFAULT

The Defendants' counsel takes issue with the Plaintiff's Third Claim for Relief that the February 2003 Subscription Agreement is criminally usurious because it provides that in the event of a default, Scantek must issue additional 10,000 shares to Defendants each day after the maturity date as a late fee. It should be noted that Plaintiff's first two causes of action do not rely upon Plaintiff having defaulted, and establish that the Documents were usurious from the outset, not only after Plaintiff defaulted.

Defendants' counsel takes the position that New York usury law does not apply to defaulted obligations and cites cases for this proposition. Again it seems that Defendants' counsel is attempting to obscure the difference between *civil* usury and *criminal* usury. With respect to *civil* usury, it is clear that the defense does not apply when the terms of the note impose an interest rate in excess of the statutory maximum only after default or maturity. See, e.g., Klapper v. Integrated Agric. Mgmt. Co., 149 A.D.2d 765, 539 N.Y.S.2d 812 (3d Dep't 1989); Miller Planning Corp. v. Wells, 253 A.D.2d 859, 678 N.Y.S.2d 340 (2d Dep't 1998). This fact is not contested by Plaintiff, and is not at issue in the present action.

No such conclusion has been drawn with respect to criminal usury. Plaintiff has not located any New York case law which holds that a borrower cannot void a transaction which was usurious from the outset, i.e., from the moment the documents evidencing the transaction were executed, simply because the borrower defaulted on the usurious obligation. Defendants' analysis ignores the fact that the Documents were criminally usurious on their face *even before default*.

The cases that the Defendants' counsel cites are not on point. In the Second Circuit case, Manfra, Tordella & Brookes, Inc. v. Bunge, 794 F.2d 61 (2d Cir. 1986), the court did not find the transaction usurious because it did not involve a "loan" or "forbearance" and only discusses the fact that usury laws do not apply to defaulted obligations in passing in a footnote. Id. at 63 fn. 3.

In the second case cited by Defendants' counsel, American Express Co. v. Brown, 392 F. Supp. 235 (S.D.N.Y. 1975), a borrower claimed that a promissory note executed in favor of the lender was unenforceable because the interest rate of 1 1/2% per month after the borrower's default violated New York's criminal usury laws. Without addressing the obvious fact that an interest rate of 1 1/2% per month would not be considered criminally usurious pursuant to N.Y. PENAL LAW § 190.40, the court states that "This contention [that the promissory note is usurious] is untenable since 'abundant authority exists in New York for the holding that there is no usury where an excessive rate of interest is made payable after maturity.'" Id. at 238 (quoting Heelan v. Secururity Nat'l Bank, 73 Misc. 2d 1004, 1008, 343 N.Y.S.2d 417, 421 (Suffolk Co. Dist. Ct. 1973). Thus, the cases here only determine the issue of whether usury can be used as a defense

when the transaction only becomes usurious *after* the borrower's default. In this lawsuit, however, the Documents were usurious even before Plaintiff defaulted.

The remainder of the cases cited by Defendants' counsel are equally unpersuasive. See Defendants' Memorandum of Law at 18 (citing Bristol Inv. Fund, Inc. v. Carnegie Intern. Corp., 310 F.Supp.2d 556 (S.D.N.Y. 2003) (holding that usury could not be imposed in situation where 12% rate, but after default alleged 83.4%, because the damages complained of where due only because borrower defaulted – stating that "the damages about which [borrower] complains are available only because [borrower] defaulted, and would not have been recoverable had [borrower] adhered to the terms of the agreements. Therefore, these damages are not subject to usury analysis"); In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig., 851 F. Supp. 556 (S.D.N.Y. 1994) ("In this case, the basic interest rates under the Notes for each of the Plaintiffs' investments is less than 16%. Any penalty interest rates or late fees assessed against the Plaintiffs do not constitute usury, since New York's usury statutes do not apply to defaulted obligations. Consequently, the Plaintiffs' usury claims are dismissed", where the court does not draw a distinction between civil and criminal usury) (internal citations omitted); Miller Planning Corp. v. Wells, 253 A.D.2d 859, 678 N.Y.S.2d 340 (2d Dep't 1998) (holding usury not available when interest in excess of statutory maximum only after default or maturity, not distinguishing civil from criminal however)).

Because the Documents were usurious on their face before default, whether Plaintiff ultimately defaulted does not make the Documents ex post facto enforceable, since the Documents were void at the outset.

## CONCLUSION

Based on the foregoing, it is respectfully submitted that the Court deny the Defendants' Motion to Dismiss.

Dated: March 28, 2008
      New York, New York

                                       Respectfully submitted,

                                       *[signature]*
                                       Alan P. Fraade (AF9602)
                                       Attorney for Plaintiff
                                       Office and Post Office Address
                                       488 Madison Avenue, Suite 1100
                                       New York, New York 10022
                                       (212) 486-2500