UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X  Case No. 08 cv 00453 (CM)
SCANTEK MEDICAL INC.,                                              :
                                                                   :
      Plaintiff,                                                  :
                                                                   :
      vs.                                                         :
                                                                   :
ANGELA CHEN SABELLA and ACCORDANT                                  :
HOLDINGS, LLC,                                                     :
                                                                   :
      Defendants.                                                 :
------------------------------------------------------------------ X


DEFENDANTS' REPLY MEMORANDUM OF
LAW IN FURTHER SUPPORT OF MOTION
TO DISMISS AMENDED COMPLAINT




McCue Sussmane & Zapfel, P.C.
Attorneys for Defendants
521 Fifth Avenue , 28th Floor
New York, New York 10175
212 931-5500

## TABLE OF CONTENTS

**PAGE**

FACTS ................................................................................................................................. 1

    A. Plaintiff is Estopped from Asserting Criminal Usury ............................................. 6

    B. Plaintiff has Failed to Plead Usurious Intent ........................................................... 8

    C. GOL 5-521(3) Does Not Apply to a Defaulted Obligation. .................................... 9

    D. Criminal usury is strictly an affirmative defense. .................................................... 9

CONCLUSION .................................................................................................................. 10

## TABLE OF AUTHORITIES

PAGE

**Statutes**

GOL 5-521 .................................................................................................................... 10

GOL 5-521(3) ............................................................................................................ 9, 10


**Cases**

*Abramovitz v. Kew Realty Equities, Inc.*, 180 A.D.2d 568, 580 N.Y.S.2d 269 (1st Dept. 1992) ........................................................................................................................ 8

*Durst v. Abrash*, 22 A.D.2d 39 (1st Dept. 1964) ............................................................. 9

*Intima-Eighteen, Inc., v. A.H. Schreiber Co., Inc.*, 172 A.D.2d 456, 568 N.Y.S.2d 802 (1st Dept. 1991) ........................................................................................................... 9

*Manfra, Tordella & Brookes, Inc. v. Bunge,* 794 F.2d 61, 63 n. 3 (2d Cir.1986) .............. 9

*Seidel v. 18 East 17th Street Owners, Inc.*, 79 N.Y.2d 735, 743, 598 N.E.2d 7, 11, 586 N.Y.S.2d 240, 244 (1992) ......................................................................................... 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X   Case No. 08 cv 00453 (CM)
SCANTEK MEDICAL INC.,                                           :
                                                                 :
    Plaintiff,                                            :   DEFENDANTS' REPLY MEMORANDUM OF
                                                                 :   LAW IN FURTHER SUPPORT OF MOTION
  vs.                                                          :   TO DISMISS AMENDED COMPLAINT
                                                                 :
ANGELA CHEN SABELLA and ACCORDANT                               :
HOLDINGS, LLC,                                                   :
                                                                 :
    Defendants.                                         :
---------------------------------------------------------------- X

    Defendants, by their attorneys McCue Sussmane & Zapfel, P.C, respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss the Amended Complaint.

### FACTS

    The opposition is noteworthy for the disregard by Mintz & Fraade, P.C. (the "Mintz Firm") the Code of Professional Responsibility and Federal of Evidence, much in the same manner as it disregarded its duties to defendants, by:

- offering attorney affidavits about matters with no personal knowledge;
- improperly submitting privileged settlement materials to the Court ;
- disclosing client confidences;
- ignoring conflicts of interest;
- failing to acknowledge that any duties are owed to investors by a public corporation and its officers, attorneys and promoters;
- failing to acknowledge duties owed by attorneys to their clients; and
- knowingly making false statements to the Court.

    Plaintiff refers at length to unrelated litigation between defendant Angela Chen Sabella and Graphco Technologies, Inc. ("Graphco") pursuant to which Ms. Sabella brought an action on April 12, 2002 to collect on a defaulted promissory note in the amount of $1,292,990 (the "Graphco Litigation"). Plaintiff argues that "Sabella was on notice from her involvement in the Graphco Litigation that the loans to Plaintiff were potentially usurious" because Graphco issued warrants to Ms. Sabella. *Kramer Aff. ¶9.* Plaintiff fails to disclose that on May 21, 2002, the court in Graphco

1

granted Ms. Sabella's motion for summary judgment in lieu of complaint. *Ex. G.* Ms. Sabella was on notice only that the court in Graphco rejected the defense of criminal usury.

