UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------- X  Case No. 08 cv 00453 (CM)

SCANTEK MEDICAL INC.,                        :
                                             :
          Plaintiff,                         :  AFFIRMATION OF
                                             :  KENNETH SUSSMANE IN FURTHER
          vs.                                :  SUPPORT OF MOTION TO DISMISS
                                             :
ANGELA CHEN SABELLA and ACCORDANT            :
HOLDINGS, LLC,                               :
                                             :
          Defendants.                        :
----------------------------------------------------------- X

STATE OF NEW YORK       )
                        )ss.
COUNTY OF NEW YORK      )

I, Kenneth Sussmane, being duly sworn, do depose and say, that:

1.    I am the attorney for defendants in this action.

2.    I submit this affirmation in further support of defendants' motion to dismiss all of plaintiff's claims in this action.

3.    Attached hereto as Exhibit G is the decision of the Court and Motion for Summary Judgment in Lieu of Compliant in the action titled Angela Chen Sabella v Graphco Technologies, Inc. (the "Graphco Litigation").

4.    Attached hereto as Exhibit H is the correspondence to and from Mintz & Fraade P.C. related to the Graphco Litigation.

5.    Attached hereto as Exhibit I are pages from the Private Placement Memorandum of Graphco dated April 10, 2002.

6.    Attached hereto as Exhibit J is a copy of the Minutes of a Meeting of the Board of Directors of Scantek Medical, Inc. ("Scantek" or "Plaintiff") dated June 30, 2005 which were produced by plaintiff in this action. Such resolutions approved issuance of shares of common stock as consideration for promissory notes issued by plaintiffs, as follows:

a.    32,738 shares to Plaintiff's Vice President and Director Patricia Furness as additional consideration for loans (which will be repaid pursuant to the terms of such loans) of an aggregate of $130,952 made to plaintiff from January 31, 2003 through March 31, 2004 pursuant to the terms of officer and director loans approved by plaintiff's board of directors on May 14, 1999 "which provide for interest at the rate of ten (10%) percent per annum and for the issuance of two thousand five hundred (2,500) shares of Common Stock for each ten thousand ($10,000) dollars of the loan (*Ex. J, p. 2);*.

b.    2,500,000 shares to Trinity Financial Investments Corporation "as consideration for " a $250,000 loan dated April 14, 2005 (*Ex. J, pp. 4,5);*

c.    250,000 shares to Doug Bowen pursuant to an April 8, 2003 promissory note in the amount of $6,250  (*Ex. J, p. 7)* and Subscription Agreement (*Ex. K*);

d.    500,000 shares to Ed Rotter pursuant to an April 3, 2003 promissory note in the amount of $12,500 (*Ex. J, p. 6; and Ex. L);*

e.    1,960,000 shares to eight members of the Gold family pursuant to loans dated March 7, 2005 totaling $280,000 (*Ex. J, p. 8);*

f.    175,000 shares Robin Smith as consideration for a $25,000 loan dated June 10, 2005 (*Ex. J, p. 8);*

g.    175,000 shares Raymond Markman as consideration for a $25,000 loan dated June 17, 2005 (*Ex. J, p. 8);* and

h.    175,000 shares to the Rubin Family Irrevocable Stock Trust as consideration for a $25,000 loan dated June 21, 2005 (*Ex. J, pp. 8,9)*

7.    Attached hereto as Exhibit K are documents related to the investment by Douglas Bowen of $6,250 in plaintiff.

8.    Attached hereto as Exhibit L is a letter agreement related to the investment by Ed Rotter of $12,500 in plaintiff.

9.    Attached hereto as Exhibit M is plaintiff's Form 8-K filed on July 30, 2004, disclosing plaintiff's agreement on June 15, 2004 to issue 2% of the common stock of plaintiff as consideration for the agreement to loan of $500,000 to plaintiff by the Rubin Family Irrevocable Stock Trust.

10.    Attached hereto as Exhibit N are Form 3 and Form 13D filed by the Mintz Firm on behalf of defendants relating to their investment in plaintiff.

11.     I was informed by counsel for plaintiff that in 2000, plaintiff borrowed $10,000 from Carriage House Capital LLC and agreed to issue 5,000 shares of common stock for every week commencing November 20, 2000 in which plaintiff remained in default (500 shares per $1,000 loaned).

12.     I have personal knowledge that Mintz & Fraade, P.C. acted as attorneys for Mark Stepniewski for many years prior to April 2001 and continued to represent him after April 2001.

New York, New York
April 10, 2008

/s/ Ken Sussmane
_____

Kenneth Sussmane (KS 9301)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X  Case No. 08 cv 00453 (CM)
SCANTEK MEDICAL INC.,                                        :
                                                            :
            Plaintiff,                                       :
                                                            :
        vs.                                                  :
                                                            :
ANGELA CHEN SABELLA and ACCORDANT                           :
HOLDINGS, LLC,                                               :
                                                            :
            Defendants.                                      :
------------------------------------------------------------- X


DEFENDANTS' EXHIBITS
IN SUPPORT OF MOTION TO DISMISS
EXHIBITS G - N

Exhibit G        Decision and Motion in *Sabella v. Graphco*

Exhibit H        Mintz Firm Correspondence re *Sabella v. Graphco*

Exhibit I         Graphco Private Placement Memorandum

Exhibit J         Minutes of Plaintiff's Board of Directors Meeting

Exhibit K        Investment Documents of Doug Bowen

Exhibit L        Investment Document of Ed Rotter

Exhibit M        Plaintiff's Form 8-K

Exhibit N        Defendants' Form 3 and Form 14 D with respect to Plaintiff

# EXHIBIT G

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: **IRA GAMMERMAN**                                          PART 34
_____
_Justice_

Angela Sciolla                          INDEX NO.         107784/02

- v -                                    MOTION DATE       5/21/02

                                         MOTION SEQ. NO.   (X)
Craftech Tech                            MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                                  | PAPERS NUMBERED |
|------------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... |                 |
| Answering Affidavits — Exhibits _____  |                 |
| Replying Affidavits _____ |                 |

## Cross-Motion:    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion is granted. See record.

It is so ordered. R. fair.

Enter

F I L E D

MAY 24 2002

NEW YORK
COUNTY CLERK'S OFFICE

Dated: _____ 5/21/02 _____

Check one:    ☑ FINAL DISPOSITION        ☐ NON-FINAL DISPOSITION

**IRA GAMMERMAN**    _J.S.C._

MOTION/CASE IS RESPECTFULLY REFERRED TO
JUSTICE _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------X

ANGELA CHEN SABELLA ,                        :

                                             ·     Index No.: 02 / 0 7 5 3 2

                    Plaintiff,               :

        - against -                          :      **SUMMONS**

GRAPHCO TECHNOLOGIES, INC.,                  :

                    Defendant.               :

-------------------------------------------------------------X

TO:     GRAPHCO TECHNOLOGIES, INC.
        41 University Drive, Suite 205
        Newton, Pennsylvania 18940

        YOU ARE HEREBY SUMMONED, to submit answering papers to the
accompanying motion for summary judgment in this action, and to serve a copy of such papers on
the undersigned attorneys for Plaintiff in accordance with the accompanying Notice of Motion. In
case of your failure to appear and respond to the attached motion for summary judgment, judgment
will be taken against you by default for the relief demanded therein, on the return date thereof.

        New York County is designated as the venue, as the defendant, by written agreement,
has consented thereto.

Dated: New York, New York              COLENBOCK, EISEMAN, ASSOR,
       April 12, 2002                  BELL & PESKOE

                                       By: _____
                                           Martin S. Hyman

                                       437 Madison Avenue, 35th Floor
                                       New York, New York 10022
                                       (212) 907-7300

                                       Attorneys for plaintiff Angela Chen Sabella

208014.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
ANGELA CHEN SABELLA .                           :

                    Plaintiff.                  :       Index No.: 02/07532

              - against -                       :       NOTICE OF MOTION FOR
                                                        SUMMARY JUDGMENT IN
GRAPHCO TECHNOLOGIES. INC.,                     :       LIEU OF COMPLAINT;
                                                        AFFIDAVIT OF
                    Defendant.                  :       ANGELA CHEN SABELLA
------------------------------------------------------------------X


              PLEASE TAKE NOTICE that, upon the accompanying affidavit of plaintiff Angela

Chen Sabelia, sworn to on March 31, 2002, and the promissory note annexed thereto ("Note"),

plaintiff, in lieu of filing a Complaint in this action, will move this Court, at the Motion Support

Office, Supreme Courthouse. 60 Centre Street, New York, New York 10007, at 9:30 a.m. on the 8th

day of May, 2002, or as soon thereafter as counsel may be heard, for an order, pursuant to

CPLR 3213, granting plaintiff summary judgment against defendant Graphco Technologies, Inc., and

awarding plaintiff the sum of $1,292,990,000, plus interest thereon at the rate of 11% from October

30, 2001, plus all costs and fees, including attorneys' fees. that plaintiff has incurred in connection

with the enforcement of and collection upon the Note, and such other and further relief as the Court

may deem just and proper.

*206005.1*

PLEASE TAKE FURTHER NOTICE that, pursuant to CPLR 3213 and 2214(b),

answering papers, if any, shall be served upon the undersigned counsel for plaintiff, no later than ten

(10) days prior to the return date of this motion.

Dated: New York, New York
  April 12, 2002

      GOLENBOCK, FISEMAN, ASSOR,
      BELL & PESKOE

      By: _____

        Martin S. Hyman
        Sydney R. Smith

      437 Madison Avenue, 35th Floor
      New York, New York 10022
      (212) 907-7300

      Attorneys for plaintiff Angela Chen Sabella

TO: Graphco Technologies, Inc.
   41 University Drive, Suite 205
   Newton, Pennsylvania 18940

208005.1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------x
ANGELA CHEN SABELLA,                          :

                                              Index No.:

                    Plaintiff,                :

              - against -                      :   **AFFIDAVIT OF**
                                                   **ANGELA CHEN SABELLA**
GRAPHCO TECHNOLOGIES, INC.,                   :

                    Defendant.                 ·
--------------------------------------------------------------x

STATE OF CALIFORNIA   )
                      ) ss.:
COUNTY OF *LOS ANGELES*)

              ANGELA CHEN SABELLA, being duly sworn, deposes and says:

       1.     I am the plaintiff in this action and submit this affidavit in support of my

motion for summary judgment in lieu of complaint against defendant Graphco Technologies, Inc.

("Graphco"), seeking to recover the principal amount of $1,292,990.00, plus interest thereon at the

rate of 11% from October 30, 2001 due under a certain Promissory Note, dated October 30, 2001,

executed by Graphco, in addition to the costs and attorneys' fees that I have has incurred in

connection with this matter.

       2.     Upon information and belief, Graphco is a New Jersey corporation with a

place of business located at 41 University Drive, Suite 205, Newton, Pennsylvania 18940.

       3      On or about October 30, 2001, Graphco executed a promissory note in my

favor in the principal amount of $1,292,990.00 (the "Note"). A true and accurate copy of the Note is

annexed hereto as Exhibit A, and its terms are incorporated herein by reference.

4.      The terms of the Note required payment of the principal amount of

$1,292,990.00, plus interest from the date of execution of the Note at a rate of 11% per annum.

5.      By its terms, the Note required Graphco to pay these sums by March 1, 2002.

Graphco failed to make payment on the Note by March 1, 2002, despite due demand therefor.

6.      The terms of the Note, as set forth in paragraph 12 thereof, require Graphco to

reimburse me for all costs of enforcement of the Note and/or collection, compromise, or enforcement

of the indebtedness established thereby, including but not limited to, attorneys' fees incurred by me

in connection with the exercise of any rights and remedies under the Note.

7.      Demands have been made upon Graphco for payment in full of all principal

and interest due under the Note.  Graphco did not respond to those demands.

8.      Graphco has not paid any amount due under the Note.

9.      As a result of Graphco's default on the Note, I have been injured and caused

damage in the amount of $1,292,990.00, plus interest thereon at the designated rate of 11% from

October 20, 2001, plus costs and fees, including attorneys' fees, that I have incurred in connection

with the enforcement of Graphco's obligations under the Note.  Graphco is now liable to me in the

full amount thereof.

10.     For these reasons, I respectfully request that summary judgment be granted in

my favor against defendant Graphco Technologies, Inc. and that judgment be issued for the principal

2

amount the Note, $1,292,900.00, plus interest thereon at the designated rate of 11% from October 30, 2001, plus costs and fees, including attorneys' fees, that I have incurred in connection with the enforcement of Graphco's obligations under the Note, and any other or further relief that the Court may deem appropriate.

ANGELA CHEN SABELLA

Sworn to before me this 31ST day of March, 2002

Notary Public

KITTY L. LEW
Comm. #1323792
NOTARY PUBLIC - CALIFORNIA
Los Angeles County
My Comm. Expires Oct. 5, 2005

3

Exhibit A

THIS NOTE AND THE COMMON STOCK ISSUABLE UPON CONVERSION OF THIS
PROMISSORY NOTE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT
OF 1933 (THE "ACT") AND MAY NOT BE SOLD, PLEDGED, HYPOTHECATED, OR
OTHERWISE TRANSFERRED, DISPOSED OF OR OFFERED FOR SALE, IN WHOLE
OR IN PART, IN THE ABSENCE OF AN EFFECTIVE REGISTRATION STATEMENT
UNDER THAT ACT COVERING THIS PROMISSORY NOTE AND/OR THE COMMON
STOCK ISSUABLE UPON CONVERSION THEREOF, OR AN OPINION OF COUNSEL
SATISFACTORY TO THE CORPORATION AND ITS COUNSEL THAT AN EXEMPTION
FROM REGISTRATION IS AVAILABLE.

## CONVERTIBLE PROMISSORY NOTE

$ 1,292,990

October 30, 2001

FOR VALUE RECEIVED, Graphco Technologies, Inc., a New Jersey Corporation with an
address at 41 University Drive, Suite 205, Newton, PA 18940 (hereinafter referred to as the "Payor"),
agrees to pay to the order of Angela Chen Sabella, with an address at 853 East Valley Boulevard,
Suite 200, San Gabriel, CA 91776 (hereinafter referred to as the "Payee"), on the Maturity Date set
forth in Paragraph "(A)" of Article "2" of this Convertible Promissory Note (the "Note"), unless
earlier converted in accordance with the terms of this Note, the principal sum of One Million, Two
Hundred Thousand, Ninety Two Thousand, Nine Hundred and Ninety (US$1,292,990) Dollars, with
interest on the aforesaid amount as calculated in Article "1" below.

1. Interest

(A)    Interest on the unpaid principal balance shall be calculated from the date of this Note
to and including the date of repayment at an interest rate equal to eleven (11%) percent per annum.

(B)    Payment of the accrued and unpaid interest shall be due and payable upon payment of
the principal balance of this Note pursuant to Paragraph "(A)" of Article "2" of this Note.

2. Method of Payment

(A)    Payment of the principal balance of this Note, together with any unpaid and accrued
interest thereon, shall be due and received in full no later than March 1, 2002 by 1:00pm Pacific
Standard Time (the "Maturity Date").

(B)    Repayment of this Note by the Payor shall be made by wire transfer to the Payee as
set below or at such other place as may be designated pursuant to Paragraph "(C)" of Article "14" of
this Note: Cathay Bank, 777 North Broadway, Los Angeles, CA 90012; Attention: Ms. Rose Chow,
ABA#122203950, AC#02151928, Account name: Angela Chen Sabella.

\\Graphco_dec\users\graphco\Private\Mark Miller\My Documents at Server\Loan Documents\Chen 500k oct 2001\Chen.note 1,292,990.doc

Apr 19 02 04:25p
Case 1:08-cv-00453-CM-HBP Document 38-2 es Filed 04/11/2008 Page 13 of 19
                                                                          21549793320          p.10
        KRK FUNG LUPPENT        Fax-020-260-2003                   .       1   02    12-00        . . . .

(C)     If this Note is paid in full or converted (pursuant to Article "3" of this Note) on or prior to the Maturity Date, the principal balance of this Note shall be reduced by the sum of Eighteen Thousand and Eighty Two (US$18,082) Dollars.

3.     Conversion

(A)     The Payee shall have the right, at her option, by notifying the Payor in writing, pursuant to Paragraph "(B)" of Article "14" of this Note, at any time prior to the Maturity Date, to convert the Principal amount of this Note into shares of the Payor's Common Stock, without par value (the "Common Shares" or "Shares") at a conversion price of One Dollar and Fifty Cents (US$1.50) per share, upon surrender of this Note at the office of the Payor, accompanied by a written instrument of conversion which shall be in the form of the instrument annexed hereto and made a part hereof as Exhibit "A," and which shall be duly executed by the Payee or her assigns.

(B)     As promptly as practicable after any conversion, as herein provided, of this Note by the Payee, the Payor shall:

(i)     Deliver or cause to be delivered to, or upon the written order of, the Payee, certificates representing the number of fully paid and nonassessable Shares into which this Note is converted in accordance with the provisions of this Note and;

(ii)    Deliver to the holder of the shares of Common Stock which were converted, pursuant to this Article "3" of this Note, the whole number of shares rounded up or down to the nearest whole number determined by rounding to the next greater whole number if the fractional Share is 0.5 or greater and the next lower whole number if the fractional share is less than 0.5.

