UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

              Index No.: 08 CV 00453 (CM)

       Plaintiff,

              **AFFIDAVIT**

 -against-

ANGELA CHEN SABELLA and
ACCORDANT HOLDINGS, LLC,

       Defendants and
       Third-Party Plaintiffs,

 -against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

       Third-Party Defendants.
------------------------------------------------------------------X
State of New York )
       ) ss.:
County of New York)

Frederick M. Mintz, being duly sworn, deposes and says:

 1. At all times relevant to this action through the date hereof, Mintz & Fraade, P.C. ("M&F"), the law firm of which I am a member, has acted as attorneys for the Plaintiff Scantek Medical, Inc. (hereinafter referred to as "Scantek" or "Plaintiff"). I am also a Third Party Defendant in this action as an individual, and I am a member of Third Party Defendants Mintz & Fraade, P.C. ("M&F"), and Mintz & Fraade Enterprises, LLC. I am fully familiar with the facts stated in this affidavit and know the same to be true to my own knowledge. I am fully familiar with the pleadings and proceedings heretofore had herein and the matters hereinafter set forth.

1

2. This affidavit is being submitted in support of the Motion to Dismiss certain of the Counterclaims and certain Counts of Third Party Complaint by the Plaintiff's and Third Party Defendants M&F, Alan P. Fraade, Mintz & Fraade Enterprises, LLC, Zsigmond L. Sagi, Gibraltar Global Marketing, LLC and me (collectively, the "Third Party Defendants"). For a more complete recitation of the facts underlying this action, please see the accompanying affidavit of Alan P. Fraade dated May 23, 2008, the affidavit of Patricia Furness dated May 23, 2008, and the declaration of Zsigmond L. Sagi, dated May 23, 2008. In brief however, the Plaintiff's Complaint seeks a declaratory judgment rendering certain financing transactions void or unenforceable as a result of their violation of the criminal usury statutes of the State of New York.

3. Throughout the entire negotiation process and the execution of the Documents, the Defendants were advised by Mark Stepniewski (a/k/a Mark Step), who negotiated with Plaintiff on Defendants' behalf, and holds himself out as a sophisticated adviser and consultant to wealthy individuals with respect to investments. Mr. Stepniewski introduced the Defendants to Plaintiff.

4. I had known Mr. Stepniewski for many years when I introduced Plaintiff to Mr. Stepniewski. In his capacity as a consultant, on behalf of the Defendants and other clients, Mr. Stepniewski routinely made introductions between his clients and various businesses in need of financing. I inquired whether Mr. Stepniewski knew any investors who might be interested in investing in Plaintiff. This is when Mr. Stepniewski introduced Plaintiff to Defendants.

5. As is typical in most financing transactions, the party with the most leverage and

bargaining power is the lender, in this case the Defendants. From my experience, this is particularly true with development stage businesses, which are unlikely to have the credit-worthiness or collateral to borrow upon "typical" terms and interest rates.

6. The Plaintiff in this action, Scantek Medical, Inc., was in desperate need of funds in order to continue its operations. I, along with Third Party Defendant Dr. Zsigmond L. Sagi, the CEO of the Plaintiff, met with Mr. Stepniewski (acting on Defedendants' behalf) to negotiate terms of the transactions. Ultimately, as one would expect, the terms of the Documents which were demanded by Defendants, were agreed to by Plaintiff because Defendants had tremendous leverage with respect to the transactions. I never had any conversations with the Defendants in connection with the three promissory notes dated April 25, 2002, August 20, 2002 and February 20, 2003 (the "Loans") which are the subject of the Complaint. All negotiations were with Mr. Stepniewski alone.

7. The Defendants' suggestion that they "relied upon" our advice is without any basis in reality. Lenders to development stage businesses do not permit borrowers to structure the terms of financing agreements, and the instant matter is no exception. I doubt that any corporate attorney would recommend the harsh terms for their own client set forth in the Loans, much less agree to such terms if not out of absolute necessity. I can assure you that, if the Plaintiff had any bargaining power whatsoever, the terms would have been much more favorable to them, and certainly would not constitute a violation of criminal usury statutes. Furthermore, there were never any agreed upon terms with respect to additional monies advances by the Defendants to the Plaintiff set forth in Paragraph 100 of the Answer and Counterclaims.

