UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                                       Plaintiff,

                 -against-                        Index No.: 08 CV 00453 (CM)

ANGELA CHEN SABELLA and
CCORDANT HOLDINGS, LLC,

                               Defendants and
                          Third-Party Plaintiffs,

                 -against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                         Third-Party Defendants.
------------------------------------------------------------------X


**PLAINTIFF AND THIRD PARTY DEFENDANTS MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS CERTAIN OF THE COUNTERCLAIMS
AND COUNTS OF THE THIRD PARTY COMPLAINT**

# TABLE OF CONTENTS

Statement…………………………………………………………….................................  2

I.  Count IX of Defendants' Third Party Complaint Alleging Attorney Malpractice is Barred by the Applicable Statute of Limitations……………………………………………………………………  3

II.  Count X of the Third Party Complaint Alleging Breach of Fiduciary Duty is Barred by the Applicable Statute of Limitations……………………………..  5

III  Counterclaim VI and Count VI of the Third Party Complaint Alleging a Violation of Section 10(b) of the Securities Exchange Act Must Fail as a Result of the Statute of Limitations………………………………………….. 5

IV  Counterclaims V, VI, and VII and Counts V, VI, VII, and VIII of the Third Party Complaint Alleging Common Law Fraud, a Violation of Section 10(b) of the Securities Exchange Act of 1934, Section 20(a) of the Securities Exchange Act, and Negligent Misrepresentations Must Fail Because Defendants Have Failed to Sufficiently Plead the Element of Reliance……..  7

V  Counterclaim IV and Count IV of the Third Party Complaint Must be Dismissed for Defendants' Failure to Plead the Claim of Fraudulent Conveyance with Particularity…………………………………………….. 11

VI  Counterclaim V and Count IV of the Third Party Complaint With Respect to Common Law Must be Dismissed for Defendants Failure to Plead Fraud with Particularity in Accordance with Federal Rule of Civil Procedure 9(b).. 13

   A.  Defendants fail to plead with particularity what purported statements were relied upon to their injury……………………………………….  14

   B.  Defendants fail to plead with particularity that the statements upon which they purported rely were false…………………………………  15

   C.  Defendants Improperly Utilize Allegations Based Upon Information and Belief…………………………………………………………  16

VII  Defendants First Affirmative Defense Alleging Estoppel must be Dismissed because Plaintiff's Alleged Conduct did not Influence the Defendants……...  19

VIII  Defendants' Second Affirmative Defense Alleging Unclean Hands Must be Dismissed For Defendants to Identify the Purported Fraud with Precision…. 20

IX      The Defendants' Second Affirmative Defense of Unclean Hands must be Dismissed Due to the Fact That Plaintiff is not Seeking an Equitable Remedy…………………………………………………………………. 21

X      Counterclaims VI and Count IX of the Third Party Complaint Must be Dismissed Due to the Defendants' Failure to Plead Fraud with Particularity.. 21

XI      Count VIII of the Third Party Complaint Alleging a Violation of Section 20(a) of the Securities Exchange Act Must Fail because Defendants have Failed to State a Cause of Action Upon Which Relief Can be Granted Pursuant to Section 10(b) of the Securities Exchange Act of 1934………….. 22

XII      Defendants' Claims for Punitive Damages Are Legally Insufficient……….. 22

Conclusion.……………………………………………………………………… 23

# TABLE OF AUTHORITIES

## Cases

Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85 (2d Cir. 1999). ...................................... 14

Brown v. Hutton Group, 795 F.Supp. 1317, 1324 (S.D.N.Y. 1992) ............................................ 22

Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson, 434 F.Supp.2d 241 (S.D.N.Y. 2006) .................................................................................................................................. 20

Consolidated Edison, Inc. v. Northeast Utilities, 249 F.Supp.2d 387 (S.D.N.Y. 2003) ................ 8

Creditor Trust v. Daewoo Engineering & Construction Co., Ltd. 375 F.Supp.2d 257 (S.D.N.Y. 2005) ............................................................................................................................ 11

Dodds v. Cigna Securities, Inc., 12 F.3d 346 (2nd. Cir. 1993) ......................................................... 6

Dresner v. Utility.com, Inc, 371 F.Supp.2d 476, Fed. Sec. L. Rep. P 93 (S.D.N.Y. 2005) ............ 8

Dura Pharms., Inc. v. Broudo, 544 U.S. 336 (2005) ....................................................................... 8

Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp, 75 F.Supp.2d 257, (S.D.N.Y. 2005). ............................................................................................................... 11

Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc. 343 F.3d 189, Fed. Sec. L. Rep. P 92, 497 (2nd Cir. 2003) .......................................................................................... 8

Fade v. Pugliani/Fade, 8 AD3d 612, 779 N.Y.S.2d 568 (2d Dept., 2004). .................................. 20

Frank Mgmt., Inc. v. Weber, 145 Misc.2d 995, 549 N.Y.S.2d 317 (1st Dept. 1989) ..................... 4

Funding Group, Inc. v. Water Chef, Inc., 852 N.Y.S.2d 736, 852 N.Y.S.2d 736 (1st Dept 2008). .............................................................................................................................. 18, 19

In re Pfizer, Inc. Securities Litigation 2008 WL 540120, Fed. Sec. L. Rep. P 94,590 (SDNY 2008). ................................................................................................................. 14, 16, 21

J.A.O. Acquisition Corp. v. Stavitsky 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587 (NY 2007) ........ 8

Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996) ................... 15

Lazzaro v. Kelly 57 N.Y.2d 630, 439 N.E.2d 868, 454 N.Y.S.2d 59 (1st Dept 1984). .................. 4

Luce v. Edelstein, 802 F.2d 49 (2d Cir. 1986) .............................................................................. 16

Invacare Supply Group, Inc. v. Englander, 19 Misc.3d 1114(A), 2008 WL 899028 (2008) ...... 15

O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991)................................. 13

