UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X  Case No. 08 cv 00453 (CM)

SCANTEK MEDICAL INC.,                                          :
                                                              :
                          Plaintiff,                          :
            vs.                                               :
                                                              :
ANGELA CHEN SABELLA and ACCORDANT                             :
HOLDINGS, LLC,                                                :
                                                              :
                          Defendants and Third-Party          :
                          Plaintiffs,                         :
            vs.                                               :
                                                              :
MINTZ & FRAADE, P.C., FRED MINTZ, ALAN                        :
FRAADE, MINTZ & FRAADE ENTERPRISES,                           :
LLC, ZSIGMOND L. SAGI, and GIBRALTAR                          :
GLOBAL MARKETING LLC.                                         :
                                                              :
                          Third-Party Defendants.             :
---------------------------------------------------------------- X


**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
MOTION TO DISMISS  COUNTERCLAIMS, THIRD-PARTY
COMPLAINT AND AFFIRMATIVE DEFENSES**


**McCue Sussmane & Zapfel, P.C.**
**Attorneys for Defendants**
**521 Fifth Avenue , 28th Floor**
**New York, New York 10175**
**212 931-5500**

## TABLE OF CONTENTS

PAGE

FACTS.................................................................................................................................................1

ARGUMENT........................................................................................................................................7

I.   The claim for attorney malpractice is not barred by the statute of limitations (Count IX). ....................................7

II.   Breach of fiduciary duty is subject to a six year period of limitations which began to run when the breach was discovered (Count X)......................................................................................................................11

III.   The Securities Fraud Claims under Section 10(b) are not barred by the statute of limitations (Count VI and Counterclaim VI)........................................................................................................................12

IV.   Defendants reasonably relied on the misrepresentations of Scantek and Third-Party Defendants (Counts V, VI, VII, AND VIII and Counterclaims V, VI and VII)......................................................................................16

V.   Defendants have alleged all elements of a cause of action for fraudulent conveyance (Count IV and Counterclaim IV)......................................................................................................................17

VI.   Common law fraud is stated with particularity (Count V and Counterclaim V). ....................................19

VII.   There is no basis to dismiss Defendant's Defense that Plaintiff is Estopped from Asserting Criminal Usury (Affirmative Defense I)..................................................................................................21

VIII.   The affirmative defense of unclean hands is pled with the requisite precision and particularity (Affirmative Defense II)......................................................................................................................23

IX.   Defendants may plead unclean hands because Plaintiffs seeks equitable relief Affirmative Defense II).............24

X.   Defendants plead securities fraud with sufficient particularity (Counterclaim VI and Count VI) ......................24

XI.   Defendants have sufficiently pled a cause of action under Section 20(a) (Count VIII) ......................................25

XII.   DEFENDANT'S CLAIMS FOR PUNITIVE DAMAGES ARE LEGALLY SUFFICIENT .................25

CONCLUSION ..........................................................................................................................25

# TABLE OF AUTHORITIES

PAGE

**STATUTES**

*15 U.S.C. § 78c(a)(10)*..............................................................................................................14
*15 U.S.C. § 78j(b)*....................................................................................................................12
CPLR 213 (1) ............................................................................................................................12
CPLR 214(6) ..............................................................................................................................7
FRCP 12(b)(6)............................................................................................................................7
FRCP 8 .....................................................................................................................................17
FRCP 9(b)............................................................................................................................17, 19
New York Debtor Creditor Law §276 ......................................................................................17
New York Debtor Creditor Law. §274 .....................................................................................17

**CASES**

*A.J. Heel Stone, L.L.C. v. Evisu Intern., S.R.L.*  2006 WL 1458292 (S.D.N.Y.,2006) ................18
*Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson,* 434 F.Supp.2d 241 (S.D.N.Y. 2006) ...........23
*Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) .....................................7
*Deutsch v. Polly N. Passonneau,* P.C, 297 A.D.2d 571, 747 N.Y.S.2d 164 (1st Dept. 2002).....................9
*Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 171 (2d Cir.1998) .................................................7
*Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp. Creditor Trust v. Daewoo
     Engineering & Construction Co., Ltd.,* 375 F.Supp.2d 257, 268 (S.D.N.Y. 2005) ................17
*Frank Management Inc. v Weber,* 145 Misc.2d 995, 549 N.Y.S.2d 317( N.Y. County 1989) .................10
*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC,* 376 F.Supp.2d 385, 395 (S.D.N.Y. 2005) ...........21
*Garelick v. Carmel,* 141 A.D.2d 501, 529 N.Y.S.2d 126 (2nd Dept. 1988) .................................22
*Glamm v. Allen,* 57 N.Y.2d 87, 93, 439 N.E.2d 390, 393, 453 N.Y.S.2d 674, 677 (1982) ...................7, 8
*Herrington v. Verrilli,* 151 F.Supp.2d 449, 463 (S.D.N.Y. 2001) ...............................................9
*In re Nortel Networks Corp. Securities Litigation,* 238 F.Supp.2d 613, 620 (S.D.N.Y. 2003) ................16
*In re Pfizer, Inc. Securities Litigation,* 2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008)..................24
*In re Polaroid Corp. Securities Litigation,* 465 F.Supp.2d 232, 242 (S.D.N.Y. 2006) ........................7, 13
*Katzen v. Balaj* 2004 WL 2381086, 2 (N.Y.Sup.,2004) ...............................................................24
*Klein v. Gutman,* 12 A.D.3d 417, 419, 784 N.Y.S.2d 581 (N.Y.A.D. 2 Dept. 2004) ........................12
*Lazzaro v. Kelly,* 57 N.Y.2d 630, 631, 439 N.E.2d 868, 454 N.Y.S.2d 59 (1st Dept. 1984)....................10
*Loengard v. Santa Fe Industries, Inc.,* 70 N.Y.2d 262, 267 (1987)..............................................12
*Marra v. Katz,* 74 Misc.2d 1010, 347 N.Y.S.2d 143 (Sup.Ct.1973)...........................................9
*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State,* 75 N.Y.2d 175, 181, 550 N.E.2d 919, 922, 551 N.Y.S.2d 470,
     473 (1990)....................................................................................................................24
*Papp v. Dubanne,* 16 A.D.3d 128, 790 N.Y.S.2d 450 (1st Dept. 2005) ........................................12
*Reves v. Ernst & Young,* 494 U.S. 56; 110 S. Ct. 945; 108 L. Ed. 2d 47 (1990) .............................14
*Reznor v. J. Artist Management, Inc.,* 365 F.Supp.2d 565, 575 (S.D.N.Y. 2005) ...........................11
*Seidel v. 18 East 17th Street Owners, Inc.,* 79 N.Y.2d 735, 743, 598 N.E.2d 7, 11, 586 N.Y.S.2d 240, 244 (1992).23
*Sferra v. Mathew,* 103 F.Supp.2d 617, 620 (E.D.N.Y. 2000)....................................................11
*Shisgal v. Brown,* 21 A.D.3d 845, 801 N.Y.S.2d 581, 583 (1st Dept  2005)....................................20
*Shumsky v Eisenstein,* 96 N.Y.2d 164, 750 N.E.2d 67, 726 N.Y.S.2d 365) ( 2001)..............................8
*Swersky v. Dreyer and Traub  219 A.D.2d 321, 328 (1st Dept. 1996) ...........................................25

