UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                                                                      Index No.: 08 CV 00453 (CM)

                                     Plaintiff,

                                                                        **DECLARATION**

       -against-

ANGELA CHEN SABELLA and
ACCORDANT HOLDINGS, LLC,

                                     Defendants and
                                     Third-Party Plaintiffs,

       -against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                                     Third-Party Defendants.
------------------------------------------------------------------X

       Edward C. Kramer, declares the truth of the following under the penalties of perjury:

       1. I am an attorney duly admitted to practice in the State of New York and am fully familiar with the facts stated in this declaration and know them to be true to my own knowledge. I am co-counsel for the Plaintiff and Third-Party Defendants in this action. I am fully familiar with the pleadings and proceedings heretofore had herein and the matters hereinafter set forth.

       2. This declaration is being submitted in reply to Defendants' opposition papers, especially the affidavit of Mark Stepniewski, sworn to on June 20, 2008 (the

"Stepniewski Affidavit").

3. Mr. Stepniewski, who is not a party to this action, flippantly accuses me of breach of "attorney-client communications" (Stepiewski Affidavit, para. 9). The carelessness with which these frivolous accusations are made, unfortunately must be attributed to Defendants' counsel, as well, who submitted (and probably prepared) the Stepniewski Affidavit. I consider the nature of these allegations to be quite serious and I submit that it is incumbent upon Defendants' counsel to take responsibility for submitting these allegations when, on their face, they clearly do not represent confidential communications.

4. Mr. Stepniewski refers to paragraphs 7 and 8 of my supporting affidavit, dated March 28, 2008. In paragraph 7, I state that "[i]n fact, I recall Stepniewski informing me that Sabella was 'annoyed' with Graphco for raising the defense of usury." This was not a confidential communication, but was told to me by Mr. Stepniewski because I was counsel to Graphco, as well as a director and the secretary of Graphco. He was relaying Ms Sabella's feelings to me because I wanted to settle the lawsuit. I was not representing Mr. Stepniewski in any manner at the time and the content was not confidential.

5. Paragraph 8 of my supporting affidavit states as follows:

> Based upon my interactions with both Stepniewski and Sabella, Sabella is clearly extremely financially sophisticated. I have been advised by Stepniewski that Sabella is worth "several hundred million dollars", and at any time invests substantial sums in numerous projects. For example, Stepniewski advised me that

at or around the time of the Graphco investments, Sabella had invested many millions of dollars into a ski resort. More importantly, however, and as a result of her vast amounts of money, she has the ability to control the terms of any agreement, including the Transactions. I have personally witnessed her, in a telephone call, negotiate specific terms of a promissory note (unrelated to both Plaintiff and Graphco).

6. There was nothing confidential about any of the above statements. I have witnessed Mr. Stepniewski speak of Ms Sabella's worth to the CEO of Graphco, Cristian Ivanescu, and to others. As a director of Graphco, it was not unusual for me to be familiar with the net worth of a substantial investor. Further, I am aware that Mr. Stepniewski "put" Ms Sabella into a number of "deals." Mr. Stepniewski did not just tell me on one occasion that Ms Sabella invested in a ski resort. We spoke about it on numerous occasions and Mr. Step even showed me literature on the resort. He told several people about Ms Sabella's investment in the ski resort. It was his way of showing that some of her other investments, such as in Graphco, were "small potatoes." Being that Ms Sabella was Mr. Stepniewski's most important investor, it was not unusual for him to speak about her often and in front of potential businesses who might be in need of her investments. In the telephone call in which I witnessed Ms Sabella personally negotiate specific terms of a promissory note, I was representing the borrower. As a matter of fact, I do not recall ever representing Ms Sabella, either through Mr. Stepniewski or otherwise.

7. Accordingly, it is most distressing that I must devote time to respond to these spurious allegations, and even more disturbing that the Court must expend its own time in

reviewing them.

Dated: New York, New York
July 25, 2008

_____
Edward C. Kramer