UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
SCANTEK MEDICAL, INC.,

                                Plaintiff,

-against-                           Index No.: 08 CV 00453 (CM)

ANGELA CHEN SABELLA and
ACCORDANT HOLDINGS, LLC,

                              Defendants and
                              Third-Party Plaintiffs,

-against-

MINTZ & FRAADE, P.C., FRED MINTZ, ALAN
FRAADE, MINTZ & FRAADE ENTERPRISES, LLC,
ZSIGMOND L. SAGI, and GIBRALTAR GLOBAL
MARKETING LLC,

                              Third-Party Defendants.
------------------------------------------------------------X


**PLAINTIFF AND THIRD-PARTY DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS CERTAIN OF THE COUNTERCLAIMS, AFFIRMATIVE DEFENSES AND COUNTS OF THE THIRD PARTY COMPLAINT**

i

## TABLE OF CONTENTS

I. PLAINTIFF MAY ADMIT EVIDENCE OF SETTLEMENT DISCUSSIONS TO PROVE THE STATE OF MIND OF EACH OF THE PARTIES ................................... 1

II. COUNT IX OF DEFENDANTS' THIRD PARTY COMPLAINT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ......................................................... 1

III. COUNT X OF THE THIRD PARTY COMPLAINT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS ......................................................... 2

IV. COUNTERCLAIM VI AND COUNT VI OF THE THIRD PARTY COMPLAINT MUST FAIL AS A RESULT OF THE STATUTE OF LIMITATIONS ........................... 4

V. COUNTERCLAIMS V, VI, AND VII AND COUNTS V, VI, VII, AND VIII OF THE THIRD PARTY COMPLAINT MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO SUFFICIENTLY PLEAD THE ELEMENT OF RELIANCE ..................... 6

VI. COUNTERCLAIM IV AND COUNT IV OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED FOR DEFENDANTS' FAILURE TO PLEAD FRAUDULENT CONVEYANCE WITH PARTICULARITY ........................................... 7

VII. COUNTERCLAIM V AND COUNT V OF THE THIRD PARTY COMPLAINT FAIL TO PLEAD FRAUD WITH PARTICULARITY IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 9(B) ................................................. 7

VIII. DEFENDANTS' FIRST AFFIRMATIVE DEFENSE ALLEGING ESTOPPEL MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGED CONDUCT DID NOT INFLUENCE THE DEFENDANTS ................................................................. 8

IX. DEFENDANTS' SECOND AFFIRMATIVE DEFENSE ALLEGING UNCLEAN HANDS MUST BE DISMISSED FOR DEFENDANTS FAILURE TO IDENTIFY THE PURPORTED FRAUD WITH PRECISION ................................................... 8

X. COUNTERCLAIMS VI AND COUNT IX OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED DUE TO THE DEFENDANTS' FAILURE TO PLEAD FRAUD WITH PARTICULARITY .......................................................................... 9

XI. COUNT VII OF THE THIRD PARTY COMPLAINT MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED ..................................................................... 9

XII. DEFENDANTS' CLAIMS FOR PUNITIVE DAMAGES ARE LEGALLY INSUFFICIENT ............................................................................................................ 10

# TABLE OF AUTHORITIES

**CASES.**

Aaron v. Roemer, Wallens & Mineaux, LLP, 272 A.D.2d 752, 754, 707 N.Y.S.2d 711 (3d Dep't 2000)..................................................................................................................2

Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983).......................................................5

Arneil v. Ramsey, 550 F.2d 774, 780 (2d Cir. 1977)...........................................................5

Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson, 434 F. Supp. 2d 241, 253 (S.D.N.Y. 2006)..................................................................................................................9

Calcutti v. SBU, Inc. 224 F.Supp.2d 691, 699 (S.D.N.Y. 2002)........................................2

Campaniello Imports, Ltd. v. Saporiti Italia S.p.A., 117 F.3d 655, 664 (2d Cir. 1997).................8

Dodds v. Cigna Securities, Inc., 12 F.3d 346, 350 (2d Cir. 1993).................................4-5

Eclaire Advisor Ltd. as Tr. to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g & Constr. Co., Ltd., 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005)..........................................7

Fade v. Pugliani/Fade, 8 A.D.3d 612, 614, 779 N.Y.S.2d 568 (2d Dep't 2004).................8

Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F.Supp.2d 385, 395 (S.D.N.Y.2005)..................................................................................................................7

Glamm v. Allen 57 N.Y.2d 87, 439 N.E.2d 390 (1982)......................................................2

Harsco Corp. v. Segui, 91 F.3d 337, 342-43 (2d Cir. 1996)............................................6-7

Herrington v. Verrilli, 151 F. Supp. 2d 449, 463 (S.D.N.Y. 2001).....................................2

Kaufman v. Cohen, 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003).........................3

Luce v. Edelstein, 802 F.2d 49, 54 n.1 (2d Cir. 1991).....................................................7-8

In re Nortel Networks Corp. Securities Litigation, 238 F. Supp. 2d 613 (S.D.N.Y. 2003)..............6

Papp v. Debanne, 16 A.D.3d 128, 790 N.Y.S.2d 450 (1st Dep't 2005)..............................3

In re Pfizer, Inc. Securities Litigation, 2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008)..................................................................................................................9

In re R.M. Kliment & Frances Halsband, Architects, 3 N.Y.3d 538, 821 N.E.2d 952 (2004)..........3

Robertson v. Seidman & Seidman, 609 F.2d 583, 587 (2d Cir. 1979)................................5

Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603 (1994).................................10

Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004).........................................................9

Segal v. Gordon, 467 F.2d 602, 608 (2d Cir. 1972)..............................................................8

Seidel v. 18 East 17th Street Owners, Inc., 79, N.Y.2d 735, 743, 586 N.Y.S.2d 240, 244 (1992)....................................................................................................................................8

Whitney Holdings Ltd. v. Givotovsky, 988 F. Supp. 732, 741 (S.D.N.Y. 1997).....................3

Yatter v. William Morris Agency, 256 A.D.2d 260, 261, 682 N.Y.S.2d 198 (1st Dep't 1998)............3

**STATUTES.**

15 U.S.C. § 78c(a)(10)............................................................................................................5

15 U.S.C. § 78j(b)........................................................................................................4-5, 9-10

15 U.S.C. § 78t(a)..............................................................................................................9-10

28 U.S.C. § 1658(b)............................................................................................................4-5

**RULES.**

Fed. R. Civ. P. 9(b)..................................................................................................................7

FED. R. EVID. 408 ....................................................................................................................1

NY. DEBT & CRED. § 276........................................................................................................7

## REPLY MEMORANDUM OF LAW

Plaintiff Scantek Medical, Inc. ("Scantek") and Third-Party Defendants Zsigmond L. Sagi ("Sagi") and Gibraltar Global Marketing, LLC ("Gibraltar") by their attorneys Mintz & Fraade, P.C. and the Law Offices of Edward C. Kramer, P.C., and Third-Party Defendants, Mintz & Fraade, P.C. ("M&F"), Frederick M. Mintz ("Mintz"), Alan P. Fraade ("Fraade"), and Mintz & Fraade Enterprises, LLC ("Enterprises"), by their attorneys the Law Offices of Edward C. Kramer, P.C., respectfully submit this Reply Memorandum of Law in support of their motion to dismiss certain of Defendants' Counterclaims and certain counts of the Third-Party Complaint.

**I.   PLAINTIFF MAY ADMIT EVIDENCE OF SETTLEMENT DISCUSSIONS TO PROVE THE STATE OF MIND OF EACH OF THE PARTIES**

Admission of settlement discussions is governed by FED. R. EVID. 408, which does not prohibit evidence of compromise or offers to compromise when introduced for the purpose of establishing state of mind. In particular, Rule 408(b) sets forth that "[t]his rule does not require exclusion if the evidence is offered for purposes not prohibited by subdivision (a)". "State of mind" is a purpose which is not prohibited by Rule 408(a). Accordingly, it is admissible pursuant to 408(b). The settlement discussions create a strong inference that no scheme existed to defraud Defendants. If Plaintiff intended to engage in a scheme to void Defendants' debt, then Plaintiff would not have proposed a genuine offer to settle Defendants' claims.

**II.   COUNT IX OF DEFENDANTS' THIRD PARTY COMPLAINT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS**

As explained more thoroughly in the Affidavit of Alan P. Fraade dated July 25, 2008 (the "Fraade Affidavit"), neither Mintz, Fraade, nor M&F represented Defendants with respect to the promissory notes dated April 25, 2002, August 20, 2002 and February 20, 2003, pursuant to which Defendants loaned an aggregate of $303,250.80 (the "Loans") to the Plaintiff. (Fraade Aff. ¶ 38.) Thus, Defendants do not have standing to bring a claim of malpractice against Mintz, Fraade or M&F with respect to the Loans.