The Graphco Litigation does provide a glaring example of another Mintz Firm client that (a) offered securities consisting of a combination of a promissory note and equity securities, (b) failed to disclose any risk that the promissory note was not enforceable, and (c) defaulted on its obligation and then claimed that the investor committed criminal usury. In order to hide the involvement of the Mintz Firm in a scheme strikingly similar to Scantek, Mr. Fraade's Affidavit in this action contains the following knowingly false statements:

> Mr. Kramer has advised me that Defendant Sabella loaned money to Graphco, and as consideration for the loan received warrants to purchase Graphco's common stock. *Fraade Aff. ¶33* . . . Although M & F has represented Graphco in the past, M & F was unaware of the Graphco Litigation. Although M & F believes that it commenced representation of Graphco in 2001 at the recommendation of Mr. Stepniewski , M & F was retained solely with respect to limited corporate and securities matters and was not aware of the Graphco Litigation until recently." *Fraade Aff. ¶34.*

Mr. Fraade attempts to corroborate his false statements by submitting the affidavit of counsel to the Mintz Firm, Edward Kramer which states:

> M & F was not aware of the Graphco Litigation, nor that usury was an issue, until very recently . . . Although M & F did render legal services on behalf of Graphco, specifically with respect to a securities matter involving a potential reverse merger, these were at all times unrelated to the Graphco Litigation. *Kramer Aff. ¶9.*

The Kramer and Fraade statements are patently false. On April 11, 2002, Mr. Mintz received a letter advising him of the filing of the Graphco Litigation and inquiring whether he was authorized to accept service of process. On June 20, 2002, Mr. Fraade received a letter responding to Mr. Fraade's settlement proposal and advising him that "Ms. Sabella will not release her judgment." On July 17, 18, and 29, 2002, October 3, 2002, and December 5, 2002, Mr. Fraade wrote to Ms. Sabella's attorneys regarding settlement of the Graphco Litigation and withdrawal of Graphco's appeal. Additionally, the Mintz Firm drafted a private placement memorandum for the offering of

2

stock by Graphco dated April 10, 2002 which (a) disclosed that an attorney for Ms. Sabella had advised that he was in the process of filing suit, and (b) listing the Mintz Firm as Graphco counsel. *Ex. I.*

The Mintz Firm was aware of the Sabella loan to Graphco and the Graphco Litigation no later than April 11, 2001. The Mintz Firm was not retained solely with respect to limited corporate and securities matters which were at all times unrelated to the Graphco Litigation. There is no doubt that the account of the Graphco Litigation offered by the Mintz Firm is a fabrication. The affidavits of Mr. Kramer and Mr. Fraade should be disregarded in their entirety.

Plaintiff's objection to the motion to dismiss is based largely on plaintiff's false statements that the terms and structure of defendants' investment in plaintiff were created or demanded by defendants. *Fraade Aff. ¶¶13, 15, 16, 17, 18, 29, 30, 32, 33 and 24; See also Pl. Mem. of Law, pp. 1, 2, 3, 8, 10, 13 and 14.* Mr. Fraade must believe that repeating such falsehood no less than 20 times will make it true and cause the Court to ignore the substantial documentary evidence that the investment structure offered to defendants by plaintiff was widely used by plaintiff to raise capital from many investors and was not demanded by defendants.

Plaintiff claims that it at no time "offered" securities to defendants as that term is defined in Federal securities laws. *Pl. Mem. of Law, p. 2.* Plaintiff claims that "the transactions to which defendants refer were not private placements as such term is commonly understood. Most of these transactions involved issuing stock for the payment of plaintiff's debts or in lieu of the salary due to the plaintiff's officers and directors and were not loan transactions." *Fraade Aff. ¶27.* Plaintiff blatantly ignores (a) the Subscription Agreements drafted by the Mintz Firm, which repeatedly refer to the "offering" (*Sabella Aff. Ex. A.*), (b) plaintiff's SEC filings which state that "The Company's need for funds has increased from period to period . . . Since inception, the Company has funded these needs through private placements of its equity and debt securities . . " (*Ex. C p.30, and Ex. D p.*

3

*28),* and (c) plaintiffs SEC filings which report 18 private placements in which shares of stock were issued "pursuant to financing," including transactions with officers and directors of plaintiff. *Ex. C, pp. 23-36, and Ex. D, pp. 23-25.*