Subject to the following provisions of this Article "3" of this Note, such conversion shall be deemed to have been made at the close of business upon the date when this Note has been surrendered for conversion, so that the rights of the Payee of this Note with respect to the Principal amount of this Note so converted shall cease at such time and the person or persons entitled to receive the Shares upon conversion of this Note shall be treated, for all purposes, as having become the record holder or holders of such Shares at the time of such surrender for conversion; provided, however, that such surrender on any date when the stock transfer books of the Payor are closed shall be effective to constitute the person or persons entitled to receive such Shares as the record holder or holders thereof for all purposes at the close of business on the next succeeding day on which such stock transfer books are open. If, for example, this Note is surrendered for conversion at a time when the stock transfer books of the Payor are closed, and a stock dividend is declared or a record date is set for a shareholder vote during such period when the stock transfer books of the Payor are closed, such conversion shall not take effect until the date upon which the stock transfer books are opened, and the holder of this Note shall not be entitled to receive such stock dividend or to cast such vote.

\\Graphco_c0010\ (graphco)\Private\Mark Miller\My Documents at Survey\Loan Document\Chen 500k oct 2001\Chen.note 1,292,990.doc

(C)   If the last day for the exercise of the conversion right is a Saturday, Sunday, or Holiday, such conversion right may be exercised until the next succeeding day which is not a Saturday, Sunday, or Holiday. The term "Holidays" shall include New Year's Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Thanksgiving Day, the day after Thanksgiving Day, Christmas Day, and any other weekday upon which banks are closed in the State of New York.

(D)   The Payee shall not be required to pay any costs or expenses in connection with the issuance of certificates for Shares upon conversion of this Note. Such certificates shall be issued in the name or names (not to exceed five names) directed by the Payee.

4.   Registration

(A)   If the Payor shall at any time seek to register or qualify any of its capital stock or the securities holdings of any of its controlling shareholders, on each such occasion it shall furnish the holders of this Note with at least thirty (30) days' prior written notice thereof and the holders of this Note shall have the option, without cost or expense, to include all of their Common Shares issuable upon conversion in such registration or qualification. The holders of the Common Shares shall exercise the "piggy back rights" pursuant to this Article "4" by giving written notice to the Payor within twenty (20) days after receipt of the written notice from the Payor.

(B)   All expenses in connection with preparing and filing any registration statement pursuant to this Article "4" hereof (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor; provided, however, that the Payee shall pay any and all underwriting commissions and expenses and the fees and expenses of any legal counsel selected by the Payee to represent her with respect to the sale of the Common Shares.

(C)   If the Company makes a public offering of its Common Stock pursuant to the Act, the Holder agrees to execute and deliver a "lock-up" agreement as requested by the underwriter or underwriters for such offering, having the same duration as the comparable agreements for officers, directors and 5% stockholders of the Company.

5.   Events of Default

The term "Event of Default" as used herein shall mean the occurrence of any one or more of these following events:

(A)   The default in the performance of any material covenant on the part of the Payor to be performed pursuant to the terms hereof (other than for the payment of principal or interest) and such failure continues for ten (10) days after Payee notifies Payor thereof in writing, pursuant to Paragraph "(C)" of Article "14" of this Note;

Case 4:08-cv-00453-CM-HBP    Document 38-2    Filed 04/11/2008    Page 15 of 19
G-aphco Technologies
2154979320
p.12
KHA FUNG CUMPHNY
Fax.626-280-2699

(B)    The admission in writing by the Payor of its inability to pay its debts as they mature;

(C)    The filing by the Payor of a petition in bankruptcy;

(D)    The making of an assignment by the Payor for the benefit of its creditors;

(E)    Consent by the Payor to the appointment of, or possession by, a custodian for itself or for all or substantially all of its property;

(F)    The filing of a petition in bankruptcy against the Payor with the consent of the Payor;

(G)    The filing of a petition in bankruptcy against the Payor without the consent of the Payor, and the failure to have such petition dismissed within sixty (60) days from the date upon which such petition is filed;

(H)    Notwithstanding the sixty (60) day provision in Paragraph "(G)" of this Article "5" of this Note, on a petition in bankruptcy filed against Payor, Payor is adjudicated a bankrupt; and

(I)    The entry by a court of competent jurisdiction of a final non-appealable order, judgment or decree appointing, without the consent of the Payor, of a receiver, trustee or custodian for the Payor or of all or substantially all of the respective property or assets of Payor.

6.    Replacement Note

This Note replaces and supercedes the Convertible Promissory Notes dated February 12, 2001 and April 6, 2001 in the principal amounts of $200,000 and $500,000, respectively, executed by Graphco Technologies, Inc. as the Borrower and Angella Sabella Chen as the Lender.

7.    Remedies Upon Default

Upon the occurrence of an Event of Default (as defined in Article "5" of this Note), and any time thereafter while such Event of Default is continuing, the entire unpaid principal balance which is due pursuant to this Note shall, at the Payee's option, be accelerated and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Payor.

8.    Non-Exclusive Remedy



Any remedy that is set forth in this Note is not exclusive of any remedies that are provided by law.

### 9.    Liability Upon Default

The liability of the Payor upon default shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Payee including, but not limited to, any extension of time, renewal, waiver or other modification.

### 10.    Exercise of Remedy Upon Default

No failure on the part of the Payee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

### 11.    Validity of Provisions

Any provision of this Note that may prove to be unenforceable under any law shall not affect the validity of any other provision of this Note.

### 12.    Collection Costs

Payor agrees to pay all reasonable costs of collection, including attorney's fees and costs, which may be paid or incurred by Payee in connection with Payee's exercise of its rights or remedies under this Note.

### 13.    Full Recourse

Anything in this Note to the contrary notwithstanding, the Payor hereunder shall be liable on this Note for the full amount of the principal and interest due pursuant to this Note.

### 14.    Prepayment

If the Payor intends to pay the full principal amount plus any interest of this Note prior to the Maturity Date, the Payor shall give the Payee at least ten (10) days prior notice and subsequent to any such notice and prior to re-payment, the Payee shall have the right to convert the Principal amount of this Note into shares of Common Stock pursuant to Paragraph "A" of this Article "3" of this Note at a conversion price of One Dollar and Fifty Cents (US$1.50).

### 15.    Miscellaneous

(A)    Modification    This Note may not be changed, modified, extended, terminated or

\\Graphco_dc01\h (graphco)\PrivateMark Miller\My Documents at Server\Loan Documents\Chen 500k oct 2001\Chen note .,292,990.doc

discharged orally, but only by an agreement in writing, which is signed by the Payor and the Payee of this Note.

(B) Further Actions The Payor agrees to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Note and the intents and purposes hereof.

(C) Notices All notices or other communications required or permitted hereunder shall be in writing and shall be mailed by First Class, Registered or Certified Mail (Return Receipt Requested), postage prepaid, as follows:

To the Payor:      Graphco Technologies, Inc.
                   41 University Drive
                   Newton, Pennsylvania 18940
                   Attn: Markl L. Miller,
                        Chief Financial Officer

Copy to:           Mintz & Fraade, P.C.
                   488 Madison Avenue
                   New York, New York 10022
                   Attn.: Frederick M. Mintz, Esq.

To the Payee:      Angela Chen Sabella
                   853 East Valley Boulevard, Suite 200
                   San Gabriel, CA 91776

Copy to:           _____
                   _____
                   _____

or in each case to such other address as shall have last been furnished by like notice. If mailing by Registered or Certified Mail is impossible due to an absence or delay in the postal service, notice shall be in writing and personally delivered to the appropriate address set forth above. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be.

(D) Governing Law    This Note shall in all respects be construed, governed, applied and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed therein, without giving effect to the principles of conflicts of law. Furthermore, the Payor and Payee hereby agree that any proceeding to enforce the provisions of this Note may be commenced in the Courts of the State of New York having subject matter jurisdiction and hereby consent to and submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, waiver personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of

\\Graphco_dc\Uklgraphco\Private\MarkL Miller\My Documents at Server\Loan Documents\Chen 5001 oct 2001\Chen.note 1,397.990 doc

them by certified mail, return receipt requested to the addresses which are set forth on page one of this Debenture or in each case to such other addresses as shall have last been furnished by the like Notice.

(E)    Assignment. This Note may be assigned or transferred by the Payee without the prior written consent of the Payor.

(F)    Successors and Assigns. This Note shall be binding upon the Payor and its successors and assigns.

(G)    Binding Agreement. This Note shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

IN WITNESS WHEREOF, the Payor has executed this Note as of the 30th day of October, 2001.

Graphco Technologies, Inc..

By

Mark L. Miller,
Chief Financial Officer.

W:\Graphco_de01\h (graphco)\Private\Mark Miller\My Documents\c Serveg\Loan Documents\Chen 500k oct 2001\Chen note, 1,292,990.doc

## Exhibit A

## FORM OF CONVERSION

(To be Delivered by the Payee desiring to convert
the Convertible Promissory Note to Common Stock)

To: Graphco Technologies, Inc.

The undersigned hereby irrevocably elects to surrender this Convertible Promissory Note, issued by Graphco Technologies, Inc. to the Payee, dated October 30, 2001 (the "Convertible Promissory Note"), for, and to purchase thereunder, _____ full shares of Common Stock of the Company, at the conversion price of $1.50 per share, issuable upon conversion of said Convertible promissory note as specified in the Convertible Promissory Note.

The undersigned requests that (a) certificate(s) for such shares be issued in the name[s] of _____.

PAYEE'S SOCIAL SECURITY
OR TAX IDENTIFICATION NUMBER: _____

_____
(Please print name and address)

_____

_____
(Signature)

_____

If said number of Common Stock shall not be all of the Common Stock evidenced by the Convertible Promissory Note, the undersigned requests that a new Convertible Promissory Note evidencing the amount not so converted be issued in the name of and delivered to:

_____
(Please print name and address)

_____

_____
(SIGNATURE)

\\Graphco_dc01\t (graphco)\Private\Marc Miller\My Documents at\Server\Loan Documents\Chen 500k oct 2001\Chen_note 1 292,990.doc

# EXHIBIT H

# GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE
**437 MADISON AVENUE**
**NEW YORK, NY 10022-7302**

(212) 907-7300
FAX (212) 754-0330

April 11, 2002

*MARTIN S. HYMAN*
*Direct Dial No.: 212-907-7360*
*Direct Fax No.: 212-754-0777*
*Email Address: mhyman@golenbock.com*

## VIA FACSIMILE (212-486-0701)

Frederick Mintz, Esq.
Mintz & Fraade
488 Madison Avenue
Suite 1100
New York, New York 10022

Re:     Angela Chen Sabella -- Graphco Technologies, Inc. --
Default On Promissory Note, Dated October 30, 2001

Dear Mr. Mintz:

Angela Chen Sabella is in the process of filing suit against Graphco Technologies, Inc. ("the Company"), on the Promissory Note, for $1,292,990, plus interest, costs and attorneys' fees. Please advise me by return whether you are authorized to accept service of process on behalf of the Company.

Very truly yours,

Martin S. Hyman

MSH/lm

209477.1

# GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE

437 MADISON AVENUE
NEW YORK, NY 10022-7302

(212) 907-7300
FAX (212) 754-0330

June 20, 2002

**MARTIN S. HYMAN**
Direct Dial No. 212-907-7360
Direct Fax No. 212-754-0777
Email Address mhyman@golenbock.com

## VIA FACSIMILE (212-486-0701)

Alan Fraade, Esq.
Mintz & Fraade
488 Madison Avenue
Suite 1100
New York, New York 10022

        Re:    Angela Chen Sabella -- Graphco Technologies, Inc.

Dear Mr. Fraade:

        I have reviewed your letter of June 12 and have the following response on behalf
of my client:

        1.    Ms. Sabella will not release her judgment. Nor will she suspend
enforcement proceedings thereon without adequate security. The items enumerated in your letter
would not provide Ms. Sabella with adequate security for a number of reasons. Some of the
assets are either valueless or of speculative value; some appear to be encumbered; several
"promises" are either subjective in nature or subject to contingencies over which Ms. Sabella has
no control; Ms. Sabella does not have sufficient information to assess the accuracy of claims
concerning, or the real value of, proffered assets; escrow arrangements that do not involve
independent escrow agents will not be acceptable; etc. Offers to secure promises or other
representations with confessions of judgment are meaningless, given the history of this matter
and the fact that Ms. Sabella already possesses a judgment for a sum certain and for attorneys'

214333.1

GOLENBOCK, EISEMAN, ASSOR, BELL & PESKOE

Alan Fraade, Esq.
Page 2

fees. She has no need or desire to file new lawsuits or commence a new round of enforcement proceedings.

2. Graphco's attorneys have made representations to the effect that Graphco has signed an agreement in principle to merge with another company and is in the process of obtaining additional financing. The placement memorandum indicated that Graphco intended to use some of the proceeds of that offering to satisfy its obligations to Ms. Sabella. I suggest that Graphco devote its efforts to do just that or, if it wishes to move forward, to arrange for its merger "partner" to satisfy those obligations. At this point, however, a settlement that does not involve a significant cash payment and adequate security will not be acceptable. Any transfer of assets in violation of the judgment lien and/or restraining notice will result in further proceedings, including contempt, if appropriate.

3. In at least one conversation with me, Mr. Kramer mentioned that if Ms. Sabella did not accede to Graphco's proposals, Graphco might file bankruptcy. That, of course, is an option on which you undoubtedly will counsel your client. We will not, however, enter into any arrangement that will spawn further delay, expense or litigation or one that does not involve substantial and immediate monetary payments to Ms. Sabella.

If you have any other thoughts as to how to advance this matter in a way that will provide real and immediate value to Ms. Sabella, I would be happy to discuss them with you.

Very truly yours,

Martin S. Hyman

MSH/lm
cc:    Angela Chen Sabella

214333.1

# MINTZ & FRAADE, P. C.
## COUNSELORS AT LAW
### 488 MADISON AVENUE
### NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2 500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER JR
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

July 17, 2002

VIA FACSIMILIE

Martin S. Hyman, Esq.
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Avenue
New York, New York 10022-7302

Re:   Angela Chen Sabella with
      Graphco Technologies, Inc.

Dear Mr. Hyman:

This is to confirm that we have been advised by our client that NGM TEC is not an affiliate of Graphco Technologies, Inc.

We advised you at our meeting that we do not know the identity of the prospective "partner". In view of the fact that the entity in question is in the process of making certain SEC filings to clean up its capitalization, we will not have definitive discussions with the subject entity until the end of this week. The absence of the $1,000,000 "matching of funds" was an error by the other attorney and we have sent them a re-draft containing this provision. The attorney received our re-draft last Wednesday, July 10, 2002, and we are expecting comments shortly in response to our re-draft.

The parties contemplate executing the agreement shortly. There was a conference call on Monday with one of the principals of the investment banker that has structured the transaction. Mark Miller of Graphco Technologies, Inc. and Mark Step participated with me on the call. The investment banker confirmed that his firm will be contributing the $1,000,000 to the transaction from their own capital. It is not necessary for them to raise money from third parties. In addition, Graphco Technologies, Inc., has advised us they have a number of strong indications of interest from investors who are prepared to fund the Company after the transaction closes.

Mark Step, who was advised on Monday of who the investment banker was who was doing the transaction, has participated with them in fund raising recently, in which they raised a portion of the monies. He is confident of their ability to do this transaction.

The investment banker had indicated a concern with respect to Angela receiving 25% of the proceeds from capital raising activities. We had suggested a combination with Angela receiving one half of the DPI Funds, including $75,000 from the payment of $150,000, which is expected in the next few weeks. In addition, Angela would get 10% of future capital raised. This would provide her with $200,000 from the initial $2,000,000.

I did not get back to you with respect to the assignment provision that you had previously sent us, in view of the fact that you had indicated in your letter that any discussion would be "premature at this time". I believe that we could accomplish the above result utilizing a document substantially similar to your proposal.

Your partner, Larry Bell, tried calling me last week on Thursday and Friday and each day I returned his calls and left a message for him. I have not heard back from him. Please let me know the purpose of his call. If you would like to see a current version of the draft of the Merger Agreement, I can send it to you, but I would prefer to wait until the next draft, which hopefully will be close to a final version.

Thank you for your continued cooperation with respect to the resolution of this matter.

Very truly yours,

*Alan P. Fraade*

Alan P. Fraade

APF:eg

cc:    Graphco Technologies, Inc.

4860701    T-859    P.002    F-590
COPY FOR APP

# MINTZ & FRAADE, P. C.

### COUNSELORS AT LAW
### 488 MADISON AVENUE
### NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER, JR
MELVIN L LEBOW
JON M. PROBSTEIN
MARTIN L LERNER

Via Facsimile                                    July 18, 2002

Martin S. Hyman, Esq.
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Avenue
New York, New York 10022

Re: Graphco Technologies, Inc.