8. Further, Defendants' suggestion that they "relied upon" M&F or its members ir equally absurd. We had very limited contact with the Defendants. The negotiations for the transactions giving rise to this matter were primarily conducted with Mr. Stepniewski alone. How could the Defendants have "relied upon" us when there was almost no communications between us?

9. In any event, the Defendants claims of malpractice against me and my firm are barred by the statute of limitations. M&F did represent Defendant Sabella with respect to the following two transactions which commenced after the promissory from the Defendants to the Plaintiff on April 25, 2002: A) one was a financing transaction which never materialized and was totally unrelated to the Plaintiff and B) the other involved the filing of a Form 3 and Schedule 13-D with respect to the stock issued to the Defendants in connection with the Loans. In view of the fact that Defendants did not have securities counsel, Mr. Stepniewski requested that we file this paperwork upon Defendant Sabella's behalf, which consisted of completing each form with Defendants basic contact information and her ownership of securities. Each of these actions taken by M&F was completed well prior to three years before the Defendants' February 26, 2008 filing of the Counterclaims, and accordingly is barred by the applicable statute of limitations of three years. In addition, with respect to the services for the Defendants set forth in this paragraph, I do not recall ever communicating with the Defendants directly; in each instance I communicated solely with Mr. Stepniewski. The Defendants never communicated any confidential information.

10. My only direct communication with the Defendants with respect to the Plaintiff occurred on February 10, 2004, when I accompanied Dr. Sagi to meet with Defendant

4

Sabella and Mr. Stepniewski in California. Our discussions during this meeting were with respect to converting Plaintiff's obligations to the Defendants into forty eight (48%) percent equity of an entity which would have distribution rights of the Plaintiff's medical device into a substantial portion of Asia. This transaction never materialized. The Plaintiff paid for all of my expenses in connection with this trip.

11. In addition, much of the Defendants' counterclaims and third party complaint is predicated upon an alleged scheme to issue unenforceable securities and rely upon the criminal usury statute of New York to void such securities. The Defendants' claim that part of this alleged scheme was to misrepresent the Plaintiff's prospects of securing contracts to sell the Plaintiff medical device in Brazil. Based upon my personal knowledge, I can attest that such allegations are unfounded and without merit.

12. For example, I had direct conversations with Mr. Stepniewski, along with Dr. Zsigmond L. Sagi, the CEO of the Plaintiff, with respect to reaching an amicable settlement. In fact, the Plaintiff and the Defendants had basically agreed upon terms of a settlement, which would have placed a substantial burden upon the Plaintiff, when the Defendants current attorney requested additional terms which were impossible for the Plaintiff to meet.

13. Notwithstanding the foregoing, even if the claims of Defendants' had a scintilla of accuracy, the Defendants claims based upon fraud are barred by the statute of limitations. That is, the Defendant was well aware significantly in excess the two year period proscribed by the law to bring this action that no sales in Brazil were made. Initially, the August 2002 Promissory Note granted Defendant Sabella "$.475 for each of the

Plaintiff's medical device sold in Brazil until the principal and interest were paid in full." In view of the fact that no payments were made pursuant to this provision, the Defendants would have been aware by the February 20, 2003, maturity date of the note, that, if a fraud had occurred, and accordingly, if their allegations had any merit.

14. More important, I had conversations with Mr. Stepniewski on numerous occasions including, but not limited to, in or about February 2003 and informed him that no sales had been made in Brazil. Accordingly, based upon my conversations with Mr. Stepniewski, Defendants were aware that no sales had been made in Brazil. Accordingly, the statute of limitations would have begun to run at this time, which would have expired well before the two years prior to date that the Counterclaims was filed on February 26, 2008.

**WHEREFORE**, it is respectfully submitted that the Court grant the Plaintiff and Third Party Defendants Motion to Dismiss Counterclaim IV, V, VI and VII and Counts IV, V, VI, VII, VIII, IX and X of the Third Party Complaint, and that the Court grant such other and further relief as to it may seem just and proper.

_____
Frederick M. Mintz

Sworn to before me this
23rd day of May 2008

_____
Notary Public

GREGORY T. KRAUSS
Notary Public, State of New York
No. 02KR6163224
Qualified in Westchester County
Commission Expires March 19, 2011