Papp v. Debanne, 790 N.Y.S.2d 450, 16 AD3d 128 (1st Dept.2005). ........................................... 5

Pemper v. Reifer, 264 A.D.2d 625, 695 N.Y.S.2d 555 [1st Dep't 1999]...................................... 18

Pew v. Cardarelli 2005 WL 3817472 (N.D.N.Y. 2005) ............................................................. 10

Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 612 N.Y.S.2d 339
(1994)........................................................................................................................................... 22

Ross v. Louise Wise Servs., Inc., 8 N.Y.3d 478 (2007) ................................................................ 8

Rothman v. Gregor, 220 F.3d 81, 97 Fed. Sec. L. Rep. P 91, 007 (2d Cir. 2000)........................ 6

Seidel v. 18 East 17th Street Owners, Inc., 79 N.Y.2d 735, 598 N.E.2d 7, 586 N.Y.S.2d 240
    (1992)....................................................................................................................................... 19

Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124 (2d Cir. 1994)…………………………………..22

Sorenson v. Bridge Capital Corp. 30 A.D.3d 1144, 817 N.Y.S.2d 229 (1st Dept. 2006) ............... 8

## Statutes

28 U.S.C. § 1658(b) ................................................................................................................. 5, 6

CPLR §214(6) ............................................................................................................................... 4

NY Debt & Cred.§272 ................................................................................................................ 12

NY. Debt & Cred. § 273 ............................................................................................................. 12

NY Debt & Cred. §274 ............................................................................................................... 12

## Rules

Fed.R.Civ.P. 9(b) ................................................................................................................... 11, 18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                                    Plaintiff,

            -against-                            Index No.: 08 CV 00453 (CM)

ANGELA CHEN SABELLA and
CCORDANT HOLDINGS, LLC,

                                    Defendants and
                            Third-Party Plaintiffs,

            -against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                                    Third-Party Defendants.
--------------------------------------------------------------------X

**PLAINTIFF AND THIRD PARTY DEFENDANTS MEMORANDUM OF LAW IN
SUPPORT OF THEIR MOTION TO DISMISS CERTAIN OF THE COUNTERCLAIMS
AND COUNTS IN THE THIRD PARTY COMPLAINT**

       Plaintiff Scantek Medical, Inc. ("Scantek") and Third-Party Defendants Zsigmond L.

Sagi ("Sagi") and Gibraltar Global Marketing, LLC ("Gibraltar") by their attorneys Mintz &

Fraade, P.C. and the Law Offices of Edward C. Kramer, P.C., and Third-Party Defendants,

Mintz & Fraade, P.C. ("M&F"), Frederick M. Mintz ("Mintz"), Alan P. Fraade ("Fraade"), and

Mintz & Fraade Enterprises, LLC ("Enterprises"), by their attorney the Law Offices of Edward

C. Kramer, P.C, respectfully submit this Memorandum of Law in support of their motion to

dismiss certain of Defendants' Counterclaims and certain counts of the Third-Party Complaint.

- 1 -

**STATEMENT**

Plaintiff respectfully refers this Court to the Affidavit of Alan P. Fraade dated May 23 2008, (the "Fraade Affidavit"), the Affidavit of Frederick M. Mintz dated May 23 2008, (the "Mintz Affidavit"), the affidavit of Patricia Furness dated May 23, 2008 (the "Furness Affidavit"), and the Declaration of Zsigmond L. Sagi dated May 23, 2008 (the "Sagi Declaration"), each in support of Plaintiffs Motion to Dismiss Defendant's Counterclaims and Third Party Complaint for a full statement of the facts of this matter.

Scantek Medical, Inc. (the "Plaintiff") and Angela Sabella and Accordant Holdings, LLC ("Accordant") (jointly the "Defendants") entered into a series of transactions. In particular, pursuant to promissory notes dated April 25, 2002, August 20, 2002, and February 20, 2003, the Defendants loaned an aggregate of $303,250.80 (the "Loans") to the Plaintiff. Fraade Affidavit, ¶ 3. In addition to the Loans, the Defendants allege to have also advanced an additional $425,000, which was not evidenced by any documentation including, but not limited to, any promissory notes or personal guarantees (the "Additional Advances") Answer & Counterclaim ¶60. (The Loans and the Additional Advances are hereinafter collectively referred to as the "Transactions"). The Plaintiff's Complaint seeks a declaratory judgment rendering the Loans null and void pursuant to New York Penal Law § 190.40 (Complaint ¶¶ 24, 35, 43). It is Plaintiff's position that no terms of the Additional Advances were ever agreed upon.

The terms of the Loans were negotiated and demanded by the Defendants, primarily through a third party consultant and finder, Mr. Mark Stepniewski. Fraade Affidavit ¶11. Mintz

Affidavit ¶¶5,6.  The Plaintiff was in need of funding, and as is typical in financing transactions with emerging businesses, the Plaintiff was forced to agree to the terms and structure of the transactions dictated by the Defendants and Mr. Stepniewski.  Id. The Plaintiff's counsel, Third-Party Defendant Mintz & Fraade, P.C. (M&F) drafted the documents used in the transactions.  Although not known by the Plaintiff or evaluated by its counsel at the time, it was later determined that the terms of the transactions demanded by the Defendants violated the criminal usury laws of New York State.  Fraade Affidavit ¶12.  See also, generally, the Complaint.

Plaintiff has not, except in the instant action, at any time relied upon usury laws to assert that any transaction it has entered into was void or voidable.  Sagi Declaration ¶5

The Plaintiff and the Plaintiff's counsel, Mintz & Fraade, P.C. ("M&F"), are two separate and distinct entities.  The fact that M&F owns shares of the Plaintiff's common stock is irrelevant.  M&F's ownership interest in the Plaintiff is not sufficient to control the Plaintiff.  In fact, M&F does not control the Plaintiff.  Fraade Affidavit ¶12.