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X  Case No. 08 cv 00453 (CM)

SCANTEK MEDICAL INC.,                              :
                                                   :  DEFENDANTS' MEMORANDUM
                            Plaintiff,             :  OF LAW IN OPPOSITION TO
            vs.                                    :  MOTION TO DISMISS
                                                   :  COUNTERCLAIMS, THIRD-PARTY
ANGELA CHEN SABELLA and ACCORDANT                  :  COMPLAINT AND
HOLDINGS, LLC,                                     :  AFFIRMATIVE DEFENSES
                                                   :
                      Defendants and Third-Party   :
                      Plaintiffs,                  :
            vs.                                    :
                                                   :
MINTZ & FRAADE, P.C., FRED MINTZ, ALAN             :
FRAADE, MINTZ & FRAADE ENTERPRISES,                :
LLC, ZSIGMOND L. SAGI, and GIBRALTAR               :
GLOBAL MARKETING LLC.                              :
                                                   :
                      Third-Party Defendants.      :
------------------------------------------------------------- X

        Defendants/Third-Party Plaintiffs, by their attorneys McCue Sussmane & Zapfel, P.C,

respectfully submit this Memorandum of Law in opposition to the motion of Plaintiff and Third-

Party Defendants to dismiss certain counterclaims, third-party claims and affirmative defenses.

## FACTS

        Plaintiff Scantek Medical, Inc. ("Scantek") is a publicly held corporation which commenced

this action seeking a judgment declaring that $303,280.80 of promissory notes and 2,000,000 shares

of common stock issued by Scantek to Angela Chen Sabella  ("Sabella") and Accordant Holdings,

LLC ("Accordant") are void under New York criminal usury law. Such securities represent a portion

of the $828,250 invested by defendants in Scantek. *Answer ¶¶74-103.*  Accordant and Sabella stated

counterclaims and third party claims for breach of contract against Scantek and guarantor Zsigmond

L. Sagi  to collect $828,250 plus interest, enforce its security interest in assets of  Scantek and direct

the release of common stock held in escrow by Mintz & Fraade P.C. (the "Mintz Firm").[1]

Scantek moves to dismiss the counterclaims and third-party claims[2] arising out of the untrue statements of material facts and omissions of material facts in connection with the sale of securities to Ms. Sabella and Accordant, breach of fiduciary duty and fraudulent conveyance. The false statements and omissions included the material facts that they believed that securities offered by Scantek violated New York criminal usury laws and were voidable by Scantek, that they were engaged in a scheme to issue securities that were voidable by Scantek, and that sales of medical devices by Scantek in Brazil were imminent.

Accordant and Ms. Sabella bring third-party claims against their attorneys Mintz & Fraade P.C. (the "Mintz Firm"), Alan Fraade and Fred Mintz (collectively the "Mintz Attorneys") for malpractice and against the Mintz Attorneys, Sagi and Mintz & Fraade Enterprises, LLC, for breach of fiduciary duty to advise Accordant and Ms. Sabella of their opinion that the securities offering that they structured and drafted violated New York criminal usury statutes and that sales of medical devices by Scantek in Brazil were imminent and for engaging in a scheme to issue securities that were voidable.

The motion to dismiss the third-party claims against the Mintz Attorneys is noteworthy for the steadfast refusal of the Mintz Attorneys to recognize the duties owed to their clients and their ability to ignore rampant conflicts of interest. The Mintz Attorneys (a) were counsel to Scantek, a publicly-traded corporation (*Mintz Aff. ¶1*); (b) were major shareholders in Scantek (*Answer ¶62*); (c) acted as promoters of Scantek when they solicited investors for Scantek, arranging for a client to

---

[1] Amended Third Party Compliant, Count I, II and III ¶¶69-91; and Answer and Counterclaims, Counterclaims I, II and III, ¶¶111-128

[2] Plaintiff states counterclaims for fraudulent conveyance (Counterclaim IV), common law fraud (Counterclaim V), violation of federal securities law (Counterclaim VI) and negligent misrepresentation (Counterclaim VI), and third-party claims for fraudulent conveyance (Count IV), common law fraud (Count V), violation of federal securities law (Counts VI and VII) negligent misrepresentation (Count VIII), malpractice (Count IX) and breach of fiduciary duty (Count X).

introduce Ms. Sabella to Scantek (*Mintz Aff. ¶4);* (d) drafted all documents at issue in this action. (*Fraade Aff. May 23, 2008, ¶¶3, 16);* (e) commenced representation of Ms. Sabella in August 2002 in connection with a proposed investment in an unrelated company, which representation occurred simultaneous with drafting by the Mintz Firm of the August 2002 Subscription Agreement and August 2002 Promissory Note are a subject of this action, yet failed to recognize that they owed any duty to her (*Fraade Aff. May 23, 2008, ¶2);* (f) acted as attorneys for defendants through at least February 2004 when the Mintz Attorneys drafted and filed SEC Form 3 and Form 13D on behalf of defendants in connection with their investment in Scantek (*Mintz Aff. ¶9; Sussmane Aff, Ex. A [Fraade Aff. March 28, 2008, ¶24]);* (g) the Mintz Attorneys represented defendants and Scantek in connection with the transactions between the parties *Amended Third-Party Complaint ¶153-158;* (h) the Mintz Attorneys did not deal with any other attorney in connection with the investment of defendants (*Mintz Aff. ¶6);* and (i) no attorneys are listed in the notice sections of any applicable documents *(Fraade Aff. May 23, 2008, Exs. D – I).*

The true depth of the inability of the Mintz Attorneys to grasp their duties to their clients is apparent from the claim of the Mintz Attorneys that they owed no duty to Ms. Sabella because she paid only "minor" legal fees of $4,000, and the filing of SEC forms reporting a beneficial interest in a public company under penalties of perjury are ministerial acts and does not constitute performance of legal services. *Sussmane Aff. Ex. A [Fraade Aff. March 23, 2008, ¶¶23 and 24].*

The Mintz Attorneys repeatedly attempt to avoid liability for malpractice, breach of fiduciary duty and fraud by claiming that the terms of the transactions at issue were dictated by Defendants' representative Mark Stepniewski. *Fraade Aff. May 23, 2008, ¶11.* The Affidavit of Mr. Mintz repeats this mantra:

> Throughout the entire negotiation process and the execution of the Documents, the Defendants were advised by Mark Stepniewski (a/k/a Mark Step), who negotiated with Plaintiff on Defendants' behalf" *Mintz Aff, ¶3.*

> I had known Mr. Stepniewski for many years when I introduced Plaintiff to Mr.