Defendants' Memorandum attempts to utilize the continuous representation rule by alleging (A) that M&F represented Mark Stepniewski with respect to matters unrelated to the Loans until either December 2007 or January 28, 2008 and (B) privity was created between M&F and

1

Defendants by virtue of M&F's alleged relationship with Mr. Stepniewski. (See Defendants' Memorandum pp. 8-9.)

To support this far-fetched proposition, Defendants cite Herrington v. Verrilli, 151 F. Supp. 2d 449, 463 (S.D.N.Y. 2001). Herrington, however, is completely inapposite, bearing no reference to an attorney-client relationship.

Although M&F represented Mr. Stepniewski with respect to certain isolated matters, M&F did not represent Mr. Stepniewski with respect to the Loans. M&F's past representation of Mr. Stepniewski with respect to various unrelated matters is completely irrelevant to the issue of privity.

In any event, and even assuming for purposes of this argument that there was an attorney-client relationship between M&F and Defendants, the continuous representation doctrine does not apply. The issue is not whether M&F represented Mr. Stepniewski, but whether M&F represented Defendants. Generally, the statute of limitations for malpractice actions commences to run when the malpractice is committed, not when the client discovers it. Aaron v. Roemer, Wallens & Mineaux, LLP, 272 A.D.2d 752, 754, 707 N.Y.S.2d 711 (3d Dep't 2000). The continuous representation rule only tolls the running of the statute of limitations until the ongoing representation is completed. Glamm v. Allen 57 N.Y.2d 87, 439 N.E.2d 390 (1982). To invoke the continuous representation doctrine, a plaintiff must establish: (1) ongoing representation connected to the specific matter at issue in the malpractice action, and (2) "clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney." Calcutti v. SBU, Inc. 224 F.Supp.2d 691, 699 (S.D.N.Y. 2002). Because M&F only represented Defendants with respect to two isolated, limited matters (one of which was purely ministerial), which concluded by February 4, 2004, the continuous representation doctrine does not apply.

Accordingly, the statute of limitations with respect to Defendants' purported claim of malpractice against Mintz, Fraade and M&F has run and should be dismissed.

### III. COUNT X OF THE THIRD PARTY COMPLAINT IS BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Breach of fiduciary duty is governed by a three year statute of limitations when money damages are sought. Papp v. Debanne, 16 A.D.3d 128, 790 N.Y.S.2d 450 (1st Dep't 2005).

2

Defendants spuriously assert that their breach of fiduciary duty claim should be subject to a six year statute of limitations because it is "based on fraud". (See Defendants' Memorandum at 12.) However, the six year statute of limitations is only applied to breach of fiduciary duty claims which are "based on fraud" if the plaintiff is seeking an equitable remedy, and not when the plaintiff is seeking a purely monetary remedy.

> Where the relief sought is equitable in nature, the six-year limitations period of CPLR 213(1) applies. On the other hand, where suits alleging a breach of fiduciary duty seek only money damages, courts have viewed such actions as alleging 'injury to property,' to which a three-year statute of limitations applies.

Kaufman v. Cohen, 307 A.D.2d 113, 760 N.Y.S.2d 157 (1st Dep't 2003) (citing Yatter v. William Morris Agency, 256 A.D.2d 260, 261, 682 N.Y.S.2d 198 (1st Dep't 1998); Whitney Holdings Ltd. v. Givotovsky, 988 F. Supp. 732, 741 (S.D.N.Y. 1997)).

Because Defendants' are seeking only money damages, not equitable relief, with respect to Count X of the Counterclaims, the three year statute of limitations applies. In view of the fact that the last transaction between Plaintiff and Defendants took place on May 20, 2004, Defendants' Counterclaim for breach of fiduciary duty is barred by the statute of limitations.

Defendants' attempt to invoke a six year statute of limitations to avoid the three year statute of limitations is comparable to previous attempts to avoid the three year malpractice statute of limitations by alleging professional malpractice claims sounded in contract.