The minutes of the meeting of plaintiff's Board of Directors dated June 30, 2005 (*Ex. J*) approved issuance of common stock as consideration for 15 promissory notes issued after the August 2002 and February 2003 transactions with defendants. Such transactions include shares issued pursuant to the terms of officer and director loans approved by plaintiff's board of directors on May 14, 1999 "which provide for interest at the rate of ten (10%) percent per annum and for the issuance of two thousand five hundred (2,500) shares of Common Stock for each ten thousand ($10,000) dollars of the loan." *Ex. J, p. 2.*

Plaintiff falsely claims that defendants structured and demanded the provisions of the February 2003 Promissory Note which provided that in the event of a default for more than five business days, plaintiff would issue an additional 500 shares for each $1,000 loaned. Such statement is proven false by the documentary evidence that plaintiff entered into agreements with virtually identical terms with three other investors before and after February 2003. In 2000, plaintiff borrowed $10,000 from Carriage House Capital LLC and agreed that in the event of a default, plaintiff would issue 500 shares of common stock per $1,000 loaned. *Sussmane Aff. ¶11*. In April 2003, plaintiff entered into two agreements with other investors with the same penalty as the Carriage House loan. *Exs. K and L.*

The Mintz Firm acted as attorneys for plaintiff, a public reporting company, in which the Mintz Firm owned over 28,000,000 shares (*Ex. J p.3*). Mr. Fraade admits that the Mintz Firm acted as a promoter of plaintiff when it caused its long-time client Mark Stepniewski to introduce plaintiff to defendants. *Fraade Aff. ¶6.* The Mintz Firm claims that it dealt primarily with Mr. Stepniewski with respect to the transactions with defendants. *Fraade Aff. ¶¶12, 14,17 and 18.* The Mintz Firm

does not claim to have dealt with any attorney in connection with the investment of defendants, no attorneys are listed in the notice sections of any applicable documents, and the Mintz Firm admits that it communicated directly with defendants (*Fraade Aff. ¶23.*), which communication would have been prohibited if defendants had been represented by an attorney.

Mr. Fraade admits that in August 2002 the Mintz Firm commenced representation of Ms. Sabella in connection with a proposed investment in an unrelated company. *Fraade Aff. ¶23*. The representation admittedly occurred simultaneous with drafting by the Mintz Firm of the August 2002 Subscription Agreement and August 2002 Promissory Note between plaintiff and Ms. Sabella which are the subject of this action. Mr. Fraade further admits that the attorney client relationship with defendants continued through at least February 2004 when the Mintz Firm drafted and filed SEC Form 3 and Form 13D on behalf of defendants in connection with their investment in Scantek. (*Fraade Aff. ¶24; and Ex. N*).

Mr. Fraade states that it is "inconceivable" and "puzzling" that Ms. Sabella believed that she could rely on the Mintz Firm, a firm (*Fraade Aff. ¶¶9, 12*) with which she had an attorney-client relationship, and which had a long-term attorney-client relationship with the person alleged to have negotiated the transactions on her behalf. Mr. Fraade is also puzzled that defendants would rely on a public corporation and its attorneys to offer and issue legally binding and enforceable securities and to disclose all material facts necessary to make an investment decision. What is truly inconceivable is the temerity of Mr. Fraade's argument that the Mintz Firm owes no duty to defendants because Ms. Sabella paid only "minor" legal fees of $4,000. *Fraade Aff. ¶¶23 and 24*. It is respectfully submitted that attorneys owe fiduciary duties to all clients, regardless of the amount of legal fees paid. There is no merit to Mr. Fraade's contention that the filing of SEC forms reporting a beneficial interest in a public company under penalties of perjury are ministerial acts and do not constitute performance of legal services (*Fraade Aff. ¶ 24*).

Truly puzzling is Mr. Fraade's belief that the rules of evidence do not apply to the Mintz Firm. Mr. Fraade and Mr. Kramer do not limit their affidavits to matters about which they have personal knowledge, including repeated and inappropriate hearsay references to the "wealth" of defendants intended to embarrass defendants. (*Fraade Aff. ¶¶7 ,9 ,31 ,33, 34; Kramer Aff. ¶¶7, 8, 9*).

Equally puzzling is plaintiff's disregard of FRE 408 by revealing to the Court conduct and statements of defendants and plaintiff in settlement negotiations (*Fraade Aff. ¶22, Exs. C and D*) and the gratuitous disclosure of privileged confidential information of and communications with its client Mark Stepniewski. *Fraade Aff. ¶¶7,9;* and *Kramer Aff. ¶8.*

It is inconceivable that the Mintz Firm failed to cause defendants execute a waiver of obvious conflicts of interest disclosing its representation of plaintiff, defendants and Graphco and failure to recognize that absent a written waiver, the Mintz Firm could not represent either plaintiff or defendants in connection with the August 2002 and February 2003 agreements.