Dear Mr. Hyman:

As you are aware, Graphco Technologies, Inc. is close to completing a merger into a public company. Based upon discussions between our respective clients and taking into consideration concerns raised by the investment banker with respect to the extension of the Convertible Promissory Note, dated October 30, 2001, in favor of Angela Chen Sabella in the principal amount of $1,292,990 (the "Note"). In consideration for your client's agreement to extend the due date of the Note until January 15, 2003, our client and, we believe the investment banker, will agree to the following:

1.    Grant your client a first lien upon Graphco's VoicePass® technology, and provide your client with the name, address, and telephone number of the developer of such technology. The VoicePass® source code will be held in escrow by a mutually agreed escrow agent;

2.    Make payments to your client based upon future payments which Graphco receives in connection with the sale of Digital Personnel™, Graphco would pay fifty percent (50%) of each payment received by Graphco from the sale of Digital Personnel™ to your client;

3.    For monies raised by Graphco in future financings, Graphco will pay to your client ten percent (10%) of what is raised;

N:\Clients\Graphco\sabellaattyfB doc          Page 1

4.    Graphco agrees not pay any accrued, unpaid wages due to management as of the date of the settlement until fifty percent (50%) of the Note has been repaid;

5.    Cristian Ivanescu agrees to provide two million five hundred thousand (2,500,000) shares of Graphco common stock as collateral for the repayment of the Note which shares shall be held in escrow by a mutually agreed upon escrow agent;

6.    Your client, and her agents specifically, her accountant, her assistant Kitty and Mark Step shall have the right to examine Graphco's books and records, and your client shall have the right to speak to Graphco's customers, subject to the execution of a confidentiality agreement by your client and any of her agents and/ or representatives acting on her behalf;

7.    Graphco will provide your client with a Confession of Judgment in the State of New York if the Note has not been repaid upon the extended maturity date;

8.    Graphco agrees to pay your client for any future legal fees if Graphco fails to repay the Note by the extended maturity date or otherwise comply with the terms set forth herein.

The foregoing terms shall be subject to the parties entering into a definitive agreement containing the foregoing terms. Graphco contemplates closing the transaction with the investment banker shortly, thus if the foregoing terms are agreeable to your client in principle please respond to us tomorrow by 3 P.M. and forward to us a signed copy of this letter. If the terms set forth herein are not satisfactory to your client, please contact the undersigned at your earliest convenience to discuss the matter.

Very truly yours,

Mintz & Fraade, P.C.

By: _Alan P. Fraade_

Alan P. Fraade

Agreed to in principle
on behalf of Angela Chen Sabella

_____

cc: Graphco Technologies, Inc.

MINTZ & FRAADE, P. C.

COUNSELORS AT LAW

488 MADISON AVENUE

NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PONTEL, JR
MELVIN L. LEBOW
JON M. PROUSTEIN
MARTIN L. LERNER

July 29, 2002

VIA FACSIMILE

Lawrence M. Bell, Esq.
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Avenue
New York, NY 10022

Re: Graphco Technologies, Inc. with Angela Chen Sabella

Dear Larry:

Following up our telephone conversation on Friday, the following are responses
of our client, Graphco Technologies, Inc. to the Terms of Forbearance dated 7/22/02
which you sent to us. The responses refer to the paragraphs in the Terms of Forbearance.

1)   Paragraphs (a), (c) and (d) are not acceptable. Our client will agree that if
     someone obtains a judgment in excess of $100,000, there will be a default.

2)   We need to determine whether we can agree upon an escrow agent or whether
     Angela will accept our firm as escrow agent.

3)   Although the concept is agreeable, the payment should not be made directly to
     you, but should be made either to Mintz & Fraade, P.C. or an independent
     escrow agent. In addition, the dates and amounts in this paragraph should be
     reduced and extended, such as $200,000 by September 15, 2002 and $400,000
     by December 31, 2002. Our client is not agreeable for the shares of NGM to
     be held in escrow on behalf of Angela or that any elections will be exercisable
     by Angela.

4)   The client is willing to pay Angela ten percent (10%) of the monies raised.

5)   Christian's stock should be held by an independent escrow agent which
     should be the same as pursuant to paragraph 2.

6)   Acceptable.

7)   Acceptable.

N:\M&F\ADMIN2\Graphco Technologies, Inc\Lawrence Bell.doc

LNTZ & FRAADE, P. C.

8)    Acceptable, provided that in paragraph (a) we propose August 15, 2002. In addition, in Paragraph (b), we suggest that September 6, 2002 be inserted and you should provide a maximum legal fee for your firm's fees and expenses.

We are continuing to move forward with the merger with the shell and are attempting to arrange for a closing within the week which will be subject to us finalizing the transaction with Angela and arranging for an extension of the Wilson loan until January 31, 2003.

Please call me after you have had an opportunity to review the foregoing with your client in order to determine if we are ready to draft the necessary documents to reflect the understanding of the parties.

<div style="margin-left:50%">

Very truly yours,

Mintz & Fraade, P.C.

By: _Alan P. Fraade_

Alan P. Fraade

</div>

cc:  Graphco Technologies, Inc

APF: da

MINTZ & FRAADE, P. C.

COUNSELORS AT LAW

488 MADISON AVENUE

NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER, JR.
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

SENIOR COUNSEL
FRANK J. GLIVNEY

October 3, 2002

Via Hand Delivery

Lawrence Bell, Esq.
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Avenue
New York, NY 10022

Re: Graphco Technologies, Inc.
(the "Company")

Dear Larry:

Reference is made to our correspondence to you dated August 14, 2002 with respect to Angela Chen Sabella's extension of the Convertible Promissory Note, dated October 30, 2001, which was executed by the Company as Payor in Ms. Sabella's favor in the principal amount of $1,292,990 (the "Note"). Although you have not responded to such correspondence and in our follow-up telephone calls you advised me that you had not spoken to your client, from discussions with Mr. Mark Step, it is our understanding that Ms. Sabella is ready to proceed with her agreement to forbear from levying upon the assets of the Company and extend the Note. Accordingly, we are in the process of drafting the requisite documents with respect to such forbearance.

To bring you up to date with respect to the status of the Company, we are attaching a Letter of Intent with respect to the Company's intention of entering into a merger agreement with Greenhold Group, Inc. (the "Merger Agreement"). In addition, I am attaching a draft of the Merger Agreement, which we have prepared and are awaiting comments from our client with respect to same prior to forwarding to counsel to Greenhold Group, Inc. The Company is also in the process of obtaining the consent of the California Institute of Technology "Caltech") to assign the License to NGM TEC, Inc. with respect to the License Agreement dated December 15, 1999 between Caltech and Digital Personnel, Inc. In that regard, I am attaching a copy of a letter dated August 26, 2002 from Cristian Ivanescu to a Licensing Associate at Caltech. We have been advised that NGM Tech, Inc. is withholding its payments to the Company pending receipt of such consent which we have been advised is expected imminently.

In addition, the Company is in the process of following up with respect to the security interest in the Company's Voicepass® technology which was improperly filed by Edward T. Wilson and the Edward T. Wilson Trust.

MINTZ & FRAADE, P.C.

We will be sending to you copies of draft documents with respect to Ms. Sabella's agreement with the Company for your review.

If you have any questions, please contact the undersigned

Very truly yours,

Mintz & Fraade, P.C.

By: _____
    Alan P. Fraade

APF:sew

Cc: Graphco Technologies, Inc.
Mr. Mark Step

<div align="center">

### MINTZ & FRAADE, P. C.

COUNSELORS AT LAW
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

</div>

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER, JR.
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

SENIOR COUNSEL
FRANK J. GLINSKY

December 5, 2002

Via Hand Delivery

Lawrence Bell, Esq.
Golenbock, Eiseman, Assor, Bell & Peskoe
437 Madison Avenue
New York, NY 10022

Re: Graphco Technologies, Inc.
(the "Company")

Dear Larry:

Reference is made to our correspondence to you dated October 3, 2002 with respect to Angela Chen Sabella's extension of the Convertible Promissory Note, dated October 30, 2001, which was executed by the Company as Payor in Ms. Sabella's favor in the principal amount of $1,292,990 (the "Note"). Although you have not responded to such correspondence, it is our understanding that Ms. Sabella is still ready to proceed with her agreement to forbear from levying upon the assets of the Company and extend the Note.

To bring you up to date with respect to the status of the Company, the Company has entered into a definitive agreement with RCM Interests, Inc., a reporting company registered with the Securities and Exchange Commission, whose stock is eligible to be quoted on the OTC Bulletin Board. A copy of the executed Merger Agreement dated November 21, 2002 by and between the Company, RCM Interests, Inc. and RCM Interests Inc. Acquisition Corp. (the "Merger Agreement") is being enclosed herewith on a confidential basis.

The continued inability to confirm Angela's forbearance of enforcing her judgment has caused concerns with respect to the Company's raising funds and closing prior transactions with public shells. Accordingly, we would appreciate your obtaining your clients agreement to the enclosed letter confirming the terms of forbearance.

**MINTZ & FRAADE, P. C.**

If you have any questions, please contact the undersigned.

Very truly yours,

Mintz & Fraade, P.C.

By: *Alan P. Fraade*

Alan P. Fraade

APF:kam

cc: Graphco Technologies, Inc.
Mr. Mark Step

GRAPHCO TECHNOLOGIES, INC.
41 University Drive
Newton, Pennsylvania 18940


December 5, 2002


Ms. Angela Chen Sabella
853 East Valley Boulevard, Suite 200
San Gabriel, CA 91776

<div align="right">Re: Graphco Technologies,
Inc.("Graphco")</div>

Dear Ms. Sabella:


The purpose of this letter is to set forth our understanding with respect to the extension of the Convertible Promissory Note, dated October 30, 2001, which was executed by the Company as Payor in your favor in the principal amount of $1,292,990 (the "Note").

In consideration for your agreement to forbear from levying upon the assets of Graphco until June 30, 2003, Graphco will agree to the following:

1.    The lien of the judgment you have obtained (the "Judgment") may attach, but you will not proceed to further enforce such lien by levying upon the assets of Graphco until June 30, 2003, unless an Event of Default shall occur. For purposes hereof, an Event of Default shall include (a) if NGM TEC, Inc. fails to make any payment due under the certain Agreement dated as of June 7, 2002 (the "DP Agreement") and if (i) Graphco receives $2,000,000 or more from any financing transaction after the date hereof and (ii) Graphco fails to make such payment on behalf of NGM TEC, Inc. within thirty (30) days after the due date thereof, (b) any failure of Graphco to perform the terms set forth in this letter, or (c) a judgment against Graphco is entered in the sum of more than $100,000;

2.    Graphco will grant you a first lien upon Graphco's VoicePass® technology, and provide you with the name, address, and telephone number of the developer of such technology. The VoicePass® source code will be held in escrow by a mutually agreed escrow agent;

3.    Graphco will transfer, assign and grant you a first lien upon all rights of Graphco in and to the DP Agreement, including, but not limited to, all payments in respect to the

sale of Digital Personnel technology. Graphco will direct NGM TEC, Inc. ("NGM") to make payments for the benefit of you to a mutually agreed escrow agent of all payments of the purchase price payable under Paragraph "2" thereof, and all payments of royalties payable under Paragraph "3" thereof, and all proceeds of such Agreement, which shall be allocated as follows:

You shall be entitled to retain, and to apply against the Judgment, fifty percent (50%) of the funds received from NGM; provided that, if by the date specified below, you shall not have received, in the aggregate, the amount specified below in respect of payment under the DP Agreement for application to the outstanding amount of the Judgment plus any amounts payable under Section "4" below, then thereafter you shall be entitled to retain, in lieu of fifty percent (50%) as specified above, the percent specified below of each payment under the DP Agreement:

| Additional Amount | Due Date | Percent |
|---|---|---|
| $200,000 | February 28, 2003 | 65 |
| $400,000 | April 30, 2003 | 75 |

4.      For monies raised by Graphco in future financings, Graphco will pay to you twelve and one-half percent (12 ½ %) of what is raised;

5.      Graphco agrees not to pay any accrued, unpaid wages due to management as of the date of the settlement until fifty percent (50%) of the Note has been repaid;

6.      Cristian Ivanescu agrees to provide two million five hundred thousand (2,500,000) shares of Graphco common stock as collateral for the repayment of the Note which shares shall be held in escrow by a mutually agreed upon escrow agent;

7.      You, and your agents specifically, your accountant, your assistant Kitty and your counsel shall have the right to examine Graphco's books and records, and you shall have the right to speak to Graphco's customers, subject to the execution of a confidentiality agreement by you and any of your agents and/ or representatives acting on your behalf;

8.      Graphco agrees to pay you for any future legal fees if Graphco fails to repay the Note by the extended maturity date or otherwise comply with the terms set forth herein.

9.      You are not waiving and have not waived any default of any of your rights with respect to any breach by Graphco except as expressly set forth herein. You are willing to agree to the matters set forth herein for the sole purpose of allowing Graphco an additional opportunity to resolve its financial difficulties and repay the Note without immediate exercise of default rights by you. Nothing contained herein shall be effective and you shall have no obligation to forbear from exercising your rights or remedies unless and until each of the following conditions precedent have been satisfied not later than the respective date set forth below:

(a)     On or before December 31, 2002, Graphco shall have taken all action and executed and delivered (or caused NGM to execute and deliver) to you all documents necessary or appropriate in your sole discretion; and

(b)     On or before December 31, 2002, Graphco shall have paid you a fee to reimburse you for your costs and expenses, including but not limited to, reasonable attorneys' fees and expenses incurred in connection with the review of merger and financing documents and the negotiation and drafting of this Agreement and the transaction contemplated hereby in an amount not to exceed an amount to be agreed upon.

10.     Upon execution of a definitive agreement containing the foregoing terms Graphco will withdraw its appeal pending in the Appellate Division, of the Supreme Court of the State of New York.

The foregoing terms shall be subject to the parties entering into a definitive agreement containing the foregoing terms. If the foregoing terms are agreeable to you in principle please respond to us as soon as possible and forward to us a signed copy of this letter.

Very truly yours,

Graphco Technologies, Inc.

By:_____
                Title

Agreed to in principle:

_____
Angela Chen Sabella

# EXHIBIT I

# PRIVATE PLACEMENT MEMORANDUM

## GRAPHCO TECHNOLOGIES, INC.
## 5,000,000 SHARES OF SERIES B
## CONVERTIBLE PREFERRED STOCK
## $2.00 PER SHARE

This offering consists of 5,000,000 shares of Series B Convertible Preferred Stock (the "Shares") of Graphco Technologies, Inc., a New Jersey Corporation, at a price of $2.00 per Share.   If an investor in this offering ("Investor") exercises his right to convert, the conversion price shall be at a rate of one (1) share of common stock for every Share of Series B Convertible Preferred Stock converted.

There is no public market for our securities. We have arbitrarily determined the subscription price of $2.00 per Share used in this offering.  The maximum amount which shall be raised pursuant to this offering is $10,000,000. There is no minimum number of Shares that must be sold for completion of this offering.  This offering shall terminate after the sale of such number of Shares as we, in our sole and absolute discretion, determine, or with the sale of the maximum of 5,000,000 Shares.

|  | Subscription Price | Selling Commissions (1) | Proceeds(2) |
|---|---|---|---|
| Per Share | $2.00 | $.20 | $1.80 |
| 5,000,000 Shares (Maximum Offering) | $10,000,000 | $1,000,000 | $9,000,000 |

(1) We shall pay a selling commission to registered broker-dealers, "finders", individuals and entities legally authorized to receive such commissions (the "Selling Agents") of ten (10%) percent of the subscription price per Share sold, provided that such payments are permitted under Federal and applicable state securities laws.  As additional compensation, we will sell, at a price of $.01, to those individuals and entities which sell Shares, warrants entitling the holder to purchase an amount of Shares equal to ten (10%) percent of the number of Shares sold by such parties pursuant to this Offering at a price of $3.00 per Share, provided that such warrants are permitted under Federal and applicable state securities laws.

(2) No deduction has been made for the following: (A) legal, printing and other expenses of this offering (B) a non-accountable expense allowance to the Selling Agents of 1% of the subscription price per Share sold, provided that payment of such allowance to the Selling Agents is permitted under Federal and applicable state securities laws, and (C) any proceeds from the exercise of the warrants issued to the Selling Agents.

This offering will terminate on or before September 30, 2002, subject to one or more extensions, in our sole and absolute discretion, with no restriction upon either the number of extensions or upon the length of time for each of such extensions.  This offering may be so extended without amending this Private Placement Memorandum and without notice to prospective and/or existing Investors.  The initial closing will be held on such date when we first accept subscriptions for one or more Shares, as determined by us, in our sole and absolute discretion.

April 10, 2002

Offeree Name:_____ _____

Date:
(cover continued on the next page)

©2002  Mintz & Fraade, P.C.
All Rights Reserved

or enhanced products and services, capabilities, or technologies that have the potential to replace or shorten the life cycles of our existing products and services. There can be no assurance that the announcement of new or enhanced products and services will not cause customers to delay or alter their purchasing decisions in anticipation of such products and services, which could have a material adverse affect on our business, operating results and financial condition.