The Defendants at no time relied upon the Plaintiff or the Plaintiff's counsel with respect to the Defendants' decision to invest in the Plaintiff, nor did the Defendants rely upon the Plaintiff or the Plaintiff's counsel with respect to the terms of the structure of the Loans. Fraade Affidavit ¶14.  The Defendants are sophisticated and wealthy investors, and demanded and received the structure and the terms of the transaction which they dictated.   Mintz Affidavit ¶¶5, 6.  It is Plaintiff's position that no terms of the Additional Advances were ever agreed upon.

## I.  COUNT IX OF DEFENDANTS' THIRD PARTY COMPLAINT ALLEGING ATTORNEY MALPRACTICE IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

As explained in more detail in the Fraade affidavit, Third Party Defendants M&F, Mintz and Fraade were never attorneys for Defendants in connection with the Transactions.  Fraade

Affidavit ¶¶29-33.  Moreover, the mere fact that the Defendants failed to retain separate counsel does not imply that M&F was their counsel.  Third Party Complaint ¶156.  However, even if this Court were to conclude that an attorney-client relationship existed between Defendants and Third Party Defendants M&F and its members Mintz and Fraade, Defendants claim is barred by the statute of limitations.

Pursuant to the laws of the State of New York, claims for attorney malpractice are governed by a three year statute of limitations. CPLR §214(6).  The last securities issued to Defendants' pursuant to the Loans were issued on February 20, 2003.  See Complaint.  The last of the Additional Advances occurred in May 2004.  Third Party Complaint ¶60.  Accordingly, the statute of limitations on this action for malpractice expired, at the latest, in May of 2007.  Accordingly this claim must be dismissed.

Third-Party Plaintiffs attempt to toll the running of the statute of limitations by indicating that Third Party Defendants M&F, Mintz and Fraade have acted as escrow agents holding certain shares of the Plaintiff's common stock.  Third Party Complaint ¶155  That is, they claim that, as a result of M&F acting as escrow agent, it continued to represent the Defendants.  However, "[s]ervice as an escrow agent does not provide a basis for invocation of the continuous representation doctrine."  Lazzaro v. Kelly 57 N.Y.2d 630, 631, 439 N.E.2d 868, 454 N.Y.S.2d 59 (1st Dept 1984).  See also Frank Mgmt, Inc. v. Weber, 145 Misc.2d 995, 1000, 549 N.Y.S.2d 317 (1st Dept. 1989).

Accordingly, Count IX of the Third Party Complaint is barred by the statute of limitations and should t be dismissed.

## II. COUNT X OF THE THIRD PARTY COMPLAINT ALLEGING BREACH OF FIDUCIARY DUTY IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Breach of fiduciary duty is governed by a three year statute of limitations when money damages are sought.  Papp v. Debanne, 16 AD.3.d 128, 790 N.Y.S.2d 450  (1st Dept.2005).  In view of the fact that more than three years have elapsed since the last of the Transactions (as set forth in Section I), and that Defendants seek money damages, (See Third Party Complaint ¶172) Count X of the Third Party Complaint based upon breach of fiduciary duty is time barred and, accordingly, must be dismissed.

## III. COUNTERCLAIM VI AND COUNT VI OF THE THIRD PARTY COMPLAINT ALLEGING A VIOLATION OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT MUST FAIL AS A RESULT OF THE STATUTE OF LIMITATIONS.

Pursuant to the Sarbanes-Oxley Act of 2002, the statute of limitations for claims arising pursuant to Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934, as amended (the "'34 Act"), is the earlier of (A) two years after the discovery of the facts constituting the violation or (B)  within five years after the alleged violation. See 28 U.S.C. § 1658(b).

Defendants' base their counterclaims upon alleged material misstatements and misrepresentations in connection with Plaintiff's agreement to issue shares of its common stock to Defendants, which occurred during the years 2002 and 2003.  In particular, the Defendants' claim that the false statements that Plaintiff's "sales of medical devices in Brazil had commenced and that Scantek had commenced earnings from such sales which would be used by Scantek to repay its obligations to Sabella and Accordant."

The last securities alleged in the Complaint to have been issued to the Defendants' were issued on February 20, 2003.  The Defendants Counterclaims and Third-Party Complaint were filed on February 26, 2008 and February 27, 2008 respectively.  In view of the fact that more than five (5) years has elapsed since February 20, 2003 and February 26, 2008 filing of the Counterclaims, the claims with respect to Section 10(b) are barred by the Statute of Limitations imposed by 28 U.S.C. § 1658(b).

Even if this Court were to conclude that the Statute of Limitations with respect to alleged violations of Section 10(b) continued was not triggered until after February 20, 2003, Defendants' claims based upon Section 10(b) are still barred because more than two years have elapsed since the discovery of the facts constituting the purported violation.

Pursuant to Defendants' Answer and Counterclaims and Third Party Complaint the August 2002 Promissory Note included a provision which provided that Defendant Sabella was to receive "$.475 for each medical device sold in Brazil until the principal and interest were paid in full."  See Counterclaims ¶148, Third Party Complain. ¶ 112.  The maturity date for such note was February 20, 2003.  See Exhibit "F" to the Fraade Affidavit.  .