Stepniewksi. . . I inquired whether Mr. Stepniewski knew any investors who might be interested in investing in Plaintiff. This is when Mr. Stepniewski introduced Plaintiff to Defendants. *Mintz Aff. ¶4.*

All negotiations were with Mr. Stepniewski alone. *Mintz Aff. ¶6.*

The negotiations for the transactions giving rise to this matter were primarily conducted with Mr. Stepniewski alone. How could the Defendants have relied upon us when there was almost no communication between us? *Mintz Aff. ¶8.*

The answer to Mr. Mintz's query is evident from the key fact conveniently omitted by Mr. Fraade and Mr. Mintz. Mr. Mintz has not only "known" Mr. Stepniewski for many years, but the Mintz Attorneys had a long-standing attorney-client relationship with Mr. Stepniewski, representing Mr. Stepniewski and many clients referred to their firm by Mr. Stepniewski in dozens of transactions and various matters over a period of more than ten years, including public and private securities offerings, corporate finance matters, consulting and other agreements, litigation, and personal legal matters. *Stepniewski Aff. ¶2.* The attorney-client relationship continued until on or about the filing of this action in December 2007, or Janaury 28, 2008, when Mr. Mintz wrote to clients or potential clients, advising them that the Mintz Attorneys' attorney-client relationship with Mr. Stepniewski had terminated and entreating continued use the legal services of the Mintz Attorneys. *Sussmane Aff. Ex. B.*

Based on their attorney-client relationship with Mr. Stepniewski, the Mintz Attorneys introduced Defendants to Scantek. The Mintz Attorneys represented each of Scantek, Mr. Stepniewski and Defendants in connection with the transactions at issue in this action. *Stepniewski Aff. ¶6.* Defendants relied on the Mintz Attorneys to draft agreements that were valid and binding obligations of Scantek enforceable in accordance with their terms and advise Defendants of any risks. *Amended Third-Party Complaint ¶158.*

Notwithstanding the denial of the Mintz Attorneys that they represented Defendants in connection with the transaction, the Mintz Attorneys claim that their client Mr. Stepniewski represented Defendants in connection the transactions and was solely responsible for negotiating the

transactions on behalf of Defendants as the agent for Defendants.  Assuming the truth of these

allegations, it is absolutely clear under basic principals of agency law that the Mintz Attorneys owed

a duty as attorneys to Defendants as disclosed principals of Mr. Stepniewski.

It is notable that the Mintz Attorneys' motion omits any allegation that they advised Mr.

Stepniewski or Defendants of the existence of any conflicts of interest at any time or obtained any

written waiver of the conflicts of interest. Also absent is any allegation that the Mintz Attorneys

advised Defendants to obtain separate counsel.

The practice of representing all parties in a Scantek transaction was repeated by the Mintz

Attorneys in connection with the transaction challenged by Defendants as a fraudulent conveyance

by Scantek.  On or about March 15, 2007, Scantek formed a limited liability company, Gibraltar

Global Marketing LLC ("Gibraltar"), entered into a distribution agreement with Gibraltar granting to

Gibraltar distribution rights to Scantek's sole product in more than 150 countries throughout the

world (the "Gibraltar Distribution Agreement"), issued a 4% interest in Gibraltar to an affiliate of the

Mintz Attorneys for no consideration, and purportedly sold a 48% interest in Gibraltar to Life

Medical Technologies, Inc. ("Life Medical") for $250,000 plus contingent consideration.  *Amended

Third Party Complaint ¶¶92-99, Answer ¶¶129-135; and Sussmane Aff. Ex. C.*   The Mintz

Attorneys drafted all agreements and represented all parties. *See Sussmane Aff. Ex. C.[Acquisition

Agreement pp. 3,4  Operating Agreement pp.32-34].*

Scantek attempts to disclose privileged settlement discussions to raise a factual issue

regarding whether Scantek and Third-Party Defendants engaged in a scheme to issue securities which

were voidable by Scantek.  *Fraade Aff. May 23, 2008 ¶11.* Such argument is improper and irrelevant

because there is no proof that such discussions, if admissible, were bona fide negotiations or merely

an attempt by Scantek to delay collection of the promissory notes.

Scantek cannot resist reference to prior litigation between Ms. Sabella and Graphco

Technologies, Inc ("Graphco") pursuant to which Ms. Sabella brought an action on April 12, 2002 to

collect on a defaulted promissory note drafted by the Mintz Attorneys in the amount of $1,292,990 (the "Graphco Litigation").  Scantek  and Third-Party Defendants argue that the Graphco Litigation made Defendants aware that the terms of the Scantek transactions were likely to be defended by a claim of criminal usury.  *Fraade Aff. May 23, 2008 ¶13*.   The reality is that the granting of summary judgment in lieu of complaint in the Graphco Litigation only made Defendants aware that the promissory notes drafted were readily enforceable. *Sussmane Aff. Ex. D.*

    In order to hide their involvement in a striking similar scheme to void promissory notes which they drafted, the Mintz attorneys submitted the following knowingly false statements to the Court regarding the Graphco Litigation in opposition to defendants' motion to dismiss the Complaint:

> Mr. Kramer has advised me that Defendant Sabella loaned money to Graphco, and as consideration for the loan received warrants to purchase Graphco's common stock. *Fraade Aff. dated March 28, 2008. ¶33* . . . Although M & F has represented Graphco in the past, M & F was unaware of the Graphco Litigation. Although M & F believes that it commenced representation of Graphco in 2001 at the recommendation of Mr. Stepniewski , M & F was retained solely with respect to limited corporate and securities matters and was not aware of the Graphco Litigation until recently." *Sussmane Aff. Ex. A [Fraade Aff. March 28, 2008, ¶34].*

> M & F was not aware of the Graphco Litigation, nor that usury was an issue, until very recently . . .  Although M & F did render legal services on behalf of Graphco, specifically with respect to a securities matter involving a potential reverse merger, these were at all times unrelated to the Graphco Litigation. *Sussmane Aff. Ex. E [Affidavit of Ted Kramer dated March 23, 2008,  ¶9]..*

The Kramer and Fraade statements are patently false.  On April 11, 2002, Mr. Mintz received a letter advising him of the filing of the Graphco Litigation and inquiring whether he was authorized to accept service of process.  On June 20, 2002, Mr. Fraade received a letter responding to Mr. Fraade's settlement proposal and advising him that "Ms. Sabella will not release her judgment."  On July 17,  18, and 29, 2002, October 3, 2002, and December 5, 2002, Mr. Fraade wrote to Ms. Sabella's attorneys regarding settlement of the Graphco Litigation and withdrawal of Graphco's appeal.  Additionally, the Mintz Firm drafted a private placement memorandum for the offering of

6

stock by Graphco dated April 10, 2002 which (a) disclosed that an attorney for Ms. Sabella had

advised that he was in the process of filing suit, and (b) listing the Mintz Firm as Graphco counsel.

*Ex. F*   The Mintz Attorneys were aware of the Sabella loan to Graphco and the Graphco Litigation

no later than April 11, 2001.   The Mintz Attorneys were not retained solely with respect to limited

corporate and securities matters which were at all times unrelated to the Graphco Litigation.   There

is no doubt that the account of the Graphco Litigation offered by the Mintz Firm is a fabrication.

*Sussmane Aff. Ex. D.*

### ARGUMENT

On a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6), the court may

dismiss a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support

of his claim which would entitle [it] to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, 2

L.Ed.2d 80 (1957); and *Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 171 (2d Cir.1998).  In deciding

the motion, the court must treat all factual allegations the Counterclaims and Amended Third-Party

Complaint as true, and must draw all reasonable inferences in Defendants' favor. *In re Polaroid*

*Corp. Securities Litigation*,  465 F.Supp.2d 232, 241 (S.D.N.Y. 2006).

**I.     The claim for attorney malpractice is not barred by the statute of limitations (Count IX).**

CPLR 214(6) provides for a statute of limitations of three years for "an action to recover

damages for malpractice, other than medical, dental, or podiatric malpractice, regardless of whether

the underlying theory is based on contract or tort."