> The New York Court of Appeals explained the rational of the New York statute:
>
> CPLR 214 (6) states that "an action to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort" is subject to a three-year statute of limitations. The Legislature specifically amended this statute in 1996 to counteract the effect of decisions by this Court that "abrogat[ed] and circumvent[ed] the original legislative intent" by allowing actions that were technically malpractice actions to proceed under a six-year contract statute of limitations.

In re R.M. Kliment & Frances Halsband, Architects, 3 N.Y.3d 538, 821 N.E.2d 952 (2004) (quoting Revised Assembly Mem. in Support, Bill Jacket, L 1996, ch. 623).

3

IV. **COUNTERCLAIM VI AND COUNT VI OF THE THIRD PARTY COMPLAINT MUST FAIL AS A RESULT OF THE STATUTE OF LIMITATIONS**

Pursuant to the Sarbanes-Oxley Act of 2002, the statute of limitations for claims arising pursuant to Section 10(b) ("Section 10(b)") of the Securities Exchange Act of 1934, as amended (the "1934 Act"), is the earlier of (A) two years after the discovery of the facts constituting the violation or (B) within five years after the alleged violation. See 28 U.S.C. § 1658(b). Counterclaim VI and Third-Party Claim VI assert a claim based upon Section 10(b) with respect to the Loans, as well as a series of additional advances to Scantek (the "Additional Advances") from November 13, 2003 through May 20, 2004 (see Amended Third-Party Complaint ¶ 60).

Defendants were entitled to a portion of the funds Scantek received from sales to Brazil towards payments of the Loans; therefore, simple logic dictates that Defendants were aware that when Scantek failed to make any payments on the Loans, either Scantek had not sold its BreastCare™/BreastAlert™ Differential Temperature Sensor product ("BreastCare") in Brazil, or if it had, Scantek was in default by not honoring the terms of the Loans. In view of the fact that Defendants allege that the basis of the Section 10(b) violation was Scantek's alleged misrepresentations to Defendants with respect to future sales of its BreastCare product in Brazil, Defendants should have been aware of the facts which form the basis of the alleged fraud when Scantek defaulted on the first Loan, the maturity date for which was February 20, 2003.

In view of the fact that more than two years have elapsed since Defendants should have discovered any alleged fraud with respect to the Loans and Additional Advances, all of the third-party claims pursuant to Section 10(b) are time-barred pursuant to 28 U.S.C. § 1658(b). Dodds v. Cigna Securities, Inc., 12 F.3d 346, 350 (2d Cir. 1993), held that "[d]iscovery, however, includes constructive and inquiry notice as well as actual notice". In Dodds, the plaintiff sued the defendant pursuant to Section 10(b) because the defendant recommended securities which were inappropriate for the plaintiff so the defendant could make a higher commission. In ruling the plaintiff's claim was time-barred, the court determined that the plaintiff had constructive knowledge of the alleged securities fraud from the date she was given the prospectuses with respect to the investments, even though the plaintiff did not read them.

4

> A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud. As we said in *Armstrong*, "The test as to when fraud should with reasonable diligence have been discovered is an objective one. '[T]he means of knowledge are the same thing in effect as knowledge itself.'"

(Id.) (quoting Armstrong v. McAlpin, 699 F.2d 79, 88 (2d Cir. 1983); citing Robertson v. Seidman & Seidman, 609 F.2d 583, 587 (2d Cir. 1979); Arneil v. Ramsey, 550 F.2d 774, 780 (2d Cir. 1977)).

In this lawsuit, Defendants had constructive knowledge of the facts which they allege to constitute fraud when Scantek defaulted on the Loans. Scantek was in default with respect to the first Loan as of February 20, 2003 and with respect to all of the Loans as of June 6, 2003 (which is the maturity date of the third and final of the Loans). After Scantek's default, a "reasonable investor of ordinary intelligence would have discovered the existence of the [alleged] fraud". See Dodds, 12 F.3d at 350. Pursuant to Dodds, Defendants had constructive knowledge of the alleged fraud over two years ago, and thus the statute of limitations has run. See id.; 28 U.S.C. § 1658(b).