## ARGUMENT

A.   Plaintiff is Estopped from Asserting Criminal Usury

Plaintiff's submission of knowingly false affidavits to prevent dismissal by attempting to manufacture an issue of fact, dictates defendants' entitlement to invoke the doctrine of estoppel recognized by the Court of Appeals and a majority of states. The Court should prevent plaintiff from asserting usury to "void the transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through [its] own subterfuge and inequitable deception." *Seidel v. 18 East 17th Street Owners, Inc.*, 79 N.Y.2d 735, 743, 586 N.Y.S.2d 240, 244 (1992).

Plaintiff was a public reporting company which raised capital to meet its financial needs by offering through private placements securities consisting of a combination of promissory notes and common stock (the "Securities"). In 1999, plaintiff's board of directors approved the terms of officer and director loans "which provide for interest at the rate of ten (10%) percent per annum and for the

issuance of two thousand five hundred (2,500) shares of Common Stock for each ten thousand ($10,000) dollars of the loan. *Ex. J, p. 2.* Plaintiff utilized this basic structure instituted for officers and directors of plaintiff to offer Securities to numerous investors, including defendants. Plaintiff's SEC filings report at least 18 private placements of Securities prior to 2003, where common stock was issued pursuant to financings. Defendants have submitted proof of at least 15 private placements of Securities in 2003 through 2005 where shares were issued as consideration for loans. *Ex. J, K, L and M* . Plaintiff also entered into at least four transactions where it agreed to issue additional shares in the event of a default on a promissory note. Su*ssmane Reply Aff.¶¶6-11, and Exs. A, J, K, L, M.* This documentary evidence proves that plaintiff has falsely stated that (a) the terms and structure of defendants' investment in plaintiff were created or demanded by defendants (*Fraade Aff. ¶¶13, 15, 16, 17, 18, 29, 30, 32, 33 and 24; See also Pl. Mem. of Law, pp. 1 , 2, 3, 8, 10, 13 and 14);* (b) there was no "offering" to plaintiff (*Pl. Mem. of Law. p. 2.);* and (c) there were no private placements of the Securities. S*ee Fraade Aff. ¶27*.

Plaintiff was a public company with a fiduciary duty to defendants as shareholders, and had a duty under federal and state securities laws to disclose all material facts relevant to defendants' investment decision, including any risk that the Securities were not the binding and enforceable. Plaintiff admits that the Mintz Firm acted as a promoter of plaintiff, causing its long-time client to introduce plaintiff to defendants and then dealt primarily with such client with respect to the transactions with defendants. Simultaneous with drafted the August 2002 Subscription Agreement and Promissory Note between plaintiff and defendants, the Mintz Firm represented Ms. Sabella in connection with a proposed investment in another company. The Mintz Firm continued to represent defendants though 2004, when it prepared SEC filings relating to defendants' investment in plaintiff. The Mintz Firm did not obtain a written waiver of its conflicts of interest regarding its representation of plaintiff and defendants, nor its representation of Graphco, a company which Ms. Sabella sued to

enforce a defaulted promissory note. The Mintz Firm unquestionably had a fiduciary duty as defendants' attorneys.

The Mintz Firm claims that "the documents on their face show that the transaction violate the criminal usury laws of New York State" (*Pl. Mem of Law p. 12*) yet neither plaintiff nor the Mintz Firm advised defendants of such opinion. Pursuant to *Abramovitz v. Kew Realty Equities, Inc.*, 180 A.D.2d 568, 580 N.Y.S.2d 269 (1st Dept. 1992), plaintiff and the Mintz Firm had a duty to speak, but failed to disclose their opinion to defendants regarding risk of usury in the transactions. Plaintiff is estopped because defendants rightfully relied upon plaintiff and its agent the Mintz Firm.

Plaintiff knowingly makes false statements regarding knowledge of the Graphco Litigation to attempt to hide the Mintz Firm's representation of another client engaged in a scheme strikingly similar to the Scantek scheme, offering of securities consisting of a combination of a promissory note and equity securities and then claiming a defense of criminal usury.