### There can be no assurance that we will have the ability to pay our debt obligations.

We are currently in default in our debt obligations in the approximate amount of $2.6 million. We are presently seeking to raise money and intend to pay a portion or all of the past due amounts from the proceeds of this Offering depending upon the amount raised. There can be no assurance that we will be successful in raising any amount. In addition, to the extent that we raise money as a result of the bridge financing (as discussed below); there can be no assurance that we will raise sufficient money pursuant to this offering to satisfy such bridge financing debt obligations upon their maturity.

The attorney for a holder of a promissory note in the principal amount of $1,292,990 has advised that he is in the process of filing suit and requested that our counsel accept service of legal process with respect to such default. This would indicate either that a lawsuit has been commenced or will be commenced imminently. Regardless of whether counsel accepts service, it is anticipated that service will be made shortly. If a judgment were obtained and not promptly satisfied, it could materially interfere with our business operations.

### We intend to use a significant portion of the proceeds from this Offering to retire a substantial amount of our outstanding debt.

We intend to use up to $2.6 million of the proceeds from this Offering to pay the debt obligations. To the extent that the offering raises less than the maximum amount of $10,000,000, the percentage of the amount raised by this Offering which will be used for debt retirement, shall increase and the percentage available to us shall decrease. If, for example, we raise the minimum amount of $2,000,000, after payment of legal fees, printing and offering expenses, the amount reserved for debt retirement, which we estimate will be approximately $1.6 million (which will not constitute full payment of our debt obligations), will be approximately 40% of the net proceeds of the Offering. If, however, we raise the maximum amount of $10,000,000, after payment of legal fees, printing and offering expenses, the amount reserved for debt retirement, which we estimate will be approximately $2.6 million, will be approximately 26% of the net proceeds of the Offering.

### A significant portion of the proceeds from this Offering may be required to pay bridge financing.

We are currently conducting a simultaneous offering to raise money through bridge financing. A substantial amount of money raised in this offering may be required to repay such bridge financing. Each Unit being offered in the bridge financing consists of an 8% convertible promissory note (the "Note") in the principal amount of $500,000. The Note will be due one year

## REPORTS TO STOCKHOLDERS

We intend to issue an annual report, including certified financial statements, to our shareholders. We shall provide such other reports as we, in our sole and absolute discretion, may deem necessary or appropriate.

## LITIGATION

We know of no litigation pending, threatened or contemplated, or unsatisfied judgments, against us, or of any proceeding to which we are a party, with the exception of an ongoing litigation with Technical Dynamics, Inc., pending in Bucks County, Pennsylvania which seeks consulting fees of approximately $133,000 plus interest. We deny liability and intend to contest this matter vigorously.

## LEGAL MATTERS

Certain legal matters in connection with this offering which is described in this Private Placement Memorandum shall be passed upon for us by Mintz & Fraade, P.C., 488 Madison Avenue, New York, New York 10022. A third party has agreed to assign warrants to purchase shares of our Common Stock to Mintz & Fraade, P.C. The number of such warrants has not been determined by such third party.

At the initial closing and final closing, counsel shall deliver to us an opinion with respect to the legality of the Shares, which, if there are no changes in either the facts or the law upon which such opinion is based, shall be substantially in the form which is annexed hereto as Exhibit "E".

## ADDITIONAL INFORMATION

All original documentation or copies thereof with respect to this offering as described herein, including the exhibits hereto, shall be available upon request to us, Graphco Technologies, Inc., c/o Mintz & Fraade, P.C., 488 Madison Avenue, Suite 1100, New York, New York 10022. Each prospective Investor and/or his Purchaser Representative, if any, may examine same at any time during normal business hours before the Closing upon reasonable advance notice to us. Such individuals may ask us questions with respect to the terms and conditions of this offering and our proposed activities. We shall provide answers to such questions and provide such information to the extent that it possesses such answers and information or can obtain such information without unreasonable effort or expense. Notwithstanding the foregoing, no person has been authorized to make any representation or give any information with respect to this offering which is inconsistent with the information which is set forth herein, and any information received which is inconsistent with the information which is provided in this Private Placement Memorandum shall not be deemed to be valid and no prospective Investor may rely upon any such inconsistent information. Each prospective Investor and /or his Purchaser Representative should not rely upon us or any of our employees or agents with respect to judgments relating to investment in this company. Prospective Investors should retain their own professional advisors to review and evaluate the economic, tax and other consequences of an investment in us.

# EXHIBIT J

MINUTES OF A MEETING
OF
THE BOARD OF DIRECTORS
OF
SCANTEK MEDICAL, INC.

A meeting of the Board of Directors of Scantek Medical, Inc., a Delaware Corporation (the "Corporation"), was held pursuant to a telephone conference call on the 30th day of June 2005, commencing at 1:00 P.M (the "Meeting") in accordance with Section 141(f) of the General Corporation Law.

The following directors, constituting the entire board, all of whom could hear each other at the same time, participated in the Meeting:

Zsigmond L. Sagi, Ph.D.
Patricia Furness
Paul E. Nelson
Maurice Siegel, Ph.D.

Zsigmond L. Sagi, Ph.D. was elected Chairman of the Meeting, and Patricia Furness was elected Secretary of the Meeting. The Chairman presided and the Secretary recorded.

The Chairman stated that all of the exhibits which are being referred to at this meeting have been submitted to each of the Directors prior to commencement of the Meeting.

The Chairman announced that the Meeting was duly convened and that the Board of Directors was ready to transact such business as may lawfully come before it.

On motion duly made, seconded, and carried, a reading of the minutes of the prior meeting of the Board of Directors was dispensed with.

The Chairman stated that the first purpose of the Meeting was to consider the method of payment with respect to the exercise of certain options in consideration for the reduction of accrued and unpaid wages and outstanding loans to the Corporation with respect to him personally. Zsigmond L. Sagi, Ph.D. and Patricia Furness did not participate in the deliberation and abstained from voting with respect to the following Resolution.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED**, that the Board of Directors hereby authorizes Zsigmond L. Sagi, Ph.D. ("Sagi") to pay for the exercise of options to purchase one hundred six million seven hundred seventy six thousand two hundred sixty seven (106,776,267) shares of Common Stock at an exercise price of one and one half ($.015) cents per share by reducing accrued and unpaid wages due to Sagi by one million six hundred and one thousand six hundred forty four ($1,601,644) dollars.

1

000268

The Chairman stated that the next purpose of the Meeting was to consider the method of payment with respect to the issuance of stock in consideration for the reduction of accrued and unpaid wages and outstanding loans to the Corporation with respect to Patricia Furness ("Furness"). Zsigmond L. Sagi, Ph.D. and Furness did not participate in the deliberation and abstained from voting with respect to the following two Resolutions.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes Furness to pay for the exercise of options to purchase thirty nine million eight hundred twelve thousand two hundred sixty-seven (39,812,267) shares of Common Stock at an exercise price of one and one half ($.015) cents per share by reducing accrued and unpaid wages of Furness by five hundred ninety seven thousand one hundred eighty four ($597,184) dollars if she chooses to exercise all or part of the options before they expire June 23, 2008; and it is further

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of thirty two thousand seven hundred thirty eight (32,738) shares of Common Stock to Furness as additional consideration for loans (which will be repaid pursuant to the terms of such loans) of an aggregate of one hundred thirty thousand nine hundred fifty two ($130,952) dollars made to the Corporation from January 31, 2003 through March 31, 2004 pursuant to the terms for officer and director loans approved at the meeting of the Board of Directors dated May 14, 1999 which provide for interest at a rate of ten (10%) percent per annum and for the issuance of two thousand five hundred (2,500) shares of Common Stock for each ten thousand ($10,000) dollars of the loan.

The Chairman stated that the next purpose of the Meeting was to consider the ratification, approval or amendments of various agreements, which the Corporation has entered into with Mintz & Fraade, P.C.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes the Corporation to enter into the Amendment to the Warrant Certificate dated as of the 24th day of June 2003 issued to Mintz & Fraade, P.C. by Scantek for the purchase of two million (2,000,000) shares of Common Stock by allowing Mintz & Fraade, P.C. to purchase the two million (2,000,000) shares of Common Stock by issuing a promissory note to the Corporation. A copy of the Amendment to the Warrant Certificate and form of Promissory Note, which is an exhibit thereto is annexed hereto and made a part hereof as Exhibit "A"; and it is further

**RESOLVED,** that based upon numerous discussions between Zsigmond L. Sagi, Ph.D. ("Sagi") and Frederick M. Mintz ("Mintz"), on or about April 14, 2004, in which Sagi and Mintz agreed that Mintz & Fraade, P.C. would own 10% of the issued and outstanding shares of Common Stock of the Corporation (the "April 14, 2004 Agreement"), and the subsequent agreement in which Mintz & Fraade, P.C. agreed that it would accept the following shares of Common Stock in satisfaction of the April 14, 2004 Agreement, the Board of Directors hereby

2

000269

authorizes and approves the following: Mintz & Fraade, P.C. shall own an aggregate of twenty eight million seven hundred thousand (28,700,000) shares of Common Stock, which shares shall include (A) three million three hundred thousand (3,300,000) shares of Common Stock currently owned by Mintz & Fraade, P.C., (B) one hundred twenty thousand (120,000) shares of Common Stock currently owned by Mintz, (C) a warrant to purchase two million (2,000,000) shares of Common Stock currently held by Mintz & Fraade, P.C., (D) seven million (7,000,000) shares of Common Stock which shall be issued to Mintz & Fraade, P.C. pursuant to the Letter Agreement by and among the Rubin Family Irrevocable Stock Trust and the Corporation dated as of the 14th day of July, 2004, and (E) the issuance to Mintz & Fraade, P.C. by the Corporation of fifteen million five hundred eighty thousand (15,580,000) shares of Common Stock and (F) the issuance to Mintz & Fraade, P.C. of seven hundred thousand (700,000) shares of Common Stock; and it is further

**RESOLVED**, that the Board of Directors hereby approves the issuance to Mintz & Fraade, P.C. of the aforementioned seven hundred thousand (700,000) shares and fifteen million five hundred eighty thousand (15,580,000) shares for a total of sixteen million two hundred eighty thousand (16,280,000) additional shares of Common Stock (determined by subtracting the total number of shares and warrants currently owned by Mintz & Fraade, P.C. and Mintz from the twenty eight million seven hundred thousand shares to be owned by Mintz & Fraade, P.C.) to be issued to Mintz & Fraade, P.C. at a price of one and one half ($.015) cents per share which the Board of Directors has determined is fair and reasonable; and it is further

**RESOLVED**, that the Board of Directors hereby authorizes the Corporation to accept a promissory note in the amount of two hundred forty four thousand two hundred ($244,200) dollars from Mintz & Fraade, P.C. as payment for the sixteen million two hundred eighty thousand (16,280,000) additional shares of Common Stock to be issued to it, a copy of which is annexed hereto and a made a part hereof as Exhibit "B"; and it is further

**RESOLVED**, that if the Corporation shall at any time seek to register or qualify any of its shares of capital stock (including, but not limited to, common stock or preferred stock), then upon each such occasion, the Corporation shall give Mintz & Fraade, P.C. at least thirty (30) days prior written notice thereof and Mintz & Fraade, P.C. shall have the option to include any or all of the twenty eight million seven hundred thousand (28,700,000) shares owned by it in any such registration or qualification by the Corporation and all expenses in connection with preparing and filing any such registration statement (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Corporation, provided, however, that for a period of one (1) year after the date of such registration or qualification any shares owned by Mintz & Fraade, P.C. which are included in such registration or qualification shall be subject to the following: the number of shares which were included in such registration or qualification which may be sold during any three-month period cannot exceed the greater of (A) one (1%) percent of the outstanding shares of the same class being sold, (B) if the shares are listed on a stock exchange or NASDAQ, the average reported weekly trading volume during the four weeks immediately preceding the sale or (C) if Sagi sells any of his shares of capital stock (including, but not limited to, common stock or preferred stock), the number of shares sold by Sagi.)

3

The Chairman stated that the next purpose of the Meeting was to consider the ratification of the issuance of shares of the Corporation's stock pursuant to an escrow agreement pending the resolution of outstanding issues with respect to Angela Sabella's loans and advances.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of twelve million (12,000,000) shares of Common Stock to be held in escrow by Mintz & Fraade, P.C. until the Corporation either (A) reaches an agreement with Angela Sabella with respect to her loans and advances or (B) determines that an agreement with Angela Sabella shall not be reached. A copy of the escrow agreement is annexed hereto and made a part hereof as Exhibit "C".

The Chairman stated that the next purpose of the Meeting was to consider the method of payment with respect to the exercise of certain options by Gerald Goodman and the issuance of stock to Gerald Goodman in consideration for the reduction of debt owed by the Corporation to Weiner, Goodman & Company, P.C. ("WG&C").

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes its Chief Financial Officer, Gerald Goodman ("Goodman") to pay for the exercise of his options to purchase three million nine hundred thousand (3,900,000) shares of Common Stock at an exercise price of one and one half ($.015) cents per share by reducing fees due to WG&C by fifty eight thousand five hundred ($58,500) dollars; and it is further

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of three million eight hundred ninety thousand (3,890,000) shares of Common Stock to Goodman at a purchase price of one and one half ($.015) cents per share by reducing the fees due to WG&C by fifty-eight thousand three hundred fifty ($58,350) dollars.

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of four million seven hundred eighteen thousand (4,718,000) shares of Common Stock to Goodman at a purchase price of one and one half ($.015) cents per share reducing the fees due to WG&C by seventy thousand seven hundred seventy ($70,770) dollars.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of the terms of a loan, which the Corporation entered into with Trinity Financial Investments Corporation ("TFIC").

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the two hundred fifty thousand ($250,000) dollar loan from TFIC, which loan is evidenced by a Convertible Note dated April 14, 2005, a copy of which is annexed hereto and made a part hereof, as Exhibit "D"; and it is further.

000271

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of two million five hundred thousand (2,500,000) shares of Common Stock to TFIC as consideration for the TFIC Loan.

The Chairman stated that the next purpose of the Meeting was to consider the issuance of stock to various individuals who have heretofore provided services to the Corporation.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby approves the issuance of an aggregate of seven hundred twenty-six thousand four hundred sixty-six (726,466) shares of its Common Stock to the individuals set forth below in the amount set forth next to each of their names for services provided to the Corporation:

| Name | Number of Shares |
| --- | --- |
| Teofilo Estavam | 254,712 |
| Ingrid Geygan | 100,000 |
| Mike O'Donnell | 100,000 |
| Norman Anderson | 70,000 |
| Stanley Ziolkowski | 70,000 |
| Sam Mousa | 70,000 |
| Joe Walsh | 21,000 |
| Chester Ziolkowski | 16,744 |
| Linda Martin | 12,005 |
| Paloma Dente | 12,005 |

The Chairman stated that the next purpose of the Meeting was to consider the method of payment with respect to the exercise of certain options in consideration for the reduction of accrued and unpaid fees due to one of the Corporation's Directors, Maurice Siegel ("Siegel"). Siegel did not participate in the deliberation and abstained from voting with respect to the following Resolution.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes Siegel to pay for the exercise of options to purchase five hundred forty thousand (540,000) shares of Common Stock at an exercise price of one and one half ($.015) cents per share by reducing accrued and unpaid Directors' Fees due to Siegel by eight thousand one hundred ($8,100) dollars.

The Chairman stated that the next purpose of the Meeting was to consider the method of payment with respect to the exercise of certain options in consideration for the reduction of accrued and unpaid fees due to one of the Corporation's Directors, Paul Nelson ("Nelson"). Nelson did not participate in the deliberation and abstained from voting with respect to the following two Resolutions.

5

000272

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes Nelson to pay for the exercise of options to purchase five hundred forty thousand (540,000) shares of Common Stock at an exercise price of one and one half ($.015) cents per share by reducing accrued and unpaid Directors' Fees due to Nelson by eight thousand one hundred ($8,100) dollars; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of forty thousand (40,000) shares of Common Stock to Nelson pursuant to the exercise of certain options on December 22, 2004 at an exercise price of seven ($.07) cents per share in exchange for the reduction of two thousand eight hundred ($2,800) dollars from the remaining five thousand ($5,000) dollar balance owed on a ten thousand ($10,000) dollar loan he made to the Corporation.

The Chairman stated that the next purpose of the Meeting was to consider the issuance of stock to Virgilio Sacchini, Ph.D. ("Sacchini") as payment for services provided to the Corporation.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of five hundred thousand (500,000) shares of its Common Stock to Sacchini for the coordination of clinical studies and other services provided to the Corporation.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement by and between Ed Rotter and the Corporation.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the Letter Agreement dated January 31, 2005 by and between Ed Rotter and the Corporation (the "Rotter Letter Agreement") with respect to a loan he made to the Corporation, a copy of which is annexed hereto and made a part hereof as Exhibit "E"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of five hundred thousand (500,000) shares of Common Stock to Ed Rotter pursuant to the terms of the Rotter Letter Agreement, which shares shall not be reduced below one hundred thousand (100,000) shares after the contemplated reverse split.