"When circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded, duty of inquiry arises, and knowledge will be imputed to investor who does not make such inquiry, for purposes of triggering statute of limitations." Dodds v. Cigna Securities, Inc., 12 F.3d 346, 350 (2nd. Cir. 1993). (See also, Rothman v. Gregor, 220 F.3d 81, 97 Fed. Sec. L. Rep. P 91, 007 (2d Cir. 2000) "we conclude that whether the Appellants' claim against Andersen is time-barred turns on *when,* after obtaining inquiry notice … the Appellants, in the exercise of reasonable diligence, should have discovered the facts underlying the alleged fraud by Andersen").  The Defendants did not inquire or conduct a

reasonable investigation with respect to their claims. As set forth in more detail in the Fraade Affidavit, the Defendant did not receive any monies whatsoever from sales of the Plaintiff's medical device in Brazil, and as set forth in the affidavit of Frederick M. Mintz, Mr. Stepniewski, who acted as Defendants representative, was aware that no sales had been made in Brazil.    Fraade Affidavit ¶28, Mintz Affidavit ¶14.  If a fraud had occurred, an investor of ordinary intelligence would be put on notice that she had been the victim of the purported fraud much more than two years prior to the filings of the Counterclaims when the Defendants did not receive any payments from sales in Brazil by the maturity date of the note, or February 20, 2003, or sometime soon thereafter. That is, in view of the fact that such provision was intended to pay down the August 2002 promissory note, the Defendant had cause to believe in the "probability that she had been defrauded", as the Defendants' claim.  The Defendants' did not conduct any reasonable inquiry after this date, and therefore the statute of limitations has run.  In view of the fact that more than two years elapsed between the maturity date of the note (or sometime soon thereafter) and the commencement of the Defendants' Counterclaims and Third Party Complaint, the statute of limitations, the time period to bring this action has expired.

IV. **COUNTERCLAIMS V, VI, AND VII AND COUNTS V, VI, VII, AND VIII OF THE THIRD PARTY COMPLAINT ALLEGING COMMON LAW FRAUD, A VIOLATION OF SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934, SECTION 20(A) OF THE SECURITIES EXCHANGE ACT, AND NEGLIGENT MISREPRESENTATIONS MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO SUFFICIENTLY PLEAD THE ELEMENT OF RELIANCE.**

In order to state a claim upon which relief can get granted based upon common law fraud, Section 10(b) of the Securities Exchange Act of 1934, as amended (the "'34 Act"), Section 20(a) of the '34 Act, and negligent misrepresentation, the Defendants must plead that they have

reasonably relied upon the purported misrepresentations of the Plaintiff.  See e.g. <u>Ross v. Louise Wise Servs., Inc</u>., 8 N.Y.3d 478, 488 (2007) (with respect to common law fraud),  <u>Dura Pharms., Inc. v. Broudo</u>, 544 U.S. 336, 342 (2005) (with respect to Section 10(b)), <u>J.A.O. Acquisition Corp. v. Stavitsky</u> 8 N.Y.3d 144, 148, 863 N.E.2d 585, 587 (NY 2007) (with respect to negligent misrepresentation).  Based upon the foregoing, the Defendants have failed to plead, or are estopped from pleading, reliance; therefore the Counterclaims V, VI and VII and Counts V, VI, VII and VIII of the Third Party Complaint must be dismissed.

It is well settled law in the Second Circuit that Defendants' cannot now claim to have relied upon information when they previously disclaimed any such reliance.  "The Second Circuit has continued to hold that in appropriate circumstances, sophisticated parties may waive rights to rely on statements made outside an agreement, thereby precluding themselves from alleging fraud on the basis of those statements" <u>Dresner v. Utility.com, Inc</u>, 371 F.Supp.2d 476, Fed. Sec. L. Rep. P 93, 290 (S.D.N.Y. 2005).  <u>Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc</u>. 343 F.3d 189, Fed. Sec. L. Rep. P 92, 497 (2nd Cir. 2003); *see also* <u>Consolidated Edison, Inc. v. Northeast Utilities</u>, 249 F.Supp.2d 387, 402 (S.D.N.Y. 2003).  See <u>Sorenson v. Bridge Capital Corp</u>. 30 A.D.3d 1144, 817 N.Y.S.2d 229 (1st Dept. 2006) ("The merger and other clauses in the contract, whereby plaintiff, as purchaser, acknowledged no reliance on any extra-contractual representations by defendant sellers with respect to plaintiff's purchase of the condominium units, bar consideration of the extrinsic evidence asserted in the complaint.   Hence, the claim for fraud in the inducement was properly dismissed.)

Each of the Subscription Agreements which the Defendants executed in connection with the Loans (in which money was advanced and shares of Scantek common stock were issued as partial consideration) contains a representation by the Defendants that with respect to their

purchase of "Securities" they did not rely upon any representations by the Plaintiff or any other party other than those contained in the Subscription Agreement, or the Plaintiff's filings with the Securities and Exchange Commission ("SEC").    See Exhibits "E", "G" and "I" to Fraade Affidavit .  In each circumstance, "Securities" were defined as both the Promissory Notes and the shares of the Plaintiff's common stock issued as partial consideration for the loans. Id.

Notwithstanding the foregoing representation, the Defendants now claim to have "reasonably relied" upon alleged statements made by the Plaintiff. For example, they allege that Plaintiff and Third Party Defendants made representations that sales of the Plaintiff's medical device were imminent in Brazil.  Answer and Counterclaims ¶152 Third Party Complaint ¶116 In addition, in the Answer and Counterclaims  Paragraphs 153-55 and Third Party Complaint Paragraphs 117-19 the Defendants claim to have relied upon statements that the initial "$100,000 loan by [Defendant] Sabella 'will be used exclusively would be used solely [sic] for [Plaintiff's] Brazilian activates'", that "an order for 100,000 Breastcare unites had been confirmed and would be emitted [sic] with a letter of credit inside 30 days," and that the Plaintiff represented in writing that "a test by INCA (Brazilian National Institute of Cancer)" would start on May 15, 2003.

In view of the fact that such representations, are not contained in the Subscription Agreements or in the Plaintiff's SEC filings, the Defendants purported reliance upon such statements must be disregarded.

Furthermore, The Defendants' cannot justifiably rely upon any statement in the Plaintiff's SEC filings which are not historical facts. The Plaintiff's Annual Report on Form 10-K for the year ended June 30, 2002 and the Quarterly Report on Form 10-Q for the quarter ended March 31, 2003 upon which Defendants purportedly rely (See Counterclaims ¶¶ 101-07, Third-Party

Complaint ¶¶104, 109, 112-15) each contained the following language with respect to forward-looking statements:

> All statements contained herein that are not historical facts, including, but not limited to, statements regarding anticipated growth in revenue, gross margins and earnings, statements regarding the Company's current business strategy, the Company's projected sources and uses of cash, and the Company's expectations, are forward-looking statements in nature and involve a number of risks and uncertainties. Actual results may differ materially. … The Company wishes to caution readers not to place undue reliance on any such forward-looking statements. These statements are made pursuant to the Private Litigation Reform Act of 1995 and, as such, speak only as of the date made.