An action to recover damages for legal malpractice accrues when the malpractice is

committed. S*ee Glamm v. Allen,* 57 N.Y.2d 87, 93, 453 N.Y.S.2d 674 (1982).  During the entire

course of the dealings between Defendants and Scantek, the Mintz Attorneys committed malpractice

by failing to advise Defendants of their opinion that the promissory notes delivered to Defendants by

Scantek were unenforceable, and engaging in a scheme to issue securities which were unenforceable.

7

The final act of such scheme and the final act of malpractice was committed by the Mintz Attorneys on December 21, 2007, when they commenced this action against their clients on behalf of a corporation in which the Mintz Attorneys were major shareholders claiming that promissory notes drafted by the Mintz Attorneys were criminally usurious and void.  The three year statute of limitations began to run on December 21, 2007.

The Mintz Attorneys argue that the period of limitations began to run on the date of the last investment by Defendants, May 2004, and expired in May 2007.  Such argument ignores the ongoing duties of the Mintz Attorneys to Defendants which were breached continuously through December 2007.  Such argument also ignores the inescapable conclusion that the actions of the Mintz Attorneys in December 2007 constituted malpractice – advising one client in which they were major shareholders to sue another client to void promissory notes that they drafted in transactions in which they represented all parties, is in and of itself a breach of the duty owed to Defendants.  Furthermore the last act of the scheme to defraud defendants occurred on December 21, 2007, which certainly constitutes an act of malpractice.

The Mintz Attorneys anticipate that Defendants will claim that the statute of limitations is tolled by the "continuous representation" doctrine.  Defendants have not yet made such argument because they believe the period of limitations has not yet expired.  However, in the event that the Court determines that the cause of action accrued in May 2004, the continuous representation doctrine does toll the statute.

The continuous representation rule recognizes that a person seeking professional assistance has a right to repose confidence in the professional's ability and good faith, and realistically cannot be expected to question and assess the techniques employed or the manner in which the services are rendered.  The rule tolls the running on the statute of limitations until representation has been completed.  *See Glamm v. Allen,* 57 N.Y.2d 87, 93, 439 N.E.2d 390, 393, 453 N.Y.S.2d 674, 677 (1982); *Shumsky v  Eisenstein*, 96 N.Y.2d 164, 750 N.E.2d 67, 726 N.Y.S.2d 365) ( 2001); and

*Deutsch v. Polly N. Passonneau*, P.C,  297 A.D.2d 571, 747 N.Y.S.2d 164 (1ˢᵗ Dept. 2002).

The Mintz Attorneys conveniently ignore their long-term representation of Mr. Stepniewski which continued until either the filing of this action in December 2007, or January 28, 2008, the date Mr. Mintz sent a letter to clients and prospective clients announcing the termination of the attorney-client relationship with Mr. Stepniewski. *Stepniewski Aff. ¶8; Sussmane Aff. Ex. B.*  The Mintz Attorneys repeatedly claim that Mr. Stepniewski represented Defendants and acted as their agent in connection with their investment in Scantek. *See Fraade Aff., May 23, 2008,¶ 11, and Mintz Aff. ¶¶ 3-8*

New York law provides that "wherever any express or implied authority to appoint a sub-agent is given or allowed by the principal, a privity is created between them." *Herrington v. Verrilli*, 151 F.Supp.2d 449, 463 (S.D.N.Y. 2001).  Assuming that the Mintz Attorneys' assertions are true, privity was created between the Mintz Attorneys and Defendants.  The Mintz Attorneys acted as attorneys for Defendants as the disclosed principal of Mr. Stepniewski and such representation continued until December 2007 or January 28, 2008.

Even if the Court were to accept as true the assertion of the Mintz Attorneys that they did not directly represent Defendants in connection with the Scantek transactions, the duty of the Mintz Attorneys to the Defendants is clear.  "The relation of agency exists between the principal and authorized sub-agent…The subagent owes to the principal the greatest degree of loyalty." *Marra v. Katz*, 74 Misc.2d 1010, 347 N.Y.S.2d 143 (Sup.Ct.1973) (citing N.Y. Jur. Agency § 154).

The Mintz Defendants breached their duty to Sabella by simultaneously representing two opposing parties in the same transaction, and by failing to cause Sabella to execute a waiver of the obvious conflicts of interest. The Mintz Defendants also breached their duty as sub-agents to Sabella by representing her in the transactions despite the obvious conflict of interest arising from their ownership of a major interest in Scantek. Finally, the Mintz Defendants breached their duty as Sabella's sub-agents by structuring agreements they believe are usurious and failing to advise Sabella

9

of the accompanying risks.

The Mintz Attorneys rely on *Lazzaro v. Kelly*, 57 N.Y.2d 630, 631, 439 N.E.2d 868, 454 N.Y.S.2d 59 (1st Dept. 1984). *Lazzaro* rejected plaintiff's continuous representation argument because it was based "solely upon defendant's continued service as escrow agent." Id. at 976. No additional services were performed by defendant. The instant case is distinguishable from *Lazzaro* because the Mintz Attorneys were not merely the escrow agent after the date of the last investment by Defendants. The Mintz Attorneys had an ongoing attorney-client relationship with Mr. Stepniewski and Defendants, as disclosed principals, which was not terminated by the Mintz Attorneys until the filing of this action in December 2007, or the date of their January 2008 letter. In addition, the Mintz Attorneys directly represented Defendants in connection with an unrelated potential investment, and prepared SEC filings for Defendants.

The Mintz Attorneys also rely on *Frank Management Inc. v Weber*, 145 Misc.2d 995, 549 N.Y.S.2d 317( N.Y. County 1989), in which the court ruled that the continuous representation doctrine did not apply because the presence of trust, confidence and reliance and the disparity in professional knowledge ordinarily present in such situations were at a minimum in the case management services for a musician. *Frank Management* did not involve an attorney and the inherent trust and confidence present in an attorney client relationship.

In the event the Court holds that the malpractice cause of action accrued in May 2004, the continuous representation doctrine would toll the commencement of the three year statute of limitations until December 2007 or Janaury 2008. At the very least, the representation of multiple clients by the Mintz Attorneys without written waivers has created a Gordion Knot of conflicted interests which raises a factual issue as to the applicability of the continuous representation doctrine. It is virtually impossible, at this stage of litigation, to clearly separate the numerous instances of conflicts. Third-Party Defendants' motion to dismiss should be denied, at least until the opportunity for proper discovery on the issues.

II.     **Breach of fiduciary duty is subject to a six year period of limitations which began to run when the breach was discovered (Count X).**

New York law provides that the statute of limitations on a breach of fiduciary duty claim begins to run upon discovery of the breach. *See Sferra v. Mathew*, 103 F.Supp.2d 617, 620 (E.D.N.Y. 2000) ("[C]auses of action did not commence until [plaintiff] knew or should have known that [defendant] had [breached his duty]" ); *see also Reznor v. J. Artist Management, Inc.*, 365 F.Supp.2d 565, 575 (S.D.N.Y. 2005) ( issue of whether plaintiff was on actual or inquiry notice of relevant facts is question for the jury ). Defendants had no reason to know that the Mintz Attorneys, the counsel on which they relied to draft valid and binding documents, drafted agreements that they believed were unenforceable. Defendants had no reason to know that Third-Party Defendant Sagi who, as Scantek President and controlling shareholder owed them a duty of honesty, loyalty, good faith and fairness, sought to structure agreements that could be voided by Scantek. Defendants did not know and had no reason to know of Third-Party Defendants' fraudulent conduct which constitutes a beach of their fiduciary duty until Scantek commenced this action in December 2007 to declare the promissory notes void.