Even if Defendants did not have constructive knowledge of the facts which form the basis of their claim of alleged fraud, the five year statute of limitations imposed by 28 U.S.C. § 1658(b) bars all but one of the alleged violations of Section 10(b). First, a claim pursuant to Section 10(b) with respect to each of the Loans is barred, because the date of the last of the Loans was February 20, 2003, which is more than five years before the date the Third-Party Complaint was filed, February 27, 2008. With respect to the Additional Advances, only the advance on November 13, 2003 was evidenced by a promissory note. In view of the fact that none of the remaining Additional Advances are evidenced by a promissory note, or any other writing, it is questionable whether they could be considered "securities" pursuant to Section 3(a)(10) of the 1934 Act, because none of the terms of said Additional Loans are defined. Plaintiff and Third-Party Defendants do not believe that Defendants are able to base a claim upon Section 10(b) with respect to the Additional Advances not evidenced by a promissory note, and therefore the Section 10(b) claims with respect to said Additional Advances should be dismissed.

> V. **COUNTERCLAIMS V, VI, AND VII AND COUNTS V, VI, VII, AND VIII OF THE THIRD PARTY COMPLAINT MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO SUFFICIENTLY PLEAD THE ELEMENT OF RELIANCE**

Defendants allege they have sufficiently pled the element of reliance because they relied upon forward looking statements in Scantek's SEC filings which stated that Scantek anticipated making sales of BreastCare in Brazil. (See Defendants' Memorandum at 16.) The sole case cited by Defendants is In re Nortel Networks Corp. Securities Litigation, 238 F. Supp. 2d 613 (S.D.N.Y. 2003), which is cited for the proposition that if Scantek "had no basis for their optimistic statements" regarding sales of BreastCare in Brazil in its SEC filings, the alleged "misstatements do not fall under the PSLRA's safe harbor provisions". Id. at 629.

First, Defendants have failed to show that Scantek "had no basis for their optimistic statements" regarding sales of BreastCare in Brazil in its SEC filings. The mere fact that the sales did not take place, when Scantek believed they would, does not mean there was no basis for the statements.

Second, Defendants do not refute the fact that each of the subscription agreements contain a specific representation by the Defendants that with respect to their purchase of securities they did not rely upon any representations by the Plaintiff or any other party other than those contained in the Subscription Agreement, or the Plaintiff's filings with the SEC. (See Exhibits "E", "G" and "I" to the May 23 Fraade Affidavit.) Rather, they attempt to render said representations null and void by stating that only one of the subscription agreements was executed by Sabella. Defendants are taking the inconsistent and disingenuous position that (i) the subscription agreements did exist for the purpose of Defendants receiving Scantek's stock in 2003, but that (ii) the subscription agreements do not exist for the purpose of being bound by the representations contained therein. Defendants cannot have it both ways. It is inconsistent for Defendants to claim that the terms of the subscription agreements are not enforceable when Plaintiff and Third-Party Defendants did not attach an executed subscription agreement to its papers in view of the fact that Defendants themselves produced a subscription agreement which had been executed by Sabella. In view of the fact that Defendants have not shown why the representations in the subscription agreements (or at least the one executed by Sabella which Defendants had in their possession) would be unenforceable, Defendants have not sufficiently pled the element of reliance. See Harsco Corp. v. Segui, 91 F.3d

6

337, 342-43 (2d Cir. 1996) (holding that as a matter of law, the plaintiff could not rely upon statements which were not in the securities agreement which the plaintiff signed because the securities agreement specifically provided that any statements which were not in the securities agreement, could not be relied upon).

## VI. COUNTERCLAIM IV AND COUNT IV OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED FOR DEFENDANTS' FAILURE TO PLEAD FRAUDULENT CONVEYANCE WITH PARTICULARITY

Defendants' request to have the Gibraltar Distribution Agreement set aside or annulled based upon NY. DEBT & CRED. § 276 should be dismissed because Defendants did not plead an actual intent to defraud with particularity sufficient to meet the heightened standard of Fed.R.Civ.P. 9(b). To meet this heightened standard, Defendants must show "(1) the inadequacy of consideration received in the allegedly fraudulent conveyance; (2) the close relationship between parties to the transfer; (3) information that the transferor was rendered insolvent by the conveyance; (4) suspicious timing of transactions or existence of a pattern after the debt had been incurred or a legal action against the debtor had been threatened or (5) the use of fictitious parties." Eclaire Advisor Ltd. as Tr. to Daewoo Int'l (Am.) Corp. Creditor Trust v. Daewoo Eng'g & Constr. Co., Ltd., 375 F. Supp. 2d 257, 268-69 (S.D.N.Y. 2005).