   B.  Plaintiff has Failed to Plead Usurious Intent

Plaintiff, a public company, cannot overcome the strong presumption against the finding of criminally usurious intent necessary to void the Securities issued pursuant to a structure adopted by plaintiff for loans to its officers and directors and utilized by plaintiff in dozens of private placements. The Amended Complaint does not allege that defendants knew that the Securities violated usury law. Plaintiff's argument that usury was apparent on the face of documents is clearly refuted by the claim of the Mintz Firm, the drafter of the documents, that it was not aware of the usury issue. *Fraade Aff. ¶28.* Plaintiff cannot have it both ways. If usury was apparent to plaintiff, it is estopped from claiming usury due to its failure to disclose the risk to defendants. If usury was not apparent to plaintiff and its experienced attorneys, it cannot argue that usury was clear to defendant and plaintiff has failed to plead usurious intent.

8

C. GOL 5-521(3) Does Not Apply to a Defaulted Obligation.

The Second Circuit has recognized in *Manfra, Tordella & Brookes, Inc. v. Bunge,* 794 F.2d 61, 63 n. 3 (2d Cir.1986) that New York usury law places no limit on interest that can be charged on defaulted obligations. Plaintiff's Third Claim fails to state a cause of action for relief because it alleges that the February 2003 Promissory Note is usurious only because the plaintiff was required to issue additional stock to defendant in the event of a default.

D. Criminal usury is strictly an affirmative defense.

Plaintiff argues that the Court should ignore the New York cases which construe GOL 5-521(3) to provide that criminal usury may be asserted only as an affirmative defense in an action seeking repayment of a loan, and cannot be asserted as a claim for relief. Plaintiff's argument that the holding in *Intima-Eighteen, Inc., v. A.H. Schreiber Co., Inc*., 172 A.D.2d 456, 568 N.Y.S.2d 802 (1st Dept. 1991) is dicta, misreads the clear opinion of the First Department, which specifically ruled that:

> Even assuming, as plaintiff urges, that a lender-borrower relationship existed, plaintiff may not avail itself of the usury laws. The statutory exception for interest exceeding 25 percent per annum is strictly an affirmative defense to an action seeking repayment of a loan (citations omitted) and may not, as attempted here, be employed as a means to effect recovery by the corporate borrower.

The holding in *Zoo Holdings, LLC v. Clinton*, 11 Misc.3d 1051(A), 814 N.Y.S.2d 893 (N.Y. Cty 2006) is similarly not dicta. The court specifically ruled, "In addition, insofar as the complaint seeks affirmative monetary relief . . . plaintiff improperly attempts to use a shield created by the Legislature as a sword. *Intima* and *Zoo Holdings* were properly decided under current GOL 5-521(3). There is no basis to disregard this precedent because the cases discuss decisions rendered prior to the 1965 change in the law.

Plaintiff likewise miscites *Durst v. Abrash*, 22 A.D.2d 39 (1st Dept. 1964) to support its argument that a corporation can assert usury as a claim for relief. *Durst* affirmed the denial of a defendant's motion to compel arbitration in an action for declaratory judgment to determine that a

9

purported stock sale was in fact usurious. It held that the court must first determine the issues relating to legality of the contract containing the arbitration clause before ordering arbitration. Plaintiff acknowledges that the *Durst* defendant did not raise, and the court did not address, the issue of whether GOL 5-521(3) precluded plaintiff from bringing his action for declaratory judgment. *Pl. Mem. Law p. 3*. Plaintiff then leaps to the conclusion that as the result of such silence, *Durst* can be cited for the proposition that plaintiff's actions seeking declaratory judgment can be maintained. Plaintiff fails to realize that the reason *Durst* did not address the issue was that the plaintiff in *Durst* was an individual, not a corporation, and was not subject to the corporate prohibition against interposing a usury defense or the exception for criminal usury set forth in GOL 5-521.

The filing of counterclaims by defendants does not make this issue moot. To the extent plaintiff's usury claims otherwise survive the substantive grounds argued above, plaintiff may raise usury as an affirmative defense to defendant's counterclaims. Plaintiff may not; however, re-assert its claim for the affirmative relief of requiring defendants to return the shares of stock issued by plaintiff pursuant to the Subscription Agreements

## CONCLUSION

For the reasons stated above, defendants' motion to should be granted dismissing all causes of action.

Dated:       New York, New York
             April 10, 2008

                                    Respectfully Submitted,
                                         \Ken Sussmane
                                    Kenneth Sussmane (KS 9301)
                                    McCue Sussmane & Zapfel, P.C.
                                    Attorneys for Defendants
                                    521 Fifth Avenue , 28th Floor
                                    New York, New York 10175
                                    212 931-5500

10