The Chairman stated that the next purpose of the Meeting was to consider the issuance of stock in connection with a loan and funds heretofore paid to the Corporation by Life Medical Technologies, Inc. ("Life Medical").

6

000273

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of three hundred seventy-five thousand (375,000) shares of Common Stock on March 16, 2005 to Annette Cantor, the designee of Life Medical, in connection with a loan made to the Corporation by Life Medical and funds paid by Life Medical towards a new clinical study; and it is further

**RESOLVED,** that the Board of Directors hereby authorizes the issuance of two million four hundred fifty thousand (2,450,000) shares of Common Stock to Life Medical in connection with funds paid by it to the Corporation on February 14, 2005 towards a new clinical study; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of three hundred seventy-five thousand (375,000) shares of Common Stock to DC Consultants, the designee of David Ciambrone, one of the Corporation's stockholders to replace three hundred seventy-five thousand (375,000) shares of Common Stock transferred by him to Annette Cantor, the designee of Life Medical, on behalf of, and at the request of the Corporation, in connection with a loan made to the Corporation by Life Medical and funds paid by Life Medical towards a new clinical study; and it is further

**RESOLVED,** that the Board of Directors hereby authorizes the Corporation with respect to the three hundred seventy-five thousand (375,000) shares to be issued to DC Consultants pursuant to the preceding resolution, to authorize its transfer agent, Western States Transfer Company, to issue to DC Consultants, the designee of David Ciambrone, three hundred seventy-five thousand (375,000) shares with the same restrictive date as the three hundred seventy-five thousand (375,000) shares which were transferred by David Ciambrone to Annette Cantor.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement by and between Doug Bowen and the Corporation.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the Letter Agreement dated January 31, 2005 by and between Doug Bowen and the Corporation (the "Bowen Letter Agreement") with respect to a loan he made to the Corporation, a copy of which is annexed hereto and made a part hereof as Exhibit "F"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of two hundred fifty thousand (250,000) shares of Common Stock to Doug Bowen pursuant to the terms of the Bowen Letter Agreement, which shares shall not be reduced below fifty thousand (50,000) shares after the contemplated reverse split.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement the Corporation has entered into with Eliot Gold, Devorah Gold, Henry Gold, Rochelle Gold, Steven Gold, Leah Rapp, Tanya Gold and Allison Gold.

7

000274

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the two hundred eighty thousand ($280,000) dollar loan ("Gold Loan") from Elliot Gold, Devorah Gold, Henry Gold, Rochelle Gold, Steven Gold, Leah Rapp, Tanya Gold and Allison Gold which loans are evidenced by Convertible Notes dated March 7, 2005 in the principal amount of thirty-five thousand ($35,000) dollars issued to each of aforesaid individuals, copies of which are annexed hereto and made a part hereof as Exhibit "G"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of one million nine hundred and sixty thousand (1,960,000) shares pursuant to the Gold Loan, which shares shall be issued as follows: two hundred and forty five thousand (245,000) shares to each of Elliot Gold, Devorah Gold, Henry Gold, Rochelle Gold, Steven Gold, Leah Rapp, Tanya Gold and Alison Gold.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement the Corporation entered into with Robin Smith.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the twenty five thousand ($25,000) dollar loan (the "Smith Loan") from Robin Smith, which loan is evidenced by a Convertible Note dated June 10, 2005, a copy of which is annexed hereto and made a part hereof, as Exhibit "H"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of one hundred and seventy five thousand (175,000) shares to Robin Smith as consideration for the Smith Loan.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement the Corporation entered into with Raymond Markman ("Markman").

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the twenty five thousand ($25,000) dollar loan from Markman (the "Markman Loan"), which loan is evidenced by a Convertible Note dated June 17, 2005, a copy of which is annexed hereto and made a part hereof, as Exhibit "I"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of one hundred and seventy five thousand (175,000) shares to Markman as consideration for the Markman Loan.

The Chairman stated that the next purpose of the Meeting was to consider the ratification of an agreement the Corporation entered into with Margery C. Rubin and Robert E. Schulman, as Trustees of the Rubin Family Irrevocable Stock Trust (the "Rubin Family Trust").

8

000275

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Directors hereby ratifies and approves the twenty five thousand ($25,000) dollar loan (the "Rubin Family Trust Loan") from the Rubin Family Irrevocable Trust, which loan is evidenced by a Convertible Note dated June 21, 2005, a copy of which is annexed hereto and made a part hereof as Exhibit "F"; and it is further

**RESOLVED,** that the Board of Directors hereby ratifies and approves the issuance of one hundred seventy five thousand (175,000) shares to the Rubin Family Trust as consideration for the Rubin Family Trust Loan.

The Chairman stated that the next purpose of the Meeting was to consider the payment of compensation to Gerald Goodman ("Goodman") for services to be provided to the Corporation in his capacity as Chief Financial Officer.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that the Board of Director hereby authorizes the Corporation to approve compensation for Goodman for his services as Chief Financial Officer in the amount of one hundred thousand ($100,000) dollars per year commencing as of July 1, 2005 as approved by the Corporation's Compensation Committee.

After full discussion, upon motion duly made, seconded and unanimously carried, it was

**RESOLVED,** that each of the officers of the Corporation are hereby authorized and empowered, in the name and on behalf of the Corporation, to execute such documents and to take such additional action as they or any of them may deem necessary or desirable in order to implement the intents and purposes of all of the foregoing Resolutions adopted at this Meeting.

There being no further business, the Meeting was thereupon adjourned.

_____
Patricia B. Furness
Secretary and Vice President

_____
Zigmond V. Sagi, Ph.D.
Chairman and President

_____
Paul S. Nakosi
Director

_____
Maurice Siegel, Ph.D.
Director

9

000276

# EXHIBIT K

# SCANTEK MEDICAL, INC.

## SUBSCRIPTION AGREEMENT

### DATED APRIL 1, 2003

Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927
Attn: Dr. Zsigmond L. Sagi, President

Gentlemen:

1.     The "Securities"

The undersigned hereby agree to invest an aggregate of six thousand, two hundred and fifty ($6,250) dollars (the "Subscription Price") in Scantek Medical, Inc, a corporation organized and existing under the laws of the State of Delaware (the "Company"), evidenced by a promissory note in the principal amount of the Subscription Price bearing interest at the rate of one (1%) percent per month (the "Note"); and to the purchase of shares of Common Stock, par value $.001, (the "Shares") from the Company as set forth in Article "9" of this Subscription Agreement which shall be registered pursuant to Article "9" of this Subscription Agreement. The form of the Note is annexed hereto as Exhibit "A". The Note and the Shares are hereinafter jointly referred to as the "Securities." The undersigned hereby agree to pay for the Securities subscribed for by the undersigned in the manner which is described in Article "2" of this Subscription Agreement (the "Subscription Agreement").

2.     Payment

We are herewith agreeing to forward the amount of the Subscription Price upon execution hereto to the account of "Mintz & Fraade, P.C."

3.     The Offering

The undersigned understands the following:

A.     This offering will terminate on, or prior to, April 15, 2003, subject to extension, in the sole and absolute discretion of the Company;

1

N:\Clients\Scantek Medical Inc\Bridge Financing\Bowen\sub.ag.cc.docv1

B.     This offering may be so extended without amending this Subscription Agreement and without notice to either the Investors who have submitted their subscription documents to the Company or to prospective Investors; and

C.     The Company reserves the right, in its sole and absolute discretion, (i) to withdraw the subject offering or (ii) to reject any subscription for Securities in whole or in part. In the event of a complete rejection, the Company will return to me all of my subscription documents and my subscription funds for the subscription, without interest thereon and without deduction of escrow costs. In the event of a partial rejection, the Company will return to me the appropriate portion of my subscription funds for the rejected portion of the subscription, without interest thereon and without deduction of escrow costs, and I will be obligated to promptly furnish the Company with such amended subscription documents as the Company may request, including, but not limited to, a new Subscription Agreement. If my subscription is accepted for a lesser number of Securities than requested by me, it will be within the sole and absolute discretion of the Company whether or not to allow me to withdraw my full subscription.

4.     Acceptance of Subscription

The undersigned understands the following:

A.     that this Subscription Agreement is not binding upon the Company unless and until it is accepted by the Company; and

B.     that the acceptance of my subscription to purchase Securities by the Company shall not be deemed binding upon the Company until the funds paid by me herewith clear and are credited to the account of Mintz & Fraade, P.C.

5.     No Reliance

The undersigned acknowledges the following:

A.     that I have received, read, understand, and am familiar with this Subscription Agreement;

B.     that no statements, representations or warranties, have been made or furnished to me, or to my advisors, by the Company, or by any person acting on behalf of the Company, with respect to the sale of the Securities, and/or the economic, tax, or any other aspects or consequences of this investment, and that I have not relied upon any information with respect to the offering, written or oral, other than the information contained in this Subscription Agreement; and

2

C.    I further understand that any documents other than this Subscription Agreement, regardless of whether distributed prior to, simultaneously with, or subsequent to, the date of this Subscription Agreement should not be relied upon in determining whether to make an investment in the Securities and I expressly acknowledge, agree and affirm that I have not relied upon any such literature in making my determination to make an investment in the Securities.

6.    Representations and Warranties of the Investor

In order to induce the Company, Counsel and their respective agents, to accept my subscription, the undersigned further represents and warrants to the Company, Counsel, and their respective Affiliates, as follows:

(A)    If I have chosen to do so, I have been represented by such advisors as I have found necessary to consult concerning the purchase of the Securities, and such representation has included an examination of applicable documents and an analysis of all tax, financial, and securities law aspects thereof. I, my advisors, and such other persons with whom I have found it necessary or advisable to consult, have sufficient knowledge and experience in business and financial matters to evaluate the information set forth in this Subscription Agreement, and the risks of the investment, and to make an informed investment decision with respect thereto;

(B)    With respect to the tax aspects of my investment, I am relying solely upon the advice of my own personal tax advisors, and upon my own knowledge with respect thereto;

(C)    I have not relied, and will not rely upon, any information with respect to this offering other than the information contained herein and set forth in the Company's filings with the Securities and Exchange Commission;

(D)    I understand that this offering has not been, and it is not anticipated that the same will be, registered under the Securities Act of 1933, as amended (the "1933 Act"), or pursuant to the provisions of the securities or other laws of any other applicable jurisdictions. I am fully aware of the restrictions on sale, transferability and assignment of the Securities and that I must bear the economic risk of my investment herein for an indefinite period of time because the offering has not been registered under the 1933 Act and, therefore, the Securities cannot be offered or sold unless the offering is subsequently registered under the 1933 Act or an exemption from such registration is available to me;

(E)    My execution and delivery of this Subscription Agreement has been duly authorized by all necessary action. I do not presently have any plans to pledge, transfer or assign the Securities which I acquire pursuant to this offering. I am making the investment hereunder for my own account and not for the account of others and for investment purposes only and not

3

with a view to or for the transfer, assignment, resale or distribution thereof, in whole or in part. I have no present plans to enter into any such contract, undertaking, agreement or arrangement;

(F)    I agree that, subject to any applicable state securities laws, I shall not cancel, terminate or revoke this Subscription Agreement, executed by me with respect to the purchase of the Securities, and that this Subscription Agreement shall survive my death or disability, except pursuant to the laws of any applicable jurisdiction;

(G)    Although one of my motivations for investing in the Company is to derive the economic benefits, I am aware that the purchase of the Securities is a speculative investment involving a high degree of risk and that there is no guarantee that I will realize any gain from my investment, realize any tax benefits therefrom and that I may lose all or a substantial part of my investment. I can afford the loss of my entire investment;

(H)    The address set forth below is my true and correct residence, and I have no present intention of becoming a resident of any other state or jurisdiction prior to our purchase of the Securities;

(I)    I understand the meaning and legal consequences of the foregoing representations and warranties, which are true and correct as of the date hereof and will be true and correct as of the date of my purchase of the Securities subscribed for herein. Each such representation and warranty shall survive such purchase;

(J)    I agree that it shall not be a defense to a suit for damages for any misrepresentation or breach of covenant or warranty of mine that the Company knew or had reason to know that any covenant, representation or warranty in this Subscription Agreement or furnished or to be furnished to the Company contained untrue statements. The foregoing shall survive any investigation by the Company;

(K).    No representation or warranty which I have made in this Subscription Agreement, or in a writing furnished or to be furnished pursuant to this Subscription Agreement, contains or shall contain any untrue statement of fact, or omits or shall omit to state any fact which is required to make the statements which are contained herein or therein, in light of the circumstances under which they were made, not misleading; and

(L)    I am an "accredited investors" as that term is defined in Rule 501 of Regulation D, which was promulgated under the 1933 Act. Pursuant to Rule 501, an accredited investor includes (i) a natural person who (with spouse, if any) has a net worth which exceeds $1,000,000 at the time of the purchase; (ii) a natural person who has had an individual income in excess of $200,000 for the prior two years (or joint income with such spouse which exceeds $300,000 in each such year) and have a reasonable expectation of reaching the same income level (or joint income level) in the current year; (iii) an organization as described in section 501 (c)(3) of the Internal Revenue Code, corporation, Massachusetts or similar business trust, or partnership, not formed for the specific purpose of acquiring the securities offered, with total

4

assets in excess of $5,000,000; (iv) a trust, with total assets in excess of $5,000,000, not formed for the specific purpose of acquiring the securities offered, whose purchase is directed by a sophisticated person as described in Rule 506 (b)(2)(ii); or (v) an entity in which all of the equity owners are accredited investors.

7.    Indemnification by the Investor

Each of the undersigned hereby agree to indemnify and hold harmless the Company, Counsel, and persons affiliated with them, from any and all damages, losses, costs and expenses (including reasonable attorneys' fees) which they, or any of them, may incur by reason of any of the undersigned failure, or alleged failure, to fulfill any of the terms and conditions of this Subscription Agreement or by reason of any of the undersigned breach of any of the undersigned representations and warranties contained in this Subscription Agreement.

8.    Subscription for Shares

The Company shall issue to the undersigned such number of Shares which will result in the ownership by the undersigned as follows:

(A) Six (6) Shares For every $1 loaned to the Company;

(B)  If the Note is not paid in full on or prior to the Maturity Date (as defined in the Promissory Note) for each of the first five (5) business days after the Maturity Date that the Note remains unpaid, two hundred (200) Shares for every $1000 loaned to the Company by each Investor; and

(C) After the five (5) business day period set forth in Paragraph "(B)" of this Article "8", for each day that the Note remains unpaid, five hundred (500) Shares for every $1000 loaned to the Company by each Investor.

9.    Registration

(A)    Upon the occurrence of an Event of Default (as defined in the Promissory Note), the Company shall in the Company's sole and absolute discretion either (i) deliver freely tradeable Shares to the Payee or (ii) file a Registration Statement with the Securities and Exchange Commission which shall include the Shares issued hereunder within sixty (60) days after the date of such Event of Default. If no Event of Default occurs, the Company shall file a Registration Statement with the Securities and Exchange Commission which shall include the Shares issued hereunder within one hundred twenty (120) days after the closing of this offering.

(B)     All expenses in connection with preparing and filing any registration statement under Article "4" hereof (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) shall be borne in full by the Payor; provided, however, that the Payee shall pay any and all underwriting commissions and expenses and the fees and expenses of any legal counsel selected by the Payee to represent them with respect to the sale of the Securities.

10.     Changes in Common Stock

If there are any changes in the Company's common stock on or prior to the repayment in full of the Note, by way of stock split, stock dividend, reverse split, combination or reclassification, or through merger, consolidation, reorganization or recapitalization, or by any other means, appropriate adjustment shall be made in the provisions hereof, as may be required, so that any such adjustment shall result in the aggregate amount of shares issued to the undersigned pursuant to this Subscription Agreement not being a lesser percentage of the issued and outstanding shares of the Company's common stock effective immediately prior to the effective date of such action.

11.     General Provisions

(A)     Headings. The headings contained in this Subscription Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Subscription Agreement.

(B)     Enforceability. If any provision which is contained in this Subscription Agreement should, for any reason, be held to be invalid or unenforceable in any respect under the laws of any State of the United States, such invalidity or unenforceability shall not affect any other provision of this Subscription Agreement. Instead, this Subscription Agreement shall be construed as if such invalid or unenforceable provisions had not been contained herein.

(C)     Notices. Any notice or other communication required or permitted hereunder must be in writing and sent by either (i) registered or certified mail, postage prepaid, return receipt requested, (ii) overnight delivery with confirmation of delivery or (iii) facsimile transmission with an original mailed by first class mail, postage prepaid, in each case addressed as follows:

To the Company:                  Scantek Medical, Inc.
                                 4 B Wing Drive,
                                 Cedar Knolls, NJ 07927
                                 Attn.: Dr. Zsigmond L. Sagi, President
                                 Facsimile No.: (973) 401-0459

6

Copy to:            Mintz & Fraade, P.C.
                    ~~488 Madison Avenue, Suite 1100~~
                    New York, New York 10022
                    Attn.: Frederick M. Mintz, Esq.
                    Facsimile No.:(212) 486-0701


To the Investor:    Doug Bowen
                    9 Burritts Landing North
                    Westport, CT 06880


Copy to:            _____
                    _____
                    _____


or in each case to such other address and facsimile number as shall have last been furnished by like notice. If mailing by registered or certified mail is impossible due to an absence of postal service, and if the other methods of sending notice set forth in Paragraph "C" of this Article "11" of this Subscription Agreement are not otherwise available, notice shall be in writing and personally delivered to the aforesaid addresses. Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be; provided, however, that any notice sent by facsimile shall be deemed to have been given as of the date sent by facsimile if a copy of such notice is also mailed by first class mail on the date sent by facsimile; if the date of mailing differs from the date of sending by facsimile, then the date of mailing by first class mail shall be deemed to be the date upon which notice given.