Each of the statements which the Defendants' purportedly relied upon qualifies as a forward-looking statement. For example, in Paragraph 149 of the Answer and Counterclaims, the Defendants' stated that the Form 10-QSB filed with the SEC on May 20, 2003 "included false statements that Scantek (a) **anticipates** sale of its entire inventory in calendar year 2003, and (b) the Company **expects** cash flow from sales commencing in 2003 to cover operations of the Company through 2003" (emphasis added). The language "expects" or "anticipates" is clear indicia of forward-looking statements, as opposed to historical fact. (See Pew v. Cardarelli 2005 WL 3817472 (N.D.N.Y. 2005) "In any event, the terms "believe" and "expect" cannot reasonably be interpreted otherwise" [than as a forward looking statement].)

The text accompanying the Plaintiff's expectations clearly and unequivocally set forth that "actual results may differ materially." Moreover, the Defendant has not properly pled that the Plaintiff, or its officers or directors, had any knowledge that the statement was false or misleading. As indicated in the Sagi Declaration, at the time the filings with the SEC were made, the Plaintiff reasonably believed that sales to Brazil were imminent. See Sagi Declaration

¶3.  Defendants' claims to the contrary are conclusory and speculative, and as stated in greater detail below, insufficient to plead fraud pursuant to Fed.R.Civ.P. 9(b).

Accordingly, Counterclaims V, VI and VII and Counts V, VI, VII and VIII of the Third Party Complaint should be dismissed

## V.  COUNTERCLAIM IV AND COUNT IV OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED FOR DEFENDANTS' FAILURE TO PLEAD THE CLAIM OF FRAUDULENT CONVEYANCE WITH PARTICULARITY

Defendants' request to "have the Gibraltar Distribution Agreement set aside or annulled" pursuant to Counterclaim IV with respect to fraudulent conveyance must be dismissed.   "A party seeking to set aside a fraudulent conveyance under §276 [of the New York Debtor Creditor Law] must plead an actual intent to defraud with particularity sufficient to meet the heightened standard of  Fed.R.Civ.P. 9(b).   Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp.Creditor Trust v. Daewoo Engineering & Construction Co., Ltd. 375 F.Supp.2d 257, 268 (S.D.N.Y. 2005).  This evidence may consist of: (1) the inadequacy of consideration received in the allegedly fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened or (5) the use of fictitious parties."  Id. at 268-69.

The Defendants' bare bones allegations are insufficient to meet the heightened pleading standards of Fed.R.Civ.P. 9(b).  Defendants apparently rely upon the allegation that "property remaining in Scantek's hands after the conveyance was unreasonably small capital within the meaning of New York Debtor Creditor Law Section 274."  Answer and Counterclaims, ¶133

Third Party Complaint ¶96.  Defendants, however, fails to explain, how such allegation, even if it were true, meets the test set forth above in <u>Eclaire</u> to establish that the compensation was inadequate.  Defendants fail to consider that, as set forth in more detail in the Fraade Affidavit, the agreement by the Plaintiff to receive $5 million in exchange for the sale of a 48% equity interest and a 50% voting interest may have put the Plaintiff in a better position with a larger amount of capital Fraade Affidavit ¶5.

Moreover, the Defendants allegation is totally without any basis in fact.  Gibraltar Global Marketing, LLC ("Gibraltar"), is a limited liability company which was formed by the Plaintiff to own the distribution rights to the Plaintiff's medical device in more than 150 countries throughout the world.  Pursuant to the Acquisition Agreement dated March 7, 2007, the Plaintiff sold to its U.S. and Canadian distributor, Life Medical Technologies, Inc., a 48% equity interest and a 50% voting interest in Gibraltar in consideration for payment to the Plaintiff of five million ($5,000,000) dollars.  Fraade Affidavit ¶6.  This price places a total value upon Gibraltar of approximately $10,000,000.  <u>Id</u>.  Based upon the foregoing, the Defendants have failed to adequately allege how such consideration is inadequate.  See NY. DEBT & CRED. § 273.  The Acquisition Agreement was attached to the Plaintiff's Current Report on Form 8-K filed with the SEC on March 21, 2007 and is publicly available twenty-four hours a day via the SEC's Website.  Fraade Affidavit ¶7.  Accordingly, the Defendants have had ample opportunity to review the terms of the Acquisition Agreement, and determine that its claims based upon a fraudulent conveyance are without merit.

Defendants also fail to plead that "the property remaining in [the Plaintiff] hands after the [Gibraltar] conveyance is an unreasonably small capital" pursuant to NY DEBT & CRED. §274, or that it was without "fair consideration pursuant to NY DEBT & CRED.§272.  After the

conveyance, the Plaintiff retained a 48% equity interest and a 50% voting interest in Gibraltar, and in addition received an agreement to be paid $5,000,000. Fraade Affidavit ¶5. The Defendants have failed to adequately plead that this is "without fair consideration.", "unreasonably small", or even that that their capital was lower after the closing of the Acquisition Agreement.

Accordingly, in view of the fact that Defendant has not properly alleged a fraudulent conveyance, and did not provide a sufficient factual basis to set forth that the compensation to Plaintiff was inadequate, Countclaim IV and Count IV of the Third Party Complaint with respect to fraudulent conveyance must be dismissed.