Third-Party Defendants, as officers, directors, counsel, and major shareholders of Scantek breached their fiduciary duties on March 15, 2007, when they formed a limited liability company, Gibraltar Global Marketing LLC ("Gibraltar"), entered into a distribution agreement with Gibraltar granting to Gibraltar distribution rights to Scantek's sole product in more than 150 countries throughout the world, issued 48% of the interests in Gibraltar to Life Medical for inadequate consideration, issued 4% of Gibraltar to Mintz & Fraade Enterprises, LLC for no consideration, and issued no interests to other shareholders of Scantek. *Amended Third-Party Complaint ¶¶ 93 – 98; Sussmane Aff Ex. D.* There is no possibility that the statute of limitations has run.

New York law does not provide any single limitations period for breach of fiduciary duty claims. New York case law clearly holds that a cause of action for breach of fiduciary duty based on

allegations of actual fraud is subject to the six-year limitations period of CPLR 213 (8). *See Klein v. Gutman*, 12 A.D.3d 417, 419, 784 N.Y.S.2d 581 (2nd Dept. 2004); *Kaufman v. Cohen*, 307 A.D.2d 113, 118, 760 N.Y.S.2d 157 (1st Dept. 2003). The gravamen of the third-party claims are allegations of actual fraud in connection with the sale of securities to Defendants and the fraudulent conveyance to Gibraltar. *Third-Party Complaint ¶¶ 93 - 98, 100 -125, 165-171.* The applicable period of limitations in this action is six years

For breach of fiduciary claims that do not arise out of fraud, the applicable period depends upon the substantive remedy sought. Where the relief sought is equitable in nature, the six-year limitations period of CPLR 213 (1) applies. Where suits alleging a breach of fiduciary duty seek only money damages, courts have viewed such actions as alleging "injury to property," to which a three-year statute of limitations of CPLR 214(4) applies. *Loengard v. Santa Fe Industries, Inc.*, 70 N.Y.2d 262, 267 (1987). Third-Party Defendants mistakenly argue that the three year statute of limitations applies by ignoring that the basis for the breach of fiduciary duty claim is fraud. Third-Party Defendants rely on *Papp v. Dubanne*, 16 A.D.3d 128, 790 N.Y.S.2d 450 (1st Dept. 2005) which applied a three year statute of limitations to a breach of fiduciary duty claim that was not based on fraud.

### III.   The Securities Fraud Claims under Section 10(b) are not barred by the statute of limitations (Count VI and Counterclaim VI).

A private right of action that involves a claim under Section 10(b) of the Securities Exchange Act of 1934, as amended, *15 U.S.C. § 78j(b)* may be brought not later than the earlier of (1) two years after the discovery of the facts constituting the violation; or (2) five years after such violation. 28 U.S.C. § 1658 .

The statute of limitations for a securities fraud claim begins to run once the plaintiff either obtains actual knowledge of facts giving rise to the action or notice of the facts, which in the exercise of reasonable diligence, would have led to actual knowledge. *In re Polaroid Corp. Securities*

*Litigation,* 465 F.Supp.2d 232, 242 (S.D.N.Y. 2006).

Defendants made investments in Scantek totaling $828,250, as follows: $253,250 on August 20, 2002, $50,000 on February 10, 2003, and $525,000 from November 13, 2003 through May 20, 2004.  *Amended Third-Party Complaint ¶¶36, 53 and 60; Answer ¶¶76 ,93 and 100*

The Answer and Third-Party Complaint allege that Scantek and Third-Party Defendants induced Sabella to acquire securities of Scantek by making false statements that sales of medical devices by Scantek in Brazil were imminent, including false statements regarding sales to Brazil in (a) Scantek's Form 10K filed with the SEC for the calendar year ending June 30, 2001,  (b) Scantek's Form 10K filed with the SEC for the calendar year ending June 30, 2002,  and (c) Scantek's Form 10-QSB filed with the SEC for the quarter ending March 31, 2003.  *Amended Third-Party Complaint ¶¶113-115; Answer ¶¶149-151.*

The March 2003 Form 10-QSB was filed on May 20, 2003, less than five years prior to the filing of the Third-Party Complaint and Answer, and included the false statements that Scantek (a) anticipates sale of its entire inventory in calendar year 2003, and (b) the Company expects cash flow from sales commencing in 2003 to cover operations of the Company through December 2003. *Sussmane Aff. Ex. F; Amended Third-Party Complaint ¶115; Answer ¶151.*    The    Third    Party Complaint alleges:

> 152.    Scantek induced Sabella and Accordant to invest in the Securities and to make  the Additional Loans by making false oral and written statements to Sabella and Accordant from April 2002 through the May 20, 2004. These statements included regarding the quantity of orders received for Scantek products in Brazil, that Scantek's sales of medical devices in Brazil had commenced, and that Scantek had commenced earning revenue from such sales which would be used by Scantek to repay its obligations to Sabella and Accordant.

> 156.    In May 2003, Scantek falsely represented to defendants in writing that a test by INCA (Brazilian National Institute of Cancer) would start on May 15, 2003.

> 157.    In May 2003, Scantek's private placement memorandum (a) falsely represented that Scantek had largely executed its strategy in South America of establishing a regional manufacturing and/or assembly center to supply demand created by local marketing partners.  Scantek (b) failed to disclose that sales to Brazil had not yet

commenced, (c) failed to disclose that orders in Brazil (which Scantek represented had been received) had not been shipped by Scantek, (d) falsely represented that Scantek has received approvals required for sale of its products in Brazil, and (e) failed to disclose that Scantek had not received an import license in Brazil required to ship products to Brazil.

Each of the foregoing statements were made in violation of Section 10(b) within the five year limit imposed by 28 U.S.C. § 1658(b)(2).

Scantek and Third-Party Defendants misconstrue the claims to apply only to false statements made in connection with the issuance of shares of common stock to defendants in 2002 and 2003" *Plaintiff's Memorandum of Law at 5.* The 10(b) claims apply to all investments made by Defendants including the transactions from November 2003 through May 2004 as well as the August 2002 and February 2003 transactions.

The term 'security' is broadly defined by Section 3(a)(10) of the Securities Act of 1933 [3] "to encompass virtually any instrument that might be sold as an investment". *Reves v. Ernst & Young,* 494 U.S. 56; 110 S. Ct. 945; 108 L. Ed. 2d 47 (1990). *Reves* states that a note is presumed to be a "security," and that presumption may be rebutted only by a showing that the note bears a strong resemblance (in terms of the four identified factors) to one of the enumerated categories of instruments that are not securities. *Reves* held that a demand was a security, stating that if the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate, the instrument is likely to be a "security." Scantek, a public company, does not even attempt to argue that

---

[3] "The term 'security' means any note, stock, treasury stock, bond, debenture, certificate of interest or participation in any profit-sharing agreement or in any oil, gas, or other mineral royalty or lease, any collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit, for a security, any put, call, straddle, option, or privilege on any security, certificate of deposit, or group or index of securities (including any interest therein [***57] or based on the value thereof), or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or in general, any instrument commonly known as a 'security'; or any certificate of interest or participation in, temporary or interim certificate for, receipt for, or warrant or right to subscribe to or purchase, any of the foregoing; but shall not include currency or any note, draft, bill of exchange, or banker's acceptance which has a maturity at the time of issuance of not exceeding nine months, exclusive of days of grace, or any renewal thereof the maturity of which is like-wise limited." 48 Stat. 884, as amended, *15 U.S.C. § 78c(a)(10).*

14

the loans from defendants were not securities.