Defendants have failed to satisfy any of the factors of Eclaire with respect to the Gibraltar Distribution Agreement which would indicate that there was an intent to defraud the stockholders of Scantek.

## VII. COUNTERCLAIM V AND COUNT V OF THE THIRD PARTY COMPLAINT FAIL TO PLEAD FRAUD WITH PARTICULARITY IN ACCORDANCE WITH FEDERAL RULE OF CIVIL PROCEDURE 9(B)

Defendants' claims with respect to common law fraud are based upon information and belief; accordingly, Defendants must "identify sufficiently the sources upon which [their] beliefs are based and those sources must have been likely to have known the relevant facts". Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC, 376 F.Supp.2d 385, 395 (S.D.N.Y.2005). Defendants have not identified any source whatsoever with respect to the preposterous set of allegations which Defendants claim lead them to believe that Scantek had engaged in common law fraud.

Defendants contend that they cannot identify the sources upon which their beliefs are based because the facts are "peculiarly within [Scantek's] knowledge". Luce v. Edelstein, 802 F.2d 49, 54

n.1 (2d Cir. 1991) (citing <u>Campaniello Imports, Ltd. v. Saporiti Italia S.p.A.</u>, 117 F.3d 655, 664 (2d Cir. 1997)). Defendants are using this assertion to avoid their obligation to plead their claim with particularity. Defendants cannot save their conclusory, insufficient claim simply be alleging that the facts are peculiarly within Scantek's knowledge.

> While the rule [9(b)] is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded. Plaintiff's conspiracy claims are obviously founded more on an examination of Rule 10b-5 than on an investigation of the facts of the alleged fraud. The word "conspiracy" does not alone satisfy the specificity requirement of Rule 9(b). A complaint cannot escape the charge that it is entirely conclusory in nature merely by quoting such words from the statutes as "artifices, schemes, and devices to defraud" and "scheme and conspiracy."

<u>Segal v. Gordon</u>, 467 F.2d 602, 608 (2d Cir. 1972). Similarly, Defendants liberally use phrases such as "device, scheme or article [sic] to defraud investors" (Third-Party Complaint ¶ 102), and statements that Plaintiff was part of a "scheme" (<u>id.</u> at ¶¶ 102, 103, 105, 112), without any substantive facts to support such allegations. In view of the fact that Defendants' allegations of common law fraud are completely conclusory and lack specificity, Counterclaim V and Claim V in the Third-Party Complaint should be dismissed.

### VIII. DEFENDANTS' FIRST AFFIRMATIVE DEFENSE ALLEGING ESTOPPEL MUST BE DISMISSED BECAUSE PLAINTIFF'S ALLEGED CONDUCT DID NOT INFLUENCE THE DEFENDANTS

Defendants cite <u>Seidel v. 18 East 17th Street Owners, Inc.</u>, 79, N.Y.2d 735, 743, 586 N.Y.S.2d 240, 244 (1992), for the principle that Scantek should be estopped from voiding the Loans and "achiev[ing] a total windfall". However, <u>Seidel</u> holds that a borrower may only be estopped from asserting usury if "through a special relationship with the lender, the borrower induces reliance on the legality of the transaction". <u>Id.</u> There was no special relationship between Scantek and Defendants which Scantek used to induce Defendants' reliance upon the legality of the transaction. The only relationship was lender and borrower.

### IX. DEFENDANTS' SECOND AFFIRMATIVE DEFENSE ALLEGING UNCLEAN HANDS MUST BE DISMISSED FOR DEFENDANTS FAILURE TO IDENTIFY THE PURPORTED FRAUD WITH PRECISION

Pursuant to New York law, one "seeking to invoke the doctrine of unclean hands has the initial burden of showing, prima facie, that the elements of the doctrine have been satisfied". <u>Fade v. Pugliani/Fade</u>, 8 A.D.3d 612, 614, 779 N.Y.S.2d 568 (2d Dep't 2004). Defendants seem to state that

the doctrine of unclean hands has been satisfied because Defendants have alleged that Plaintiff's SEC filings contain allegedly false information with respect to prospective sales of BreastCare to Brazil. First, Plaintiff's SEC filings did not contain false information, because Dr. Sagi reasonably expected that the potential sales of Scentek's BreastCare device in Brazil were imminent. Second, with respect to Scantek's SEC filings, "it is hard to see how that open and notorious action could constitute fraud or deceit", especially when Defendants were aware that such sales had not taken place when they made investments in Scantek, and when said statements in Scantek's SEC filings were specifically labeled as forward-looking statements upon which a person should not rely. See Buffalo Southern R.R. Inc. v. Village of Croton-on Hudson, 434 F. Supp. 2d 241, 253 (S.D.N.Y. 2006). (See also Fraade Affidavit ¶ 40.)