(D)    <u>Governing Law; Disputes</u>.    This Subscription Agreement shall in all respects be construed, governed, applied and enforced with the laws of the State of New York without giving effect to the principles of conflicts of laws and be deemed to be an agreement entered into in the State of New York and made pursuant to the laws of the State of New York. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "11" of this Subscription Agreement.

The parties agree, further, that the prevailing party in any action or proceeding as determined by the Tribunal making the final and non-appealable determination of the matter in

7

dispute shall be entitled to reimbursement of all its reasonable fees, costs and expenses, including its attorneys fees, in connection with such matter. In connection with the Tribunal's determination for the purpose of which party, if any, is the prevailing party, the Tribunal shall take into account all of the factors and circumstances including, without limitation, the relief sought, and by whom, and the relief, if any, awarded, and to whom. In addition, and notwithstanding the foregoing sentence, a party shall not be deemed to be the prevailing party in a claim seeking monetary damages, unless the amount of the final determination exceeds the amount offered in a writing by the other party by fifteen percent (15%) or more. For example, if the party initiating a claim ("A") seeks damages of $100,000 plus costs and expenses, the other party ("B") has offered A $50,000 prior to the commencement of the proceeding, and if the Tribunal awards any amount less than $57,500 to A, the Tribunal should determine that B has "prevailed".

(E)    Further Actions.    The parties agree to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Agreement and the intents and purposes hereof.

(F)    Binding Agreement.  This Subscription Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns

(G)    Waiver.    Except as otherwise expressly provided herein, no waiver of any covenant, condition, or provision of this Subscription Agreement shall be deemed to have been made unless expressly set forth in writing and signed by the party against whom such waiver is charged; and (i) the failure of any party to insist in any one or more cases upon the performance of any of the provisions, covenants, or conditions of this Subscription Agreement or to exercise any option herein contained shall not be construed as a waiver or relinquishment for the future of any such provisions, covenants, or conditions, (ii) the acceptance of performance of anything required by this Subscription Agreement to be performed with knowledge of the breach or failure of a covenant, condition, or provision hereof shall not be deemed a waiver of such breach or failure, and (iii) no waiver by any party of one breach by another party shall be construed as a waiver with respect to any other or subsequent breach.

(H)    Counterparts. This Subscription Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(I)    Entire Agreement.    The parties have not made any representations, warranties, or covenants with respect to the subject matter hereof, orally or in writing, which are not set forth herein, and this Subscription Agreement, together with any instruments or other agreements executed simultaneously herewith, constitutes the entire agreement between them with respect to the subject matter hereof. All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Subscription Agreement and any such instrument, which alone fully and completely expresses their

8

agreement. This Subscription Agreement may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by all of the parties to this Subscription Agreement.

      12.    Certification with respect to Federal Interest Payments; Backup Withholding in Lieu of Internal Revenue Service Form W-9 –

Under penalties of perjury each of the undersigned certify as follows:

      The number(s) shown below as my (our) taxpayer identification number(s) (social security number or employer identification number) is my (our) correct taxpayer identification number; and I (we) am (are) not subject to backup withholding either because I (we) have not been notified by the Internal Revenue Service that I (we) am (are) subject to backup withholding as a result of a failure to report all interest or dividends, or the Internal Revenue Service has notified me (us) that I (we) am (are) no longer subject to backup withholding.

[Signature page follows]

9

IN WITNESS WHEREOF, I have executed this Subscription Agreement this __day of April 2003.

**Individuals:**                                    **Entities:**

Doug Bowen
Name (Please Print)                                Name of Entity (Please Print)

Doug Bowe
Signature                                          By:_____
                                                       Signature and Title

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
Social Security Number

_____                          _____
Name of Joint Tenant or                            Employer Identification
Tenant in-Common, if                               Number
applicable (Please Print)
                                                   [Corporate Seal (if applicable)]

_____
Signature of Joint Tenant
or Tenant-in-Common, if
applicable.

_____
Social Security Number

10

## TO BE COMPLETED BY ALL SUBSCRIBERS

Address to which information regarding
this subscription should be mailed:

_Same as notice_

Street Address

_____

City and State                    Zip

214  883-2506

Telephone Number

(214  883-2806

Facsimile Number

Accepted And Agreed To This _____ Day of _____, 2003

Scantek Medical, Inc.

By:

Name: _____

Title: _____

CANCELLED

## PROMISSORY NOTE

~~$6,250~~

April 8, 2003

FOR VALUE RECEIVED, Scantek Medical, Inc., a Delaware corporation with an address at 4B Wing Drive, Cedar Knolls, NJ 07927 (hereinafter referred to as the "Payor"), agrees to pay to the order of Doug Bowen with an address at 9 Burritts Landing North, Westport, CT 06680 (the "Payee"), on the Maturity Date set forth in Paragraph "(A)" of Article "2" of this Promissory Note (the "Note"), unless earlier redeemed in accordance with the terms of this Note, the principal sum of Six thousand, two hundred and fifty ($6,250) dollars, with interest on the aforesaid amount as calculated in Article "1" below.

1.    Interest

(A)    Interest on the unpaid principal balance shall be calculated from the date of each advance received by the Payor pursuant to this Note to and including the date of repayment at an interest rate equal to one (1%) percent per month.

(B)    Payment of the accrued and unpaid interest shall be due and payable upon payment of the principal balance of this Note pursuant to Paragraph "(A)" of Article "2" of this Note.

2.    Method of Payment

(A)    Payment of the principal balance of this Note, together with any unpaid and accrued interest thereon, shall be due and payable in full on or prior to July 7, 2003 (the "Maturity Date").

(B)    Repayment of this Note by the Payor shall be made by certified or bank check drawn to the Payee and delivered to Mintz & Fraade, P.C. on or prior to the Maturity Date at the address set forth in Paragraph "C" of Article "12" of this Note .

3.    Events of Default

The term "Event of Default" as used herein shall mean the occurrence of any one or more of these following events:

(A)    The failure of the Payor to pay when due any payment due hereunder.

(B)    The default in the performance of any material covenant on the part of the Payor to be performed pursuant to the terms hereof and, except for a default pursuant to Article "A" of this Article "3" of this Note, for which no notice or

cure period shall be applicable, such failure continues for ten (10) days after Payee notifies Payor thereof in writing, pursuant to Paragraph "(C)" of Article "12" of this Note;

(C)      The admission in writing by the Payor of its inability to pay its debts as they mature;

(D)      The filing by the Payor of a petition in bankruptcy;

(E)      The making of an assignment by the Payor for the benefit of its creditors;

(F)      Consent by the Payor to the appointment of, or possession by, a custodian for itself or for all or substantially all of its property;

(G)      The filing of a petition in bankruptcy against the Payor with the consent of the Payor;

(H)      The filing of a petition in bankruptcy against the Payor without the consent of the Payor, and the failure to have such petition dismissed within sixty (60) days from the date upon which such petition is filed;

(I)      Notwithstanding the sixty (60) day provision in Paragraph "(H)" of this Article "3"of this Note, on a petition in bankruptcy filed against Payor, Payor is adjudicated;

(J)      The entry by a court of competent jurisdiction of a final non-appealable order, judgment or decree appointing, without the consent of the Payor, of a receiver, trustee or custodian for the Payor or of all or substantially all of the respective property or assets of Payor;

(K)      The commencement of a proceeding to foreclose the security interest in, or lien on, any property or assets to satisfy the security interest or lien therein of any creditor of the Payor;

(L)      The entry of a final judgment for the payment of money by a court of competent jurisdiction against the Payor, which judgment the Payor shall not discharge (or provide for such discharge) in accordance with its terms within ninety (90) days of the date of entry thereof, or procure a stay of execution thereof within ninety (90) days from the date of entry thereof and, within such ninety (90) day period, or such longer period during which execution of such judgment shall have been stayed, appeal therefrom and cause the execution

thereof to be stayed during such appeal; and

(M)     The imposition of any attachment or levy, or the issuance of any note of eviction against the assets or properties of the Payor.

4.     Remedies Upon Default

Upon the occurrence of an Event of Default (as defined in Article "3" of this Note), and any time thereafter while such Event of Default is continuing, the entire unpaid principal balance which is due pursuant to this Note shall, at the Payee's option, be accelerated and become and be immediately due and payable without presentment, demand, protest or further notice of any kind, all of which are expressly waived by the Payor.

5.     Non-Exclusive Remedy

Any remedy that is set forth in this Note is not exclusive of any remedies that are provided by law.

6.     Liability Upon Default

The liability of the Payor upon default shall be unconditional and shall not be in any manner affected by any indulgence whatsoever granted or consented to by the Payee including, but not limited to, any extension of time, renewal, waiver or other modification.

7.     Exercise of Remedy Upon Default

No failure on the part of the Payee to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

8.     Security.

A.     This Promissory Note shall be secured by two hundred and fifty thousand (250,000) shares of Common Stock of the Payor (the "Security Shares"), which are to be held in escrow pursuant to that certain Escrow Agreement by and between Dr. Zsigmond L. Sagi, the Payee, the Payor and Mintz & Fraade, P.C., to be executed simultaneously with this Promissory Note (the "Escrow Agreement").

3

B.     Upon default by the Payor, the Payor shall cause the Security Shares to be included in a Registration Statement and to file said Registration Statement with the Securities and Exchange Commission within sixty (60) days after the date of default and use its best efforts to cause such Registration Statement to be declared effective; provided, however, that such Registration Statement shall not be required if in the opinion of the Payor's counsel, the Security Shares will be freely tradable if the Payee receives the Security Shares pursuant to Subparagraph "B" of Paragraph "2" of the Escrow Agreement upon default by the Payor. Upon full satisfaction of the Note by the sale of Security Shares, the Payee shall return any unsold Security Shares together with any proceeds from the sale of the Security Shares in excess of the amounts required to satisfy this Note, to the Payor.

C.     All expenses in connection with preparing and filing any registration statement pursuant to this Article "8" hereof (and any registration or qualification under the securities or "Blue Sky" laws of states in which the offering will be made under such registration statement) and in connection with the transfer and/or reissuance of the Security Shares shall be borne in full by the Payor.

9.     Validity of Provisions

Any provision of this Note that may prove to be unenforceable under any law shall not affect the validity of any other provision of this Note.

10.     Collection Costs

Payor agrees to pay all reasonable costs of collection, including attorney's fees and costs, which may be paid or incurred by Payee in connection with Payee's exercise of its rights or remedies under this Note.

11.     Full Recourse

Anything in this Note to the contrary notwithstanding, the Payor hereunder shall be liable on this Note for the full amount of the principal and interest due pursuant to this Note.

12.     Miscellaneous

(A)     Modification     This Note may not be changed, modified, extended, terminated or discharged orally, but only by an agreement in writing, which is signed by the Payor and the Payee of

4

this Note.

    (B)   <u>Further Actions</u>  The Payor agrees to execute any and all instruments and documents, and to take any and all such further actions reasonably required to effectuate this Note and the intents and purposes hereof.

    (C)   <u>Notices</u>  All notices or other communications required or permitted hereunder shall be in writing and shall be mailed by First Class, Registered or Certified Mail (Return Receipt Requested), postage prepaid, as follows:

|  |  |
|---|---|
| To the Payor: | Scantek Medical, Inc.<br>4 B Wing Drive,<br>Cedar Knolls, NJ 07927<br>Attention:  Dr. Zsigmond Sagi, President |
| Copy to: | Mintz & Fraade, P.C.<br>488 Madison Avenue<br>New York, New York 10022<br>Attn.: Frederick M. Mintz, Esq. |
| To the Payee: | Doug Bowen<br>9 Burritts Landing North<br>Westport, CT 06880 |
| Copy to: | _____<br>_____<br>_____ |

or in each case to such other address as shall have last been furnished by like notice.  If mailing by Registered or Certified Mail is impossible due to an absence or delay in the postal service, notice shall be in writing and personally delivered to the appropriate address set forth above.  Each notice or communication shall be deemed to have been given as of the date so mailed or delivered, as the case may be.

5

(D)    Governing Law    This Note shall in all respects be construed, governed, applied and enforced in accordance with the laws of the State of New York applicable to contracts made and to be performed therein, without giving effect to the principles of conflicts of law. The parties hereby consent to and irrevocably submit to personal jurisdiction over each of them by the Courts of the State of New York in any action or proceeding, irrevocably waive trial by jury and personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested, in accordance with Paragraph "C" of this Article "12" of this Note.

(E)    Assignment    This Note may be assigned or transferred by the Payee without the prior written consent of the Payor.

(F)    Successors and Assigns    This Note shall be binding upon the Payor and its successors and assigns.

(G)    Binding Agreement    This Note shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

IN WITNESS WHEREOF, the Payor has executed this Note as of the 8th day of April 2003.

Scantek Medical, Inc.

By: _____
Zsigmond L. Sagi, President & CEO

6

# MINTZ & FRAADE, P.C.

COUNSELORS AT LAW
488 MADISON AVENUE
NEW YORK, NEW YORK 10022

TELEPHONE
(212) 486-2500

TELECOPIER
(212) 486-0701

OF COUNSEL
JAY D. FISCHER
ARTHUR L. PORTER, JR
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

SENIOR COUNSEL
FRANK J. GLINSKY

April 8, 2003

Scantek Medical, Inc.
4 B Wing Drive,
Cedar Knolls, NJ 07927
Attention: Dr. Zsigmond Sagi, President

Doug Bowen
9 Burritts Landing North
Westport, CT 06680

Re:    Escrow Agreement

Gentlemen:

Mintz & Fraade, P.C. (hereinafter referred to as the "Escrow Agent") agrees to act as escrow agent pursuant to the terms of this Escrow Agreement and receive two hundred and fifty thousand (250,000) shares of common stock of Scantek Medical, Inc. ("Scantek").

1.    A.    The Escrow Agent hereby acknowledges receipt of the following (the "Escrow Items"): (i) stock powers executed in blank by the record holder of the Shares (the "Stock Powers"), a copy of which is annexed hereto as Exhibit "A," and (ii) a Promissory Note dated as of the 8th day of April, 2003 (the "Scantek Note"), with Doug Bowen as the payee (the "Payee"), a copy of which is annexed hereto as Exhibit "B," evidencing indebtedness to the Payee in the sum of six thousand, two hundred and fifty ($6,250) dollars.

B.    A stock certificate evidencing an aggregate of two hundred and fifty thousand (250,000) shares (the "Shares") of common stock of Scantek, registered in the name of Dr. Zsigmond L. Sagi ("Dr. Sagi") shall be delivered to the Escrow Agent on or prior to April 15, 2003

C.     The Escrow Agent shall have no obligation to take any action with respect to collecting the payments pursuant to the Scantek Note.

2.     The Escrow Agent agrees to hold the Escrow Items, in escrow, in accordance with the following terms and conditions:

A.     The Escrow Agent shall deliver to Dr. Sagi the Shares, the Stock Powers and the Scantek Note ten (10) days after the Escrow Agent receives written notice (the "Release Notice") pursuant to Article "15" of this Escrow Agreement from any party stating that the Note has been satisfied  by payment by a bank or certified check; provided, however, that the Escrow Agent shall not release the Escrow Items if the Escrow Agent receives written notice from any other party within ten (10) days after receipt of the Release Notice objecting to such release being made.

B.     If the Escrow Agent does not receive a bank or certified check as set forth in Paragraph "B" of Article "2" of the Scantek Note, the Escrow Agent shall deliver the Shares, the Stock Powers and the Scantek Note to the Payee as instructed by the Payee.

C.     The Escrow Agent shall deliver the Escrow Items to the party or parties specified in a written notice received from all Parties instructing the Escrow Agent to deliver the Escrow Items to a specified party or parties.  Said written notice must be in form and substance satisfactory to the Escrow Agent in the Escrow Agent's sole and absolute discretion.

3.     The Escrow Agent is hereby released and exculpated from all liability, costs, and expenses whatsoever which arise out of or in connection with the Escrow Agent's activities as escrow agent hereunder.  The Escrow Agent shall be liable only to the extent of any loss or damage which is caused by its willful misconduct.

4.     The Escrow Agent may act or refrain from acting with respect to any matter which is referred to herein in reliance upon either: (A) the advice of any counsel who may be selected by the Escrow Agent from time to time, including, but not limited to, the Escrow Agent if it is acting as its own counsel; or (B) a good faith determination by the Escrow Agent.  The Escrow Agent is hereby released and exculpated from all liability whatsoever which arises out of or in connection with so acting or in so refraining from acting upon either: (A) the advice of any counsel, including, but not limited to, the Escrow Agent if it is acting as its own counsel; or (B) a good faith determination by the Escrow Agent.