## VI. COUNTERCLAIM V AND COUNT IV OF THE THIRD PARTY COMPLAINT WITH RESPECT TO COMMON LAW MUST BE DISMISSED FOR DEFENDANTS FAILURE TO PLEAD FRAUD WITH PARTICULARITY IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 9(b)

In order "(1) to ensure that a complaint provides defendant with fair notice of plaintiff's claim; (2) to safeguard defendant's reputation from improvident charges; and (3) to protect defendant from a strike suit," Rule 9(b) of the Federal Rules of Civil Procedure sets forth the following: "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir.1991). Fed.R.Civ.P. 9(b).

To satisfy the requirement of Rule 9(b), the counterclaims and third party complaint must satisfy each of the following: (1) specify the allegedly fraudulent statements; (2) identify the speaker; (3) state where and when the statements or omissions were made and (4) explain why the statements or omissions were fraudulent. Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d

85, 88 (2d Cir. 1999).   In addition, Defendants' common law fraud claim and misrepresentation claims are substantially identical to its claims for securities fraud.  That is, pursuant to Paragraph 112 of the Counterclaims, the Defendants state that they "would not have invested in Scantek if Scantek had not made the misrepresentations…"  Accordingly, in order to "plead securities fraud with requisite particularity, plaintiffs must do more than allege that statements were materially misleading, they must demonstrate with specificity why and how that is so." In re Pfizer, Inc. Securities Litigation  2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008).

### A. DEFENDANTS FAIL TO PLEAD WITH PARTICULARITY WHAT PURPORTED STATEMENTS WERE RELIED UPON TO THEIR INJURY

Defendants fail to properly plead fraud with the requisite particularity by demonstrating with specificity why and how the Defendants were misled.  Defendants merely proclaim that Plaintiff made "material misstatements" which the Defendants' "relied upon."  Defendants fail to set forth any examples of statements upon which the Defendants purportedly rely which are found in the Subscription Documents or the Plaintiff's SEC filings.  As set forth in Section III of this Memorandum, because of the merger clause in the Documents, statements outside of the Subscription Documents or the Plaintiff's SEC filings should not be considered.  As the Defendants have failed to adequately plead reliance upon any representation which was either a part of the Documents or a part of the Plaintiff's SEC filings which were statements of historical fact, they have failed to plead with the requisite particularity the element of reliance.

**B. DEFENDANTS FAIL TO PLEAD WITH PARTICULARITY THAT THE STATEMENTS UPON WHICH THEY PURPORTED RELY WERE FALSE**

If the statements upon which the Defendants purportedly relied upon were reasonably believed to be true by the Plaintiff at the time they were made, they cannot constitute fraud.  See Invacare Supply Group, Inc. v. Englander, 19 Misc.3d 1114(A), 2008 WL 899028 "a *prima facie* claim under this theory [of fraud in the inducement] is made when plaintiff alleges that the defendant made a material misrepresentation which was false and known to be false when it was made, for the purpose of inducing plaintiffs justifiable reliance causing damage." See also, Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 646 N.Y.S.2d 76 (1996).

The Defendants' fail to state the basis upon which they claim the purported misrepresentations of the Plaintiff were false.  Although many of the expectations which the Plaintiff had at the time of the Transactions did not come to fruition, this does not establish that the statements were false at the time such statements were made.  See Sagi Declaration ¶3, Furness Affidavit ¶4.  For example, they allege that Plaintiff and Third Party Defendants made representations that sales of the Plaintiff's medical device were imminent in Brazil.  Answer and Counterclaims ¶152 Third Party Complaint ¶116  In addition, the Defendants claim to have relied upon statements that the initial "$100,000 loan by [Defendant] Sabella 'will be used exclusively would be used solely [sic] for [Plaintiff's] Brazilian activates", that "an order for 100,000 Breastcare units had been confirmed and would be emitted [sic] with a letter of credit inside 30 days," and that the Plaintiff represented in writing that "a test by INCA (Brazilian National Institute of Cancer)" would start on May 15, 2003.  Answer and Counterclaims ¶153-55, Third Party Complaint ¶117-19.  As a result of the Defendants' failure to adequately specify the basis for why they assume the foregoing statements were false, the Defendants have again

- 15 -

failed to sufficiently plead the causes of action related to fraud with particularity as required by Rule 9(b).

At the time the SEC filings were made, the Plaintiff, by and through its officers, believed that sales of its medical product in Brazil were imminent.  See Sagi Declaration ¶3, Furness Affidavit ¶4.  For a more detailed explanation of this, please see the accompanying Sagi Declaration and the Furness Affidavit.  More importantly, the Defendants' claim that statements in the SEC filings were intentional or reckless are based merely upon Defendants' speculation.  Such allegations are insufficient to establish a basis for fraud, and fail to specify why and "how that it is so" that statements made were fraudulent.  Accordingly, Defendants have failed to sufficiently plead their allegations pursuant to Rule 9(b).  In re Pfizer, Inc. Securities Litigation 2008 WL 540120, Fed. Sec. L. Rep. P 94,590 (SDNY 2008).

## C.  DEFENDANTS IMPROPERLY UTILIZE ALLEGATIONS BASED UPON INFORMATION AND BELIEF

"Allegations of fraud cannot ordinarily be based 'upon information and belief ,' except as to 'matters peculiarly within the opposing party's knowledge.'" Luce v. Edelstein, 802 F.2d 49, 54 n. 1 (2nd Cir. 1991).  Campaniello Imports, Ltd. v. Saporiti Italia S.p.A. 117 F.3d 655, 664 38 Fed.R.Serv.3d 144 (2d Cir. 1997).  Defendants' claim for fraud is entirely based upon information and belief.  For example, the Defendants' claim, upon information and belief, that:

"Scantek was engaged in a scheme to issue Securities which it did not intend to honor"; Answer and Counterclaims ¶ 139, Third Party Complaint ¶103

to engage in "similar schemes by structuring offerings on behalf of other issuers and then attempting to void the securities by claiming violation of usury laws"; (Answer and Counterclaims ¶ 138, Third Party Complaint ¶102) and