Scantek argues that the Section 10(b) claim is time barred because more than two years elapsed since discovery of the facts constituting the purported violation.  Scantek offers no proof that Defendants actually discovered any such facts.  Scantek instead argues that Defendants had a duty of inquiry as the result of the default by Scantek on the August 2002 Promissory Note which required repayment from the proceeds of medical devices in Brazil. *Answer* ¶148*, Amended Third Party Complaint, ¶ 112*.  Such default only put Defendants on notice that Scantek had failed to make required payments, and provided no information regarding sales from Brazil.  Furthermore, Scantek's argument is rebutted by the allegation of Defendants that after August 2002 default, Scantek and Third-Party Defendants continued to make false statements to induce Defendants to make additional investments in Scantek.

The argument that Defendants had inquiry notice is not made in good faith.  Scantek and Thirty-Party Defendants know that Defendants made regular and reasonable inquiries, and that Scantek took the position that it was unable to provide information or documents to Defendants that were not available to general public because its shares were publicly traded.  *Sussmane Aff. ¶3*. Defendants were further unable to discover the fraud because for the periods after March 31, 2003, Scantek ceased filing its quarterly and annual reports (Forms 10Q and Forms 10K) and financial statements with the SEC (*Sussmane Aff. ¶4*),  in violation of federal securities law and its fiduciary obligations to its shareholders. *Amended Third-Party Complaint ¶26.*  Defendants were left with no reasonable means by which to make themselves aware of the fraudulent facts in connection with the transactions.

Accordingly, the statute of limitations does not bar Defendants claims for violation of Section 10(b).

**IV.    Defendants reasonably relied on the misrepresentations of Scantek and Third-Party Defendants (Counts V, VI, VII, AND VIII and Counterclaims V, VI and VII).**

The Answer and Third-Party Complaint delineate in detail the particular misrepresentations made by Scantek and third-party Defendants and the reliance thereon which constitute Common Law Fraud, Violation of §10(b) of the 1934 Act, and Common Law Negligent Misrepresentation *Answer ¶¶ 137 – 158, 159, 170, and 173; Amended Third Party Complaint ¶¶ 101-123, 134, 144, and 148.* Reliance has been pled.

Third-Party Defendants argue that Defendants are precluded from pleading reliance based on clauses in unsigned subscription agreements. *Fraade Aff. May 23, 2006, Ex E* (April 24, 2002 Subscription Agreement with no signature pages*), Ex. G (*August 20, 2002 Subscription Agreement executed only by Sabella*) and Ex. I (*February 10, 2003 Subscription Agreement signed only by Scantek*).  Third-Party Defendants have offered no proof of any executed and binding subscription agreement.

Finally, Third-Party Defendants' argument that Sabella and Accordant should be estopped, by the "bespeaks caution" doctrine, from relying on the "forward looking" statements in Scantek's SEC filings is flawed in that it assumes that the doctrine allows companies to file documents containing lies and later label them as "forward looking" so long as their filings include a clause to that effect. Contrary to Third-Party Defendants' argument, when "[plaintiff] alleges that the defendants had no basis for their optimistic statements and already knew (allegedly) that certain risks had become reality, the misstatements do not fall under the PSLRA's safe harbor provisions." *In re Nortel Networks Corp. Securities Litigation*, 238 F.Supp.2d 613, 620 (S.D.N.Y. 2003). With regard to the South American and European shipments and inventory sales "expected" in Scantek's 2001, 2002, and 2003 SEC filings, the Counterclaims and Third Party Complaint clearly allege that Third-Party Defendants did not expect any "shipments to commence as stated and included such false statements to induce investors to purchase securities." *Amended Third-Party Complaint ¶ 113;*

*Answer ¶ 149.* Sabella and Accordant are not estopped from pleading reliance on Scantek's and Third-Party Defendants' fraudulent statements.

**V.    Defendants have alleged all elements of a cause of action for fraudulent conveyance (Count IV and Counterclaim IV).**

The claims for fraudulent conveyance arise arose on or about March 15, 2007 when Scantek formed a limited liability company, Gibraltar Global Marketing LLC ("Gibraltar") and entered into a distribution agreement with Gibraltar granting to Gibraltar distribution rights to Scantek's sole product in more than 150 countries. *Amended Third Party Complaint ¶¶92-99, Answer ¶¶129-135.*

Scantek cites *Eclaire Advisor Ltd. as Trustee to Daewoo International (America) Corp. Creditor Trust v. Daewoo Engineering & Construction Co., Ltd.*, 375 F.Supp.2d 257, 268 (S.D.N.Y. 2005) for the proposition that "a party seeking to set aside a fraudulent conveyance under New York Debtor Creditor Law §276 must plead an actual intent to defraud with particularity sufficient to meet the heightened standard of FRCP 9(b)." Gibraltar ignores that Counterclaim IV and Count IV allege fraudulent conveyance not merely under §276 but also under New York Debtor Creditor Law §274. *Eclaire* explicitly states that §273 and §274 of the New York Debtor Creditor Law "deal with constructive fraud, whereby certain transactions are fraudulent as a matter of law because of when or for what consideration they were made, and not because they were undertaken with fraudulent intent. This is not the kind of fraud to which Rule 9(b) applies." *Eclaire* at 268. The allegations that "conveyance was made without fair consideration to Scantek," that "such conveyance was made at a time Scantek was insolvent," and that "the property remaining in Scantek's hands after conveyance to Gibraltar was an unreasonably small capital" clearly meet the pleading requirements of FRCP 8, by alleging all elements of each statute. *Answer ¶¶ 131 – 133; Amended Third Party Complaint ¶¶ 94 – 96*

The "question of whether a transfer is made for fair consideration is a question of fact most suitably resolved at the summary judgment stage." *Eclaire* at 269. Scantek's SEC filings disclose

that Mintz & Fraade Enterprises LLC was issued a 4% membership interest in Gibraltar for no consideration. No other shareholder of Scantek was issued an interest in Gibraltar   Such fact alone raises a factual issue regarding "fair consideration."  Scantek attempts to mislead the Court by asserting that Scantek received a payment of $5,000,000 as consideration for the transfer of a 48% interest in Gibraltar to Life Medical which would place a value on Gibraltar in excess of $10,000,000 (and a value on the Mintz & Fraade interest of over $400,000). *Plaintiff's Memorandum of Law at 12.*  The SEC filings in fact disclose that Scantek was entitled to payment of only $250,000 from a company named Life Medical Technologies, Inc. ("Life Medical") and a contingent payment of $4,750,000 payable only (a) from Life Medical's share of distributions from Gibraltar or (b) if Life Medical was successful in raising additional capital from investors in future securities offerings, which offerings were clearly based on or buttressed by Life Medical's 48% interest in Gibraltar.  *See Sussmane Aff. Ex. C.*  There is certainly at least a factual issue regarding the adequacy of such consideration.