X. **COUNTERCLAIMS VI AND COUNT IX OF THE THIRD PARTY COMPLAINT MUST BE DISMISSED DUE TO THE DEFENDANTS' FAILURE TO PLEAD FRAUD WITH PARTICULARITY**

Defendants argue that Plaintiff's/Third-Party Defendants' reliance on In re Pfizer, Inc. Securities Litigation, 2008 WL 540120, Fed. Sec. L. Rep. P 94, 590 (S.D.N.Y. 2008) is misplaced because Defendants' allegations are "not solely [based] 'upon information and belief.'" (Defendants' Memorandum at 24-25.) This argument is puzzling since Pfizer asserts that where "factual allegations are made on information and belief, the complaint must allege adequate bases for the allegations." Pfizer, Fed. Sec. L. Rep. at 628. Defendants make allegations upon information and belief which are essential to their claim without indicating any bases for those allegations whatsoever. Pursuant to Pfizer, Defendants "must do more than allege that statements were materially misleading: 'they must demonstrate with specificity why and how that is so.'" Id. (quoting Rombach v. Chang, 355 F.3d 164, 174 (2d Cir. 2004)). Therefore, the claim for violation of section 10(b) must be dismissed.

XI. **COUNT VII OF THE THIRD PARTY COMPLAINT MUST FAIL BECAUSE DEFENDANTS HAVE FAILED TO STATE A CAUSE OF ACTION UPON WHICH RELIEF CAN BE GRANTED**

As explained in Section IV of this Memorandum, Defendants have failed to sufficiently plead their claim with respect to Section 10(b). Defendants' third-party claim based upon Section 20(a) of the 1934 Act ("Section 20(a)") seeks to impute liability pursuant to Section 10(b) upon "control persons". Thus, Defendants' Section 20(a) claim is dependent upon a claim based upon Section

10(b) being adequately pleaded. However, because the Plaintiff has failed to sufficiently plead a cause of action based upon Section 10(b), Defendants' Section 20(a) claim must also be dismissed.

### XII. DEFENDANTS' CLAIMS FOR PUNITIVE DAMAGES ARE LEGALLY INSUFFICIENT

"[A] private party seeking to recover punitive damages must not only demonstrate egregious tortuous conduct by which he or she was aggrieved, but also that such conduct was part of a pattern of similar conduct directed at the public generally." Rocanova v. Equitable Life Assur. Soc. of U.S., 83 N.Y.2d 603, 613 (1994). Defendants have not alleged that Plaintiff or Third-Party Defendants engaged in "egregious tortious", or that Plaintiff's or Third-Party Defendants' conduct was directed at the general public; a mere allegation of "bad-faith conduct is insufficient". Accordingly, the claims for punitive damages must be dismissed.

### CONCLUSION

Based upon the foregoing, it is respectfully submitted that the Court should dismiss the Answer and Counterclaims IV, V, VI, and VII and Counts IV, V, VI, VII, VIII, IX and X of the Third Party Complaint, and grant such other and further relief as to this Court deems just and proper, together with costs and disbursements as provided by law.

Dated: July 25, 2008
New York, New York

Respectfully submitted,

Alan P. Fraade (AF9602)
Co-Attorney for Plaintiff, Third Party Defendants
Gibraltar Global Marketing, LLC and Zsigmond L. Sagi
Office and Post Office Address
488 Madison Avenue, Suite 1100
New York, New York 10022
(212) 486-2500

Edward C. Kramer (EK8411)
Co-Attorney for Plaintiff, Third Party Defendants
Gibraltar Global Marketing, LLC, Mintz & Fraade, P.C., Frederick M. Mintz, Alan P. Fraade and Mintz & Fraade Enterprises, LLC
Office and Post Office Address
488 Madison Avenue, Suite 1100
New York, New York 10022
(212) 490-1616