5.     The Escrow Agent may rely and is hereby released and exculpated from all liability, including, but not limited to losses, costs, and expenses whatsoever which arises out of or in connection with its actions based upon any paper or other document which may be submitted to the Escrow Agent in connection with its duties hereunder which is believed by the Escrow Agent to be genuine and to have been signed by the

proper party or parties and the Escrow Agent shall have no liability or responsibility with respect to the form, execution or validity thereof.

6.        The Escrow Agent may institute or defend any action or legal process which involves any matter which is referred to herein which in any manner affects the Escrow Agent or its duties or liabilities hereunder, but the Escrow Agent shall not be required to institute or defend such action or process unless or until requested to do so, and then only upon receiving full indemnity, against any and all claims, liabilities, judgments, reasonable attorneys' fees including the fair value for legal fees rendered by it if the Escrow Agent acts as its own counsel and other expenses of every kind in relation thereto such indemnification shall be in form and amount satisfactory to the Escrow Agent in its sole and absolute discretion and from such parties determined by the Escrow Agent in its sole and absolute discretion.

7.        The Payee, Dr. Sagi and Scantek agree to and shall jointly and severally indemnify and save the Escrow Agent harmless from and against any losses, claims, liabilities, judgments, reasonable attorneys' fees and other expenses of every kind and nature which may be suffered, sustained or incurred by the Escrow Agent by reason of its acceptance of, and its performance under, this Escrow Agreement except for the Escrow Agent's willful misconduct. In addition, the Escrow Agent shall be entitled to the fair value of the legal services incurred to outside counsel, or all legal fees and expenses incurred by it if it determines, in its sole and absolute discretion, to act as its own counsel, with respect to the Escrow Agent's acceptance of, and its performance pursuant to this Escrow Agreement.

8.        The Escrow Agent may at any time, in its sole and absolute discretion, deposit the Escrow Items with a court of competent jurisdiction in New York County, New York State pursuant to an action of interpleader, and upon such deposit the Escrow Agent shall be released from any further liability or obligation as the Escrow Agent.

9.        In the event of any dispute which is referred to herein, the Escrow Agent shall be entitled to consult with counsel, including itself, and commence or defend any legal proceeding if the Escrow Agent, in its good faith determination, determines to do so, and shall be reimbursed by the Parties for all legal fees and expenses in connection with such consultation and legal proceeding and shall be further entitled to the fair value of the legal fees incurred by it if the Escrow Agent decides to act as its own counsel, and expenses in connection with such consultation and legal proceeding and shall be further entitled to receive from the Parties all reasonable expenses which are incurred by the Escrow Agent in connection with its acting as the Escrow Agent.

10.        The Escrow Agent shall only be required to notify the parties to this Escrow Agreement of every written notice which it receives hereunder if either it decides to do so or if such written notice requests that it notify the other parties to this Escrow Agreement of its receipt thereof.

11.    Nothing which is contained herein or in any instruments executed simultaneously herewith, shall prevent the Escrow Agent from representing as counsel anyone including, but not limited to, Scantek, Dr. Sagi, or the Payee in any matter whatsoever, including but not limited to any action or proceeding which relates to this Escrow Agreement, or any instruments which are executed simultaneously herewith.

12.    Except as otherwise specifically provided for hereunder, no party to this Escrow Agreement shall be deemed to have waived any of his, her or its rights hereunder or under any other agreement, instrument or paper signed by any of them with respect to the subject matter hereof, unless such waiver is in writing and signed by the party waiving said right.  Except as otherwise specifically provided for hereunder, no delay or omission by any party to this Escrow Agreement in exercising any right with respect to the subject matter hereof shall operate as a waiver of such right or of any such other right. A waiver on any one occasion with respect to the subject matter hereof shall not be construed as a bar to, or waiver of, any right or remedy on any future occasion.

13.    The parties to this Escrow Agreement have not made any representations, warranties, or covenants which are not set forth herein with respect to the subject matter hereof, and this Escrow Agreement constitutes the entire agreement between them with respect to the subject matter hereof.  All understandings and agreements heretofore had between the parties with respect to the subject matter hereof are merged in this Escrow Agreement.

14.    This Escrow Agreement shall not be changed, modified, extended, terminated, or discharged orally, but only by an agreement, in writing, signed by all of the parties to this Escrow Agreement.

15. All notices or other communications which are required or permitted hereunder shall be delivered to all parties hereto and shall be in writing and shall be mailed by First Class, Registered or Certified Mail, Return Receipt Requested, postage prepaid, or by a nationally known overnight delivery service with an acknowledgment of receipt as follows:

If to Scantek:                         Scantek Medical, Inc.
                                       4 B Wing Drive,
                                       Cedar Knolls, NJ 07927
                                       Attn: Dr. Zsigmond L. Sagi, President
                                       Facsimile No.: (973) 401-0459


with a copy to:                        Mintz & Fraade, P.C.
                                       488 Madison Avenue
                                       New York, New York 10022
                                       Attention:  Frederick M. Mintz, Esq.
                                       Facsimile No.: (212) 486-0701

| | |
|---|---|
| If to Dr. Sagi: | Dr. Zsigmond Sagi, President<br>Scantek Medical, Inc.<br>4 B Wing Drive<br>Cedar Knolls, NJ 07927<br>Facsimile No.: (973) 401-0459 |
| with a copy to: | Mintz & Fraade, P.C.<br>488 Madison Avenue<br>New York, New York 10022<br>Attention: Frederick M. Mintz, Esq.<br>Facsimile No.: (212) 486-0701 |
| To the Payee: | Doug Bowen<br>9 Burritts Landing North<br>Westport, CT 06680 |
| Copy to: | _____<br>_____<br>_____ |
| If to the Escrow Agent: | Mintz & Fraade, P.C.<br>488 Madison Avenue<br>New York, New York 10022<br>Attention: Frederick M. Mintz, Esq.<br>Facsimile No.: (212) 486-0701 |
| with a copy to: | Alan P. Fraade, Esq.<br>18 Nob Court<br>New Rochelle, New York 10804<br>Facsimile No. (914) 636-3391 |

or in each case to such other address as shall have last been furnished by like notice. If mailing by Registered or Certified Mail is impossible due to an absence of postal service, notice shall be in writing and personally delivered to the appropriate address set forth above. Each notice or communication shall be deemed to have been given as of the date received by the addressee.

16.    This Escrow Agreement shall in all respects be construed governed, applied and enforced in accordance with the internal laws of the State of New York, without giving effect to conflicts of law.

17.    This Agreement shall be deemed to be an agreement entered into in the State of New York and made pursuant to the laws of the State of New York.  Except as otherwise provided in Article "8" of this Escrow Agreement, the parties agree that they shall be deemed to have agreed to binding arbitration in New York, New York with respect to the entire subject matter of any and all disputes relating to or arising under this Agreement including, but not limited to, the specific matters or disputes as to which arbitration has been expressly provided for by other provisions of this Agreement.  Any such arbitration shall be by and pursuant to the rules then obtaining of the American Arbitration Association in New York, New York.  In all arbitrations, judgment upon the arbitration award may be entered in any court having jurisdiction.    The parties specifically designate the Courts in the City, County and State of New York as properly having venue for any proceeding to confirm and enter judgment upon any such arbitration award.  The parties hereby consent to and submit to personal jurisdiction over each of them by Courts of the State of New York in any action or proceeding to enforce the arbitration award, waive personal service of any and all process and specifically consent that in any such action or proceeding, any service of process may be effectuated upon any of them by certified mail, return receipt requested in accordance with Article "15" of this Agreement.  The parties agree, further, that the prevailing party in any such arbitration as determined by the arbitrators shall be entitled to such costs and attorney's fees, if any, in connection with such arbitration as may be awarded by the arbitrators; provided, however, that if a proceeding is commenced to confirm and enter a judgment thereon by the Courts of the State of New York and such application is denied, no such costs or attorney's fees shall be paid.  In connection with the arbitrators' determination for the purpose of which party, if any, is the prevailing party, they shall take into account all of the factors and circumstances including, without limitation, the relief sought, and by whom, and the relief, if any, awarded, and to whom.

18.    The parties to this Escrow Agreement agree to execute any and all such other and further instruments and documents, and to take any and all such further actions reasonably required to effectuate this Escrow Agreement and the intents and purposes hereof.

19.    This Escrow Agreement shall be binding upon and inure to the benefit of the parties hereto and their heirs, executors, administrators, personal representatives, successors and assigns.

20.    This Escrow Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.

21.    The persons executing this Escrow Agreement hereby represent that each is duly authorized to enter into this Escrow Agreement in the capacity specified, and upon request, will provide documentation to the Escrow Agent and the other party which supports his or her authority to enter into this Escrow Agreement.

Please sign the attached counterpart of this Escrow Agreement where indicated below to acknowledge your agreement with the foregoing.

Very truly yours,

Mintz & Fraade, P.C.

By: _____

Alan P. Fraade

Scantek Medical, Inc.

By: _____

Dr. Zsigmond Sagi, President

_____

Doug Bowen

## PERSONAL GUARANTEE

Scantek Medical Inc. (the "Payor") has issued to Doug Bowen (the "Payee") a promissory note (the "Promissory Note") executed simultaneously with this Personal Guarantee, a copy of which is annexed hereto and made a part hereof as Exhibit "A".

1.    Obligation.    In order to induce the Payee to make a loan to the Payor pursuant to the Promissory Note and for other good and valuable consideration, Zsigmond L. Sagi, the President and CEO of the Payor (the "Guarantor"), hereby unconditionally guarantees to the Payee, his successors, and assigns, and to every subsequent holder of the Promissory Note, regardless of the genuineness, validity, regularity or enforceability thereof, or of the obligation evidenced thereby, and regardless of any other circumstance, that all sums stated in the Promissory Note shall be promptly paid in full, and that all obligations of the Payor be timely complied with, in accordance with the provisions of the Promissory Note, whether at maturity, by acceleration or otherwise, and, in the event of any extension of time of payment or renewal in whole or part, all sums shall be promptly paid when due according to such extension or extensions or renewal.

2.    Consent.    The Guarantor hereby consents that at any time without notice to him, payment of any sums pursuant to the Promissory Note may be extended, or the Promissory Note may be renewed in whole or in part, or any party to this Promissory Note may be released, and that any of the acts mentioned in this Promissory Note may be done, without affecting the liability of the Guarantor.

3.    Expenses.    In addition to the amounts guaranteed hereunder, the Guarantor agrees to pay attorney's fees and all other costs and expenses incurred by Payee in enforcing this Personal Guarantee or in any action or proceeding arising out of, or relating to, this Personal Guarantee.

4.    Waiver.    The Guarantor hereby waives presentment, demand for payment by the maker or anyone else, protest, and notice of non-payment, dishonor, or protest of the Promissory Note, and all other notices and demands.

5.    Termination.    This Personal Guarantee shall terminate when all obligations of the Payor pursuant to the Promissory Note have been satisfied in full.

6.    Governing Law.    This Personal Guarantee shall be construed, governed, applied and enforced in accordance with the laws of the State of New York.

Dated: April  8 , 2003

_____
Zsigmond L. Sagi

MINTZ & FRAADE, P. C.

COUNSELORS AT LAW

488 MADISON AVENUE

NEW YORK, NEW YORK 10022

TELEPHONE

(212) 486-2500

TELECOPIER

(212) 486-0701

OF COUNSEL

JAY D. FISCHER
ARTHUR L. PORTER, JR
MELVIN L. LEBOW
JON M. PROBSTEIN
MARTIN L. LERNER

September 19, 2003

By Hand

Mr. Doug Bowen
Clarion Partners
230 Park Avenue, 12th Fl
New York, New York 10169

Re: Scantek Medical, Inc.

Dear Doug:

     I am enclosing original executed counterparts of the following documents in connection with your and Ed Rotter's investment in Scantek Medical, Inc.: (A) Subscription Agreement, (B) Promissory Note, (C) Escrow Agreement, and (D) Personal Guarantee. Your email to me dated September 11, 2003 accusing us of not following your directions is inaccurate. Your memo dated April 10, 2003 instructed that the funds can be released upon execution of the documents. As instructed, the funds were released upon the receipt of executed documents from our client, which were received by facsimile. It is common practice to accept facsimile signatures and you did not specify that you required original signatures.

     If you have any questions, please contact me.

Very truly yours,

Mintz & Fraade, P.C.

By: _Alan P. Fraade_

Alan P. Fraade

APF:msb
cc: Scantek Medical, Inc.
Encls.

N:\Clients\Scantek Medical Inc\Bridge Financing\Bowen\Ltr.Bowen.response.doc

# EXHIBIT L

Scantek Medical, Inc.
4B Wing Drive
Cedar Knolls, NJ 07927

January 31, 2005

Mr. Ed Rotter
570 Lexington Avenue
New York, NY 10022

Re:Scantek Medical, Inc. - $12,500 Loan

Dear Ed:

This letter (this "Letter Agreement") shall confirm the understanding and agreement by and between Scantek Medical, Inc. ("Scantek") and you with respect to the following (the "Loan Documents"): (i) the Subscription Agreement dated April 1, 2003 by and between you and Scantek; (ii) the Promissory Note dated April 8, 2003 in the principal sum of twelve thousand five hundred ($12,500) dollars which was issued to you by Scantek; (iii) the Escrow Agreement dated April 8, 2003 by and among, Scantek, Mintz & Fraade, P.C. ("M&F") and you; and (iv) the Personal Guarantee issued to you by Dr. Zsigmond L. Sagi.

1.    Scantek has agreed to pay you upon the execution of this Letter Agreement and you have agreed to accept fifteen thousand two hundred seventeen dollars and sixty-two cents ($15,217.62) representing full payment of the principal and accrued interest.

2.    Scantek has agreed to issue to you, upon the earlier to occur of (A) ten (10) days after Scantek increases its authorized shares or (B) April 30, 2005, and you have agreed to accept five hundred thousand (500,000) shares of common stock, par value $.001 of Scantek (the "Common Stock") in full satisfaction of the shares to be issued to you pursuant to the terms of the Subscription Agreement. You shall receive certificates for the five hundred thousand (250,000) shares of common stock as follows: (A) 13,000 shares dated April 8, 2003, (B) 3,000 shares dated July 14, 2003 (C) 30,000 shares per month with a date commencing August 6, 2003 until May 6, 2004, (D) 28,000 shares per month with a date commencing June 6, 2004 until November 6, 2004 and (E) 16,000 shares dated December 22, 2004.

3.    You have been advised by Mark Step that Scantek contemplates that there will be a reverse stock split shortly and have requested that the number of shares of Common Stock to be received by you pursuant to Article "2" of this Letter Agreement not be reduced as a result of said contemplated reverse stock split to less than one hundred thousand (100,000) shares of Common Stock. Accordingly, Scantek has agreed that it will not, as a result of said contemplated reverse stock split, reduce the number of shares of Common Stock to be received by you pursuant to Article "2" of this Letter Agreement to less than one hundred thousand (100,000) shares of Common Stock.

4.    You agree and acknowledge that upon receipt of (A) the payment set forth in Article "1" of this Letter Agreement and (B) the shares of Common Stock set forth in Article "2" of this Letter Agreement that you have no claims whatsoever against Dr. Zsigmond L. Sagi, Scantek or Mintz & Fraade, P.C. or any of their respective Affiliates (as defined in Rule 405 which was promulgated under the Securities Act of 1933, as amended) for any causes of action which you ever had, now have or

hereafter can, shall or may, have for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this Letter Agreement. Without limiting the foregoing sentence, you agree that:

A. Scantek has fully satisfied all of its obligations to you pursuant to the Loan Documents;

B. The Escrow Agreement is terminated and the obligations of M&F have been fully satisfied; and

C. Dr. Zsigmond L. Sagi is released from any obligations which he may have pursuant to the Personal Guarantee.

5.   Upon the receipt of the payment set forth in Article "1" of this Letter Agreement, you shall deliver the cancelled Promissory Note to Scantek;

This Letter Agreement contains the entire agreement between the parties and supersedes all prior agreements and understandings. This Letter Agreement may not be altered, changed or modified, except by a written instrument signed by each of the parties to this Letter Agreement. The validity, interpretation, and performance of this Letter Agreement shall be controlled by and construed under and in accordance with the laws of the State of New York without giving effect to conflict of laws. This Letter Agreement shall be binding upon each of the parties to this Letter Agreement, and upon their respective successors and assigns.

If this Letter Agreement accurately reflects our agreement, please sign where indicated below.

Scantek Medical, Inc.

By: _____

Dr. Zsigmond L. Sagi, President

Agreed and Accepted:

_____
Ed Rotter

2

Mr. Ed Rotter
570 Lexington Avenue
New York, NY 10022

January 31, 2005

Mintz & Fraade, P.C.
488 Madison Avenue
New York, NY 10022

Re: Scantek Medical, Inc. - Letter
Agreement

Gentlemen:

I understand that you are representing Scantek Medical, Inc. ("Scantek") in connection with the letter agreement (the "Letter Agreement") to be entered into by and between Scantek and me with respect to the full satisfaction and settlement of (i) the Promissory Note dated April 8, 2003 in the principal sum of twelve thousand five hundred ($12,500) dollars which was issued to me by Scantek and (ii) certain other loan documents.