To "select New York law as the governing law for the Securities even though New York had no connection to the transaction because New York law allows a corporation to interpose

the defense of criminal usury."  Answer and Counterclaims ¶ 142, Third Party Complaint
¶106

The facts are much simpler.  The Plaintiff, as set forth in the Sagi affidavit, had every intention

of honoring the Loans.  Sagi Affidavit ¶6.  As set forth in the Fraade Affidavit and the Mintz

Affidavit, neither the Plaintiff, nor its counsel, structured the terms of the Loans, the terms of the

Loan were demanded by the Defendants and their agent Mr. Stepniewski. Fraade Affidavit ¶12,

Mintz Affidavit ¶¶5,6.  Notwithstanding the Defendants' claims, the State of New York had a

connection with the Transactions.   Mr. Stepniewski has his office in New York, and he

structured and dictated the terms of the Transactions to M&F while in his New York office or

while on the telephone, or at the offices of M&F, and the negotiations were primarily conducted

in New York.  Fraade Affidavit ¶¶16, 17, 30.  Additionally, Plaintiff's counsel, chose New York

law because Plaintiff's counsel are attorneys licensed to practice law only in New York, and are

located in New York, and accordingly have a strong preference to have New York law govern

agreements drafted on behalf of its clients.    Fraade Affidavit ¶16.

      Even if this Court were to conclude that allegations made upon information and belief are

"peculiarly within [Plaintiff's] knowledge", factual allegations made upon information and belief

must "must identify sufficiently the sources upon which [their] beliefs are based and those

sources must have been likely to have known the relevant facts." Fraternity Fund Ltd. v. Beacon

Hill Asset Mgmt. LLC, 376 F.Supp.2d 385, 395 (S.D.N.Y.2005).  The Defendants have not

identified sufficiently the sources upon which their beliefs are based.  Instead, the Defendants'

have engaged in speculation and false statements with respect to the intent of the Plaintiff and the

Third Party Defendants.  As explained further in the Fraade Affidavit, the facts are contrary to

the Defendants allegations.  Defendants provide no source of basis for their claim that Scantek

was engaged in a scheme to issue securities it did not intend to honor, no source or basis for the claim that Scantek was engaged in similar schemes to structure offerings and then attempting to void the securities by claiming violation of usury laws, no source or basis for the claim that New York Law was chosen to take advantage of the criminal usury statutes.

Even if this Court were to accept as true the specious claims of the Defendant, they are still insufficient to plead fraud.  At its heart, Defendants' argument is that the Plaintiff structured the terms of the Transactions so that it could issue securities which the Plaintiff did not intend to honor.  Notwithstanding the fact that the terms of the agreements were the terms demanded by the Defendants and their representative Mr. Stepniewski, if the Plaintiff suggested the terms of the loan, this would not relieve the Defendants of the Plaintiff's defense of usury.  Funding Group, Inc. v. Water Chef, Inc., 852 N.Y.S.2d 736, 741, 852 N.Y.S.2d 736 (1st Dept 2008).  The fact that the borrower suggests the interest rate, standing alone, does not relieve the lender of the usury defense" (Pemper v. Reifer, 264 A.D.2d 625, 695 N.Y.S.2d 555 [1st Dep't 1999] ).   In any event, the Plaintiff, in the instant matter, did not suggest the interest rate, but only agreed to the demands of the Defendants and Mr. Stepniewski.  Fraade Affidavit ¶11, Mintz Affidavit ¶¶ 4,5.  As has been previously established, the Defendants did not rely upon any statement of the Plaintiff or any other party when determining to undertake the Transaction.   Accordingly, even if, as Defendant purports, the terms of the Advances were suggested by the Plaintiff, and the Defendants relied upon the Plaintiff and its counsel with respect to the validity of the Advances, this to is insufficient to survive this motion to dismiss.

In view of the fact that Defendants claim for fraud is based upon speculation, and not facts, they have not complied with Fed.R.Civ.P. 9(b) and accordingly the claims for fraud must be dismissed.

## VII. DEFENDANTS FIRST AFFIRMATIVE DEFENSE ALLEGING ESTOPPEL MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGED CONDUCT DID NOT INFLUENCE THE DEFENDANTS

Although courts have recognized that "a borrower may be estopped from interposing a usury defense when, through a special relationship with the lender, the borrower induces reliance on the legality of the transaction," "[a]n indispensable requisite of an estoppel *in pais,* is that the conduct or representation was intended to, and did, in fact, influence the other party *to [its] injury.*" Seidel v. 18 East 17th Street Owners, Inc., 79 N.Y.2d 735, 743  598 N.E.2d 7, 586 N.Y.S.2d 240 (1992) *internal citations and quotations omitted.   See also* Water Chef, 852 N.Y.S.2d at 741).

As has been established in Section III and Subsection (A) of Section V of this Memorandum, the Defendants could not rely upon either the Plaintiff's conduct or representations of the Plaintiff.  The Defendants representations in the Subscription Agreements that they did not rely upon any information or representation which was not found in the Subscription Agreements or the Plaintiff's SEC filings prevent them from now claiming reliance upon other information or representations. The Defendants dictated the terms of the Transactions; they could not rely upon the Plaintiff's or it representatives, including Plaintiff's counsel and Third Party Defendant Mintz & Fraade, P.C., or its members.

Similarly, there was no special relationship between the Defendants and the Plaintiff. Plaintiff's counsel M&F represented the Defendants in one transaction, for which M&F billed $2,500, and assisted the Defendants in filing paperwork with the SEC, for which M&F charged $1,500.  The first transaction occurred four months after the initial transaction between the

Plaintiff and the Defendants had been completed.  As described more fully in the Fraade Affidavit, when the Plaintiff and the Defendants entered into their first criminally usurious agreement, the Note dated April 25, 2002, the Plaintiff's counsel had no prior attorney client relationship with the Defendants.  The Plaintiff's counsel did not represent the Defendants until on or around August 20, 2002, many months after the first criminally usurious loan between the Plaintiff and the Defendants. Fraade Affidavit ¶¶ 31, 32

## VIII.   DEFENDANTS' SECOND AFFIRMATIVE DEFENSE ALLEGING UNCLEAN HANDS MUST BE DISMISSED FOR DEFENDANTS FAILURE TO IDENTIFY THE PURPORTED FRAUD WITH PRECISION.