Additionally, the identity of Life Medical Technologies, Inc. remains unclear and discovery is required to determine its relationship to Scantek.

With respect to the Section 276 claims, "direct proof of fraudulent intent is usually difficult to obtain, such intent may be inferred from circumstantial evidence, or 'badges of fraud.' This evidence may consist of: (1) the inadequacy of consideration received in the allegedly fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened; or (5) the use of fictitious parties." *Eclaire* at 269. (cited *supra*). *See also A.J. Heel Stone, L.L.C. v. Evisu Intern., S.R.L.,* 2006 WL 1458292 (S.D.N.Y.,2006)

The pleadings include many of badges of fraud.  No consideration  was paid by Mintz & Fraade Enterprises LLC.  Life Technologies was required to pay only $250,000.  The close

18

relationship of the parties is evidenced by the fact that the Mintz Attorneys represented all parties to the transactions, including Gibraltar, Scantek and Life Medical *(Sussmane Aff. Ex.C, [Acquisition Agreement pp. 3,4  Operating Agreement pp.32-34]).* Scantek transferred to Gibraltar exclusive distribution rights to its only product in 150 countries and the pleadings allege that the property remaining in Scantek's hands after the conveyance to Gibraltar was an unreasonably small capital. Fraudulent conveyance has been adequately pled.

**VI.    Common law fraud is stated with particularity (Count V and Counterclaim V).**

Movants cannot seriously argue that Defendants failed to comply with FRCP 9(b) by failing to plead with particularity the circumstances constituting fraud.  Defendants detail with particularity the false statements knowingly made by Plaintiff and Third-Party Defendants and state that they were all relied upon by Defendants in connection with their decision to invest in Scantek from August 2002 through November 2004.  As discussed at length in Part IV,  *supra*, Defendants relied on written as well as oral false statements and specified with respect to each written statement the identity of the speaker, where and when the false statements and omissions were made, and why the statements or omissions were fraudulent. *See Answer ¶¶ 137 – 158 and Amended Third Party Complaint ¶¶ 101-122*. There is no doubt that Defendants pled, with the requisite particularity, the false statements and omissions on which they relied to their detriment to invest in Scantek.

Defendants state in detail the basis upon they claim the misrepresentations and omissions were false.  Plaintiff and Third-Party Defendants failed to disclose their opinion that the securities they were selling to Defendants were unenforceable, engaged in a fraudulent scheme to issue securities that they did not intend to honor, and then caused this action to be filed to void the securities which were drafted by the same attorneys that filed the suit.  Plaintiff and Third-Party Defendants made false statements about the status of sales in Brazil to induce Defendants to continue making additional investments in Scantek.

Whether the statements were in fact false is clearly a factual issue that should not be

determined on a motion to dismiss.  In deciding this motion, the court must treat the allegations that

Plaintiff and Third-Party Defendants knowingly made false statements and material omissions as

true, and must draw all reasonable inferences in Defendants' favor. *In re Polaroid Corp. Securities*

*Litigation*  465 F.Supp.2d 232, 241 (S.D.N.Y. 2006).

      In *Shisgal v. Brown,* 21 A.D.3d 845, 801 N.Y.S.2d 581, 583 (1st Dept  2005) ,  the First

Department overruled the lower court's decision that plaintiff's allegation as to actual intent to

defraud was conclusory, holding that:

> Intent 'is ordinarily a question of fact which cannot be resolved on a motion for summary
> judgment' (*Grumman Aerospace Corp. v. Rice,* 199 A.D.2d 365, 366, 605 N.Y.S.2d 305
> [1993] ), or, in this case, a motion to dismiss.

      Seeking to dismiss the common law fraud claims, Third-Party Defendants attack the

pleadings by averring that the "claim for fraud is entirely based upon information and belief."

*Plaintiff's Memorandum of Law at 16*.  Third-Party Defendants cite *Luce v. Edelstein* 802 F.2d 49,

54 n. 1 (2nd Cir. 1991), for the proposition that "allegations of fraud cannot be based 'upon

information and belief,' except as to 'matters peculiarly within the opposing party's knowledge.'"

Third-Party Defendants conveniently neglect to quote the *Luce* holding's next line: "To satisfy Rule

9(b) in the latter instance, the allegations must be accompanied by a statement of the facts upon

which the belief is founded." *Id.* at 49. The Counterclaims and Third-Party Complaint clearly set out

the facts upon which every averment "upon information and belief" is based. For example, to back

the claim that "the Mintz Parties structured the transactions with the intent of claiming that the

Securities violated New York State criminal usury laws and were voidable by Scantek,"  In each of

the following instances Defendants clearly state the specific facts on which their allegations are

based:

> "Scantek, Sagi and the Mintz parties had the authority and, in fact, the ability to control the
> contents of the disclosures made in connection with the offering of the Securities to
> Accordant and Sabella." *Answer ¶ 140. Amended Third-Party Complaint ¶ 104.*

> "Scantek failed to disclose the opinion of its counsel that the Securities violated New York

state usury law." *Answer ¶ 144.*

"Scantek, Sagi and the Mintz Parties filed Forms 10K and Forms 10Q and audited financial statements with the SEC which disclosed and discussed numerous private placements of the Securities from 1999 through 2003 to third parties as well as officers and directors of Scantek." *Answer ¶ 145. Amended Third-Party Complaint ¶ 109.*

"Scantek's Form 10K… included false statements." *Answer ¶¶ 149 – 150; Amended Third-Party Complaint ¶¶ 113 – 114.*

"Scantek's Form 10Q… included false statements." *Answer ¶ 151; Amended Third-Party Complaint ¶ 115.*

"Scantek induced Sabella and Accordant to invest in the Securities and to make Additional Loans by making false oral and written statements… [followed by descriptions of Third-Party Defendants' specific statements]." *Answer ¶¶ 152 – 156; Amended Third-Party Complaint ¶¶ 116 – 122*

Third-Party Defendants incorrectly cite *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F.Supp.2d 385, 395 (S.D.N.Y. 2005) for the proposition that allegations made upon information and belief that are peculiarly within plaintiff's knowledge, "must identify sufficiently the sources upon which [their] beliefs are based and those sources must have been likely to have known the relevant facts." Such standard does not apply to Defendants in the instant action the allegations which are based upon information and belief are peculiarly within Plaintiff's knowledge. In this instance *Fraternity Fund* applies the *Luce* standard discussed above, that the allegations must be accompanied by a statement of the facts upon which the belief is founded. *Fraternity Fund* at 394; *Luce* at 49. Defendants have fully complied with the *Luce* standard.

Accordingly, Counterclaim V and Count V of the Third-Party Complaint are pled with sufficient particularity.

### VII.    There is no basis to dismiss Defendant's Defense that Plaintiff is Estopped from Asserting Criminal Usury (Affirmative Defense I).

On February 11, 2008, Defendants moved to dismiss the Complaint, arguing in part that Plaintiff is estopped from asserting criminal usury. *See Defendant's Memorandum of Law dated February 11, 2008, pp. 12-15; and Defendant Reply Memorandum of Law dated April 10, 2008,*

*pp.6-8.* Such motion has been fully briefed and submitted to the Court. In the event the Court denies such motion, plaintiff has certainly stated and is entitled to prove the affirmative defense of estoppel.