I further understand that your firm has drafted the Letter Agreement, and that the Letter Agreement was drafted by your firm in its capacity as attorneys for Scantek.

I have been advised by your firm that your firm is not representing me in connection with the Letter Agreement. In addition, your firm urged me to retain counsel in connection with the Letter Agreement. Further, your firm advised me that it would be pleased to postpone the date set for the execution of the Letter Agreement so that I could obtain counsel.

Very truly yours,

Ed Rotter

# EXHIBIT M

# SCANTEK MEDICAL INC

# FORM 8-K
### (Current report filing)

## Filed 07/30/04 for the Period Ending 07/15/04

| | |
|---|---|
| Address | 321 PALMER ROAD |
| | DENVILLE, NJ 079834 |
| Telephone | 9733665250 |
| CIK | 0000926229 |
| Symbol | SKML |
| SIC Code | 5047 - Medical, Dental, and Hospital Equipment and Supplies |
| Industry | Medical Equipment & Supplies |
| Sector | Technology |
| Fiscal Year | 06/30 |

http://access.edgar-online.com
© Copyright 2008, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

# SECURITIES AND EXCHANGE COMMISSION

Washington, D. C. 20549

# Form 8-K

**CURRENT REPORT**

Pursuant to Section 13 or 15(d) of the Securities
Exchange Act of 1934 Date of Report (Date of
earliest event reported): July 15, 2004

# Scantek Medical, Inc.

...................................................................
(Exact name of registrant as specified in its charter)

| Delaware | 000-27592 | 84-1090126 |
|---|---|---|
| (State or other jurisdiction of incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

**4B WING DRIVE, CEDAR KNOLLS, NEW JERSEY 07927**
.............................................................
(Address of principal executive offices) (Zip Code)

Registrant's telephone number, including area code.............. (973) 401-0434

............................................................................
(Former name or former address, if changed since last report.)

Scantek Medical, Inc. ("Scantek") entered into a Consulting Agreement dated as of the 15th day of July 2004 with Robert Rubin ("Rubin") pursuant to which Rubin shall provide Scantek with services for a term of three years which, include, but are not limited to, (A) advising Scantek in connection with marketing, management and financing strategies, (B) introducing Scantek to banks, lenders and other financing resources, (C) advising Scantek in connection with structuring business acquisitions and assisting Scantek in negotiations for the acquisition of merger candidates, (D) strategic alliances, (E) business development and business advertising, and (F) such other matters as Scantek shall from time to time request.

Scantek shall issue approximately 14% of the issued and outstanding shares of common stock, par value $.001 of Scantek (the "Common Stock") amongst the Rubin Family Trust and Rubin and/or his designees.

On July 15, 2004, Scantek also entered into a financing agreement (the "Financing Agreement") with Margery C. Rubin and Robert Schulman, as Trustees of the Rubin Family Irrevocable Stock Trust (the "Rubin Family Trust") and Rubin which, among other terms, provides for Scantek to receive $500,000 in financing through the issuance of convertible debt, $200,000 of which was loaned by the Rubin Family Trust upon the execution of the Financing Agreement, with the balance of $300,000 to be received on or prior to August 13, 2004.

The convertible debt shall be convertible into a maximum of approximately 4% of the issued and outstanding shares of Common Stock. The convertible debt shall be due within 18 months after issuance and shall bear interest at 7% per annum. The lenders, as consideration for the loan, shall also receive shares of Common Stock for an aggregate of less than 2% of the issued and outstanding shares of Common Stock.

Pursuant to the terms of the Financing Agreement, Scantek agreed to convert $1,327,000 in accrued wages it owes to its President, Dr. Zsigmond Sagi into approximately 50% of the issued and outstanding shares of Common Stock, a portion of which, currently anticipated to be 25% of the shares to which Dr. Sagi is entitled, shall be assigned to third parties, including, but not limited to, an officer of Scantek. Scantek also agreed to convert $3,422,635 in loans which it owes to Dr. Sagi into shares of convertible preferred stock par value $1.00. The convertible preferred stock shall (A) pay a dividend of two (2%) percent above the prime rate of interest announced by Citibank, N.A., as adjusted from time to time; provided, however, that the dividend shall not exceed seven and one-half (7.5%) percent, (B) be convertible for a period of five (5) years into between approximately 4.9 % and 19.6% of the issued and outstanding shares of Common Stock depending upon when the convertible preferred stock is converted and (C) upon liquidation or dissolution of Scantek, have a liquidation priority equal to the par value of the shares.

On July 30, 2004, Scantek issued a press release announcing that it had entered into the foregoing agreements.

2

**Item 7. Exhibit Index.**

Exhibit 1 - Consulting Agreement by and between Robert Rubin and Scantek dated as of the 15th day of July 2004.

Exhibit 2 - Letter Agreement by and among Margery C. Rubin and Robert Schulman, as Trustees of the Rubin Family Irrevocable Stock Trust, Robert Rubin and Scantek dated July 15, 2004.

Exhibit 3 - Scantek press release dated July 30, 2004.

3

**SIGNATURES**

Pursuant to the requirements of the Securities Exchange Act of 1934, the Registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

**Scantek Medical, Inc.**

a Delaware corporation

```
Date: July 30, 2004                    By: /s/ Zsigmond Sagi
                                           ---------------------------
                                           Dr. Zsigmond Sagi, President
```

4

# EXHIBIT N

EDGAR pro
by EDGAR Online

# SCANTEK MEDICAL INC
## Reported by
## SABELLA ANGELA C

## FORM 3
### (Initial Statement of Beneficial Ownership)

## Filed 12/23/03 for the Period Ending 12/02/03

|  |  |
|---|---|
| Address | 321 PALMER ROAD |
|  | DENVILLE, NJ 079834 |
| Telephone | 9733665250 |
| CIK | 0000926229 |
| Symbol | SKML |
| SIC Code | 5047 - Medical, Dental, and Hospital Equipment and Supplies |
| Industry | Medical Equipment & Supplies |
| Sector | Technology |
| Fiscal Year | 06/30 |

http://access.edgar-online.com
© Copyright 2008, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

## FORM 3

OMB APPROVAL

OMB Number: 3235-0104
Expires: January 31, 2005
Estimated average burden
hours per response... 0.5

**UNITED STATES SECURITIES AND EXCHANGE COMMISSION**
**Washington, D.C. 20549**

## INITIAL STATEMENT OF BENEFICIAL OWNERSHIP OF SECURITIES

Filed pursuant to Section 16(a) of the Securities Exchange Act of 1934, Section 17(a)
of the Public Utility Holding Company Act of 1935 or Section 30(h) of the
Investment Company Act of 1940

| 1. Name and Address of Reporting Person * <br><br> **SABELLA ANGELA C** <br><br> (Last)  (First)  (Middle) <br><br> **853 EAST VALLEY BOULEVARD, SUITE 200** <br> (Street) <br><br> **SAN GABRIEL,CA 91776** <br><br> (City)  (State)  (Zip) | 2. Date of Event Requiring Statement (MM/DD/YYYY) <br> **12/2/2003** | 3. Issuer Name **and** Ticker or Trading Symbol <br><br> **SCANTEK MEDICAL INC [SKML.PK]** |
|---|---|---|

| 4. Relationship of Reporting Person(s) to Issuer (Check all applicable) |
|---|
| _____ Director                     __ X __ 10% Owner <br> _____ Officer (give title below)      _____ Other (specify below) |

| 5. If Amendment, Date Original Filed (MM/DD/YYYY) | 6. Individual or Joint/Group Filing (Check Applicable Line) <br> _ X _ Form filed by One Reporting Person <br> ____ Form filed by More than One Reporting Person |
|---|---|

### Table I - Non-Derivative Securities Beneficially Owned

| 1.Title of Security (Instr. 4) | 2. Amount of Securities Beneficially Owned (Instr. 4) | 3. Ownership Form: Direct (D) or Indirect (I) (Instr. 5) | 4. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|
| **Common Stock** | **2000000** | **D** | |
| **Common Stock** | **4025000** | **I** | **By Accordant Holdings LLC** (1) |

### Table II - Derivative Securities Beneficially Owned ( *e.g.* , puts, calls, warrants, options, convertible securities)

| 1. Title of Derivate Security (Instr. 4) | 2. Date Exercisable and Expiration Date (MM/DD/YYYY) | | 3. Title and Amount of Securities Underlying Derivative Security (Instr. 4) | | 4. Conversion or Exercise Price of Derivative Security | 5. Ownership Form of Derivative Security: Direct (D) or Indirect (I) (Instr. 5) | 6. Nature of Indirect Beneficial Ownership (Instr. 5) |
|---|---|---|---|---|---|---|---|
| | Date Exercisable | Expiration Date | Title | Amount or Number of Shares | | | |

**Explanation of Responses:**

( **1** )  The Reporting Person is the controlling individual of Accordant Holdings, LLC.

**Reporting Owners**

| Reporting Owner Name / Address | Relationships | | | |
|---|---|---|---|---|
| | Director | 10% Owner | Officer | Other |
| **SABELLA ANGELA C** <br> **853 EAST VALLEY BOULEVARD** | | **X** | | |

**Signatures**

/s/ Angela C. Sabella

** Signature of Reporting

12/2/2003

Date

**SUITE 200**
**SAN GABRIEL, CA 91776**

Reminder: Report on a separate line for each class of securities beneficially owned directly or indirectly.

\*        If the form is filed by more than one reporting person, *see* Instruction 5(b)(v).

\*\*       Intentional misstatements or omissions of facts constitute Federal Criminal Violations. *See* 18 U.S.C. 1001 and 15 U.S.C. 78ff(a).

Note:   File three copies of this Form, one of which must be manually signed. If space is insufficient, *see* Instruction 6 for procedure.

Persons who respond to the collection of information contained in this form are not required to respond unless the form displays a currently valid OMB control number.

**End of Filing**



**© 2005 | EDGAR Online, Inc.**

**EDGAR** pro
by EDGAR Online®

# SCANTEK MEDICAL INC
## Filed by
## ACCORDANT HOLDINGS LLC

# FORM SC 13D
### (Statement of Beneficial Ownership)

## Filed 02/04/04

| | |
|---:|:---|
| Address | 321 PALMER ROAD |
| | DENVILLE, NJ 079834 |
| Telephone | 9733665250 |
| CIK | 0000926229 |
| Symbol | SKML |
| SIC Code | 5047 - Medical, Dental, and Hospital Equipment and Supplies |
| Industry | Medical Equipment & Supplies |
| Sector | Technology |
| Fiscal Year | 06/30 |

http://access.edgar-online.com
© Copyright 2008, EDGAR Online, Inc. All Rights Reserved.
Distribution and use of this document restricted under EDGAR Online, Inc. Terms of Use.

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

**SCHEDULE 13D**

**Under the Securities Exchange Act of 1934**

# SCANTEK MEDICAL, INC.
(Name of small business issuer in its charter)

Common Stock, par value $0.001 per share
(Title of Class of Securities)

444882104
(CUSIP Number)

Accordant Holdings, LLC
853 East Valley Boulevard, Suite 200
San Gabriel, CA 91776
(tel. No. (626) 280-2825)

(Name, Address and Telephone Number of Person Authorized to
Receive Notices and Communications)

November 14, 2003
(Date of Event which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report the acquisition that is the subject of this Schedule 13D, and is filing this schedule because of 240.13d-1(e), 240.13d-1(f) or 240.13d-1(g), check the following box. [ ]

NOTE: Schedules filed in paper format shall include a signed original and five copies of the schedule, including all exhibits. See Rule 240.13d-7 for other parties to whom copies are to be sent.

*The remainder of this cover page shall be filled out for a reporting person's initial filing on this form with respect to the subject class of securities, and for any subsequent amendment containing information which would alter disclosures provided in a prior cover page.

The information required on the remainder of this cover page shall not be deemed to be "filed" for the purpose of Section 18 of the Securities Exchange Act of 1934 ("Act") or otherwise subject to the liabilities of that section of the Act but shall be subject to all other provisions of the Act (however, see the Notes.)

1

```
CUSIP No.: 444882104

-----------------------------------------------------------------------------
            (1)     Names of Reporting Persons I.R.S. Identification Nos.
                    of Above Persons (entities only)

                    Accordant Holdings, LLC
-----------------------------------------------------------------------------
            (2)     Check the Appropriate Box if a Member of a Group
                    (See Instructions)

                    (a)     Not Applicable

                    (b)     Not Applicable
-----------------------------------------------------------------------------
            (3)     SEC Use Only
-----------------------------------------------------------------------------
```

```
                    (4)      Source of Funds (See Instructions) - WC
          ----------------------------------------------------------------
                    (5)      Check if Disclosure of Legal Proceedings is Required
                             Pursuant to Items 2(d) or 2(e) -

                    [ ]
          ----------------------------------------------------------------
                    (6)      Citizenship or Place of Organization - Delaware
          ----------------------------------------------------------------
  Number
    of              (7)      Sole Voting Power - 6,025,000
  Shares
Beneficially        ----------------------------------------------------------
  Owned            (8)      Shared Voting Power - Not Applicable
  by Each
 Reporting          ----------------------------------------------------------
  Person           (9)      Sole Dispositive Power - 6,025,000
   with
                    ----------------------------------------------------------
                    (10)     Shared Dispositive Power - Not Applicable
          ----------------------------------------------------------------
                    (11)     Aggregate Amount Beneficially Owned by Each Reporting
                             Person - 6,025,000
          ----------------------------------------------------------------
                    (12)     Check if the Aggregate Amount in Row (11) Excludes
                             Certain Shares (See Instructions) - Not Applicable
          ----------------------------------------------------------------
                    (13)     Percent of Class Represented by Amount in Row
                             (11) - 13.5 %
          ----------------------------------------------------------------
                    (14)     Type of Reporting Person (See Instructions)

                             OO
          ----------------------------------------------------------------
```

2

**Item 1. Security and Issuer**

The title of the class of equity securities of Scantek Medical, Inc., a Delaware corporation (the "Company"), to which this statement relates is the Company's Common Stock, par value $.001 per share (the "Common Stock"). The address of the principal executive office of the Company is 4B Wing Drive, Cedar Knolls, NJ 07927.

**Item 2. Identity and Background**

(a) The Reporting Person is Accordant Holdings, LLC.

(b) The business address of Accordant Holdings, LLC is 853 East Valley Boulevard, Suite 200, San Gabriel, CA 91776.

(c) Accordant Holdings, LLC is a private company. Its principal business is investments, including but not limited to, real estate and financing.

(d) During the last five years, neither Accordant Holdings, LLC nor any of the officers, Members or Managers of the Accordant Holdings, LLC has not been convicted in a criminal proceeding.

(e) During the last five years, neither Accordant Holdings, LLC nor any of the officers, Members or Managers of the Accordant Holdings, LLC was a party to a civil proceeding of a judicial or administrative body of competent jurisdiction and as a result of such proceeding was not and is not subject to a judgment, decree or final order enjoining future violations of or prohibiting or mandating activities subject to, federal or state securities laws or finding any violation with respect to such laws.

(f) N/A

**Item 3. Source and Amount of Funds or Other Consideration**

6,025,000 shares of Common Stock which are included in this statement were issued to Accordant Holdings, LLC in connection with a loan to the Company.

**Item 4. Purpose of Transaction**

Accordant Holdings, LLC acquired the shares of Common Stock for investment purposes and holds the shares of Common Stock for investment purposes. From time to time, Accordant Holdings, LLC may acquire additional shares of Common Stock or dispose of some or all shares of Common Stock owned by Accordant Holdings, LLC.

Accordant Holdings, LLC has no other plans, which relate to or would result in any of the items listed in paragraphs (a) through (j) of Item 4.

3

**Item 5. Interest in Securities of the Issuer**

(a) As of the date hereof, Accordant Holdings, LLC is the holder of 6,025,000 shares of Common Stock, or 13.5% of the Company's issued and outstanding shares of Common Stock.

(b) Accordant Holdings, LLC has the power to direct the vote and the power to direct the disposition of the 6,025,000 shares of Common Stock that it beneficially owns;

(c) Not Applicable.

(d) No person other than Accordant Holdings, LLC is known to have the right to receive or the power to direct the receipt of dividends from, or the proceeds from the sale of the securities.

(e) Not Applicable.

**Item 6. Contracts, Arrangements, Understandings or Relationships with Respect to Securities of the Issuer**

Not Applicable

**Item 7. Material to be filed as Exhibits**

Not Applicable

**Signature.**

After reasonable inquiry and to the best of my knowledge and belief, I certify that the information set forth in this statement is true, complete and correct.

Dated: January 29, 2004

<div align="center">

**Accordant Holdings, LLC**

By:  /s/ Angela C. Sabella
---------------------
    Angela C. Sabella

</div>