Pursuant to New York law, one "seeking to invoke the doctrine of unclean hands has the initial burden of showing, prima facie, that the elements of the doctrine have been satisfied" Fade v. Pugliani/Fade, 8 AD3d 612, 614, 779 N.Y.S.2d 568  (2d Dept., 2004).  In order to establish unclean hands based upon fraud, the Defendant must allege with "particularity or precision" the purported fraud, deceit or unfair means.   Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson, 434 F.Supp.2d 241, 253 (S.D.N.Y. 2006).

The Defendants have failed to adequately plead that the Defendants' have "unclean hands."  In particular, although the Defendants do not plead with specificity their basis for this affirmative defense, they appear to base the defense of unclean hands upon their allegations of a scheme by the Plaintiff and Third Party Defendants to issue unenforceable securities.  However, as set forth in Sections V of this Memorandum, as well as in the Fraade Affidavit and Sagi Affidavit, they have failed to plead anything beyond their conjecture that such a scheme existed.

IX. **THE DEFENDANTS' SECOND AFFIRMATIVE DEFENSE OF UNCLEAN HANDS MUST BE DISMISSED DUE TO THE FACT THAT PLAINTIFF IS NOT SEEKING AN EQUITABLE REMEDY.**

Unclean hands is an equitable defense, and accordingly only available with respect to equitable claims. Aetna Cas. and Sur. Co. v. Aniero Concrete Co., Inc. 404 F.3d 566, 607 (2d Cir. 2005). If, as Plaintiff alleges in the Complaint, the interest rate of the Loans exceeds the maximum of 25%, then as set forth in N.Y. PENAL LAW § 190.40, the interest rate in criminally usurious. In view of the fact that Plaintiff is not seeking an equitable remedy, Defendants are not entitled to utilize the defense of unclean hands, which is only available with respect to equitable claims.

X. **COUNTERCLAIMS VI AND COUNT IX OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED DUE TO THE DEFENDANTS' FAILURE TO PLEAD FRAUD WITH PARTICULARITY**

As set forth above, in order to "plead securities fraud with requisite particularity, plaintiffs must do more than allege that statements were materially misleading, they must demonstrate with specificity why and how that is so." In re Pfizer, Inc. Securities Litigation 2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008).

In view of the fact that, as set forth herein at Sections "II" and "III", Defendants' claims are based upon pure speculation, and do not demonstrate with specificity why and how the alleged statements were misrepresentations, the claim for violations of Section 10(b) must be dismissed.

**XI. COUNT VIII OF THE THIRD PARTY COMPLAINT ALLEGING A VIOLATION OF SECTION 20(A) OF THE SECURITIES EXCHANGE ACT MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED PURSUANT TO SECTION 10(B) OF THE SECURITIES EXCHANGE ACT OF 1934.**

Plaintiff has failed to sufficiently plead a violation of the securities laws pursuant to Section 10(b). Without a violation of Section 10(b), there can be no secondary, or derivative, violation under Section 20(a).   Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1132 (2d Cir. 1994); Brown v. Hutton Group, 795 F.Supp. 1317, 1324 (S.D.N.Y. 1992).

In the instant action, the primary violation is pursuant to Section 10(b) of the '34 Act.  In general, causes of action based upon Section 20(a) seek to impute liability pursuant to Section 10(b) of the '34 Act upon "control persons".  However, the Plaintiff has failed to sufficiently plead a cause of action based upon Section 10(b) pursuant to the counterclaims and third party complaint  Accordingly, Defendants' Section 20(a) claim must also be dismissed.

**XII. DEFENDANTS' CLAIMS FOR PUNITIVE DAMAGES ARE LEGALLY INSUFFICIENT.**

Defendants request for punitive damages, as stated in the Counts V, VI, VII, VIII, IX and X of the Third Party Complaint and Counterclaims V, VI and VII are each based upon allegedly tortious conduct by Plaintiff and the Third Party Defendants, respectively .  Absent from these causes of action are allegations of gross and highly, morally culpable conduct and that defendants' conduct was part of a pattern of similar conduct directed at the public generally. Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 614, 612 N.Y.S.2d 339, 343-344 (1994).   Not only is there no showing of gross and highly morally culpable behavior, but there

- 22 -

is absolutely no allegation of conduct directed at the general public.  Accordingly, the claims for punitive damages must be dismissed.

## CONCLUSION

Based upon the foregoing, it is respectfully submitted that the Court should dismiss the Answer and Counterclaims IV, V, VI, and VII and Counts IV, V, VI, VII, VIII, IX and X of the Third Party Complaint, and such other and further relief as to this Court deems just and proper, together with cost and disbursements as provided by law.

Dated: May 23, 2008
        New York, New York

                              Respectfully submitted,

                              /s/ Alan P. Fraade
                              _____
                              Alan P. Fraade (AF9602)
                              Co-Attorney for Plaintiff, Third Party Defendants
                              Gibraltar Global Marketing, LLC and Zsigmond L.
                              Sagi
                              Office and Post Office Address
                              488 Madison Avenue, Suite 1100
                              New York, New York 10022
                              (212) 486-2500

                              /s/ Edward C. Kramer
                              _____
                              Edward C. Kramer (EK8411)
                              Co-Attorney for Plaintiff, Third Party Defendants
                              Gibraltar Global Marketing, LLC, Mintz & Fraade,
                              P.C., Frederick M. Mintz, Alan P. Fraade and Mintz
                              & Fraade Enterprises, LLC
                              Office and Post Office Address
                              488 Madison Avenue, Suite 1100
                              New York, New York 10022
                              (212) 490-1616