Plaintiff argues that by virtue of the unexecuted subscription agreements offered by Plaintiff (*Fraade Aff. Exhibits D – I*), "Defendants could not rely upon either Plaintiff's conduct or representations of Plaintiff." Plaintiff fails to explain how Defendants could be bound by an unexecuted agreement. Even if binding agreements had been executed, Plaintiff fails to explain how the subscription agreements would permit Scantek, a public-company, and Scantek counsel, to make false statements and material omissions in connection with the sale of securities to Defendants, including false statements and material omissions in its SEC filings. *See supra* at 16.

Plaintiff cannot resist rehashing its argument that Defendants' cannot argue estoppel because "Defendants dictated the terms of the transaction" even though it has previously been rebutted by Plaintiff's documentary evidence, including plaintiff's SEC filings and other documentary evidence. Furthermore, the Mintz Defendants' argument that $4,000 in billing for legal work did not establish an attorney-client relationship (*Fraade Aff. ¶¶31,32*) is simply spurious. *See Garelick v. Carmel*, 141 A.D.2d 501, 529 N.Y.S.2d 126 (2nd Dept. 1988) ( holding that payment of a fee contributes to a finding that an issue of fact has been raised sufficient to defeat summary judgment as to whether an attorney-client relationship existed ).

The Mintz Attorneys again fail to acknowledge the duties they owe to their clients, or the duties owed to purchasers of securities of a public company, by its officers, directors, counsel, and controlling shareholders. They are proud to repeat there position that they have no special relationship with clients who pay them only $4,000. These are the same Third-Party Defendants who fail to realize that have a duty to maintain the confidentiality of attorney-client communications. *Stepniewski Aff. ¶9* and argue that unexecuted subscription agreements supersede federal and state law and permit them to make false statements and fail to disclose material facts necessary to make a decision on whether or not to invest in the Scantek securities for which they acted as promoters,

drafted the documents and represented the purchasers and seller. These are the same Third-Party Defendants who do not realize that they have the obligation to refrain from making false statements to the Court regarding their involvement in the Graphco transaction in which another client (a) offered securities consisting of a combination of a promissory note and equity securities, (b) failed to disclose any risk that the promissory note was not enforceable, and (c) defaulted on its obligation and then claimed that the investor committed criminal usury.  *Supra at pp5-7*

Plaintiff's submission of knowingly false affidavits, dictates defendants' entitlement  to invoke the doctrine of estoppel recognized by the Court of Appeals and a majority of states.  The Court should prevent plaintiff from asserting usury to "void the transaction, keep the principal, and achieve a total windfall, at the expense of an innocent person, through [its] own subterfuge and inequitable deception." *Seidel v. 18 East 17th Street Owners, Inc.*,  79 N.Y.2d 735, 743, 586 N.Y.S.2d 240, 244 (1992).

## VIII.   The affirmative defense of unclean hands is pled with the requisite precision and particularity (Affirmative Defense II).

Defendants precisely identified Plaintiffs' fraud in Counterclaim V of their Answer alleging common law fraud. *See Answer ¶¶ 74, 90, 136 – 162.* Defendants' allegations identified the level of control that Plaintiffs had in structuring the transactions, the fraudulent statements made by Plaintiffs and Third-Party Defendants which induced the Defendants to invest in Scantek, and the specific clauses structured in the transactions which suggest Plaintiffs' fraudulent intent to issue unenforceable securities. *See Answer ¶¶ 140-141, 142, 148-156.*  Accordingly, Defendants plead the doctrine of unclean hands based on fraud with the requisite precision and particularity required in *Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson,* 434 F.Supp.2d 241 (S.D.N.Y. 2006).

**IX.    Defendants may plead unclean hands because Plaintiffs seeks equitable relief Affirmative Defense II)**

The analysis of whether Plaintiff's claims are legal or equitable depends on whether the would have been available in the common-law courts or in courts of equity. The principal "legal" remedy is a judgment awarding a sum of money. See *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State,* 75 N.Y.2d 175, 181, 550 N.E.2d 919, 922, 551 N.Y.S.2d 470, 473 (1990); *see also  Katzen v. Balaj* 2004 WL 2381086, 2 (N.Y.Sup. 2004) (the determinant as to whether a claim is at law or at equity is the nature of the relief).  Plaintiff's action in equitable in nature. Plaintiff does not seek monetary damages.  It  seeks a declaratory judgment voiding the securities issued to Defendants and requiring the return of 2,000,0000 shares of Scantek stock allegedly issued to Defendants which would not be available in a court in common law.  Defendants are entitled to assert the equitable defense of unclean hands

**X.    Defendants plead securities fraud with sufficient particularity (Counterclaim VI and Count VI)**

Third-Party Defendants repeat their argument that Defendants have failed to plead fraud under Section 10(b) with particularity.  As discussed above in Part IV (*supra pp. 17-18*) and Part VI (*supra pp. 21-23*), the Answer and Amended Third-Party Complaint set forth  in detail, the allegations of fraud with the requisite particularity, demonstrating specifically why and how Plaintiff and Third-Party Defendants knowingly made false statements and failed to disclose material facts to induce Defendants to invest in Scantek, and Defendants' reliance thereon to their detriment. Defendants pled sources of those misstatements, and the sources' plausible motivations for making those statements. *Answer ¶¶ 138-144; Amended Third-Party Complaint ¶¶ 101-108.*

Furthermore. Third-Party Defendants' reliance on *In re Pfizer, Inc. Securities Litigation,* 2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008) for the proposition that plaintiffs "must do more than allege that statements were materially misleading, they must demonstrate with specificity

why and how that is so," is misplaced because the holding is made with regard to allegations based upon information and belief while Defendants allegations are not solely "upon information and belief." Defendants pled Section 10(b) fraud with the requisite particularity.

**XI.    Defendants have sufficiently pled a cause of action under Section 20(a) (Count VIII)**

Defendants have sufficiently pled a cause of action based under Section 10(b) of the 1934 Act so there can be secondary or derivative liability under Section 20(a).

**XII.    Defendant's claims for punitive damages are legally sufficient**

Punitive damages are available in a tort action where the wrongdoing is intentional or deliberate, has circumstances of aggravation or outrage, has a fraudulent or evil motive, or is in such conscious disregard of the rights of another that it is deemed willful and wanton. *Swersky v. Dreyer and Traub  219 A.D.2d 321, 328* (1st Dept. 1996).  Counts V, VI, VII, VIII, IX and X of the Amended Third-Party Complaint and Counterclaims V, VI and VII are each based upon tortious conduct and allege intentional and deliberate misconduct sufficient with rampant fraud, breaches of fiduciary duty, conflicts of interest and self-dealing that warrant punitive damages from Third-Party Defendants who refuse to acknowledge any duty to Defendants.

**CONCLUSION**

For the reasons stated above, the motion to dismiss should be denied.

Dated:            New York, New York
                  June 20, 2008

                              Respectfully Submitted,
                                  \Ken Sussmane
                              Kenneth Sussmane (KS 9301)
                              McCue Sussmane & Zapfel, P.C.
                              Attorneys for Defendants
                              521 Fifth Avenue , 28th Floor
                              New York, New York 10175
                              212 931-5500

25
